UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., Plaintiff, | : | |
| vs. | : | **C.A. No. 06-533 ML** |
| KEVIN PLANT, Defendant. | : | |

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Astro-Med, Inc. ("Astro-Med") hereby moves, pursuant to Fed.R.Civ.P. 65 and R.I.G.L. § 6-41-2, for an order temporarily restraining and preliminarily and permanently enjoining defendant Kevin Plant ("Plant") from using, divulging and/or conveying to others Astro-Med's confidential business information and trade secrets.

Plaintiff Astro-Med further moves for an order temporarily restraining and preliminarily enjoining defendant Plant from personally competing with, or rendering any service to or having any interest or participation in any business that competes with, Astro-Med in the geographic area in which it markets and sells product including, but not limited to, Nihon Kohden America, Inc., and from interfering or attempting to interfere with Astro-Med's customers, trade, business and/or patronage for a period of one year from the date of his compliance with his Employment Agreement with Astro-Med.

In support of its motion, Astro-Med submits herewith an accompanying memorandum of law.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Craig M. Scott

Craig M. Scott, Esq. (# 4237)
Robert J. O'Keefe, Esq. (#6750)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

Dated: December 15, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that the within ***Plaintiff's Application for Temporary Restraining Order and Motion For Preliminary Injunction*** was filed through the ECF system on the 15th day of December, 2006, and will be sent electronically to the above-named below who are registered participants identified on the Notice of Electronic Filing:

Michael A. Gamboli, Esq.
Lisa M. Martinelli
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/ Craig M. Scott

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC.,<br>Plaintiff, | : | |
| vs. | : | **C.A. No. 06-533 ML** |
| KEVIN PLANT,<br>Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Astro-Med, Inc. ("Astro-Med") submits this Memorandum in Support of its Application for Temporary Restraining Order and Motion for Preliminary Injunction.

## FACTS[1]

Astro-Med is a Rhode Island corporation with its principal place of business at 600 East Greenwich Avenue, West Warwick, Rhode Island. Astro-Med is a world leader in the data acquisition and recording market and has been developing and manufacturing recording systems since 1969. Astro-Med's Grass Technologies product group manufactures, sells and distributes instruments for sleep and neurological research, clinical applications of sleep science and brain wave recording and analysis. Astro-Med is one of the world's major suppliers of sleep systems and other neurophysiological monitoring systems.

The life sciences industry is extremely competitive, and Astro-Med's customers, distribution, pricing and marketing information systems contribute to its position as a leading supplier of these products. Although the identity of some of its customers may be generally

[1] The facts set forth herein are fully supported by the Verified Complaint.

known in the industry, Astro-Med's financial arrangements with its sales people, its marketing strategy and its pricing and cost structure are all highly confidential.

Astro-Med actively protects its trade secrets and other confidential information, including its marketing strategies, the details of its arrangements with its dealers and distributors, customer information and pricing and cost policies. It does so by, among other things, requiring its key employees, as a condition of employment with Astro-Med, to execute an agreement not to compete with Astro-Med for a period of one year after employment termination and not to use or disclose confidential information or trade secrets of Astro-Med.

In October 2002, Astro-Med hired defendant Kevin Plant ("Plant"). Plant had no previous experience with medical neurology products. Astro-Med trained Plant as a Product Specialist, with responsibility for the demonstration and training of the Grass Technologies product line for Astro-Med sales personnel. As part of his training, Astro-Med introduced Plant to its research and development efforts with respect to its Grass Technologies products.

On July 12, 2004, Astro-Med promoted Plant to District Sales Manager, with responsibility for generating sales in Florida. During his employment, Plant became intimately familiar with Astro-Med's customers and their preferences, as well as its pricing strategy and cost data. He also had knowledge of Astro-Med's suppliers, products Astro-Med purchased from those suppliers, and to whom those products were sold.

Upon hiring, and as a condition of his employment, Plant executed an employment agreement (the "Agreement"). A true copy of the Agreement is attached hereto as Exhibit A. The Agreement contains non-disclosure and non-compete provisions that provide, in pertinent part:

> 2. That any inventions, discoveries or improvements in any technical data, trade secrets, information or know-how,

> made, discovered or conceived or acquired by me during the period of my employment, whether patented or not, are to and remain the property of the Company; that, without the written authorization of the Company, I will neither use nor disclose to any person other than my superiors in the Company, any information, trade secrets, technical data or know-how relating to the Company's products, processes, methods, equipment and business practices, which I have acquired during my employment.
>
> 4. I recognize that the Company sells its products throughout North America and Europe; as such, upon termination of my employment at the Company, for whatever reason, I shall not directly or indirectly enter into or engage in a business that competes with the Company, in a territory consisting of North America, and Europe, either as an individual, partner, joint venturer, employee, agent or salesman for any person, or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter.

On September 19, 2006, Plant resigned from Astro-Med. At the time of his departure, Astro-Med reminded Plant of his non-disclosure and non-compete obligations. (A true copy of the e-mail correspondence between Everett Pizzuti to Kevin Plant on September 21 and 22, 2006 is attached hereto as Exhibit B.) Plant responded that he had given serious consideration to his employee agreement and consulted with counsel. *See* Ex. B.

In November 2006, Astro-Med discovered that Plant had become employed by Nihon Kohden America, Inc., a subsidiary of the Japanese company, Nihon Kohden (collectively, "Nihon Kohden"), and a direct competitor of Astro-Med. Nihon Kohden sells to and solicits the same customer and potential customer base throughout the United States and internationally. Astro-Med has further confirmed that Plant has since contacted Astro-Med customers and prospects that Plant was developing for Astro-Med on behalf of Nihon Kohden.

On December 1st, Astro-Med advised Nihon Kohden of Plants non-disclosure and non-compete obligations and requested that it advise Astro-Med with respect to Plant's continued employment with Nihon Kohden. (A true copy of the December 1, 2006 letter from Craig M. Scott, Esq. to Nihon Kohden is attached hereto as Exhibit C.) Nihon Kohden has not responded.

Astro-Med believes that it has an advantage over Nihon Kohden by reason of Astro-Med's products, pricing and marketing strategies it has developed over time. As a Nihon Kohden employee, Plant has or will use and disclose Astro-Med's secret and confidential business information, including the identity of its customers, the nature and terms of its contracts, Astro-Med's financial arrangements with its customers, its marketing strategy and its pricing and cost measures. This highly confidential information is extremely valuable to Astro-Med and critical to its business. It would be of significant value to Nihon Kohden.

**ARGUMENT**

Restraining orders and injunctions are appropriate to restrain the continued violation of an agreement not to compete. *Rego Displays, Inc. v. Fournier*, 119 R.I. 469, 379 A.2d 1098 (1977).Temporary and permanent injunctive relief is also appropriate to restrain the continued use, or threatened use of misappropriated trade secrets. *See, e.g.,* R.I. Gen. Laws § 6-41-2; *Nestle Food Co. v. Miller*, 836 F.Supp. 69, 78 (D.R.I. 1993); *J.B. Prata, Ltd. v. Bichay*, 468 A.2d 266, 268 (R.I. 1983).

Rhode Island courts consider four factors in determining whether to issue injunctive relief: (1) the likelihood of success on the merits; (2) irreparable harm; (3) the balance of the equities; and (4) the need to preserve the status quo. *Leone v. Town of New Shoreham*, 534 A.2d 871, 873 (R.I. 1987). Astro-Med need only show a "reasonable probability rather than a

certainty of ultimate success on a final hearing" to be entitled to preliminary injunctive relief. *Coolbeth v. Berberian*, 112 R.I. 558, 556, 313 A.2d 656, 660 (1974).

**A. Astro-Med is Likely to Succeed on the Merits**

Astro-Med is likely to succeed on the merits of its claims because the Agreement is valid and enforceable and Plant has violated the Agreement in several respects.

**1. The Agreement is Valid and Enforceable**

Rhode Island courts have consistently enforced non-competition agreements so long as they serve a legitimate purpose and are reasonable under the circumstances. *Durapin, Inc. v. American Products, Inc.*, 559 A.2d 1051, 1053 (R.I. 1989); *Mento v. Lanni*, 106 R.I. 683, 262 A.2d 839 (1970); *Koppers Products Co. v. Readio*, 60 R.I. 207, 197 A. 441 (1938); *Oakdale Mfg. Co. v. Garst*, 18 R.I. 484, 28 A. 973 (1894); *French v. Parker*, 16 R.I. 219, 14 A. 870 (1888). Whether a restrictive covenant is reasonable is ultimately a question of law to be determined by the court. *Durapin*, 559 A.2d at 1053; *Nestle*, 836 F.Supp. at 73.

The party seeking to enforce the non-competition provision must show that:

(1) the provision is ancillary to an otherwise valid transaction or relationship;

(2) the provision is supported by adequate consideration; and

(3) there is a legitimate interest that the provision is designed to protect.

*Durapin*, 559 A.2d at 1053. Parties seeking to enforce non-competition clauses must also demonstrate that such clauses are reasonable in time and scope. *Home Gas Corporation of Massachusetts, Inc. v. DeBlois Oil Company*, 691 F. Supp. 567, 575 (D.R.I. 1987); *Durapin*, 559 A.2d at 1053. Astro-Med satisfies each of these factors.

First, the Agreement is an integral part of Plant's employment with Astro-Med, not merely ancillary. Plant was provided access to Astro-Med's product development, pricing, marketing, customer lists and other confidential business information and trade secrets as part of his employment. Plant would not have been hired and would not have had access to Astro-Med's product, sales and other confidential information had he not signed the Agreement.

Second, the non-competition provision is supported by adequate consideration: Plant was introduced to Astro-Med's products, business and customers and confidential information upon signing the Agreement. The training provided by Astro-Med and the access given to Astro-Med's trade secrets adequately support Plant's agreement not to compete for one year following termination. Even if there were no consideration other than allowing an employee to continue employment with all of the associated benefits, such continuation of employment constitutes adequate consideration for a non-competition agreement. *See Nestle,* 836 F. Supp. at 77; *Durapin*, 559 A.2d at 1057; *Oken v. National Chain Co.*, 424 A.2d 234, 237 (R.I. 1981) (adequate consideration for modification of employment relationship found in at-will context by mere continuance of employment).

Third, the Employee Agreement is plainly designed to protect Astro-Med's legitimate business interests. Those interests include protecting relationships with existing customers with whom Plant may have developed goodwill on behalf of Astro-Med during his employment with the company. The Agreement also protects the product research and development, customer lists, pricing, customer preferences and other trade secret information imparted to Plant by Astro-Med as part of his employment. These interests are all legitimate business interests that are properly and reasonably protected by the Employee Agreement.

*See, e.g., Rego Displays*, 379 A.2d at 1102; *Callahan v. Rhode Island Oil Co.,* 103 R.I. 656, 240 A.2d 411, 413 (1968); *Oakdale Manufacturing*, 18 R.I. at 490; *French*, 16 R.I. at 219.

As a District Sales Manager, Plant developed relationships with many of Astro-Med's existing customers as well as prospective and new customers throughout the United States. These relationships afforded Plant the knowledge of customers' specialized requirements, the contact person for each customer and Astro-Med's pricing policies with respect to each customer. Developing this highly sensitive knowledge was encouraged and underwritten by Astro-Med and is well within Astro-Med's protectable interests under the Agreement. *See Home Gas*, 691 F. Supp at 575; *See, also, Eastern Container*, 624 A.2d 833.

Another related business interest is protection from misappropriation of confidential business information, including product development information and customer lists compiled through methods not generally available to the public. *Rego Displays*, 119 R.I. at 474, 379 A.2d at 1102. Plant, who had no prior experience in the field, was trained in the development and promotion of the Grass Technologies product line. Plant also had access to Astro-Med's customer lists. This knowledge is highly sensitive and a legitimate business interest that is properly and reasonably protected by the Agreement. *See, e.g., Home Gas*, 691 F. Supp, at 575; *Callahan v. Rhode Island Oil Co.,* 103 R.I. 656, 240 A.2d 411, 413 (1968); *Oakdale Manufacturing*, 18 R.I. at 490; *French*, 16 R.I. at 219.

The non-competition clause is reasonable in time and scope. *See Home Gas*, 691 F. Supp. at 575; Durapin, 559 A.2d at 1053. Rhode Island courts have repeatedly held that restrictive covenants of three years and longer are reasonable. *See, e.g.*, *Griggs & Brown Co. v. Healy*, 453 A.2d 761 (R.I. 1982) (three years); *Max Garelick, Inc. v. Leonardo*, 250 A.2d 354 (R.I. 1969) (five years). The Agreement here restricts Plant for only one year. One year

is not an unreasonable period of time to restrict competition, particularly where Astro-Med has existing relationships with customers, the particulars of which Plant was privy to while an Astro-Med employee. *Nestle*, 836 F. Supp. at 75; *Rego Displays,* 379 A.2d at 1102-03.

The geographical scope of the Agreement is also reasonable. The Agreement prohibits Plant from, *inter alia*, rendering service to a business that competes with Astro-Med in North American and Europe. Astro-Med markets and sells products throughout the world. As a District Sales Manager, Plant serviced Astro-Med's customers in this geographic area, developed new prospects, and was given training on Astro-Med products, pricing and marketing techniques that are employed by its sales force internationally. Knowledge of Astro-Med's pricing and marketing strategies would be of great use to Nihon Kohden, a multi-national company and direct competitor of Astro-Med for medical neurology device sales around the world. Therefore, the territorial restrictions Astro-Med seeks to enforce under the Agreement are eminently reasonable. *North Shore Dye House, Inc. v. Rosenfield*, 53 R.I. 279, 286, 166 A. 346, 349 (1933).

**2. <u>Plant Violated the Agreement</u>**

Plant violated his Agreement with Astro-Med by accepting employment with Nihon Kohden, shortly if not immediately after he resigned from Astro-Med. By virtue of this employment, Plant is now in a position, and indeed, is required, to use the confidential business information imparted to him by Astro-Med for the benefit of Nihon Kohden. Plant cannot effectively do his job for Nihon Kohden without wrongfully using or disclosing the confidential information imparted to him by Astro-Med, including customer preferences, pricing and cost information and research and development information.

For the foregoing reasons, Astro-Med will likely succeed on the merits of its claims.

**B. Plant's Actions Are Causing Substantial and Irreparable Injury to Astro-Med**

The Agreement that Plant signed recites that "A violation of the terms of this Agreement will cause the Company to suffer irreparable harm unless enjoined." Agreement at ¶ 5. Monetary damages cannot compensate Astro-Med for its loss, which will include a loss of goodwill and confidential business information and an unfair threat to Astro-Med's market position. Plant's use of Astro-Med's secret and confidential information imparted to him by Astro-Med will cause Astro-Med substantial and irreparable injury. *See* R.I. Gen. Laws § 6-41-2. Plant is armed with research and development, supplier, pricing and marketing information gained in the course of his employment at Astro-Med. This knowledge and information is essential to Astro-Med's operations and its ability to compete effectively against Nihon Kohden and its other competitors. Nihon Kohden is in a position where its use of this information is likely to cause significant harm to Astro-Med. This constitutes irreparable harm for which there is no adequate remedy at law. *Leone*, 534 A.2d at 874.

**C. The Balance of the Equities Favor Astro-Med**

Balancing the equities includes weighing the possible hardships to each party and to the public interest. *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 705-706 (R.I. 1999) (enforcing a non-competition agreement upon finding it was reasonable in light of the circumstances and did not extend beyond what was apparently necessary to protect its beneficiaries). Enforcement of the non-competition clause in the Agreement here would not impose a disproportionate hardship. Plant executed the Agreement when he began working for Astro-Med and remains subject to its terms even now that he has left Astro-Med. It was Plant, not Astro-Med, who terminated that employment relationship. During his employment,

Plant developed an intimate knowledge of Astro-Med's marketing strategies and methods of competing in the highly competitive sleep science industry. Plant chose to render his services to Astro-Med's competitor, Nihon Kohden, in direct violation of the Agreement. The restrictions that a temporary restraining order and a preliminary injunction will place upon Plant are not onerous because Plant will simply be prohibited from any further breach of the very Agreement he signed. The one-year restriction on his rendering services to an Astro-Med competitor and soliciting Astro-Med's customers reasonably protects the Company's ability to compete while placing only limited restrictions on Plant. The other restrictions are no greater than those by which Plant is otherwise bound under the Uniform Trade Secrets Act. (R.I. Gen. Laws § 6-41-2.).

By contrast, Astro-Med's ability to compete effectively in its highly competitive business environment will be severely compromised if it is not granted the relief it seeks. Its secret and confidential information, knowledge and data will lose its confidential character and at least one of its competitors, Nihon Kohden, will enjoy a significant competitive advantage over Astro-Med. The balance of the equities weighs heavily in favor of Astro-Med. *WGBH Educational Foundation, Inc. v. Penthouse International Limited*, 453 F. Supp. 1347, 1352 (S.D.N.Y. 1978), *affirmed*, 598 F.2d 610 (2nd Cir. 1979); *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 706 (R.I. 1999). The only way to prevent the continued disclosure of Astro-Med's secret and confidential information, knowledge and data prior to a final hearing of this case on the merits is through the issuance of a temporary restraining order and a preliminary injunction.

**D. <u>An Injunction will Preserve the Status Quo</u>**

The purpose of this application for a temporary restraining order and motion for preliminary injunction is to hold matters in approximately the same status as they were before Plant began rendering services for Astro-Med's competitor, Nihon Kohden. This is to allow the issues to be properly and finally heard and determined on their merits. *Studley Land Co. v. Myers*, 81 R.I. 426, 431, 103 A.2d 924, 926 (1954). The grant of Astro-Med's application for a temporary restraining order and motion for a preliminary injunction will hold matters in the status they were prior to Plant's departure from Astro-Med.

**<u>CONCLUSION</u>**

For all the foregoing reasons, Astro-Med respectfully requests that this Court grant its Application for a Temporary Retraining Order and Motion for Preliminary Injunction.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Craig M. Scott

Craig M. Scott, Esq. (# 4237)
Robert J. O'Keefe, Esq. (#6750)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

Dated: December 15, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that the within ***Plaintiff's Memorandum of Law in Support of Its Application for Temporary Restraining Order and Motion for Preliminary Injunction*** was filed through the ECF system on the 15th day of December, 2006, and will be sent electronically to the above-named below who are registered participants identified on the Notice of Electronic Filing:

Michael A. Gamboli, Esq.
Lisa M. Martinelli
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/ Craig M. Scott