UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC.,<br>Plaintiff, | : | |
| vs. | : | C.A. No. 06-533 ML |
| KEVIN PLANT,<br>Defendant. | : | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Astro-Med, Inc. ("Astro-Med") submits this Reply Memorandum in support of its Motion for Preliminary Injunction.

1) The One Year Non-Compete is Ancillary to an Employment Contract and is Supported by Adequate Consideration.

Employment is valid consideration to support covenants in an employment agreement. *Nestle Food Co. v. Miller*, 836 F. Supp. 69, 77 (D.R.I. 1993) (employment valid consideration for a non-compete clause). "Even if there was no consideration other than allowing [the employee] to continue as an employee with all of the associated benefits associated therewith, such consideration of employment constitutes adequate consideration." *Nestle*, 836 F. Supp. at 77; *see also Oken v. National Chain Co.*, 424 A.2d 234, 237 (R.I. 1981) (continued employment sufficient consideration for modification of an employment agreement). Defendant cites Massachusetts law[1] for the proposition that continued employment is not sufficient consideration for a non-competition agreement, but ignores the fact that his

[1] *See* Defendant's Opposition at 10, wherein he cites *Ikon Office Solutions v. Belanger*, 59 F. Supp. 2d 125, 131 (D. Mass. 1999), for the proposition that courts now appear to refuse to enforce non-competition agreements when the only purported consideration is continued employment, and *AFC Cable Sys. v. Clisham*, 62 F. Supp. 2d 167, 172-73 (D. Mass. 1999), for the proposition that a material change in employment voids prior employment agreements.

employment and specialized training at Astro-Med was conditioned upon his execution of the Employee Agreement that contains a one year non-compete and non-disclosure provisions.

In addition, "[c]ourts have also enforced restrictive covenants when the plaintiff had trained the defendant in unique or novel services in exchange for which the defendant agreed not to use those unique skills to compete against the original employer." *Dial Media, Inc. v. Schiff,* 612 F. Supp. 1483, 1489 (D.R.I. 1985). Here, Astro-Med invested heavily in training Plant to market and sell highly specialized neuro-physiological medical equipment. It exposed Plant to its proprietary customer, pricing, marketing and research and development information. Plant is now in a position to use those skills and information on behalf of a competitor notwithstanding his agreement not to do so as pre-condition of his training at and employment with Astro-Med. The non-compete provision protects the legitimate — in fact, critical — business interests of Astro-Med.

2) <u>The Non-Compete Provision Protects Astro-Med's Legitimate Business Interests.</u>

Astro-Med's legitimate business interests include customer goodwill that Plant developed during his employment with the Company, the protection of its proprietary product information, sensitive competitive pricing and costing data, customer lists, customer preferences, marketing techniques and other trade secrets and confidential business information that Astro-Med imparted to Plant. He possessed none of this information when he joined Astro-Med. This information is vital to Astro-Med in order to protect its share of a highly specialized and competitive market. As the *Nestle* court stated:

> The "Competitive activity" provision involved in this case may be viewed as having three distinct purposes or interests. First, the provision protects Nestle's allegedly "confidential" and "proprietary" information. By prohibiting its salesmen from working for a competitor firm for the period of one year, its salesmen are less likely to utilize Nestle's confidential customer-

> related information for the benefit of competitor firms because they simply would not have that employment opportunity. Second, the provision protects the "goodwill" or "special relationship" which the departing salesman developed with the customer on behalf of Nestle. It allows the replacement salesman time to renew the relationship with the customer without competition from the former Nestle salesman. ...Third, the provision protects Nestle from unfair and predatory competition by its competitors. By preventing its most experienced and productive salesmen from freely joining a competitor firm for one year, it reduces its competitors' ability to attract these salesmen to their employ, and thereby limiting its competitors' ability to unfairly increase sales.

836 F. Supp. at 74. Here, the non-compete provision is designed to protect each of the three *Nestle* purposes and, accordingly, is enforceable because it protects Astro-Med's legitimate interests.

3) The Non-Compete Provision is Reasonable in Time and Scope.

Rhode Island courts enforce restrictive covenants of two years and more. *See Home Gas Corporation of Massachusetts v. DeBlois Oil Company*, 691 F. Supp. 567, 575 (D.R.I. 1987) (two year non-compete reasonable); *Griggs & Brown Co. v. Healy*, 453 A.2d 761 (R.I. 1982) (three year non-compete reasonable); *Oakdale Mfg. Co. v. Garst*, 18 R.I. 484, 28 A. 973 (1894) (five year non-compete reasonable). Under the facts of this case, the one year non-compete that Plant agreed to is reasonable. Over his four year tenure with the company, Astro-Med taught him specialized skills and he was privy to confidential information such as Astro-Med's pricing strategies. It will take at least that long for a replacement to learn Plant's territory and to re-establish the good will with Astro-Med's customers and prospective customers.

The geographic restraint is also reasonable. Astro-Med sells its Grass Technologies line of products throughout the United States and Europe. Plant knew at the time of his employment application with Astro-Med that the successful candidate would be required to travel throughout the United States. Astro-Med did expose Plant to its customers and

prospective customers throughout the United States, and to product development information, sales techniques and customer and pricing information that could be used against Astro-Med throughout this territory. Astro-Med competes with Nihon Kohden in the international medical neurology and sleep sciences market and Nihon Kohden is employing Plant with full knowledge of Plants non-compete and non-disclosure obligations to Astro-Med.

In *Hekimian Laboratories v. Domain Systems, Inc.*, 664 F. Supp. 493, 498 (S.D.Fla. 1987), the court enforced a non-compete provision lasting one year and with no geographic restriction. The former employee was intimately familiar with the company's product development and sales strategies, information which he then took to a national competitor. The court upheld the one year limitation as reasonable because it would take at least that long to minimize the impact of the loss of an employee who had extensive knowledge of the company's trade secrets and proprietary business information. *See Hekimian Laboratories*, 664 F. Supp. at 498. As to the absence of a geographic restriction, the court held it to be reasonable since the former employer and current employer competed nationally and internationally. *Id.* According to the *Hekimian* court, imposing a geographic restriction would render the non-compete provision "meaningless," because the competitor could simply move the employee to another part of the country, and the damage to the former employer would be the same. *Id.*

Astro-Med sells the same products and uses the same strategies to sell its products worldwide. Limiting enforcement of the non-compete to Plant's former territory in the Southeastern United States does not protect fully the legitimate interests of Astro-Med – Plant could still compete unfairly with Astro-Med in other parts of the country.

4) <u>The Equities Favor Astro-Med.</u>

Plant came to Astro-Med with no training in medical neurology or sleep science products. Astro-Med specially trained Plant in every aspect of marketing and selling capital medical equipment, and exposed him to highly sensitive and proprietary business information. Plant agreed not to use this information in perpetuity and not to compete with Astro-Med for one year following his employment with the Company. He also agreed that if he violated the Employee Agreement it would cause Astro-Med to suffer irreparable harm. (*See* Employee Agreement at ¶ 5, attached to Verified Complaint as *Exhibit A*.) The equities are in Astro-Med's favor.

In contrast, Plant knowingly violated the Agreement, and today works for Astro-Med's competitor possessed with Astro-Med's confidential information. There are limitless fields in which a highly trained salesperson such as Plant can earn a livelihood. Unfortunately, he chose to violate his Agreement with Astro-Med. As a consequence, Astro-Med has been and will continue to be irreparably harmed unless Plant is enjoined.

## CONCLUSION

For all the foregoing reasons, Astro-Med respectfully requests that this Court grant its Motion for a Preliminary Injunction.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Craig M. Scott

Craig M. Scott, Esq. (# 4237)
Robert J. O'Keefe, Esq. (#6750)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
cscott@duffysweeney.com

Dated December 26, 2006

## CERTIFICATE OF SERVICE

I hereby certify that the within ***Plaintiff's Reply Memorandum in Support of its Motion for Preliminary Injunction*** was filed through the ECF system on the 26th day of December, 2006, and will be sent electronically to counsel named below who are registered participants identified on the Notice of Electronic Filing:

Michael A. Gamboli, Esq.
Lisa M. Martinelli
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Craig M. Scott