# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC.,<br>Plaintiff, | : | |
| vs. | : | **C.A. No. 06-533 ML** |
| KEVIN PLANT, NIHON KOHDEN AMERICA, INC.<br>Defendants. | : | |

**FIRST AMENDED COMPLAINT**

Plaintiff, Astro-Med, Inc. ("Astro-Med"), for its First Amended Complaint against defendants, Kevin Plant ("Plant") and Nihon Kohden America, Inc. ("Nihon Kohden"), alleges as follows:

**PARTIES**

1. Astro-Med is a Rhode Island corporation with its principal place of business at 600 East Greenwich Avenue, West Warwick, Rhode Island 02893.

2. Plant is a resident of Florida and upon information and belief resides at 402 Randon Terrace, Lake Mary, Florida. Plant is a former District Sales Manager for Astro-Med.

3. Nihon Kohden is a corporation with a principal place of business in Foothill Ranch, California and is a wholly-owned subsidiary of Nihon Kohden of Japan (hereinafter collectively referred to as "Nihon Kohden").

**JURISDICTION**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and/or have principal places of business in different states and Astro-Med seeks equitable relief and monetary damages in excess of $75,000.

5. This Court has personal jurisdiction over Plant because the Employment Agreement sought to be enforced was entered into in Rhode Island. In addition, Plant has had sufficient contacts with Rhode Island to provide this Court with jurisdiction, including numerous communications with, and trips to, Astro-Med's Rhode Island facility.

6. This Court has jurisdiction over Nihon Kohden because Nihon Kohden has sufficient contacts with the forum state through product marketing and sales and its activities relating to Astro-Med and its former employee, Plant.

## FACTS

**Astro-Med's Business**

7. Astro-Med's Grass Technologies product group manufactures, sells and distributes instruments for sleep and neurological research and clinical applications of sleep science and brain wave recording and analysis. The life sciences industry is extremely competitive, and Astro-Med's customers, distribution, pricing and marketing information systems contribute to its position as a leading supplier of these products. Although the identity of some of its customers may be generally known in the industry, Astro-Med has developed proprietary customer databases through extensive research and marketing efforts. Astro-Med's financial arrangements with its sales people, its marketing strategy and its pricing and cost structure are all highly confidential.

8. Astro-Med, through its Grass Technologies line, competes in a highly competitive, specialized market. The aggregate market size for neurological products is approximately $250 million in annual sales. In addition to Astro-Med and Nihon Kohden, approximately nine other companies compete in this market.

**Astro-Med's Trade Secrets**

9. Astro-Med is continuously researching and developing new products and refining its existing products to compete in this highly specialized marketplace. Product development information for the Grass Technologies line is proprietary business information.

10. Astro-Med has developed customer databases through intensive and expensive efforts in marketing, advertising in trade journals, attending trade shows, mailings and Internet advertising. The customer databases have been developed over the course of several years and are crucial and confidential assets of Astro-Med which allows it to maintain a competitive advantage.

11. Astro-Med actively protects its trade secrets and other confidential information, including its product development information, marketing strategies, the details of its arrangements with its dealers and distributors, customer information and pricing and cost policies. It does so by, among other things, requiring its key employees, as a condition of employment with Astro-Med, to execute an agreement not to compete with Astro-Med for a period of one year after employment termination and not to use or disclose confidential information or trade secrets of Astro-Med.

**Plant's Employment with Astro-Med**

12. In October 2002, Plant joined Astro-Med in West Warwick, Rhode Island as a Product Specialist.

13. Product Specialists are responsible, among other things, for the demonstration and training of the Grass Technologies product line for Astro-Med sales personnel. They also develop new product specifications, price lists and strategies, training guides and product manuals.

14. Product Specialists are specially trained in the technical details of the Grass Technologies product line and attend product installations and demonstrations at client sites around the country.

15. Prior to joining Astro-Med, Plant had no experience in medical-neurology products.

16. As a Product Specialist, Plant received highly specialized training in the Grass Technologies product line, and attended product installations and demonstrations at client sites around the country.

17. On July 12, 2004, Astro-Med promoted Plant to District Sales Manager for sales of Grass Technologies products. Astro-Med paid to re-locate Plant from Rhode Island to Florida.

18. As District Sales Manager and Product Specialist, Plant had access to and used Astro-Med's trade secrets, including confidential marketing, pricing, and customer databases. During his employment, Plant became intimately familiar with these customers and their preferences, as well as Astro-Med's pricing strategy and marketing techniques. Plant also had knowledge and insight as to Astro-Med's research and development efforts with respect to its Grass Technologies product line.

19. At the time he joined Astro-Med, and as a condition of his employment, Plant signed an Employee Agreement (the "Agreement") with the Company that contained, in pertinent part, a non-competition provision:

> 4. I recognize that the Company sells its products throughout North America and Europe; as such, upon termination of my employment at the Company, for whatever reason, I shall not directly or indirectly enter into or engage in a business that competes with the Company, in a territory consisting of North America, and Europe, either as an individual, partner, joint venturer, employee, agent or salesman for any person,

> or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter.

(A true copy of the Agreement is attached hereto as Exhibit A.)

20. Plant also agreed not to disclose Astro-Med's confidential information as detailed in the Agreement:

> 2. That any inventions, discoveries or improvements in any technical data, trade secrets, information or know-how, made, discovered or conceived or acquired by me during the period of my employment, whether patented or not, are to and remain the property of the Company; that, without the written authorization of the Company, I will neither use nor disclose to any person other than my superiors in the Company, any information, trade secrets, technical data or know-how relating to the Company's products, processes, methods, equipment and business practices, which I have acquired during my employment.

21. The Agreement also contains a choice of law and forum selection clause, which states that the Agreement shall be governed by the laws of the State of Rhode Island, and in which Plant consented to jurisdiction in Rhode Island for any dispute arising out of the Agreement. (Agreement at ¶ 7).

**Plant Joins Nihon Kohden**

22. In early November, 2006, Astro-Med learned that Plant took a position with Nihon Kohden North America, of Foothill Ranch, California – a subsidiary of Nihon Kohden of Japan. Nihon Kohden is an international company that manufactures and sells life sciences equipment similar to that sold by Astro-Med.

23. Nihon Kohden directly competes with Astro-Med throughout the United States and internationally.

24. Astro-Med has an advantage over Nihon Kohden by reason of its confidential pricing, marketing strategies and research and development efforts. This highly confidential

information is extremely valuable to Astro-Med and critical to its business. It would be of significant value to Nihon Kohden.

25. On or around October 1, 2006, Plant began working for Nihon Kohden as a sales person in the same region of the United States for which he previously worked for Astro-Med, in direct violation of his Agreement. In that capacity, he is in a position to improperly solicit Astro-Med's customers in an effort to divert their business to Nihon Kohden. Astro-Med has reason to believe that Plant has taken his customer contact lists, handed Nihon Kohden literature to a prospect that Plant was developing for Astro-Med, and has since contacted Astro-Med customers and prospects based on information he learned from his employment with Astro-Med.

26. Prior to hiring Plant, Nihon Kohden knew that Plant was subject to the Employment Agreement which prohibited Plant from working for a competitor.

27. Nihon Kohden knew or should have known that Plant had received trade secrets and confidential business information from Astro-Med, and that employing Plant would give Nihon Kohden an unfair advantage over Astro-Med, and constitute actual or threatened misappropriation of Astro-Med's trade secrets.

28. Nihon Kohden knew or should have known that Plant had access to Astro-Med's customer databases, and that employing Plant would allow Nihon Kohden to divert actual and prospective business from Astro-Med to Nihon Kohden.

29. Nihon Kohden has violated R.I.Gen.Laws §§ 6-41-1, *et seq* in that it has, upon information and belief, the ability to gain wrongful access to, disclose or use Astro-Med's trade secrets and confidential information in violation of Rhode Island law.

30. Upon information and belief, Plant has knowingly, willfully and maliciously misappropriated and used Astro-Med's trade secrets and other confidential business information.

31. Upon information and belief, Plant has caused and will continue to cause Astro-Med irreparable damage through any further communications or use of Astro-Med's trade secrets and other confidential business information, his employment with Nihon Kohden, and his intentional interference and attempted interference with Astro-Med's customers, prospects, business, trade and patronage.

32. Plant has violated R.I.Gen.Laws §§ 6-41-1, *et seq* in that he has, upon information and belief, disclosed or used Astro-Med's trade secrets and confidential information in violation of Rhode Island law and the Agreement.

33. Astro-Med has been damaged thereby as a direct and proximate result of Plant's conduct.

34. Astro-Med has no adequate remedy at law.

**COUNT I**
**(Breach of Contract - Plant)**

35. Astro-Med repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

36. Astro-Med and Plant are parties to the Agreement in which Plant agreed not to disclose confidential information obtained during his employment and not to work for a competitor for one year after the termination of his employment with Astro-Med.

37. Plant signed the Agreement as a condition of his employment.

38. Plant breached the Agreement by working for a competitor and using confidential information he obtained through his employment at Astro-Med on behalf of a competitor.

39. Astro-Med has suffered irreparable harm as a result of Plant's breach.

**COUNT II**
**(Misappropriation of Trade Secrets and Confidential Business Information - Plant)**

40. Astro-Med repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41. While employed at Astro-Med, Plant received trade secrets and other confidential marketing, pricing, product and customer information.

42. Astro-Med maintains the confidentiality of this information, and requires its employees to sign agreements that prohibit disclosure of this information.

43. Plant agreed not to disclose Astro-Med's trade secrets and other confidential information he received from Astro-Med to anyone upon termination of his employment.

44. Upon information and belief, Plant is using Astro-Med's trade secrets and other confidential information to give a competitive advantage to his new employer, a direct competitor of Astro-Med.

45. Upon information and belief, Plant did in fact use Astro-Med's trade secrets and other confidential information to contact business prospects developed during his employment at Astro-Med, and continues to use confidential customer lists to contact clients of Astro-Med on behalf of a competitor.

46. Plant's actual and threatened misappropriation of Astro-Med's trade secrets and other confidential and sensitive business information violates the Agreement and R.I. Gen. Laws § 6-41-1 *et seq*.

47. Astro-Med has no adequate remedy of law.

**COUNT III**
**(Unfair Competition - Plant)**

48. Astro-Med repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49. While employed at Astro-Med, Plant received confidential customer information.

50. Astro-Med's research and development, customer and pricing information was developed through its own intensive efforts, Astro-Med maintains the confidentiality of this information, and the information as developed by Astro-Med is not widely available or capable of development through independent means.

51. Upon information and belief, Plant is misusing and/or is in a position to misappropriate Astro-Med's trade secrets and other confidential information to give a competitive advantage to his new employer, a direct competitor of Astro-Med.

52. Plant's conduct constitutes common law unfair competition.

**COUNT IV**
**(Interference with a Contractual Relationship - Nihon Kohden)**

53. Astro-Med repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

54. There was an Employment Agreement between Plant and Astro-Med that was supported by valid consideration.

55. Plant advised Nihon Kohden that he is a party to the Agreement that prohibited Plant from working for a competitor and disclosing Astro-Med's trade secrets and confidential business information at the time it hired Plant.

56. By offering employment to Plant, Nihon Kohden intentionally induced Plant to breach his Agreement with Astro-Med.

57. As a result of Plant's breach, Astro-Med has suffered and will suffer loss of sales, loss of potential sales, loss of good will, disclosure of its trade secrets, other monetary damages and irreparable harm.

**COUNT V**
**(Misappropriation of Trade Secrets and Confidential Business Information - Nihon Kohden)**

58. Astro-Med repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59. While employed at Astro-Med, Plant received trade secrets and other confidential marketing, pricing, product and customer information.

60. Nihon Kohden knew or should have known that Plant had an obligation under the Agreement not to disclose of Astro-Med's trade secrets and confidential business information at the time it hired Plant.

61. By hiring Plant in spite of this knowledge, Nihon Kohden has misappropriated and/or threatens to misappropriate Astro-Med's trade secrets and other confidential business information in violation of R.I. Gen. Laws § 6-41-1 *et seq*.

62. Astro-Med will suffer irreparable harm as the result of the actual or threatened misappropriation of Astro-Med's trade secrets and confidential business information by Nihon Kohden.

63. Astro-Med has no adequate remedy at law.

**WHEREFORE**, Astro-Med, Inc. requests that this Court:

A. Preliminarily and permanently enjoin Plant from working for any Astro-Med competitor, including Nihon Kohden or any of Nihon Kohden's affiliates or subsidiaries, for a period of one year from the date of compliance with the Agreement.

B. Preliminarily and permanently enjoin Plant and others acting for or on his behalf or in concert with him from disclosing and using Astro-Med's trade secrets and confidential information, including pricing, research and development and customer information.

C. Preliminarily and permanently enjoin Nihon Kohden from employing Plant in violation of his Agreement with Astro-Med.

D. Preliminarily and permanently enjoin Nihon Kohden from acquiring, disclosing and using Astro-Med's trade secrets and confidential information

E. Award Astro-Med its compensatory damages against defendants.

F. Award all costs and attorneys' fees incurred by Astro-Med in enforcing Plant's obligations under the Agreement and pursuant to R.I. Gen. Laws §§ 9-1-45 and 6-41-4.

G. Grant Astro-Med all other relief the Court deems necessary and just.

ASTRO-MED, INC.

By its Attorneys,

______________________________

Craig M. Scott, Esq. (#4237)
Robert J. O'Keefe, Esq. (#6750)
Duffy, Sweeney & Scott, LTD
One Turks Head Place, Ste 1200
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)
cscott@duffysweeney.com

Dated: December ____, 2006

**CERTIFICATE OF SERVICE** **CERTIFICATE OF SERVICE**

I hereby certify that the within ***First Amended Complaint*** was filed through the ECF system on the ____ day of __________________, and will be sent electronically to the counsel-named below who is a registered participant identified on the Notice of Electronic Filing:

Michael A. Gamboli, Esq.
Lisa M. Martinelli
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Craig M. Scott

# EXHIBIT A

# ASTRO-MED, INC.

## EMPLOYEE AGREEMENT

I am now or am about to be employed by Astro-Med, Inc. or one of its divisions or subsidiaries, hereafter called the Company, and in connection with such employment, I am, may, or will be engaged in work relating to the Company's business, involving design, development or manufacture of products for the Company. In consideration of my employment and/or continued employment at the time of this agreement and from month to month thereafter and the compensation to be paid to me for my services, I hereby agree:

1. I will, without further compensation from the Company, and at all times during my employment and for one year thereafter, disclose promptly and assign to the Company any and all designs, inventions, discoveries or improvements which I may discover or conceive, either solely or jointly with others, which relate to the Company's business or result from or are suggested by any work I may do for the Company wherever the same may be done; disclose promptly any technical data, know-how or information which I may acquire with respect to any matters relating to the Company's business; assist the Company at the Company's expense in obtaining for its benefit patents on all such inventions, discoveries or improvements in the United States and foreign countries; testify on its behalf with respect thereto; and execute all proper papers for use in applying for, assigning, obtaining and maintaining such patents, and in maintaining or enforcing the rights of the Company thereunder.

2. That any inventions, discoveries or improvements and any technical data, trade secrets, (including, but not limited to, customer lists), information or know-how, made, discovered or conceived or acquired by me during the period of my employment, whether patentable, patented or not, are to be and remain the property of the Company; that, without the written authorization of the Company, I will neither use nor disclose to any person other than my superiors in the Company, any information, trade secrets, technical data or know-how relating to the Company's products, processes, methods, equipment and business practices, which I have acquired during my employment.

3. That the foregoing obligations of Paragraph No. 2 shall survive the termination of my employment and shall remain effective in perpetuity; that I will perform all necessary acts to make the agreement effective; that on leaving the employ of the Company I will not take with me, without its consent, any drawings, blueprints, copies, transcripts or other notes, records or material relating to the Company's business, and that I will promptly return all Company records, materials, documents and any other Company property in my possession or under my control.

4. I recognize that the Company sells its products throughout North America and Europe; as such, upon termination of my employment at the Company, for whatever reason, I shall not directly or indirectly enter into or engage in a business that competes with the Company, in a territory consisting of North America, and Europe, either as an individual, partner, joint venturer, employee, agent or salesman for any person, or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter.

5. A violation of the terms of this Agreement will cause the Company to suffer irreparable harm unless enjoined. In the event that I breach this Agreement, I agree to pay all legal and other expenses reasonably incurred by the Company in connection with the enforcement of my obligations or the Company's rights under the Agreement.

6. That any and all property provided by the Company to me in connection with my employment (including, without limitation computers, cell phones, pagers and any other business equipment) is and shall continue to be the property of the Company. Upon termination of my employment for any reason, I shall promptly return any and all such property to the Company in good working condition.

7. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Rhode Island. This Agreement is made and entered into in Rhode Island and I consent to the jurisdiction of a competent court in Rhode Island to hear any dispute arising out of this Agreement. By my execution and delivery of this amendment, I irrevocably submit to and accept the exclusive jurisdiction of each of such courts and waive any objection (including any objection to venue or any objection based upon the grounds of forum non conveniens) which might be asserted against the bringing of any such action, suit or other legal proceeding in such courts.

8. To the greatest extent permitted by applicable law, I agree that the Company shall have the absolute right to setoff any of its payment obligations to me for any claims arising out of a breach of this Agreement. The foregoing shall not limit any equitable and legal remedies of the Company.

9. During the course of my employment with the Company, I will not conduct any business activities other than that of the Company, which could interfere in the execution of these duties and responsibilities.

10. I understand that nothing set forth in this Agreement is intended to, or does, create a contract of employment between the Company and me. I understand further that my employment relationship with the Company continues to be "at will," meaning that either the Company or I can discontinue the employment relationship at any time, with or without cause.

11. This Agreement shall be binding upon my heirs, administrators and assigns and shall inure to the benefit of the Company, its successors and assigns.

12. If any provision of this Agreement is declared unenforceable, in whole or in part, by a court or agency of competent jurisdiction, such declaration shall in no way affect the validity or enforceability of the remaining provisions of this Agreement.

| WITNESS: | EMPLOYEE: | DATE: |
|---|---|---|
| [signature] | [signature] | 10/16/02 |