UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., Plaintiff, | : | |
| vs. | : | C.A. No. 06-533 ML |
| KEVIN PLANT, Defendant. | : | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

## 1. Astro-Med Met its Burden of Persuasion for the Issuance of a Preliminary Injunction.

### A. Astro-Med Made Out its Prima Facie Case

A preliminary injunction is appropriate if the requesting party made out its *prima facie* case. *See J.B. Prata, Ltd. v. Bichay*, 468 A.2d 266, 267 (R.I. 1983).[1] In *J.B. Prata*, for example, the Rhode Island Supreme Court affirmed the grant of a preliminary injunction enjoining former employees from competing against their former employer where the plaintiff established that the defendants: acquired certain confidential information as a result of their employment; went to work for a competitor; and were in a position where use of the information they acquired was likely to cause economic harm to the plaintiff. *Id. at 268*. As this evidence was unrebutted by the defendants, the court found that the plaintiff had established its prima facie case, and affirmed the preliminary injunction. *Id.*

Here, Astro-Med, Inc. ("Astro-Med") elicited testimony from four witnesses and offered 31 full exhibits. In contrast, Kevin Plant ("Plant") elected not to present a case at the hearing.

[1] *Prima facie* evidence is the quantum of evidence that, if unrebutted, is sufficient to satisfy the burden of proof on a particular issue. *Id.*

*Cf. K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972) (reversing grant of preliminary injunction where moving party only presented affidavits in support of its motion). Rather, Plant's opposition memorandum ("Opp. Memo") baselessly attacks the state of the record, raises untimely and improper evidentiary objections and baldly accuses Astro-Med of distorting testimony that Plant did not challenge at the hearing.

Plant now offers numerous foundation and relevancy objections in response to Astro-Med's proposed findings of fact.[2] (*See* Defendant's Response to Plaintiff's Proposed Findings of Fact.) These objections to admitted evidence are untimely. Plant's other objections misstate the evidence or fail to address the substance of Astro-Med's proposed finding: No. 8 (inserting the term "Product Specialist" where it does not appear in the Agreement); No. 11 (ignoring the testimony of Everett Pizzuti that sales personnel also signed Employee Agreements); No. 17 (ignoring testimony about the secret ADAM software development project that Plant was involved with and the testimony of Marc Paliotta that several of the products that Plant was introduced to were not yet released to the public); No. 26 (ignoring evidence that Plant attended sales training programs at which confidential and proprietary information was exchanged); and Nos. 24 -26 (falsely stating that all Astro-Med customer information is over five years old).

This pattern of distorting the evidence continues in Plant's Additional Proposed Findings of Fact, specifically No. 51, in which Plant states that he had only limited traveling duties as a Product Specialist, traveling only within New England and once to Florida. Though Marc Paliotta could not recall on cross-examination if Plant ever made a trip to Montana between 2002 and 2004, Plant's own testimony demonstrates that he did travel throughout the United States to

---

[2] *See, e.g.,* Plant's Response to Proposed Findings Nos. 9 (irrelevant and speculative); 14 (irrelevant); 29 (irrelevant); 30 (irrelevant); 35 (speculative, lacks foundation); 40 (argumentative and vague); 41 (irrelevant); 42 (legal conclusion); 45 (irrelevant); 46 (overly broad and irrelevant); and 49 (speculative and lacks foundation).

attend installations at customer sites and sales calls. In fact, Astro-Med encouraged Plant, as part of his training and development, to take more trips to customer sites, which is reflected in Plant's six month and annual reviews. *See* Exs. 7 and 8.[3]

Notwithstanding Plant's biased recollection of the hearing, Plant did not dispute the following:

- Plant sold home organizational products before joining Astro-Med. Proposed Finding No. 2. Before he joined Astro-Med, Plant had no prior experience with the sale of electroencephalographs (EEG), polysomnographs (PSG), long term monitoring for epilepsy (LTM) equipment or other capital medical equipment. Proposed Findings Nos. 3, 21.

- Plant signed an Employee Agreement on his first day of work at Astro-Med. The Agreement contained non-compete and non-disclosure clauses. Proposed Findings Nos. 7, 12. The Employee Agreement states that employment and/or continued employment is provided as consideration for the Agreement. (Ex. 4, Introductory Paragraph.)

- Astro-Med's Grass® product line is sold throughout the United States and Europe, an area co-extensive with the scope of the non-compete provision of the Agreement. Proposed Finding No. 16.

- A small percentage of Plant's customer contact information for his region was generated through "cold calls." Proposed Finding No. 25.[4] Astro-Med paid for Plant's relocation expenses to Florida and his continuing education towards a college degree. Proposed Finding No. 23. For the first nine months of 2006, Astro-Med paid Plant $123,000, three times the salary of his last position before joining Astro-Med. Proposed Findings Nos. 2, 36.

- When he submitted his resignation to Astro-Med, Plant denied that he was leaving Astro-Med to work for a competitor. Proposed Finding No. 38. Everett Pizzuti reminded Plant of his obligations under the Employee Agreement, and Plant responded that he had consulted an attorney and was aware of his obligations. Proposed Finding No. 39.

[3] It is noteworthy that Plant's counsel never asked him at the hearing whether his travel was limited to New England and Florida. Post-hearing, Plant asserts a proposition he knows to be untrue.

[4] In his Affidavit, in contrast, Plant falsely avers that he found all of the customers he interacted with through "cold calls." (Ex. 24, ¶ 5.)

Moreover, Astro-Med offered credible evidence that it provided Plant with specialized training as to the sale and marketing of capital medical equipment, particularly EEG, PSG and LTM equipment, about which Plant had no previous experience. It offered proof of the training programs that Plant attended as a Product Specialist and District Sales Manager. (*See* Exs. 14, 15A-N, 16, 17.) Astro-Med presented evidence as to the confidential nature of the information Plant received, such as "Active LTM and EEG Research and Development Projects" (Ex. 15N), and products not yet released for sale. Astro-Med demonstrated Plant's active participation in customer and competitor analyses to develop competitive pricing. (Exs. 19, 20.) Astro-Med also established the specialized nature of the EEG, PSG and LTM market, and the need for protection of its proprietary and confidential information. (Pizzuti Test., Mancini Test.) Though Plant today disputes the confidential and proprietary nature of this information, he offered no evidence *at the hearing* to rebut Astro-Med's evidence. As a result, Astro-Med presented a *prima facie* case in support of its motion for a preliminary injunction. *See J.B. Prata*, 468 A.2d at 267.

B. Astro-Med is Entitled to Enforcement of the Agreement as a Matter of Law.

Credible evidence established that Plant received specialized training on products that he had no exposure to before joining Astro-Med. (Plant Test.; Paliotta Test.; *see also Dial Media, Inc. v. Schiff*, 612 F. Supp. 1483, 1489 (D.R.I. 1985).) The Employee Agreement is designed to prevent Plant from using the specialized training imparted by Astro-Med with respect to EEG, PSG and LTM equipment for the benefit of a competitor like Nihon Kohden. (Pizzuti Test.; *see Dial Media*, 612 F. Supp. at 1489.) Similarly, the non-disclosure provision reasonably prevents Plant from revealing confidential information to a competitor. (Pizzuti Test.; *see Nestle Food Co. v. Miller*, 836 F. Supp. 69, 77 (D.R.I. 1993).)

Moreover, Astro-Med has demonstrated a legitimate interest in protecting its product development information, customer lists, confidential pricing strategy,[5] and the good will established with its customers. *See Nestle Food Co.*, 836 F. Supp. at 74; *Durapin, Inc. v. Am. Prods, Inc.*, 559 A.2d 1051, 1053 (R.I. 1989). In response, Plant creates a false dilemma by claiming that Astro-Med is seeking to be free from competition and to prevent Plant from earning a living as a salesperson. (Opp. Memo., at 1.) Astro-Med seeks no such thing. Plant is free to sell capital medical equipment, and even to do so for Nihon Kohden in Florida, but he is barred by the Agreement he signed from selling EEG, PSG and LTM equipment for a direct competitor after receiving specialized training and confidential information from Astro-Med.

The evidence also establishes that the scope of the non-compete provision is reasonable to protect Astro-Med's legitimate interests. The Grass® product line is sold throughout the United States and Europe, and Nihon Kohden competes in those markets. As a Product Specialist, Plant traveled to customer sites around the country to attend product installations and sales calls. In addition, the non-compete provision of Plant's Agreement prevents him from using Astro-Med's confidential information to compete unfairly against Astro-Med in the United States. (Pizzuti Test.)

---

[5] Although Plant disputes here that Astro-Med imparted confidential information to him, in his companion Motion for Reconsideration of the Court's Interim Injunction Order, however, Plant credits the testimony of Astro-Med's witnesses as to the confidential and proprietary nature of its pricing strategies. (*See* Memorandum of Law in Support of Defendant Kevin Plant's Motion for Reconsideration of the Court's Interim Injunction Order, p. 3 ("Astro-Med's witnesses testified that the discounted prices Astro-Med provided to its customers constituted a 'protectable interest,' because such information was confidential and proprietary").) He cannot have it both ways.

**2. Astro-Med's Promotion of Plant Does Not Invalidate the Agreement**

Defendant relies on *AFC Cable Sys. v. Clisham*, 62 F. Supp. 2d 167 (D. Mass. 1999) for the proposition that a change in an employment relationship invalidates a non-compete agreement. *AFC Cable Systems* does not assist Plant for several reasons.

In *AFC Cable System*, the defendant employee (Clisham) held separate positions with AFC, leaving in the interim to pursue another career. *AFC Cable Sys.*, 62 F. Supp. 2d at 168. He signed separate non-compete agreements for each period of employment. Id. Clisham later returned to AFC for a third stint, this time as a contract employee, and signed a new non-compete agreement. The agreement was specific to the position for which Clisham contracted. *Id.* When Clisham later became a permanent employee in a new position, AFC made "repeated efforts to have Clisham sign a new non-compete agreement," which he refused to do. *Id.* at 170, 173. By its conduct, AFC did not consider the prior employment agreement still to be in effect. *Id.* at 173. The court applied Massachusetts law[6] in holding that the change in the employment relationship and AFC's failure to obtain a new employment agreement invalidated the prior employment agreements. *Id.*

Unlike the defendant in *AFC Cable Systems*, Plant's obligations under the Agreement continued despite any change in job duties, and the Agreement is to be interpreted under Rhode Island law. (Ex. 4, Introductory Paragraph, ¶ 7.) The Agreement states that Plant's "employment and/or continued employment" is provided in consideration for the Agreement. *See Nestle Food Co.*, 836 F. Supp. at 77 (finding that continuation of employment constitutes valid consideration for an employment agreement). Here, Plant signed the Agreement as a

[6] The court refused to consider cases from other jurisdictions proffered by the plaintiff because the agreement stated that it was to be interpreted under Massachusetts law. *See AFC Cable Sys.*, 62 F. Supp. 2d at 171 n.6.

condition of his employment and in consideration of his continued employment. (Ex. 4, Introductory Paragraph.) Contrary to Plant's assertion, the Agreement is not specific to a Product Specialist.[7] Plant's status as a permanent employee of Astro-Med did not change when he was promoted from Product Specialist to District Sales Manager, and Astro-Med consistently maintained that the Agreement was in full effect for the entirety of Plant's employment. In fact, Plant admitted that he never advised Astro-Med that the Agreement was unenforceable, and he lied when asked by his immediate superior, Marco Mancini, if he was going to work for a competitor. (Mancini Test.; Proposed Finding No. 38.) Plant was reminded that he was subject to the Agreement when he left Astro-Med. (Ex. 12.) In response, Plant acknowledged that he was aware of the Agreement and his obligations under it. (Ex. 13.) The Agreement is valid and enforceable.

## CONCLUSION

For all the foregoing reasons, and based on the evidence presented at the preliminary injunction hearing and the arguments contained in Astro-Med's memoranda, Astro-Med respectfully requests that this Court grant its Motion for a Preliminary Injunction pursuant to the proposed form of order attached hereto as Exhibit A.

[7] The Agreement provides, in part: "In consideration of my employment and/or continued employment at the time of this agreement and from month to month thereafter and the compensation to be paid to me for my services, I hereby agree:..." (Ex. 4, at p. 1.)

Respectfully submitted,

ASTRO-MED, INC.

/s/ Craig M. Scott

Craig M. Scott, Esq. (# 4237)
Robert J. O'Keefe, Esq. (#6750)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
cscott@duffysweeney.com

January 18, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within ***Plaintiff's Reply Memorandum in Support of Its Motion for a Preliminary Injunction*** was filed through the ECF system on the 18th day of January, 2007, and will be sent electronically to counsel named below who are registered participants identified on the Notice of Electronic Filing:

Michael A. Gamboli, Esq.
Lisa M. Martinelli
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Craig M. Scott