# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASTRO-MED, INC.,<br><br>Plaintiff,<br>v.<br><br>KEVIN PLANT; NIHON KOHDEN AMERICA, INC.<br><br>Defendants. | C.A. No. 06-533-ML |

## DEFENDANT KEVIN PLANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLARIFICATION OF FEBRUARY 16 ORDER

Defendant Kevin Plant, by and through his counsel, hereby submits the following memorandum in support of his Motion for Clarification of the Court's February 16, 2007 Order.

## I. INTRODUCTION

Plaintiff Astro-Med, Inc. alleges that defendant Kevin Plant, a former employee of Plaintiff, breached a non-competition agreement when he left Plaintiff's employ. The scope and enforceability of Plaintiff's non-compete agreement is disputed.[1] Mr. Plant is working for his current employer pursuant to the instructions of this Court, which on February 16, 2007, issued its Modified Preliminary Injunction Order (the "2/16 Order").[2] Mr. Plant seeks clarification of certain aspects of the 2/16 Order, to ensure that all parties' interpretation and implementation of the 2/16 Order fully and accurately conforms to the Court's ruling.

---

[1] Mr. Plant contends, among other things, that the non-competition provision at issue, which purports to restrict Mr. Plant's ability to work for any of Plaintiff's competitors in all of North America and Europe, is overly broad and unduly restrictive in its scope.

[2] A copy of the Order is attached hereto as Exhibit A

## II. MR. PLANT REQUESTS CLARIFICATION OF PARAGRAPH 1 TO THE 2/16 ORDER

### A. The 2/16 Order Could Be Misinterpreted As A Nationwide Restriction On Mr. Plant's Sales Efforts

Mr. Plant's request for clarification of the 2/16 Order stems from the fact that the 2/16 Order, as currently worded, is subject to misinterpretation or distortion contrary to the Court's previous rulings and statements in chamber conferences. For example, at the February 5, 2007 hearing, the Court made it clear that its ruling as to *where* Mr. Plant may or may not sell certain types of medical equipment (the 2/16 Order defines "Medical Equipment" as electroencephalograph (EEG), polysomnograph (PSG) and long-term monitoring for epilepsy (LTM) equipment) is applicable to his sales efforts within the State of Florida only. Unfortunately, the 2/16 Order, as currently worded, could be misinterpreted or distorted as imposing a *nationwide* restriction on Mr. Plant's sales efforts, contrary to the Court's actual ruling.

Throughout this action, the Court has made it clear that Plaintiff's non-compete provision is overly broad in its geographic scope because it purports to encompass *all* of North America and all of Europe. In fact, in its early settlement efforts, the Court encouraged the parties to work out a settlement that would limit the scope of Plaintiff's non-competition restriction to within the State of Florida, and would not prohibit Mr. Plant's ability to work outside of Florida. This Court has neither expressed nor indicated an intention to prohibit Mr. Plant from working in the entire United States, the entire continent of North America, or all of Europe. Such a nationwide restriction is more restrictive than is necessary to safeguard Plaintiff's alleged protectable interests and would impose undue hardship on Mr. Plant. See Dial Media v. Schiff, 612 F. Supp. 1483, 1488 (D.R.I. 1985). (If it had, the Court would have simply entered an order barring Mr. Plant from work in the area of medical monitoring equipment sales altogether, throughout the remainder of 2007; it did not do so.)

Instead, the Court properly ruled that Mr. Plant could resume working in sales of medical monitoring equipment, and only delineated restrictions applicable to Mr. Plant's work *within the State of Florida*. The Court's, in the 2/16 Order – cognizant of the fact that Mr. Plant's former work as a salesperson for Plaintiff was limited to sales efforts within the State of Florida – did not impose restrictions on Mr. Plant's ability to transact sales outside the State of Florida, to customers and potential customers located in other states. Because Plaintiff, a third party, or another court could misinterpret or misapply the 2/16 Order in a manner contrary to this Court's actual ruling, Mr. Plant requests clarification of the 2/16 Order to confirm that he is not subject to restrictions of any kind in any state other than Florida, and that he may transact sales of "Medical Equipment" (and any other products or equipment) to any customers of his current employer or to any potential new customers, so long as his sales and sales efforts are directed at customers or potential customers who are located outside the State of Florida.

**B. The Astro-Med Customer List Contains The Names Of 350 Businesses And Fails To Comply With The 2/16 Order**

In addition to Mr. Plant's concern over possible misinterpretation or distortion of the 2/16 Order, Plaintiff and Mr. Plant dispute Plaintiff's obligations under the 2/16 Order. Paragraph 1 of the 2/16 Order, requires Plaintiff to provide Mr. Plant's counsel with a list setting forth the names of "Astro-Med customers in Florida and prospective Astro-Med customers located in the state of Florida that were listed on any 'lead sheet' given to Mr. Plant within 90 days before his departure from Astro-Med." But Plaintiff opted to overreach, including on its list nearly 350 businesses, the vast majority of which Mr. Plant neither contacted, transacted business with, nor received information about, while a salesperson for Plaintiff.[3] Indeed, during his entire tenure as a salesperson for Plaintiff, Mr. Plant only sold or attempted to sell Medical Equipment[4] to only *one-tenth*

[3] Plaintiff's list is submitted under seal as Exhibit B.

[4] "Medical Equipment" is defined in Paragraph 1 of the Order as EEG, PSG and LTM equipment and related products.

of the businesses on Plaintiff's list, which even includes the names of at least 20 businesses that (1) are current customers of Medical Equipment of only Mr. Plant's current employer, (2) are <u>not</u> Medical Equipment customers of Plaintiff, and (3) were not listed on any "lead sheet" given to Mr. Plant within 90 days of his departure from Plaintiff.[5] Plaintiff's overbroad and overreaching list also includes companies that are entirely *unrelated* to the medical field (*e.g.*, a Video Services Company) and companies that may not be in operation (or may be nonexistent).[6]

On February 28, 2007, Mr. Plant's counsel, in an effort to resolve this matter informally, sent a letter to Plaintiff's counsel requesting clarification and revision of Plaintiff's list to comply with the Court's February 16 ruling.[7] Defendant Plant pointed out Plaintiff's improper inclusion of non-medical business entities (entities perhaps related to Plaintiff's other, non-medical equipment divisions[8]), and Plaintiff's failure to provide factual support for its claim that Mr. Plant had contact with (or was provided information about) the entities listed, as the Court had instructed. Defendant's February 28 letter specifically requested that Plaintiff submit a revised list limited to the names of businesses (i) that Mr. Plant had actually contacted while employed by Plaintiff; or (ii) that were listed on "lead sheets" Plaintiff had provided to Mr. Plant within 90 days of his departure from Plaintiff's employ.[9]

Plaintiff's counsel rebuffed Mr. Plant's request for clarification, asserting the following:

---

[5] Affidavit of Kevin Plant, ¶ 2.

[6] The concurrently filed Affidavit of E.P. Michael Karcis identifies some of these businesses and the searches made regarding the businesses' names.

[7] A copy of the February 28 letter is attached hereto as Exhibit C. The letter also contains Mr. Plant's list of his current employer's customers who overlap those on Plaintiff's list, which was provided pursuant to the Order.

[8] Plaintiff has at least two other divisions – Quick Label Systems (selling digital color label printing systems, barcode printing systems, *etc.*) and Test and Measure Product Group (selling portable data acquisition recorders, telemetry recorder-workstations, *etc.*) See http://www.astro-med.com/.

[9] Plaintiff' witness, Marco Mancini, testified at the December 27-28, 2006 Preliminary Injunction hearing that lead sheets (such as Exhibit 9 submitted during the hearing) were not regularly given to Plaintiff's sale representatives and, when they were, Plaintiff gave the lead sheets to representatives when they first started working in one of Plaintiff's sales territories.

a. that the 2/16 Order prohibits Mr. Plant from contacting or transacting business with all Florida companies that have *ever* conducted business with Plaintiff, regardless of whether Mr. Plant had ever contacted or transacted business with the Florida company as a salesperson for Plaintiff;

b. that the 2/16 Order prohibits Mr. Plant from contacting any Florida company that has transacted business with Plaintiff at any time, whether or not Plaintiff's transaction with the Florida company occurred during the time Mr. Plant was employed by Plaintiff; and

c. that it is irrelevant whether Mr. Plant had any contact with the companies on Plaintiff's list.[10]

Plaintiff refused to amend its list, asserting that it had complied with "the spirit of the [2/16 Order]" – a self-serving conclusion truly shocking in its patent disregard of the February 16 ruling as to the content and scope of the list this Court instructed Plaintiff to prepare.

## III. PLAINTIFF'S REFUSAL TO COMPLY WITH THE 2/16 ORDER IS CONTEMPTUOUS

Failure to obey the terms of a preliminary injunction is contempt of court. *See* 18 USCS §§ 401-402. Moreover, a court may make a finding of contempt based on a party's violation of the spirit of the preliminary injunction order. Youakim v. McDonald, 71 F.3d 1274, 1283 (7th Cir. 1995)) (conduct violates an injunction if it "threatens the spirit if not the literal language of the earlier order"); John B. Stetson Co. v. Stephen L. Stetson Co., 128 F.2d 981, 983 (2d Cir. 1942) ("[i]n deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to

[10] A copy of Plaintiff's counsel letter dated March 9, 2007 is attached hereto as Exhibit D.

find a breach of the decree in a violation of the *spirit* of the injunction, even though its strict letter may not have been disregarded") (emphasis added).

Plaintiff violated the spirit of the 2/16 Order by submitting a list of companies that apparently includes every Florida company Plaintiff has ever transacted business with (including its non-Medical Equipment divisions), before, during, and after Mr. Plant's period of employment with Plaintiff. Such overreaching conduct shows that Plaintiff consciously avoided reviewing its database to determine which companies were properly within the scope of the Court's instruction defining businesses Plaintiff was to include on its list. Plaintiff admits its disregard of the spirit of the 2/16 Order when it states, "The [2/16 Order] does not ... limit [Plaintiff's] Customer List to those customers or prospective customers that Mr. Plant had contact with during his tenure as an Astro-Med sales representative in Florida."

As the court in Nestle Food Company v. Miller, 836 F. Supp. 69, 76 (D.R.I. 1993), made clear:

> "[I]nstead of going to the *extreme* of prohibiting its salesmen from working for a competitor for one year, a more effective, practical and fair way for Nestle to protect this customer base is to prohibit its former salesman from: 1) ever revealing or using any 'confidential information' learned while at Nestle, and 2) soliciting **the salesman's former customers** for the period of one year. This modified provision gives Nestle's new salesman a fair chance to maintain his predecessor's 'customer base' by preventing the former salesman from taking advantage of the special relationship the former salesman shares with Nestle customers, it protects

> Nestle's confidential information, and it gives the former Nestle salesman a chance to start fresh in a new company."

(Emphasis added.) Here, Plaintiff has sought to obtain, from the outset, an excessive and extreme outcome (*i.e.*, a prohibition on Mr. Plant from working for any of its competitors *anywhere* in North America or Europe), and it stubbornly continues to do so, ignoring the scope of the 2/16 Order, and its spirit and intent, by asserting that Mr. Plant is enjoined from contacting non-Medical Equipment companies, companies outside the State of Florida, and even companies Mr. Plant had no connection to, or information from Plaintiff about, while he was employed by Plaintiff. In so doing, Plaintiff has violated the 2/16 Order, the spirit of the 2/16 Order, or both.

## IV. CONCLUSION

The 2/16 Order limits, for the remainder of this year, Mr. Plant's ability to contact customers of Plaintiff *with whom he worked while employed with Plaintiff.* Plaintiff, apparently dissatisfied with the 2/16 Order, has mischaracterized the 2/16 Order as imposing a blanket prohibition on Mr. Plant, barring him from contacting any businesses with whom Plaintiff (including all of its divisions) has ever had contact with or done business with, including the years antedating Mr. Plant's employment as a sale representative. Plaintiff's misconduct, in submitting a non-compliant list and in refusing all requests to revise its list in accordance with the 2/16 Order and its spirit and intent, violates the 2/16 Order and amounts to contempt of court.

Accordingly, defendant Kevin Plant respectfully requests that this Court order Plaintiff to produce, within three business days, a new list that contains and is limited to (1) the names of Florida businesses that Mr. Plant contacted while he was employed as Plaintiff's Florida sales representative; (2) as to each such Florida business on the new list, the most recent date on which Mr. Plant contacted or sold Medical Equipment to that business on behalf of Plaintiff; and (3) the names of Florida businesses that were on "lead

sheets" given to Mr. Plant by Plaintiff during the last 90 days of Mr. Plant's employment with Plaintiff, including the date Plaintiff gave the "lead sheet" to Mr. Plant.

KEVIN PLANT
By His Attorneys,

/s/ /Bruce W. Gladstone
Bruce W. Gladstone (#2643)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
(401) 331-5700
FAX (401) 331-5787
bgladstone@cm-law.com

Date: March 27, 2007

Of Counsel:
E.P. Michael Karcis, Esq.
McLEAN & McLEAN LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405
(310) 450-9353
(310) 581-8006 FAX
michael@mcleanfirm.com

CERTIFICATION

The undersigned hereby certifies that on the 27th day of March, 2007, a copy of the foregoing Memorandum of Law in Support of Motion for Clarification of February 16 Order was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

| | |
|---|---|
| Craig M. Scott, Esq.<br>cscott@duffysweeney.com<br>Duffy Sweeney & Scott, Ltd.<br>One Turks Head Place, Suite 1200<br>Providence, RI 02903 | Robert J. O'Keefe, Esq.<br>rokeefe@duffysweeney.com<br>Duffy, Sweeney & Scott, Ltd.<br>One Turks Head Building, Suite 1200<br>Providence, RI 02903 |
| | |

/s/ Bruce W. Gladstone

G:\pec\PLANT, KEVIN\Memo in Support of Motion for Clarification.doc