UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., Plaintiff, | : | |
| vs. | : | C.A. No. 06-533 ML |
| KEVIN PLANT and NIHON KOHDEN AMERICA, INC., Defendant. | : | |

**PLAINTIFF ASTRO-MED, INC.'S OBJECTION TO DEFENDANT NIHON KOHDEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER**

Plaintiff, Astro-Med, Inc., ("Astro-Med") hereby objects to Defendant Nihon Kohden's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or in the Alternative to Transfer.

In support of its objection, Astro-Med submits the accompanying Memorandum of Law.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Robert M. Duffy

Robert M. Duffy, Esq. (#4428)
Craig M. Scott, Esq. (# 4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
rduffy@duffysweeney.com

May 9, 2007

# CERTIFICATE OF SERVICE

I hereby certify that the within ***Objection to Defendant Nihon Kohden's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or in the Alternative to Transfer*** was filed through the ECF system on the 9th day of May, 2007, and will be sent electronically to the counsel-named below who is a registered participant identified on the Notice of Electronic Filing:

Bruce W. Gladstone, Esq.
Cameron & Mittleman, LLP
56 Exchange Terrace
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Robert M. Duffy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., | : | |
| Plaintiff, | : | |
| vs. | : | C.A. No. 06-533 ML |
| | : | |
| KEVIN PLANT and NIHON KOHDEN | : | |
| AMERICA, INC., | : | |
| Defendants. | : | |

**PLAINTIFF, ASTRO-MED, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT NIHON KOHDEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER**

Plaintiff, Astro-Med, Inc. ("Astro-Med"), hereby submits its Memorandum in Opposition to Defendant, Nihon Kohden America, Inc.'s ("Nihon Kohden"), Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Dismiss for Improper Venue, or in the Alternative to Transfer For Improper Venue, or in the Alternative, to Transfer For Convenience.

Nihon Kohden is subject to specific personal jurisdiction in Rhode Island because it intentionally and tortiously interfered with a Rhode Island contract thereby gaining access to Rhode Island trade secrets and causing damage in Rhode Island. Moreover, Nihon Kohden is subject to general jurisdiction because it, *inter alia,* sells and services products in Rhode Island, directs advertising to customers and prospective customers in Rhode Island through trade journals and other media, and recently appeared at a two-day trade show held in Warwick, Rhode Island where it marketed its products and sponsored a Nihon Kohden booth. Rhode Island is the appropriate venue because Nihon Kohden is subject to personal jurisdiction, Astro-Med is entitled to its choice of forum, and none of the convenience factors warrant transfer to another jurisdiction.

# I. INTRODUCTION AND TRAVEL OF THE CASE[1]

After years of specialized training in Astro-Med's proprietary Grass Technologies product line, Defendant, Kevin Plant ("Plant"), breached his Employment Agreement (the "Agreement") with Astro-Med by joining its competitor, Nihon Kohden, on or around October 1, 2006. This Court entered into an Interim Injunction Order against Plant on December 28, 2006 after an evidentiary hearing on Astro-Med's Motion for a Preliminary Injunction, which enjoined Plant from engaging in sales activity on behalf of Nihon Kohden and from disclosing any proprietary and confidential information acquired by him during his employment at Astro-Med. The Court issued a Modified Interim Injunction Order on February 16, 2007. (A copy of the Court's February 16, 2007 Order is attached hereto as Exhibit A.)

Following the evidentiary hearing, Astro-Med filed its First Amended Complaint adding Nihon Kohden to this action. Nihon Kohden knew Plant was subject to the Agreement that prohibited him from working for a competitor and from disclosing Astro-Med's confidential information, and also knew that employing Plant would cause Plant to breach his Agreement. Nonetheless, Nihon Kohden hired Plant and set him to work in the same territory he had previously worked for Astro-Med selling competitive products. Nihon Kohden's tortious interference with this Agreement and misappropriation of Astro-Med's trade secrets form the basis of Astro-Med's claims against it.

[1] Astro-Med has noticed the deposition of Nihon Kohden for May 17, 2007 and there is presently pending a aotion before this Court to permit Astro-Med to supplement this Memorandum to the extent jurisdictional information is obtained from Nihon Kohden at deposition and prior to the hearing on Defendant's Motion to Dismiss . Astro-Med renews that request herein.

## II. FACTS[2]

### A. Astro-Med's Business and Trade Secrets

Astro-Med is a Rhode Island corporation with a principal place of business in West Warwick, Rhode Island. Astro-Med's Grass Technologies product group manufactures, sells and distributes instruments for sleep and neurological research and clinical applications of sleep science and brain wave recording and analysis. The life sciences industry is extremely competitive, and Astro-Med's customers, distribution, pricing and marketing information systems contribute to its position as a leading supplier of these products. Although the identity of some of its customers may be generally known in the industry, Astro-Med has developed proprietary customer databases through extensive research and marketing efforts. Astro-Med's financial arrangements with its sales people, its marketing strategy, and its pricing and cost structure are all highly confidential. (First Amended Complaint, ¶7.)

Astro-Med, through its Grass Technologies line, competes in a highly competitive, specialized market. The aggregate market size for neurological products is approximately $250 million in annual sales. In addition to Astro-Med and Nihon Kohden, approximately nine other companies compete in this market. (First Amended Complaint, ¶8.) Due to the intense competition, Astro-Med is continuously researching and developing new products and refining its existing products in this highly specialized marketplace. Product development information for the Grass Technologies line is proprietary business information. (First Amended Complaint, ¶9.)

[2] The clearly accepted rule in the First Circuit is that when a court makes a ruling on a motion to dismiss, it must accept the allegations of the complaint as true. *Thompson Trading, Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417, 421 (D.R.I. 1989). To the extent this Court is inclined to consider extra pleading material, Astro-Med relies on the affidavits and testimony attached hereto and referenced herein.

Astro-Med has developed customer databases over the course of several years through intensive and expensive efforts in marketing, advertising in trade journals, attending trade shows, mailings and Internet advertising. These databases are crucial and confidential assets of Astro-Med, which allows it to maintain a competitive advantage. (First Amended Complaint, ¶10.)

Astro-Med actively protects its trade secrets and other confidential information, including its product development information, marketing strategies, the details of its arrangements with its dealers and distributors, customer information, and pricing and cost policies. It does so by, among other things, requiring its key employees, as a condition of employment with Astro-Med, to execute an agreement not to compete with Astro-Med for a period of one year after employment termination and not to use or disclose confidential information or trade secrets of Astro-Med. (First Amended Complaint, ¶11.)

## B. Plant is Hired by Astro-Med and Signs the Employment Agreement

Kevin Plant applied for a Product Specialist position at Astro-Med in July 2002. He had no prior experience marketing or selling medical neurology equipment, including electroencephalographs (EEG), polysomnographs (PSG), or long-term monitoring for epilepsy (LTM) equipment. (First Amended Complaint, ¶15; December 27, 2006 Testimony of Kevin Plant ("Plant Test.") (relevant portions of which are attached as Exhibit B), 6:21-7:8; 8:9-25.) Plant was hired by Astro-Med in October 2002, at which time he signed the Agreement as a condition of his employment at Astro-Med. (First Amended Complaint, ¶19.) Plant signed the Agreement in advance of any salary from Astro-Med or any training in EEG, PSG, or LTM medical equipment. (Exhibit B at 13:21-14:16.) Astro-Med did not expose Plant to prospective customers, internal pricing, or research and development initiatives until after he signed the Agreement. *Id.*

Plant's Agreement states in pertinent part:

> 4. I recognize that the Company sells its products throughout North America and Europe; as such, upon termination of my employment at the Company, for whatever reason, I shall not directly or indirectly enter into or engage in a business that competes with the Company, in a territory consisting of North America, and Europe, either as an individual, partner, joint venturer, employee, agent or salesman for any person, or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter.

Agreement, ¶4 (attached hereto as Exhibit C). (First Amended Complaint, ¶19.)

Plant also agreed not to disclose Astro-Med's confidential information as detailed in the Agreement:

> 2. That any inventions, discoveries or improvements in any technical data, trade secrets, information or know-how, made, discovered or conceived or acquired by me during the period of my employment, whether patented or not, are to and remain the property of the Company; that, without the written authorization of the Company, I will neither use nor disclose to any person other than my superiors in the Company, any information, trade secrets, technical data or know-how relating to the Company's products, processes, methods, equipment and business practices, which I have acquired during my employment.

(Exhibit C, ¶2; First Amended Complaint, ¶20.)

Astro-Med invested heavily in Plant's training and development in the specialized field of capital medical equipment. It sent Plant on installations at customer sites throughout the United States. (Exhibit B, 21:15-22:24.) He traveled with technical support to learn the intricacies of Astro-Med's hardware and software packages. (Exhibit B, 21:15-20; 23:12-24.) He traveled with experienced sales representatives to learn and understand customer preferences and selling techniques. (Exhibit B, 22:13-24; 24:21-25:2.)

After approximately two years as a Product Specialist, Plant requested and received a promotion to District Sales Manager in the newly-vacant Southeastern territory, which at the time covered Florida, Georgia, South Carolina, Alabama and Tennessee. (Exhibit B, 30:4-21.) Astro-Med paid to relocate Plant to Florida. (First Amended Complaint, ¶17; Exhibit B, 30:22-24.)

As District Sales Manager and Product Specialist, Plant had access to and used Astro-Med's trade secrets, including confidential marketing, pricing, and customer databases. During his employment, Plant became intimately familiar with these customers and their preferences, as well as Astro-Med's pricing strategy and marketing techniques. Plant also had knowledge and insight as to Astro-Med's research and development efforts with respect to its Grass Technologies product line. (First Amended Complaint, ¶18.) During his four years at Astro-Med, Plant gained specialized, technical knowledge as to the marketing, development, pricing and selling of EEG's, PSG's and LTM equipment. (Exhibit B, 44:9-12.)

**C. Plant Defects to Nihon Kohden, Astro-Med's Direct Competitor**

Nihon Kohden directly competes with Astro-Med throughout the United States and internationally. (First Amended Complaint, ¶23.) Astro-Med has an advantage over Nihon Kohden by reason of its confidential pricing, marketing strategies, and research and development efforts. (First Amended Complaint, ¶24.) This highly confidential information is extremely valuable to Astro-Med and critical to its business. It would be of significant value to Nihon Kohden.

Unbeknownst to Astro-Med, Plant first met with Nihon Kohden in early September, 2006. (Exhibit B, 52:9-53:22.) At that time, Plant was aware of his Employment Agreement and consulted Nihon Kohden's lawyer regarding the restrictions contained therein. (Exhibit B.

50:14-23.) He advised Nihon Kohden's National Sales Manager of his Employment Agreement prior to this initial meeting. (Exhibit B, 53:9-14.) Nonetheless, Nihon Kohden made Plant an offer of employment with full knowledge of his Employment Agreement and the restrictions contained therein, including Plant's agreement not to compete with Astro-Med for one year. (Exhibit B, 53:15-22.)

On or around October 1, 2006, Plant began working for Nihon Kohden as a salesperson in the same region of the United States for which he previously worked for Astro-Med, in direct violation of his Agreement. (First Amended Complaint, ¶25.) He is now in a position to improperly solicit Astro-Med's customers and to divert their business to Nihon Kohden. *Id.* Astro-Med has reason to believe that Plant has taken his Astro-Med customer contact lists, handed Nihon Kohden literature to a prospect that Plant was developing for Astro-Med, and has since contacted Astro-Med customers and prospects based on information he learned from his employment with Astro-Med. *Id.*

Nihon Kohden knew or should have known that Plant had received trade secrets and confidential business information from Astro-Med, and that employing Plant would give Nihon Kohden an unfair advantage over Astro-Med, and constitute actual or threatened misappropriation of Astro-Med's trade secrets. (First Amended Complaint, ¶27.) Nihon Kohden knew or should have known that Plant had access to Astro-Med's customer databases, and that employing Plant would allow Nihon Kohden to divert actual and prospective business from Astro-Med to Nihon Kohden. (First Amended Complaint, ¶28.) By virtue of its tortious interference with the Agreement, Nihon Kohden has gained wrongful access to, and has or may disclose or use, Astro-Med's trade secrets and confidential information in violation of Rhode Island law. (First Amended Complaint, ¶29.)

Nihon Kohden also competes with Astro-Med for sales in Rhode Island. Not only has it sold its products here, it advertises in trade journals and periodicals directed to Rhode Island customers. (Deposition of Domenic Chillemi ("Chillemi Depo."), (relevant portions of which are attached hereto as Exhibit D) 24:12-25:20; 28:10-29:9; Statement of Elaine Dunn ("Dunn Stat.") at ¶5, (attached hereto as Exhibit E); Affidavit of Lou Gazzanigo ("Gazzanigo Aff.") at ¶3, (attached hereto as Exhibit F); Statement of Cameron Bishop ("Bishop Stat.") at ¶¶4-5, (attached hereto as Exhibit G.) Moreover, Nihon Kohden's agent attended the Northeast Sleep Society Conference on March 17-18, 2006 in Warwick, Rhode Island, at which he exhibited and marketed Nihon Kohden's products to customers in Rhode Island. (Exhibit F, at ¶4.)

Nihon Kohden has marketed and promoted its products in Rhode Island both specifically to physicians and generally to other users of its products. It has also been physically present in Rhode Island on numerous occasions, has directed its sales activity to Rhode Island and has attended trade shows in Rhode Island. Accordingly, its general contacts with Rhode Island are sufficiently systematic and continuous to permit the Court to exercise general jurisdiction over it.

## III. ARGUMENT

### A. Nihon Kohden is Subject to Personal Jurisdiction in Rhode Island

#### 1. Personal Jurisdiction is Properly Asserted Where Rhode Island's Long-Arm Statute and Due Process is Satisfied.

The United States Supreme Court has rejected any resort to talismanic jurisdictional formulas for resolving questions of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985). Instead, it has expressly stated that "the facts of each case must be weighed in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 485-86, *quoting Kulko v. California Superior Court*, 436 U.S. 84, 92 (1978). As Judge Selya succinctly stated "[d]etermining personal jurisdiction has always been

more an art than a science." *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 468, n.7 (1st Cir. 1994). Judge Selya quoted Justice Marshall as follows:

> Like any standard that requires a determination of 'reasonableness', the 'minimum' contacts test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. We recognize that this determination is one in which few answers will be written in 'black and white. The greys are dominant and even among them the shades are innumerable.' *Kulko*, 436 U.S. at 92 (citations omitted).

*Donatelli*, 893 F.2d at 472, n.7. In short, the jurisdictional inquiry is not a mechanical exercise and concepts of reasonableness must inform a properly performed minimum contacts analysis. *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Personal jurisdiction over Nihon Kohden is proper where the mandates of Rhode Island's long-arm statute are satisfied and hailing the defendant into court in the forum complies with the due process clause of the Fourteenth Amendment to the United States Constitution. *Levinger v. Matthew Stuart & Co.,* 676 F. Supp. 437, 439 (D.R.I. 1988). Since Rhode Island's long-arm statute reaches to the full extent allowable under the Fourteenth Amendment, it is only necessary to look to the due process requirements. *Id.*, citing *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 402, 252 A.2d 184, 186 (1969). Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporation that has certain minimum contacts with the forum state, such that maintenance of the suit does not violate traditional notions of fair play and substantial justice. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984).

In analyzing the jurisdictional question, the Court must differentiate between the concept of general jurisdiction, which calls "for an examination into whether a defendant has purposeful and systematic contacts with a forum state so as to justify the exercise of *in personam*

jurisdiction over him in *any* matter", *Thompson Trading,* 123 F.R.D. at 425, and specific jurisdiction which is "extremely dependent on the interrelationship that the contacts giving rise to *in personam* jurisdiction have with the activities giving rise to the cause of action." *Id.*

The Court must also distinguish between contract and tort claims. *Thompson Trading*, 123 F.R.D. at 426. In contract cases, "a court charged with determining the existence *vel non* of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or its breach." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 289 (1st Cir. 1999) (citations omitted). Because the elements differ in a tort case, however, "a court charged with determining the existence *vel non* of personal jurisdiction must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." *Id.*, citing *Nowak v. How Invs., Ltd.*, 94 F.3d 708, 715-16 (1st Cir. 1996); *Sawtelle v. Farrell,* 70 F.3d 1381, 1390 (1st Cir. 1995). At bottom, the minimum contacts analysis enunciated in *International Shoe Co. v. State of Washington,* and its progeny, in a tort action, begins with the question whether the cause of action sued upon is related or unrelated to the defendant's contact with the forum. *Thompson Trading*, 123 F.R.D. at 427.

The First Circuit follows a three-prong test to determine whether sufficient contacts exist to allow this Court to exercise specific personal jurisdiction. *Northeastern Land Servs., Ltd. v. Schulke*, 988 F. Supp. 54, 57 (D.R.I. 1997). "First, the claim underlying the litigation must directly arise out of, or relate to, defendant's forum-state activities. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the

exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." *Northeastern Land Servs, Ltd.*, 988 F.Supp. at 57, citing, *Nowak* 94 F.3d at 712-13 (citations omitted).

Astro-Med has satisfied all three prongs of the First Circuit test establishing specific personal jurisdiction. First, Astro-Med's claims against Nihon Kohden directly arise out of, or relate to, Nihon Kohden's forum state activities. Importantly, in the tort context, tortious activity need not take place in the forum state to establish jurisdiction. Where a non-resident directs its tortious actions at a resident of the forum, it can "be fairly inferred that they intended the brunt of the injury" to be felt in the forum state. *See Hugel v. McNell*, 886 F.2d 1, 5 (1st Cir. 1989). This Court, addressing this precise question has found that where a defendant tortiously interferes "with a Rhode Island corporation's business rights arising out of a Rhode Island contract, it [is] clearly foreseeable that such activity would have a direct effect in Rhode Island. Therefore, it is fair for this Court to exercise jurisdiction … " *Thompson Trading*, 123 F.R.D. at 428. *See also Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 143-44 (D.N.H. 1996) (it is not always necessary that defendant's conduct take place in the forum state; it may be sufficient if his tortious conduct elsewhere causes an effect in the forum). Thus, "the general rule is if defendant, through out-of-state conduct, intentionally causes a tortious injury in the forum, jurisdiction will lie for claims arising from that injury." *Id.* at 143, citing *Hugel,* 886 F.2d at 4 (1st Cir. 1989); *see also Rivera v. Bank One*, 145 F.R.D. 614 (D.P.R. 1993) (finding sufficient contacts where act of defendant outside the state caused a

tortious injury within the state). In short, to "be constitutionally significant, forum-state contacts need not involve physical presence." *Phillips Exeter Acad.*, 196 F.3d at 290, citing *Burger King*, 471 U.S. at 476.[3]

Two cases decided by this Court are on all fours with the instant case. In *Northeastern Land Services*, plaintiff, a Rhode Island company, brought suit against a former executive for interference with contractual relations and misappropriation of trade secrets. The defendant, a resident of Texas, sought dismissal for lack of personal jurisdiction. While the defendant did have contacts with Rhode Island that gave rise to the claimed injuries, the physical contacts with Rhode Island were not necessary to the finding that specific personal jurisdiction could be asserted against the defendant. The Court made clear that "[T]he consequences of such misdoings, even if effected exclusively from within Texas, would necessarily effect this forum." *Northeastern Land Servs.,* 988 F. Supp. at 59. Because the defendant's tortious activities, including interference with a contract and misappropriation of trade secrets, negatively impacted a Rhode Island company, the out-of-state defendant could be haled into a Rhode Island court to answer for his conduct. *Id.*

In *Thompson Trading*, this Court found specific personal jurisdiction over two foreign corporations alleged to have interfered with a Rhode Island contract and prospective business relations in Rhode Island. *See* 123 F.R.D. at 428. In doing so, the Court made clear that it was not important to answer the question where the "tort of wrongful interference with a business relationship occurs." *Id.* Whether the wrongful acts were committed in the state or committed

[3] As a result, the United States Supreme Court has found personal jurisdiction over a non-resident defendant where the only connection between a Texas company and a California resident was the mailing of the certificate of insurance from Texas to California (*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)); where the only general contact was selling a nationwide publication within the forum state (*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)); and where the only specific contact was an article written in Florida and sold in the forum state of California (*Calder v. Jones*, 465 U.S. 783 (1984)).

elsewhere through third parties was unimportant to the Court's inquiry. What was important was the effect the tortious activity had on Rhode Island. The Court held that "[b]ecause defendants allegedly tortiously interfered with a Rhode Island corporation's business rights arising out of a Rhode Island contract, it was clearly foreseeable that such activity would have a direct effect in Rhode Island. Therefore, it is fair for this Court to exercise jurisdiction … because their alleged tortious conduct constitutes the requisite minimum contact for the exercise of special *in personam* jurisdiction ... " *Id. See also Anderson*, 943 F. Supp. at 144 (jurisdiction in the forum for plaintiff's tort cause of action proper under well-established rules that one who knowingly causes tortious injury in a forum cannot invoke constitutional protections to avoid being hailed into court there).

Here, Astro-Med alleges that Nihon Kohden, with full knowledge of the restrictions in the employment agreement, hired Plant to gain access to Astro-Med's highly confidential information which would be of significant value to Nihon Kohden. In fact, it had its lawyers review the employment agreement prior to interviewing Plant. Nihon Kohden intentionally interfered with Plant's employment agreement to gain access to Astro-Med's customer contact lists, trade secrets and other proprietary and confidential business information; all of which germinate and are maintained in Rhode Island. Nihon Kohden knew that employing Plant would give Nihon Kohden an unfair advantage over Astro-Med and constitute actual or threatened misappropriation of Astro-Med's trade secrets. Furthermore, Nihon Kohden intentionally induced Plant to breach his agreement with Astro-Med, causing Astro-Med to suffer loss of sales, potential sales, loss of goodwill, disclosure of its trade secrets, other monetary damages and irreparable harm. All of the damages caused by Nihon Kohden's tortious actions are directed at Astro-Med in Rhode Island and the economic and intangible harm that will result

from these actions will negatively impact Astro-Med in Rhode Island.[4] Based on well-settled principles established by this Court, jurisdiction is properly exercised over Nihon Kohden in Rhode Island.

The second prong is also satisfied by Nihon Kohden's tortious activity. "This district has previously recognized the limited relevance of the conventional availment inquiry in tort actions." *Northeastern Land Servs.*, 988 F. Supp. at 59. *See Thompson Trading*, 123 F.R.D. at 426 ("one committing a tort in a forum does not purposefully avail himself of the benefits and protections of its laws, since such laws are not supporting and protecting his illegal activities"). While due process requires that a defendant have "fair warning" that a particular activity may subject it to the jurisdiction somewhere else, *see Burger King Corp*, 471 U.S. at 472, the "fair warning" requirement is satisfied if the defendant purposely directs its activities at residents of the forum, and the litigation arises out of or relates to those activities. *See Helicopteros Nacionales*, 466 U.S. at 414; *see Keeton*, 465 U.S. at 774; *Hugel*, 886 F.2d at 4; *Northeastern Land Servs.,* 988 F. Supp. at 59; *Thompson Trading,* 123 F.R.D. at 428, *reconsideration denied*, 124 F.R.D. 534 (D.R.I. 1989). As noted above, Nihon Kohden intentionally and tortiously interfered with Plant's Employment Agreement, which tortious activity was directly aimed at Astro-Med, and will cause Astro-Med substantial damage in Rhode Island.

---

[4] Nihon Kohden wrongly focuses on the physical location as to where the torts occurred, and applies the wrong standard for assessing specific personal jurisdiction. (Def.'s Memorandum at 6-7.) According to Nihon Kohden, specific personal jurisdiction only attaches when the claim against the defendant is based on the defendant's physical conduct in the forum state, and the defendant has purposely availed itself of the forum state's laws. (Defs. Memorandum at 6, *citing Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284.) But the First Circuit in *Phillips Exeter* expressly stated that "to be constitutionally significant forum-state contacts need not involve physical presence." *Id.* at 290 (emphasis added). Moreover, the purposeful availment test is inapplicable to tortious conduct directed at the forum-state. *See Thompson Trading*, 123 F.R.D. at 426 (finding that one committing a tort in a forum does not avail itself of that forum's laws, because those laws likely prohibit the defendant's tortious conduct). The appropriate question, as asked in *Hugel, Northeastern Land Services*, and *Thompson Trading, supra.*, is whether the alleged tortfeasor has purposely directed its conduct at a resident of the forum, not whether the tortious conduct physically occurred in the forum.

Finally, the Gestalt factors are satisfied. When a defendant who has purposely directed his activities at forum residents seeks to defeat jurisdiction, it must present compelling evidence that some other considerations would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184-2185. These considerations include: (1) the burden on the defendant; (2) the interests of the forum state; (3) plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* Nihon Kohden has failed to carry its burden.

First, Nihon Kohden complains that it would have to send its employees from California and Florida to Rhode Island. With modern travel and communication, it is much less burdensome for a party to defend itself in another forum. *See Id.*, 471 U.S. at 474, 105 S. Ct. at 2183. It is also difficult to see how it would be more burdensome to travel from California to Rhode Island as opposed to Florida, or from Florida to Rhode Island as opposed to California. Moreover, if Nihon Kohden is willing to send its agents and employees to Florida and vice-versa, and to market and sell its products in Warwick, Rhode Island, it can certainly appear here to answer for its tortious actions harming Astro-Med in Rhode Island.

In any event, any potential travel burden on Nihon Kohden is outweighed by the remaining considerations. Rhode Island has an obvious interest in providing a civil forum to litigate encroachments upon the trade secrets and interference with the contracts of Rhode Island companies. *See Northeastern Land Servs.*, 988 F. Supp. at 59. Astro-Med is strongly interested in protecting its relationships with its employees and its trade secrets and confidential business information in Rhode Island. Rhode Island offers the most efficient forum for resolving all of the issues in this case because the substantially related claims against Plant are pending here, the

Employment Agreement is governed by Rhode Island law, Plant has agreed that the dispute be decided in Rhode Island, and this Court has jurisdiction. The fifth factor does not appear to sway the analysis either way because there are no fundamental social policies that would be offended through exercise of jurisdiction in Rhode Island. For all of these reasons, specific personal jurisdiction is properly exercised over Nihon Kohden.

2. Nihon Kohden is subject to general jurisdiction in Rhode Island.

A court exercises general jurisdiction over an out-of-state defendant when that defendant is subject to claims that do not arise from its contacts with the forum state. *See Helicopteros Nacionales*, 466 U.S. at 415, n. 9. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Northeastern Land Servs.*, 988 F. Supp. at 60, quoting *United Elec. Radio & Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). The "concept of general jurisdiction calls for an examination into whether a defendant has purposeful and systematic contacts with a forum state so as to justify the exercise of *in personam* jurisdiction over him in *any* matter. If these contacts achieve a certain minimum threshold, then that party is subject to the jurisdiction of the forum's court regardless of whether the actions giving rise to the suit are related to the contacts that gives the court jurisdiction over the defendant." *Thompson Trading*, 123 F.R.D. at 425. Thus, while the exercise of general jurisdiction does not require relatedness, it does require the defendant's contacts with the forum state be much more extensive than the minimum contacts necessary to establish specific jurisdiction. *See Donatelli,* 893 F.2d at 463 ("although minimum contacts suffice in and of themselves for specific jurisdiction … the standard for general jurisdiction is considerably more stringent").

Nihon Kohden's general contacts with Rhode Island have been sufficiently systematic and continuous to permit this Court to exercise general jurisdiction over it. Nihon Kohden sells products in Rhode Island. (Defs. Memorandum at 12; Exhibit F, ¶3.)[5] Nihon Kohden's regional sales representative, Domenic Chillemi, makes visits to Rhode Island to sell and service Nihon Kohden's equipment. (Exhibit D, 28:10-29:9.) Nihon Kohden provided Chillemi with the product literature to distribute to potential customers, the necessary equipment to perform demonstrations for customers and mailed information directly into Chillemi's territory to prospective customers. (Exhibit D, 24:12-22.) Chillemi provides Nihon Kohden with prospective customers lists. (Exhibit D, 24:23-25:9.) Chillemi visited several doctors in Rhode Island to promote and sell Nihon Kohden products over the past three years. (Exhibit D, 31:24-32:18; 34:9-36:7.) Moreover, Chillemi maintains a website through his business which promotes Nihon Kohden's EEG, PSG, EMG and nerve conduction systems. (Exhibit D, 44:8-45:17) That website can be viewed by potential customers in Rhode Island. (Exhibit D, 45:18-20.) Nihon Kohden sends quotations and shipments directly to customers in Rhode Island in connection with Rhode Island sales. (Exhibit D, 47:7-49:4.) Chillemi's activities in Rhode Island as a sales representative for Nihon Kohden are properly attributable to Nihon Kohden. *See Daynard v. Ness, Motley, Loadholdt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002)(finding that the actions of an agent may be attributed to a principal for the purposes of personal jurisdiction).

Moreover, on March 17-18, 2006, Nihon Kohden marketed and promoted its products at a two-day Northeast Sleep Society Conference, which took place in Warwick, Rhode Island.

---

[5] Even if Nihon Kohden asserts that its sales are few, a small number is unsurprising. Astro-Med and Nihon Kohden compete in a specialized market, which is especially limited in a state like Rhode Island. Testimony at the preliminary injunction hearing showed that customers purchase capital medical equipment once every few years. When considered with the limited number of hospitals and other medical institutions in Rhode Island that would even purchase capital medical equipment, it follows that making a small number of sales in Rhode Island does not necessarily mean that Nihon Kohden does not direct regular sales activity in Rhode Island.

(Affidavit of Henry Nechemias ("Nechemias Aff."), ¶5 (attached hereto as Exhibit H); Exhibit F ¶4; Exhibit D 36:14-37:19; 40:2-13.) Through its own sales activities and those of its agent, Nihon Kohden has directed systemic and continuous business contacts with Rhode Island, and is subject to general personal jurisdiction here.

Nihon Kohden also advertises in several trade journals and publications, including *Sleep Review* which is circulated throughout the United States, including Rhode Island. (Exhibit G,¶4.) In fact, *Sleep Review* has 104 subscribers in Rhode Island pursuant to the certified circulation figures provided by *Sleep Review*. (Exhibit G, ¶5 (Statement of Circulation attached to Statement.)) Nihon Kohden also advertises in *Sleep Diagnosis and Therapy*, which is circulated throughout the United States, including Rhode Island. *Sleep Diagnosis and Therapy* is circulated to approximately 30 subscribers in Rhode Island. (Exhibit E, ¶5 and Exhibit B attached thereto.)

For all of these reasons, Nihon Kohden is subject to general personal jurisdiction in Rhode Island.

### B. Nihon Kohden's Motion for Transfer Should be Denied as Rhode Island is the Appropriate Venue to Redress Harm to a Rhode Island Company

Astro-Med is entitled to have its claims against Nihon Kohden, which are based on Rhode Island law and resulting from tortious conduct directed at Rhode Island, heard in its choice of forum. Nihon Kohden fails to meet the substantial burden to justify a change of venue, particularly where it offers a choice of venue that is equally inconvenient.[6]

First, Nihon Kohden is subject to personal jurisdiction in Rhode Island; therefore, venue is proper. *See* 28 U.S.C. § 1391(c)("For the purposes of venue under this chapter, a defendant

[6] When the balance of interests is equal or only slightly in favor of the moving party, the motion to transfer should be denied. *LaPlante v. Am. Honda Motor Co.*, C.A. No. 91-0015T, 1992 U.S. Dist. LEXIS 10180, #4 (D.R.I. 1992).

that is a corporation shall be deemed to reside in any judicial district in which it subject to personal jurisdiction at the time the action is commenced.") Nevertheless, Nihon Kohden requests transfer of the claims against it to the Central District of California or the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) Section 14.04(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Nihon Kohden bears a heavy burden of demonstrating the necessity of the transfer to either district. *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d 316, 323 (D.R.I. 1998).

Second, while the decision to transfer is discretionary with the Court and is decided on a case by case basis, the Court recognizes a presumption in favor of the plaintiff's choice of its home forum. *Id. See also Paradis v. Dooley*, 774 F. Supp. 79, 82 (D.R.I. 1991) (denying motion to change venue) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839, 843 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") and *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 70 L. Ed. 2d 419, 102 S. Ct. 252, 265-66 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum"). This is especially so because Astro-Med is headquartered in Rhode Island. *See LaPlante*, C.A. No. 91-0015T, 1992 U.S. Dist. LEXIS 10180, *4 (D.R.I. 1992). "[I]f the plaintiff is a resident of the district where the suit is brought, the plaintiff's choice of forum is given even greater deference." *Id.* Here, Nihon Kohden has failed to overcome this presumption.

Third, Nihon Kohden has failed to show that "private and public interest factors clearly point towards trial in the alternative forum." *Paradis*, 774 F. Supp. at 82. The private factors

include: (1) the availability of compulsory process to compel attendance of unwilling witnesses; (2) the cost of attendance of willing witnesses; (3) the relative ease of access to sources of proof; (4) the ease of a view of premises, if such a view would be appropriate to the action; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Elbalah v. Republic Ins. Co.*, 879 F. Supp. 3, 5 (D.R.I. 1995) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839, 843 (1947). The public factors include: (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (2) the avoidance of unnecessary problems in conflict of law, or in the application of foreign law; (3) the local interest in having localized controversies decided at home; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) administrative difficulties flowing from court congestion. *Elbalah*, 879 F. Supp. at 5.

1. The Private Factors Do Not Favor Transfer.

None of the private factors favor transfer. Compulsory process is equally available in Rhode Island, California and Florida to depose witnesses, and the cost of obtaining testimony should not be significantly different. Regardless of forum, the parties will be conducting discovery in more than one state. Because this action arose in Rhode Island, the convenience of the parties, the convenience of third party witnesses, and the interests of justice favor this action remaining in Rhode Island.

A showing of inconvenience to the defendant is not sufficient to merit transfer where the transfer would merely shift the inconvenience to the plaintiff. *Blinzler v. Marriott Int'l*, 857 F. Supp. 1, 3 (D.R.I. 1994). When a plaintiff resides in the chosen forum and the defendant resides in the proposed transferee district, one or the other will be inconvenienced regardless of whether the transfer motion is granted. *Levinger,* 676 F. Supp. at 441 (to tear either party away from

their enterprises will cause the parties some inconvenience and expense). In that case, the plaintiff's choice of forum was respected and the transfer request denied. *Id.* at 442.

Moreover, Nihon Kohden's contention that it would be a burden on its witnesses to travel to Rhode Island is unavailing. With advances in communications and travel, a party's claim of burden associated with litigating in a foreign forum is rarely persuasive. *See Burger King*, 471 U.S. at 474, 105 S. Ct. at 2183. Nihon Kohden's alternate forum proposals undercut its own argument. If it would not be a burden for Nihon Kohden employees to travel across the country from California to Florida to testify or vice-versa, then it should not be a burden for California or Florida employees to travel to Rhode Island for the same purpose.

A party seeking transfer for convenience of witnesses must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. *Brian Jackson & Co. v. Eximias Pharm. Corp.*, 248 F. Supp. 2d 31, 38; *see also Elbalah*, 879 F. Supp. at 5. Nihon Kohden proffers no such evidence, and its conclusory statements about the location of witnesses are insufficient to support a transfer from this Court based on witness convenience. *See Levinger*, 676 F. Supp. at 441. Further, as noted above, Nihon Kohden seems perfectly willing to send its California witnesses to Florida to testify, or its Florida witnesses to California. Astro-Med's witnesses in this matter live and work in Rhode Island. Astro-Med's primary anticipated witnesses, who testified at the preliminary injunction hearing, will offer testimony as to Plant's contract with Astro-Med, Plant's highly specialized training and exposure to Astro-Med's trade secrets, and the harm resulting from the loss of a key salesperson and exposure of trade secrets to a competitor. These witnesses all live in Rhode Island and work at Astro-Med's headquarters in West Warwick.

2. The Public Factors Do Not Favor Transfer.

Rhode Island has a strong public interest in seeing that a complaint by a resident company against a foreign defendant is adequately resolved. *See Paradis*, 774 F. Supp. at 82. Rhode Island also has an obvious interest in providing a civil forum to litigate alleged encroachments upon the trade secrets and interference with the contracts of Rhode Island corporations. *See Northeastern Land Servs.*, 988 F. Supp. at 59. Astro-Med's claims are made under Rhode Island law and involve its trade secret statute and interference with a Rhode Island contract, so conflict of law issues favor a Rhode Island venue. On the same basis, venue in California or Florida would burden local jurors with deciding a case based on Rhode Island law involving harm to a Rhode Island company. There are also no administrative reasons to transfer this case. This Court's calendar is current and sufficient local interests exist to justify conducting a trial in Rhode Island. *See Paradis*, 774 F. Supp. at 82; *Ryan, Klimek, Ryan P'ship v. Royal Ins. Co. of America*, 695 F. Supp. 644, 648 (D.R.I. 1988).

## CONCLUSION

For the foregoing reasons, Astro-Med respectfully requests that this Court deny Nihon Kohden's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or in the Alternative to Transfer.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Robert M. Duffy

Robert M. Duffy, Esq. (#4428)
Craig M. Scott, Esq. (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
rduffy@duffysweeney.com

May 9, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within ***Plaintiff, Astro-Med, Inc.,'s Memorandum in Opposition to Defendant Nihon Kohden's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or in the Alternative to Transfer*** was filed through the ECF system on the 9th day of May, 2007, and will be sent electronically to counsel named below who are registered participants identified on the Notice of Electronic Filing:

Bruce W. Gladstone, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/Robert M. Duffy
Robert M. Duffy, Esq.