**EXHIBIT 5**

Deposition of
Domenic Chillemi

for them that you do not have copies of them?

A. Everything I have they have. They don't have anything different. I send them my quotations.

Q. Okay. Do they have anything in addition to what you have?

A. No.

Q. Where do you work?

A. Out of my home, 7 Hannah Lane, Valley Cottage, New York.

Q. Do you operate under a business name?

A. Yes, Med-Tek Solutions, Incorporated.

Q. Is that a New York corporation?

A. Yes, it is.

Q. Are you the president?

A. Yes, I am.

Q. Are you the sole employee?

A. Yes, I am.

Q. And what does Med-Tek Solutions do?

A. I represent a couple of different companies in the neurophysiology well, field.

Q. Do you represent Nihon Kohden?

A. Yes, I do.

Q. And are you an independent sales representative for Nihon Kohden?

A. Yes, I am.

Q. How are you compensated by Nihon Kohden?

A. They send me a commission check once the customer pays for a piece of equipment.

Q. Does Nihon Kohden provide you with the sales brochures that you use in connection with your sales activities for them?

A. Yes, I do, or I ask them to send it.

Q. Okay. So they may send it directly or give you --

A. Correct.

Q. Does Nihon Kohden provide the quotations that you use that are given to customers?

A. Yes, they do.

Q. Does Nihon Kohden provide -- strike that.

Does Nihon Kohden invoice customers directly for sales made through you?

A. Yes, they do.

Q. And approximately, how often do you do that, you appear with Nihon Kohden sales reps?

A. Twice a year. Three times a year tops.

Q. Do you attend the Nihon Kohden sales meetings?

A. Yes, I do.

Q. How often does Nihon Kohden hold sales meetings?

A. Twice a year.

Q. And did you attend a recent sales meeting?

A. Yes.

Q. Where was that?

A. Florida.

Q. And you met Mr. Plant at that sales meeting?

A. Yes, I did.

Q. Had you met Mr. Plant before?

A. No.

Q. Did you have any discussions with Mr. Plant regarding this case?

A. No.

Q. If you could look at Exhibit 4, and

turn to the Nihon Kohden sales representative agreement.

A. Yes.

Q. Is this the agreement that's currently in place with Nihon Kohden?

A. No.

Q. Could you tell me what, if any, provisions contained in here are no longer in effect?

A. The commission rates have changed. The territory has changed. I don't have Pennsylvania any longer.

Q. Okay.

A. And the guarantees changed.

Q. Okay. And what - what paragraph number are the guarantees at or are they at the back?

A. Let me find it here. The discounts, the 5,000 per month minimum commission has changed. I no longer get that.

Q. All right. So Exhibit C to the sales representative agreement is the commission schedule?

A. Yes.

and -- or provide something within ten days.

MR. KARCIS: I designate the discussion regarding the discount.

MR. DUFFY: Okay.

Q. Does Nihon Kohden provide you with sales leads?

A. No.

Q. Does Nihon Kohden provide you with Nihon Kohden customer lists?

A. No.

Q. Does Nihon Kohden provide you with product literature to distribute to potential customers?

A. Yes.

Q. Does it provide you with the necessary equipment to perform demonstrations for customers?

A. Yes.

Q. Does Nihon Kohden mail information into your territory to prospective customers?

A. Yes.

Q. And do you provide the list to Nihon Kohden where those mailings should go or does

Q. Okay. From 2001 to present, have you been a sales representative for any company other than Nihon Kohden or Lifeline?
A. Yes.
Q. What other companies?
A. Axon Systems, Med Track. Persist Development Corporation.
Q. When were you a sales rep for Axon?
A. From November 2001 until probably 2004.
Q. Sorry? What - what did you --
A. 2004. I don't know the exact date.
Q. And then the second one you mentioned was?
A. Med Track?
Q. Med Track.
A. From probably 2004 to -- April 2004 to May 2004. That's it.
Q. About a month, two months?
A. Two months max.
Q. And the final one you mentioned?
A. Persist Development Corporation?
Q. Yes.
A. I still handle their products

through Lifelines.

Q. Okay. Now, you were served with a subpoena to come here; correct, that was Exhibit -- that was Exhibit 3; is that correct?

A. I was served with two subpoenas.

Q. Okay. You were served with -- here's the affidavit of services. It's marked as, I believe, Exhibit 3.

MR. DUFFY: It's Exhibit 2.

MR. KARCIS: Exhibit 2, thank you.

Q. It's this one right here. That's the date of which you were served with the subpoena marked as Exhibit 1, sir? Here is Exhibit 1 for you.

A. Yes.

Q. Okay. Prior to that date, had you been served a subpoena?

A. Yes.

Q. And that's what generated your February 27th letter, Defendants' Exhibit A; is that correct?

A. Yes, it is.

Q. And after the date of your February 27th letter until you were served with the

subpoena marked as Exhibit 1, were you served with any other subpoenas?

A. No.

Q. Did you attempt to avoid service of any subpoenas?

A. No.

Q. In the last page of Exhibit 4 it mentions the AAN?

A. Yes.

Q. And that is what, sir?

A. It's a national meeting that's held every year.

Q. What does AAN mean?

A. American Academy of Neurology.

Q. Okay. And when is the next AAN meeting?

A. May 1st, 2007.

Q. Where will that be?

A. Boston.

Q. Do you plan on attending?

A. Yes.

Q. Was it your understanding from that memo that Dr. Stratton is going to stop by and see you there?

MR. DUFFY: Objection. Leading.
A. Yes.
Q. Let's go back to the -- the conference in Rhode Island, the New England Sleep Society conference --
A. Yes.
Q. -- you attended in 2005 or 2006?
A. Yes, whatever. I don't remember the dates.
Q. Okay. On your display table would you -- how - how big of a table was that?
A. Six foot.
Q. By?
A. Standard table. Three, like three by six.
Q. And you had Lifeline products and you had Nihon Kohden products; correct?
A. Yes, I had one system of each.
Q. Okay. Was one more predominant than the other?
A. Well, yeah, the Nihon Kohden is on a stand on a cart and the Lifeline is a box about the size of that pad.
Q. Size of what, a writing pad you