# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASTRO-MED, INC., Plaintiff | : |
| VS. | : C.A. NO. 06-533 ML |
| KEVIN PLANT and NIHON KOHDEN AMERICA, INC., Defendants | : |

Deposition of **GARY REASONER**, a 30(b)(6) witness designated by Nihon Kohden America, Inc., taken on behalf of the Plaintiff, on TUESDAY, JUNE 19, 2007, 10:05 A.M., at the offices of DUFFY SWEENEY & SCOTT, LTD, One Turks Head Place, Suite 1200, Providence, Rhode Island, before Vivian S. Dafoulas, Registered Merit Reporter/Certified Realtime Reporter.

CONDENSED COPY

alcohol, drugs or any medication that would affect your ability to testify truthfully today?
A. No.
Q. Where do you live?
A. California.
MR. KARCIS: Before we get further into it, I would just like for the record to state an objection that this deposition, based upon a protective order motion filed, that the defendant objects to these depositions as exceeding the scope of -- or exceeding the time cutoff for jurisdictional discovery, and that any information gathered in this deposition may not be used to supplement any opposition to the defendant's motion to dismiss.
And just for the record, I'd like to have that general objection run throughout so that if it's agreed by counsel, I don't have to make that to every question that's posed.
MR. SCOTT: I'm not making any agreement with you, Mr. Karcis, so you object as you feel is appropriate.
MR. KARCIS: Okay.
BY MR. SCOTT:
Q. Mr. Reasoner, are you aware that a motion



for protective order was filed in your behalf on June 8th, 2007 by Mr. Karcis?
A. No.
Q. Does Mr. Karcis represent you?
MR. KARCIS: Objection. I object to the question based on the grounds that this deposition and the questioning therein exceeds the cutoff time for jurisdictional discovery pursuant to Nihon Kohden's protective order, and that any information gathered during this deposition may not be used to supplement in opposition to Nihon Kohden's motion to dismiss.
BY MR. SCOTT:
Q. The question is, does Mr. Karcis represent you?
A. He represents Nihon Kohden.
Q. Does he represent you personally?
MR. KARCIS: Same objection as previously stated.
A. I honestly don't know.
Q. Are you aware that the protective order that Mr. Karcis has just referenced was denied by the Court?
A. No.
Q. So the protective order that he is relying



on to assert his objection was specifically denied by the Federal Court in Providence, Rhode Island?
MR. KARCIS: Same objection.
A. No. I haven't paid much attention.
Q. So you are not aware one way or the other whether that's a basis for the objection or not?
MR. KARCIS: Same objection.
A. I'm not -- I'm not aware.
Q. Are you aware that on Friday, June 8th, 2007, the Court compelled your attendance at deposition on Monday, June 11th, in Santa Monica, California?
MR. KARCIS: Same objection.
A. No.
Q. Were you ever advised of the deposition scheduled for Monday, June 11th, 2007, in Santa Monica, California?
MR. KARCIS: Same objection.
A. I don't recall.
Q. So as you sit here today testifying under oath, you don't know whether you were ever scheduled to appear at a deposition on June 11, 2007?
A. I don't.
MR. KARCIS: Same objection.
Q. Have you ever spoken to Mr. Gladstone



before today?
THE WITNESS: Gladstone?
MR. SCOTT: Yes.
A. Not that I know of.
MR. SCOTT: That's the gentleman sitting to your right. We'll mark this as the first exhibit.
(Whereupon, Plaintiff's Exhibit No. 1 was marked.)
BY MR. SCOTT:
Q. Let me show you what's been marked as Exhibit 1. Could you review that document and tell me if you recognize it?
MR. SCOTT: Would you identify yourself, please?
MR. OHSAWA: Michael Ohsawa.
MR. SCOTT: The record will reflect that Mr. Ohsawa entered the conference room.
(Witness perusing document.)
A. I don't recall ever seeing the document.
Q. I'm sorry?
A. I don't recall ever seeing that document.
Q. When was the first time you learned that you've been requested to appear at a deposition in this case?

MR. KARCIS: Same objection.
A. Friday. Actually Saturday.
Q. Saturday?
A. Saturday this weekend.
Q. That's Saturday, June 16th, 2007?
A. If that was the 16th.
Q. And previous to Saturday, June 16th, 2007, you were not aware or advised in any way that you've been requested to appear at a deposition?
A. Not to my recollection.
Q. Well, do you have any doubt about it, sir?
A. No.
Q. Okay. And how were you first advised to appear at a deposition?
A. On Saturday I received an e-mail.
Q. From whom?
A. Benjamin -- somebody.
MR. KARCIS: Objection. Attorney-client privilege.
Q. Do you know the last name?
A. No.
Q. Do you know whether Benjamin is a lawyer?
A. No.
Q. Do you still have that e-mail?
A. No.



Q. What did the e-mail say?
MR. KARCIS: Objection. Attorney-client privilege. Instruct the witness not to answer.
Q. Are you represented by a Benjamin?
A. I don't know.
Q. Do you recall what the e-mail says?
A. It said that --
MR. KARCIS: Objection. I instruct the witness not to say what was in the e-mail. He asked you if you recall what the e-mail said.
A. Word for word? No.
Q. Do you have a general understanding of what the e-mail said?
A. It said --
MR. KARCIS: Objection. Attorney-client privilege. Instruct the witness not to answer.
Q. But based on that e-mail you received by a Benjamin -- the last name you don't know -- that was the first notice you received of a deposition that you'll be -- you'd have to sit for in this case?
A. Yes.
Q. And were you advised that the deposition was to take place in Providence, Rhode Island?
A. Yes.
Q. Were you advised that the judge from the



Federal Court sitting in the District of Rhode Island compelled your attendance here today?
MR. KARCIS: Objection to the extent that it's questioning the deponent about what was the substance of the e-mail received from counsel.
I instruct the witness not to answer regarding attorney-client communications.
MR. SCOTT: It hasn't been established that it's an attorney-client communication, Mr. Karcis, so it's an improper objection.
MR. KARCIS: No, it's not an improper objection. I'll establish it's an attorney.
MR. SCOTT: Who is it?
MR. KARCIS: The attorney? Ben Kennedy.
MR. SCOTT: And where does he work?
MR. KARCIS: McLean & McLean.
BY MR. SCOTT:
Q. Where were you on Monday, June 11, 2005?
A. Monday, June 11th, Minneapolis I believe.
Q. Why were you there?
A. Business.
Q. What type of business?
(Interruption by court reporter.)
MR. SCOTT: If I can ask the witness to put the microphone on as a courtesy to the



stenographer, and you have a tendency to swivel in your chair when you answer --
THE WITNESS: Is that against the law?
MR. SCOTT: -- and you don't face her. I'm sorry?
THE WITNESS: Is that against the law? I can't swivel in my chair?
MR. SCOTT: You can but when you respond, as a courtesy to the stenographer, if you can either speak up and speak more clearly with the microphone affixed to your shirt, I think that will make it easier today.
THE WITNESS: Okay.
MR. SCOTT: And if you don't want to cooperate, it will just extend the proceedings.
MR. KARCIS: Objection. Please stop being argumentative, Counsel.
BY MR. SCOTT:
Q. What type of business were you engaged in in Minneapolis?
A. Trade show.
Q. What is the name of the trade show?
A. APSS.
Q. When did you arrive in Minneapolis?
A. Sunday.

Q. That's Sunday, June 17th?
A. I need a calendar to --
Q. Today is the 19th.
A. Then obviously, no.
Q. I'm sorry. Sunday, June 10th it would be?
A. Yes.
Q. My fault. When did you return from Minneapolis?
A. Wednesday.
Q. That's June 13th? Yes?
A. Is that a question?
Q. Yes. Was it June 13th?
A. Do you have a calendar?
Q. Today is the 19th. Was it a week ago tomorrow?
A. Do you have a calendar? I could help you then.
MR. SCOTT: I'll get you a calendar. We can do that at a break.
Q. Were you in Minneapolis for more than three days? You arrived there on Sunday the tenth and you left that same Wednesday, correct?
A. Four days.
Q. Four days? You left that same Wednesday?
A. Yes.



Q. Okay. And where were you Sunday before you traveled to Minneapolis?
A. California.
Q. Santa Monica?
A. No.
Q. Orange County?
A. Yes.
Q. And where were you Friday afternoon, June 11th? I'm sorry, June 8th.
A. I have no idea.
Q. Were you in Orange County, California?
A. I honestly can't remember.
Q. Is there something you can refer to to refresh your recollection?
A. A calendar.
MR. SCOTT: Off the record for a second.
(Off the record.)
BY MR. SCOTT:
Q. I -- I'm placing before you a calendar that my receptionist just brought in for the month of June, 2007. The question before you is where were you on Friday afternoon on June 8th?
MR. KARCIS: Objection.
MR. SCOTT: What's the objection?
MR. KARCIS: I'm making the objection,



Counsel. The questioning in this deposition exceeds the time for conducting jurisdictional discovery and may not be used to supplement any opposition filed to our motion to dismiss.
MR. SCOTT: Do you realize as an officer of the court that that objection is in derogation of four court orders?
MR. KARCIS: I realize that objection is pending before the Court right now.
MR. SCOTT: It's not. That is not truthful.
MR. KARCIS: That's my understanding. If you want to show me something to the contrary, I'll be happy to see it.
MR. SCOTT: You're aware that on Friday, June 8th, the Court granted our motion to compel attendance at deposition over your objection, which you just raised again, and denied your three motions for protective order over your objections that you just reasserted?
MR. KARCIS: I realize that we filed a protective order, objecting. I'm sorry. Motion for clarification, objecting.
MR. SCOTT: You are trying to disrupt this deposition, Mr. Karcis --



MR. KARCIS: If you allow me --
MR. SCOTT: -- with your frivolous objections which is par for the course for you in this case.
MR. KARCIS: If you'd allow the objection to stand to all questions, then I wouldn't need to make it to every question.
MR. SCOTT: It's not for me to allow a frivolous objection to stand. We will bring your objection to the Court in short order. You can answer my question, if you recall it.
MR. KARCIS: Same objection.
A. I believe I was in California.
Q. Where?
A. I think I took the eighth off, so I would have been at home.
Q. And your home is in Orange County, California?
A. Correct.
Q. And were you in any contact with Mr. Karcis on June 8th?
A. No.
Q. Were you in any contact with Brian Kennedy on June 8th?
A. No.

MR. GLADSTONE: Ben Kennedy.
MR. SCOTT: I'm sorry?
MR. GLADSTONE: Ben Kennedy. You said Brian Kennedy.
MR. SCOTT: Thank you.
Q. Were you in any contact with Benjamin Kennedy on June 8th?
A: No.
Q. Were you in contact with any lawyer from McLean & McLean on June 8th?
A. No.
Q. Were you in contact with any lawyer from Nihon Kohden of America on June 8th?
A. No.
MR. KARCIS: Objection. Calls for speculation.
Q. Were you aware that I was in California on June 11th, 2007 to take your deposition?
MR. KARCIS: Objection. Object to this question and all questions based on the fact that the questioning in this deposition exceeds the time for conducting jurisdictional discovery.
MR. SCOTT: There is a question pending.
A. No.
Q. This is the first time you're learning



about it right now?
A. Yes.
Q. What did you do to prepare for this deposition today?
MR. KARCIS: Same objection.
A. I didn't do anything.
Q. Did you review any documents?
A. No.
Q. Did you speak to anybody?
A. My attorney.
Q. Which attorney?
(Witness pointing to Mr. Karcis.)
Q. The stenographer can't pick up pointing, so can you identify him by name, please?
A. Mr. Karcis.
Q. Did you speak to Mr. Ohsawa about this deposition today?
A. Yes.
Q. And how many times did you speak with him?
A. Once.
Q. When was that?
A. Today.
Q. What did you say to him?
MR. KARCIS: Objection. Insofar as you're referring to the conversation with Mr. Ohsawa, that



occurred in my presence. That's attorney-client privilege. I instruct you not to answer the question regarding that conversation. If there was a separate conversation where I wasn't present, you may answer.
A. No.
Q. When did you travel to Rhode Island for this deposition?
A. Yesterday.
Q. Did you travel alone?
A. Yes.
Q. Did you review any documents?
MR. KARCIS: Objection. Asked and answered.
A. No.
MR. KARCIS: Same objection. The deposition exceeding the jurisdictional discovery cutoff -- I should say the cutoff for jurisdictional discovery and that nothing in this deposition can be used to supplement its objection to Nihon Kohden's motion to dismiss.
MR. SCOTT: Mr. Gladstone, I would ask that you instruct your co-counsel about the prohibition in this jurisdiction of speaking objections and his conscious attempt to slow down,



derail and delay this deposition for proceeding in its ordinary course.
MR. GLADSTONE: With all due respect, Craig, I think the confusion you are having is that what we are talking about, there is a pending motion for clarification as to what Judge Lisi intended in her order where she set a deadline for the filing of supplements to your objection to the motion to dismiss.
And the substance of that objection, of Mr. Karcis's objection, has to do with that pending motion to which Judge Lisi has made a decision to give your office an opportunity to object so it is, in fact, that pending pleading that is the substance of the objection.
MR. SCOTT: Well, it's a frivolous objection and the speaking objections are improper.
MR. GLADSTONE: Well, can we at least agree that to the extent that -- just to shorten time, so that we don't prolong the deposition -- that Mr. Karcis, to the extent he does object on that basis, can simply state "same objection"?
MR. SCOTT: He can do whatever he thinks is appropriate. I think his idea of propriety differs from most members of the Bar and the Court,

Island in any sort of separate way. It's such an afterthought, I wouldn't even look at it, to be honest with you.
Q. Did you say you couldn't care less about Rhode Island?
A. Well --
Q. Is that what you said?
MR. KARCIS: Objection. Same objection.
A. It's not -- it's not a market that I would certainly look at and go, oh, God, Rhode Island is the market we've got to get into. It's just not that dynamic, quite frankly.
Q. Well, Rhode Island is the smallest state, correct?
A. So I wouldn't break it out and look at it separately. It's part of a region.
Q. But you still sell to Rhode Island?
MR. KARCIS: Same objection.
A. Right. I think we've established that already so I don't know what the big deal is there. Yes, we sell in Rhode Island. It's not an area that I would target for sales.
Q. You'd rather maximize sales in California or Texas?
MR. KARCIS: Same objection.



Q. Do you track Mr. Chillemi's sales differently --
MR. KARCIS: Same objection.
Q. -- than you do your direct salespeople?
MR. KARCIS: Same objection.
A. No.
Q. So his sales would be reflected on a log sheet as well for the region for which he is responsible which has an exclusive component and a nonexclusive component, correct?
MR. KARCIS: Same objection.
A. I believe so.
Q. So if we go into -- if someone at Nihon Kohden who can operate an AS400 is asked to provide the log sheets for Rhode Island --
A. Yes.
Q. -- that can be done, correct?
MR. KARCIS: Same objection. Also calls for speculation. Hypothetical. Assumes facts not in evidence.
A. I -- I don't know how the -- the search routines are built. It's a better question for someone else. I'm not certain if it's zip codes, states, area codes.
Q. But it would be no different than getting



the log sheets for Florida, correct?
MR. KARCIS: Same objection.
Q. You answered the Florida question without any caveats. Why would it be any different for Rhode Island?
MR. KARCIS: Same objection. Also misstates the witness's prior testimony.
A. Because Florida is a territory by itself. Rhode Island is part of a number of states grouped together. That's the difference there and Rhode Island is not that -- it's not a significant piece of our business any way you look at it.
Q. So you may have to -- what you're saying is that it's possible that the printout for a Rhode Island search may also include businesses outside of Rhode Island?
A. Yeah. New York.
MR. KARCIS: Same objection.
Q. And you'd have to --
MR. KARCIS: Excuse me. I'm making an objection. Same objection. Also calls for speculation.
Q. And so you'd have to filter out?
A. Yeah.
Q. You'd have to take that extra step; that's



all you're saying?
MR. KARCIS: Same objection. Also calls for speculation.
Q. Is that correct?
A. Yes.
MR. SCOTT: Your lawyer had his hand in front of you and I couldn't see.
A. Yes.
MR. KARCIS: Excuse me. I'm trying to keep the flow of the deposition correct in that I'm not speaking over the witness's answer. I'm trying to hold the witness's answer while I make my objection, Mr. Scott. That's why I'm holding my hand out, if you want to make a big deal about it.
MR. SCOTT: I'm not making a big deal about it. You've been doing this for five hours. You've delayed this deposition probably an hour with your misconduct today.
MR. KARCIS: Please get on with the deposition.
BY MR. SCOTT:
Q. Have you ever seen the court order compelling your attendance at the deposition on June 11th in California?
A. No.

MR. KARCIS: Excuse me. Same objection.
Q. Have you ever seen the court order compelling your attendance here today in Rhode Island?
MR. KARCIS: Same objection.
A. No.
Q. Have you ever seen the court order compelling Nihon Kohden to produce additional documents and information to Astro-Med by last Friday?
MR. KARCIS: Same objection.
A. No.
Q. So all this is news to you as of today?
A. Absolutely.
MR. KARCIS: Same objection.
MR. SCOTT: I may be done with the 30(b)(6). Why don't we take a minute?
MR. KARCIS: A minute or ten minutes.
MR. SCOTT: Just take a minute. We shouldn't go off the record.
Let me see if I have any more questions and we can at least complete this portion.
(P A U S E)
MR. SCOTT: Okay. At this point in time I'm done with my questioning. Subject to Nihon



Kohden either not preparing Mr. Reasoner appropriately -- I don't fault Mr. Reasoner for this since he had not seen the deposition notice ahead of time, but he was not the person -- he was not prepared to answer questions with respect to sales into Rhode Island, he was not prepared for that nor were documents produced as ordered by the Court, so I'm going to keep this deposition open but subject to that condition, with respect to the subject areas for which Mr. Reasoner has been designated, I will suspend the deposition at this time.
THE WITNESS: Okay.
(Deposition suspended at 2:43 p.m.)



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
KENT, Sc.

C E R T I F I C A T I O N

I, VIVIAN S. DAFOULAS, do hereby certify that I am expressly approved as a person qualified and authorized to take depositions pursuant to Rules of Civil Procedure of the Superior Court, especially but without restriction thereto, under Rule 30(e) of said Rules; that the witness was first sworn by me; that the transcript contains a true record of the proceedings.

IN WITNESS WHEREOF, I have hereunto set my hand this 23rd day of June, 2007.

[signature]

Vivian S. Dafoulas, RMR-CRR
Notary Public
(401) 885-0992
(My commission expires 1/4/2010.)



WITNESS SIGNATURE
ASTRO-MED, INC.
vs.
KEVIN PLANT AND NIHON KOHDEN AMERICA, INC.
DEPOSITION OF:
GARY REASONER
June 19, 2007

I hereby certify that I have read the foregoing transcript and the same contains a true and accurate recording of my answers to the questions therein set forth, subject to the change(s) and/or correction sheet(s) attached.

________________________
SIGNATURE OF DEPONENT

STATE OF______________

Subscribed and sworn to before me this_____day of______________, 2007.

________________________
NOTARY PUBLIC

(My commission expires:________________________)