# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC.,<br>Plaintiff | : | |
| VS. | : | C.A. NO. 06-533 ML |
| KEVIN PLANT and NIHON<br>KOHDEN AMERICA, INC.,<br>Defendants | : | |

Deposition of **MICHAEL OHSAWA**, a 30(b)(6) witness designated by Nihon Kohden America, Inc., taken on behalf of the Plaintiff, on TUESDAY, JUNE 19, 2007, 3:12 P.M., at the offices of DUFFY SWEENEY & SCOTT, LTD, One Turks Head Place, Suite 1200, Providence, Rhode Island, before Vivian S. Dafoulas, Registered Merit Reporter/Certified Realtime Reporter.

CONDENSED COPY

deposition with frivolous objections which delays this deposition, your attempts to derail it. It takes time from your client and from me and we will seek Court guidance in how to proceed and devise appropriate remuneration to my client for your disruptive tactics.

MR. KARCIS: And my objection is pending before the Court.

MR. SCOTT: You don't have any objection pending before the Court. You have a pending motion that the Court has refused to consider. That's what you have. So don't misstate what's before the Court.

MR. KARCIS: Please continue the deposition.

BY MR. SCOTT:

Q. Mr. Ohsawa, I apologize, but I cannot control your lawyer.

Let me show you a calendar. I believe the question pending, before Mr. Karcis' inappropriate interruption, was when you were first advised by Mr. Kennedy that the deposition of Nihon Kohden that was scheduled for June 11th, 2007 was called off.

MR. KARCIS: Same objection.

A. On Saturday, June 9th.



Q. Were you ever advised that you yourself was noticed to sit for a deposition on June 11th as well in Santa Monica, California?

MR. KARCIS: Same objection.

A. I was informed by Ben on Friday the eighth but then on Saturday the ninth, he also informed me that it had been cancelled. It was going to be rescheduled.

Q. And where were you when Mr. Kennedy informed you on June 9th that the deposition was cancelled?

A. I was in San Francisco.

Q. Where do you live, sir?

A. I live in Orange County but I was on vacation.

Q. And prior to Mr. Kennedy's call, were you planning on attending the deposition on June 11th in Santa Monica?

A. I was already on vacation when I got the first notification about the deposition.

Q. So you first received notification of the depositions on June 8th from Mr. Kennedy?

A. Yes.

Q. And --

MR. KARCIS: Same objection.



Q. -- he called you on June 9th to advise you that the depositions were called off; is that accurate?

MR. KARCIS: Same objection.

A. Yes.

Q. Were you aware that the depositions were first noticed for June 11th by my office on May 29th?

MR. KARCIS: Same objection.

A. No.

Q. Were you aware that on June 8th, 2007, Magistrate-Judge Martin denied a motion for protective order that was filed on your behalf to prevent the deposition from going forward on June 11th?

MR. KARCIS: Same objection.

A. No.

Q. Were you aware that on June 8th Magistrate-Judge Martin granted my client's motion to compel your attendance in Santa Monica, California, on June 11th?

MR. KARCIS: Same objection.

A. No.

Q. Were you aware that Mr. Karcis was in the courtroom when those rulings were handed down?



MR. KARCIS: Same objection.

A. No.

Q. Are you aware that Astro-Med has filed a motion to adjudge your company and Mr. Karcis in contempt and for sanctions in light of the violation of those court orders?

MR. KARCIS: Same objections.

A. No.

Q. Were you aware that I traveled to California on June 10th to participate in the taking of your deposition on June 11th --

MR. KARCIS: Same objection.

Q. -- as well as the deposition of Mr. Reasoner and your company in Santa Monica, California?

MR. KARCIS: Same objection.

A. No.

Q. Were you aware that on June 11th when our Court learned of your nonappearance, the nonappearance of Mr. Reasoner and the nonappearance of your company, that you, Mr. Reasoner and Nihon Kohden were ordered to appear for deposition here today?

MR. KARCIS: Same objection.

A. No.

weather.
Q. I'm just talking about with respect to this case.
A. We had no discussion about the case, so...
Q. What are your responsibilities as the director of operations at Nihon Kohden?
MR. KARCIS: Same objection.
A. I am responsible for finance, human resources, inventory, and purchasing.
Q. To whom do you report?
A. Eiichi Tanaka, the president. E-I-I-C-H-I, T-A-N-A-K-A.
Q. How long have you been a director of ops?
MR. KARCIS: Same objection.
A. Approximately seven years.
Q. Have your job responsibilities changed over those seven years?
MR. KARCIS: Same objection.
A. Not substantially.
Q. Did you hold any positions at Nihon Kohden prior to becoming director of operations?
MR. KARCIS: Same objection.
A. I was the controller.
Q. For how long were you the controller?
MR. KARCIS: Same objections.



A. About eight years.
Q. And to whom did you report when you were the controller?
MR. KARCIS: Same objections.
A. To the president of Nihon Kohden.
Q. Is that Mr. Tanaka's predecessor?
A. Yes.
Q. Is that Mr. Adachi?
A. Yes.
MR. SCOTT: A-D-A-C-H-I.
Q. Did you hold any positions at Nihon Kohden prior to becoming the controller?
MR. KARCIS: Same objection.
A. Accounting manager.
Q. How long did you hold that position?
MR. KARCIS: Same objection.
A. Three years.
Q. Did you report to the controller at the time when you were accounting manager?
MR. KARCIS: Same objection.
A. Yes.
Q. Did you hold any positions prior to being the accounting manager?
MR. KARCIS: Same objection.
A. I was the assistant accounting manager.



Q. For how long?
MR. KARCIS: Same objection.
A. For two years.
Q. And prior to that, did you hold any positions at Nihon Kohden?
MR. KARCIS: Same objection.
A. No.
Q. You've been at Nihon Kohden approximately 20 years?
MR. KARCIS: Same objection.
A. That's correct.
Q. Did you attend college?
MR. KARCIS: Same objection.
A. Yes, I did.
Q. Where?
A. Stanford.
Q. What year did you graduate?
MR. KARCIS: Objection.
A. 1981.
Q. With a degree in finance?
MR. KARCIS: Same objection.
A. No. Human biology.
Q. Any other degrees?
MR. KARCIS: Same objection.
A. MBA.



Q. From where?
A. University of Chicago.
Q. What year?
A. 1983.
Q. Any other degrees?
MR. KARCIS: Same objection.
A. No.
Q. And did you work full time prior to joining Nihon Kohden?
MR. KARCIS: Same objection.
A. Yes.
Q. And where did you work?
MR. KARCIS: Same objection.
A. Takeda Medical, T-A-K-E-D-A, Medical.
Q. In what capacity?
MR. KARCIS: Same objection.
A. Sales administrator.
Q. What type of products did Takeda sell?
A. Home blood pressure monitors.
Q. What was your position there?
MR. KARCIS: Same objection. Asked and answered.
Q. I'm sorry. Were you a sales administrator throughout your tenure there?
A. That's correct.

come from your company; they came from another source. So I did not receive any documents directly from your company in response to the document request.
So with that representation, sir, are you aware of any effort on behalf of Nihon Kohden to search for those purchase-and-sale-related documents with respect to the customers identified in the supplemental answers to Interrogatory No. 3?
MR. KARCIS: Same objections.
A. I don't recall.
Q. Well, based on your own personal experience, not as the 30(b)(6) designee of the company, but just what you personally have done, have you looked for any of those types of documents?
MR. KARCIS: Same objections.
A. It's possible that I may have but with everything that I do during the day, I'm not sure.
Q. Are you aware of any documents in this subject matter, quotations, purchase orders, packing slips, purchase agreements, things of that nature, that relate to Rhode Island customers of Nihon Kohden America --
MR. KARCIS: Same objections.
Q. -- that I have --



MR. KARCIS: Same objection.
Q. -- I have not shown to you today?
MR. KARCIS: Same objections.
A. I'm not aware of any.
Q. If you were to check to determine whether there are additional documents, what would you do to go about confirming whether or not there are any documents in addition to the documents that have been marked as Exhibits 19 through 26?
MR. KARCIS: Same objections.
A. I would have to look through the customer files for the individuals listed on the interrogatory to see if there is any documentation.
Q. Does Nihon Kohden maintain in a folder, or some other method of retention, an individual file for each of its customers?
MR. KARCIS: Same objections.
A. Yes. For capital equipment purchases and that's all that I'm aware that we maintain the records for.
Q. And within those files, what would be contained?
MR. KARCIS: Same objections.
A. Typically a quotation, a packing slip, an invoice.



Q. Would it also contain notes from salesmen in the field or salesmen at Nihon Kohden and their efforts to sell additional products or merchandise to a customer?
MR. KARCIS: Same objections. Also vague.
A. No. Because the -- the only thing that we normally receive is the purchase order directly from the customer and all of the other documents are internally generated.
Q. Did you attend the trade show in Minneapolis on June 11th?
A. Yes.
Q. And when did you travel to that trade show?
A. Sunday night.
Q. And when did you return?
A. Tuesday morning.
Q. How many trade shows do you attend a year?
A. Hardly any.
Q. Why that particular one?
MR. KARCIS: Same objections.
A. We have some changes taking place within our organization and I was acting as the management representative in case any of the attendees had questions.



Q. Attendees meaning potential customers?
MR. KARCIS: Same objection.
A. No. Our employees.
Q. Do you know whether Astro-Med was present at that trade show?
MR. KARCIS: Same objections.
A. I'm not sure. I didn't really walk around the show.
Q. Was Mr. Reasoner there with you?
MR. KARCIS: Same objections.
A. Yes, he was.
Q. Are you involved in any sales or marketing functions for Nihon Kohden?
MR. KARCIS: Same objections.
A. No.
Q. I believe you testified earlier that you were involved in the production of certain advertisements and trade journals in response to Astro-Med's discovery request?
MR. KARCIS: Same objections.
A. I didn't produce the documents but during Gary's absence from the office, I directed his marketing person, Deidra Miltimore, what information was required.
Q. And what did you request of her?