# EXHIBIT A

Case 1:06-cv-00533-ML-DLM Document 63-5 Filed 05/09/2007 ORIGINAL D

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

ASTRO-MED, INC.,

Plaintiff,

-against- Case No. 06-533ML

KEVIN PLANT AND NIHON KOHDEN AMERICA, INC.,

Defendants.

---------------------------------------X

April 12, 2007

11:36 a.m.

DEPOSITION of DOMENIC CHILLEMI, a nonparty witness herein, taken pursuant to subpoena, and held at the offices of Goldberg Segalla, LLP, 170 Hamilton Avenue, Suite 203, White Plains, New York, before Randi Vecchione, a Court Reporter and Notary Public of the State of New York.

and -- or provide something within ten days.

MR. KARCIS: I designate the discussion regarding the discount.

MR. DUFFY: Okay.

Q. Does Nihon Kohden provide you with sales leads?

A. No.

Q. Does Nihon Kohden provide you with Nihon Kohden customer lists?

A. No.

Q. Does Nihon Kohden provide you with product literature to distribute to potential customers?

A. Yes.

Q. Does it provide you with the necessary equipment to perform demonstrations for customers?

A. Yes.

Q. Does Nihon Kohden mail information into your territory to prospective customers?

A. Yes.

Q. And do you provide the list to Nihon Kohden where those mailings should go or does

Nihon Kohden do that independently of you?
A. I do.
Q. You provide the list?
A. Uh-huh.
Q. You have to answer verbally.
A. Yes.
Q. And that would include mailings into Rhode Island; correct?
A. Yes.
Q. And how do you compile the list of prospective Nihon Kohden customers in Rhode Island?
A. Word of mouth.
Q. And with -- with regard to these mailings, Nihon Kohden makes to customers in your territory including Rhode Island those mailings are directed - directed at customers or prospective customers that you have provided a list of to Nihon Kohden?
A. Yes.
MR. KARCIS: Objection. Assumes facts not in evidence.

(An off-the-record discussion

Q. Other than what you produced in Exhibit 4, were there other customers or prospective customers, the identity of which you provided to Nihon Kohden --

A. No.

Q. -- for -- excuse me, for customers in Rhode Island?

A. No.

Q. Does Nihon Kohden -- strike that.

Have you - you - have you sold Nihon Kohden products to customers in Rhode Island?

A. Yes.

Q. Have you visited Rhode Island on behalf of Nihon Kohden?

A. Yes.

Q. How often -- well, did you visit Nihon Kohden customers in 2006 in Rhode Island?

A. Yes.

Q. How often did you go to Rhode Island in 2006 on behalf of Nihon Kohden?

A. On behalf of Nihon Kohden? Twice.

Q. And was it specifically to visit a customer of Nihon Kohden?

A. No.

Q. Was it a sales call?
A. A follow-up call.
Q. Okay. And in 2005, approximately, how many times did you visit Rhode Island on behalf of Nihon Kohden?
A. Three, maybe.
Q. And was this also a sales call of some type?
A. Yes.
Q. And - and in 2004, approximately, how many times?
A. I don't remember.
Q. Okay. Do you keep a Day-Timer?
A. No, I have my contact list. My phone is my contact list.
Q. Okay. So you have a contact list in your cell phone?
A. Yes.
Q. When did you -- prior to that -- using the cell phone, did you used to use some type of daily calendar, written daily calendar?
A. No.
Q. And do you have a contact list on your computer at home or at work?

A. Correct.
Q. And you don't have any other prospective contacts or customers of Nihon Kohden from Rhode Island in your contact list?
A. No.
Q. All right. If you look at Exhibit 4 --
A. Uh-huh.
Q. -- the first document is the March 16, 2004, quote.
A. Yes.
Q. That's the quotation of the -- of a Neuropack 9200 machine to Dr. Wishik?
A. Yes.
Q. And other assorted items; correct?
A. Correct.
Q. These are Nihon Kohden products; is that correct?
A. Yes.
Q. And did the sale occur?
A. No.
Q. Did any sale occur to Dr. Wishik?
A. No.
Q. Did you make a presentation to Dr.

Wishik in Rhode Island in connection with this quotation?

A. No.

Q. Did you -- have you ever met Dr. Wishik?

A. Yes.

Q. Did you meet him in Rhode Island?

A. Yes, I did.

Q. And when did you meet him in Rhode Island?

A. At Dr. Centofanti's office.

Q. And -- and when you met him, did you discuss the potential sale of Nihon Kohden products with him?

A. Yes.

Q. And did you -- as a result of that meeting, did you send him this quotation?

A. Yes.

Q. Turning to the next document, which is a quotation dated November 7, 2005, to Dr. Stratton, is this -- does this quotation contain a quotation for the sale of Nihon Kohden products?

A. Yes.

Q. Did you meet with Dr. Stratton in Rhode Island?

A. No.

Q. Did you talk with Dr. Stratton over the phone?

A. Yes.

Q. And when you did, did you call Rhode Island?

A. No, he called me.

Q. Okay. And had you ever talked to him before he called you with regard to this quote?

A. Not for Nihon Kohden, no.

Q. Okay. So Dr. Stratton called you from Rhode Island to talk to you about Nihon Kohden products?

MR. KARCIS: Objection. Calls for speculation.

A. If I remember correctly, Dr. Stratton wanted to get a video type system. And he called me when I was with Nickel A Biomedical. My number has not changed in 31 years, so people still call me looking for Nickel A products and I just don't sell them anymore.

Q. Well, I see. So you had known Dr. Stratton from several years ago --
A. Yes.
Q. -- when you sold other products?
A. Yes.
Q. And did Dr. Stratton buy Nihon Kohden products from you?
A. No.
Q. Looking at the next document, which is a packing slip, does this reflect the shipment of Nihon Kohden products to Dr. Centofanti?
A. Yes.
Q. So Dr. Centofanti bought equipment -- Nihon Kohden equipment --
A. Yes.
Q. -- through you?
A. Yes.
Q. Did you meet with Dr. Centofanti in Rhode Island to sell these products?
A. Yes.
Q. Did you -- how many times did you meet with him in connection with the sale and set up of this equipment?
A. Twice.

Q. Both times in Rhode Island?
A. Yes.
Q. How many times have you seen Dr. Centofanti in Rhode Island other than in connection with this particular sale?
A. Other than the connection -- five, six times.
Q. All right. And when you met with Dr. Centofanti in Rhode Island five or six times, was that related to the sale of Nihon Kohden products?
A. No, Lifeline.
Q. How many times did you meet with Mr. -- excuse me, Dr. Centofanti in Rhode Island in connection with Nihon Kohden products?
A. For this -- for this exhibit, twice. And for the quote that was sent to him, once.
Q. Okay. Looking at the next quotation, July 6, 2005, did you meet with Dr. Exil?
A. Yes.
Q. Did you meet with him in Rhode Island?
A. Yes.

Q. Did Dr. Exil purchase Nihon Kohden products through you?
A. Yes.
Q. How many times have you met with Dr. Exil in Rhode Island in connection with Nihon Kohden products?
A. Three times.
Q. I'm showing you the next document in Exhibit 4. Can you tell me what this is?
A. It's a lead from Kent Hospital for -- in Warwick, Rhode Island.
Q. And where did you get the lead from?
A. The NESS meeting.
Q. Okay. And that was the meeting in 2006 or was it 2007?
A. I think it's 2005.
Q. Was it the meeting in Rhode Island?
A. Yes.
Q. Okay. So you were present at the Northeast Sleep Society conference in Rhode Island?
A. Yes.
Q. And I believe that was 2006 --
A. But I don't remember. It changes

every year.

Q. Okay. So it was either last year or the year before?

A. Right.

Q. And while - were you were there on behalf of Nihon Kohden; is that correct?

A. Nihon Kohden and Lifeline, yes.

Q. And you had -- you manned a booth at that meeting; correct?

A. A tabletop, yes.

Q. Okay. It was a two-day conference?

A. I guess, yes, two days.

Q. It was at the Crown Plaza Hotel in Warwick?

A. Yes.

Q. Okay. And at that meeting you marketed and promoted the sale of Nihon Kohden products; is that right?

A. Yes.

Q. And during that meeting you obtained this lead that is part of Exhibit 4 from Dr. LaFortune at Kent Hospital?

A. Mr. LaFortune, yes.

Q. Mr. LaFortune.

A. No.
Q. Did Nihon Kohden pay the cost of the Sleep Society conference in Rhode Island?
A. Yes.
Q. And Nihon Kohden provided the literature and the instrumentation through you; is that correct?
A. Yes.
Q. And would you agree with me that the purpose of the -- of this - of attending the Sleep Society conference and having a booth was to promote Nihon Kohden products?
A. Yes.
Q. Looking at Exhibit 4, the next document is a February 2, 2007, quotation to Dr. Centofanti. Did you send him this quotation?
A. Yes, I did.
Q. Did you meet with Dr. Centofanti on behalf of Nihon Kohden in Rhode Island in connection with this quotation?
A. Yes, I did.
Q. And did Dr. Centofanti purchase Nihon Kohden products?
A. Still pending.

Internet if you can?

A. Right.

(Plaintiff's Exhibit 5, PRINTOUT OF WEB PAGE, was marked for identification.)

Q. I'm showing you Exhibit 5. Could you identify that for me.

A. It's my Web site.

Q. Okay. It's a printout of your Web page?

A. Yes.

Q. Okay. And the third page of Exhibit 5 contains a list entitled products?

A. Yes.

Q. Are these the products that you represent as an independent representative?

A. Yes, they are.

Q. So you represent Nihon Kohden's EEG systems?

A. Yes.

Q. And Nihon Kohden's PSG systems?

A. Yes.

Q. Nihon Kohden's EMG and nerve conduction systems?

A. Yes.

Q. Nihon Kohden's wireless EEG and PSG systems?

A. Yes.

Q. And Nihon Kohden's IOM systems?

A. Yes.

Q. And do you -- do you have this Web site so that people who may be interested in purchasing products in the sleep therapy field will find you?

A. Yes.

Q. So that you will have the opportunity, if possible, to sell them Nihon Kohden products; correct?

A. Yes.

Q. And you understand that this Web site can be viewed from Rhode Island; correct?

A. I assume so.

Q. Okay. You understand that when you -when you post your Web site that it can be viewed through the Internet --

A. From anywhere in the world.

A. Yes.

Q. And is it your ordinary practice to maintain copies of such documents as you produced today in Exhibit 4?

A. Yes. They send it to me. I keep them in folders.

Q. All right. The quotations that you provided, those are prepared by Nihon Kohden's office; is that right?

A. Gary Spangler who, I guess, is a representative of Nihon Kohden.

Q. Okay. And then does Gary Spangler provide them to you first for presentation to the customer or do they send them directly to the customer?

A. Send them directly.

Q. Okay.

A. I view them before he sends them, and then I tell him to send it.

Q. All right. So, could you explain generally how the process works when you want to submit a quotation for Nihon Kohden?

A. I make up the quote. I send it to Gary. Gary sends me a copy of it. I say it

looks good, and he sends it.
Q. Okay. So he sends it directly to the doctor?
A. Correct.
Q. And with regard to products that are shipped pursuant to sales made on the purchase orders, are those shipped directly by Nihon Kohden to the customer --
A. Yes.
Q. -- in Rhode Island?
A. Yes, they are.
Q. I - I noted I didn't see any purchase orders here. Do you get copies of the purchase orders?
A. They're there. It's the packing slips.
Q. Okay. So the packing slip is the purchase order; is that right?
A. No. Actually, if you go to Dr. Exil I think that's the only one I have that have a --
Q. Okay. I do have a purchase agreement for him.
A. Yes. It's just - it's just a signed a piece of paper saying they're going to buy it.

Case 1:06-cv-00533-ML-DLM Document 63-5 Filed 05/09/2007 Page 18 of 18



Q. Is -- is the purchase order something that generally is done directly between the doctor in Rhode Island and Nihon Kohden?

A. Yes.

Q. And you may or may not get a copy of that; correct?

A. Yes. Sometimes they send it to me. Sometimes they don't.

Q. Have you ever entertained anyone in Rhode Island on behalf of Nihon Kohden?

A. No.

Q. Have you ever taken any doctor or other prospect to lunch on behalf of Nihon Kohden?

A. No.

MR. DUFFY: I don't have any more questions.

MR. KARCIS: I have a couple of questions.

(Defendants' Exhibit A, DOCUMENT DATED 2/27/07, was marked for identification.)