UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., Plaintiff, vs. KEVIN PLANT and NIHON KOHDEN AMERICA, INC., Defendants. | : | C.A. No. 06-533 ML |

**PLAINTIFF ASTRO-MED, INC.'S PRETRIAL MEMORANDUM**

Plaintiff, Astro-Med, Inc. ("Astro-Med"), submits its Pretrial Memorandum pursuant to this Court's February 5, 2007 Pretrial Order.

## I. SUMMARY OF PLAINTIFF'S EXPECTED PROOF

Astro-Med, a Rhode Island-based company, manufactures and sells specialized medical equipment, including electroencephalographs, polysomnographs, and equipment that performs long-term monitoring for epilepsy. In this action, Astro-Med seeks an injunction prohibiting defendant Kevin Plant ("Plant"), a former Astro-Med employee, from violating the terms of the non-compete and non-disclosure provisions of his employment agreement with Astro-Med. Astro-Med also seeks an award of the damages caused by Plant's breach of that agreement, his unfair competition, his employer Nihon Kohden America, Inc.'s ("Nihon Kohden") interference with Plant's contractual obligations to Astro-Med, and Plant and Nihon Kohden's misappropriation of Astro-Med's trade secrets and confidential business information.

When Astro-Med hired Plant in 2002 as a product specialist, he had no experience marketing or selling medical equipment, including the specialized equipment sold by Astro-Med. As a condition of his employment with the company, Plant signed an employee agreement that

contains a one-year non-compete clause and a non-disclosure of confidential information clause that continues in perpetuity. After obtaining Plant's agreement to the restrictive covenants in his employment agreement, Astro-Med invested the time and resources required to educate Plant about the company's industry and technology and to train him to perform his job. Plant was given formal training developed and provided by Astro-Med. Astro-Med also paid for his continuing education toward a college degree. As a product specialist Plant traveled extensively with Astro-Med sales and technical personnel, performing product demonstrations, installations and other services for Astro-Med customers and potential customers.

After two years, Plant requested and received a promotion to District Manager in the Southeastern sales territory, which includes Florida. Astro-Med provided Plant with its customer information and periodically forwarded him leads for potential customers in his territory. As a product specialist and, later, a sales representative, Plant was exposed to Astro-Med's confidential and proprietary information regarding its marketing and sales strategies, its product pricing, its new products and products in development, and its customers and prospects. After four years with Astro-Med, and based on the training and experience provided by Astro-Med, Plant's annual compensation at Astro-Med was over three times what it had been before he joined the company.

In September 2006, Plant resigned from Astro-Med and denied, when asked by his Astro-Med supervisor, that he was leaving to work for a competitor. After he left, Astro-Med learned that Plant had been hired by Nihon Kohden, a competitor, to sell products in Florida in direct competition with Astro-Med.

Astro-Med expects to prove the following in support of its claims against Plant and Nihon Kohden:

**A.** **Everett V. Pizzuti**, the President of Astro-Med, is expected to testify regarding the highly specialized and competitive nature of Astro-Med's business in the product line that Plant was involved in as an Astro-Med employee. He will explain the importance to Astro-Med of having restrictive covenants in all employee agreements to protect Astro-Med's legitimate business interest in preserving its confidential information, its goodwill, and the investment it makes in its employees and products. He will describe the steps Astro-Med takes to protect its confidential business information. Mr. Pizzuti will detail the investment Astro-Med made in Plant's education and training, and how Plant concealed the fact that he was leaving Astro-Med to work for a competitor. He also will testify regarding the nature and extent of Plant's breach of contract and unfair competition, Nihon Kohden's interference with Plant's employment agreement, Plant and Nihon Kohden's misappropriation of Astro-Med's trade secrets and confidential business information, and the damages caused by those acts.

**B.** **Marc Paliotta**, Product Manager at Astro-Med, is expected to testify about his work with Plant at Astro-Med, including the training Astro-Med provided to Plant, Plant's responsibilities and activities as a product specialist, and the nature of the proprietary and confidential information Astro-Med provided to Plant in the course of his work.

**C.** **Marco Mancini**, Astro-Med's National Sales Manager, is expected to testify about his work with Plant at Astro-Med, including the training Astro-Med provided to Plant, Plant's responsibilities and activities as a product specialist and District Manager, and the nature of the proprietary and confidential information Astro-Med provided to Plant in the course of his work. He will describe how Plant denied that he was leaving Astro-Med to join a competitor.

Mr. Mancini also is expected to testify regarding Nihon Kohden's status as a competitor of Astro-Med's in the product lines sold by Plant, and the damages resulting from the defendants' actions.

**D.** **Kevin Plant**, the defendant, is expected to testify regarding his lack of experience and training in sales of capital medical products prior to joining Astro-Med, his employment and compensation before joining Astro-Med, the circumstances of his signing his employment agreement with Astro-Med, his work at Astro-Med, his subsequent employment by Nihon Kohden, misrepresentations he made to Nihon Kohden, and his failure to comply with the Amended Modified Interim Injunction Order.

**E.** **Michael Osawa**, Director of Operations for Nihon Kohden, is expected to testify regarding Plant's knowledge and skill and another instance in which Nihon Kohden was sued for hiring an employee subject to a non-compete with his former employer. He also is expected to testify that Nihon Kohden sells products that do not compete with Astro-Med products, as well as those that do compete.

**F.** **Gary Reasoner**, the Director of Nihon Kohden's Neurology Business Group, is expected to testify that Astro-Med is a competitor of Nihon Kohden in the sleep market. He is also expected to testify that the Nihon Kohden considers the following information to be confidential: its customer list, information about certain products under development, and the prices at which Nihon Kohden sells its products. He will be examined regarding the decision to hire Plant, the quota assigned to Plant in his territory, and Plant's performance as a salesperson for Nihon Kohden.

## II. MEMORANDUM OF SUPPORTING LAW

### A. Breach of Contract

To prevail on its claim for breach of contract against Plant, Astro-Med must establish the enforceability of Plant's employee agreement and Plant's violation of the agreement's non-compete and non-disclosure provisions. Astro-Med must show that (1) the non-compete provision is ancillary to an otherwise valid employment relationship; (2) the provision is supported by adequate consideration; (3) the provision protects Astro-Med's legitimate business interests; and (4) the provision is reasonable in time and scope. *See Durapin, Inc. v. American Prods., Inc.*, 559 A.2d 1051, 1053 (R.I. 1989). Astro-Med also must show that the non-disclosure provision is reasonable in scope and purpose. *See Nestle Food Co. v. Miller*, 836 F. Supp. 69, 76-77 (D.R.I. 1993). Astro-Med's evidence at trial will establish both the validity of the restrictive covenants and Plant's breach of his employment agreement.

The non-compete and non-disclosure provisions of Plant's employment agreement are ancillary to his employment with Astro-Med because Plant signed the agreement when he joined Astro-Med and the provisions of the agreement are part of Plant's overall employment relationship with the company. *See Cranston Print Works Co. v. Pothier,* 848 A.2d 213, 220 (R.I. 2004). Plant's employment by Astro-Med was conditioned upon his signing the employment agreement. Under Rhode Island law, employment is valid consideration to support restrictive covenants in an employment agreement. *Nestle*, 836 F. Supp. 77.

The post-employment restrictions contained in Plant's agreement with Astro-Med protect Astro-Med's legitimate business interests. Astro-Med has a well-recognized interest in preventing disclosure and use by former employees of its proprietary and confidential business information. *Home Gas Corp. of Mass. v. DeBlois Oil Co.*, 691 F. Supp. 567, 574 (D.R.I. 1987).

Nihon Kohden does not dispute that pricing, product and customer information is confidential in this industry. In addition, Astro-Med is justified in protecting the investment it made in educating and training Plant regarding its highly specialized industry and product line. Specialized or unique training is a legitimate business interest, and a non-compete provision may be enforced to prevent a specially trained employee from using that training in his or her work for a competitor. *See Dial Media, Inc. v. Schiff*, 612 F. Supp. 1483, 1489 (D.R.I. 1985).

The post-employment restrictions contained in Plant's agreement are properly tailored to protect Astro-Med's legitimate business interests. The agreement prohibits competitive activity for a one-year period. A one-year non-compete is reasonable, particularly where, as here, there is evidence that it would take the former employer that long to minimize the loss of an employee with extensive product training. *See Hekimian Lab, Inc. v. Domain Sys., Inc.*, 664 F. Supp. 493, 498 (S.D. Fla. 1987); *see also Nestle,* 836 F. Supp. at 75-76; *Van Dyck Printing Co. v. Dinicola,* 648 A.2d 898, 902 (Conn. Super. 1993).

Plant's non-compete prohibits post-employment competitive activity in North America and Europe, the region in which Astro-Med sells the products at issue in this case. While at Astro-Med, Plant had access to information about all those products and sales. Moreover, as a product specialist, he traveled extensively to Astro-Med's customers throughout the United States. But even if he had not traveled, his knowledge of and training with Astro-Med products and his knowledge of Astro-Med's marketing and pricing strategies and other proprietary information would make him a formidable competitor in any region where Astro-Med is doing business. These facts would support enforcement of the non-compete according to its terms.[1]

---

[1] *Roanoke Engineering Sales Company v. Rosenbaum*, 290 S.E.2d 883 (Va. 1982) (enforcing non-compete in all regions where former employer does business on the grounds that the former employee's knowledge of the former employer's pricing techniques and other financial information would make him a "formidable competitor" in all regions, not just the region where the former employee was located).; *see also Marcam Corp. v. Orchard*, 885 F.

However, Astro-Med is only seeking to enforce the non-compete against Plant in Florida – the territory into which he is selling for Nihon Kohden. It is reasonable to restrain a salesperson from post-employment competition in the territory he represented for his former employer. *See Allen v. Creative Services,* 1992 WL 813643 (R.I. Super.); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 389 S.E.2d 467, 469 (Va. 1990)(upholding territory-wide restriction that permitted former medical equipment sales person to sell non-competing medical equipment within the territory).

Because Plant's employment agreement is ancillary to his employment at Astro-Med and was supported by adequate consideration, and because the restrictive covenants Astro-Med seeks to enforce are reasonable to protect its legitimate business interests, Plant's employment by Nihon Kohden selling competitive products in Florida constitutes a breach of his agreement with Astro-Med.

### B. Unfair Competition

Under Rhode Island common law, a claim for unfair competition lies against a former employee who uses his former employer's confidential and proprietary business information to give a competitive advantage to himself and/or his new employer. *See Abbey Medical/Abbey Rents, Inc. v. Mignacca*, 471 A.2d 189, 193 (R.I. 1984); *Rego Displays, Inc. v. Fournier*, 379 A.2d 1098, 1101-1102 (R.I. 1977). Astro-Med will produce evidence at trial that Plant misappropriated Astro-Med's protected information and shared it with and used it for the benefit of his new employer, Nihon Kohden.

Supp. 294, 299 (D. Mass. 1995) (upholding geographic restriction covering all of United States and stating that "a geographic restriction is reasonable so long as it restricts a former employee from doing business in an area in which the company itself conducts business").

### C. Misappropriation of Trade Secrets and Confidential Information

To prevail on its claim under Rhode Island General Laws § 6-41-1 *et seq.* , Astro-Med must show that Plant and Nihon Kohden misappropriated its trade secrets. The Rhode Island Uniform Trade Secrets Act defines "trade secrets" as information, patterns, compilations, programs, devices, methods, techniques or processes that derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can derive economic value from its disclosure and use and which is the subject of reasonable efforts to maintain its secrecy. R.I. Gen. Laws § 6-41-1(4). Astro-Med will demonstrate at trial (1) the proprietary nature of its products under development, and of its marketing, pricing and customer information; (2) that these trade secrets would have economic value for Nihon Kohden; (3) that Astro-Med took reasonable steps to protect the trade secrets; and (4) that Nihon Kohden hired Plant knowing he had been exposed to Astro-Med's trade secrets while he was subject to the non-compete and non-disclosure provisions of his employee agreement. The evidence will show that Plant and Nihon Kohden used Astro-Med's trade secrets for the benefit of Nihon Kohden.

### D. Interference with a Contractual Relationship

Astro-Med has sued Nihon Kohden for damages resulting from its interference with Plant's contractual relationship with Astro-Med. On this claim, Astro-Med must prove (1) the existence of a contractual relationship between Astro-Med and Plant; (2) that Nihon Kohden knew about the relationship; and (3) that Nihon Kohden intentionally interfered with the relationship. *E.g., Mesolella v. City of Providence*, 508 A.2d 661, 669 (R.I. 1986).

Documents produced by Nihon Kohden prove that it was aware of Plant's employment agreement and the restrictive covenants contained in the agreement. Its decision to hire Plant for a competing position notwithstanding those covenants constitutes actionable intentional

interference with the agreement. *See, e.g., McFarland Read & Lundy, Inc. v. Brier*, 1998 WL 269223, *6-7 (R.I. Super. 1998).

**E. Permanent Injunctive Relief**

Astro-Med also seeks the issuance of a permanent injunction (1) preventing Plant and Nihon Kohden from using or disclosing Astro-Med's trade secrets and proprietary and confidential business information and (2) prohibiting Plant for one year from the date judgment enters from engaging in any sales activity in Florida on behalf of Nihon Kohden if such activity involves the types of products Plant sold for Astro-Med.

Whether an injunction should be granted is a matter reserved to the sound discretion of the Court. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d at 317, 326 (D.R.I. 1999). The criteria used to determine the merit of a plaintiff's request for a permanent injunction are largely the same as those used to judge the adequacy of a request for a preliminary injunction. A plaintiff must establish: (1) that irreparable harm will result if the injunction is not granted; (2) that the harm plaintiff will suffer if the injunction is not granted outweighs the harm the defendant will suffer if the injunction is granted; (3) that the plaintiff is entitled to a judgment on the merits of the case; and (4) that the injunction is not adverse to the public interest. *Id.* at 317; *see also AFL-CIO Laundry & Dry Cleaning Int'l Union v. AFL-CIO Laundry*, 70 F.3d 717, 718 (1st Cir. 1995) (listing the criteria used in considering a preliminary injunction).

The loss of goodwill that results when former employees compete with their former employers in violation of restrictive covenants constitutes an irreparable harm that justifies injunctive relief. *Allen*, 1992 WL 813643, *citing Leone v. Town of New Shoreham,* 534 A.2d 871, 874 (R.I. 1987). This harm far outweighs the harm Plant would face if an injunction were to issue. Astro-Med is only seeking to enforce the covenant against competitive activity in

Florida. If granted, Plant would be free to sell competitive products elsewhere or to sell non-competitive products in Florida. Thus, his ability to make a living as a salesperson is not foreclosed; rather, it is restricted in a manner reasonable to protect Astro-Med's legitimate business interests.

For these reasons, Astro-Med expects to establish at trial that it is entitled to enforce Plant's non-compete agreement to preclude Plant from selling competing products for Nihon Kohden anywhere in Florida. Although the Court initially imposed a state-wide restriction against Plant's competition, it subsequently amended the injunction to permit Plant to sell competing equipment in Florida provided he did not "contact, market, or sell" to Astro-Med customers.[2] If Astro-Med succeeds in establishing to the Court's satisfaction that a state-wide restriction was reasonable, then Astro-Med should be provided with prospective enforcement of the covenant. Although not previously addressed under Rhode Island law, other courts have concluded that prospective enforcement of a covenant not to compete is appropriate to provide a former employer with the full relief to which it is entitled. In *Roanoke Engineering,* the Virginia Supreme Court noted that in the absence of prospective enforcement, the former employee is able " not only to reap the profits of its breach, but also to render the judicial system impotent to address it." 290 S.E. 2.d at 886. Significantly, Florida is among the other states that have recognized an employer's entitlement to prospective enforcement of a valid non-compete. *See Capelouto v. Orkin Exterminating Co. of Fla.,* 183 So. 2d 532, 534 (Fla. 1966) (affirming prospective enforcement to provide former employer with the two competition-free years required by the non-compete); *Kverne v. Rollins Protective Servs. Co.*, 515 So. 2d 1320, 1321

[2] The Order defined the off-limit Astro-Med customers to be those who ordered or received products from Astro-Med on or after July 1, 1999 and prospective customers on any lead list provided to Plant within 90 days before he left Astro-Med.

(Fla. Dist. Ct. App. 1987). Based on the rationale of these cases, Astro-Med will ask the Court after trial to enter a permanent injunction prohibiting Plant from competitive activity in Florida for a period of one year in order to provide Astro-Med with the relief contemplated by Plant's employee agreement.

## III. LENGTH OF TRIAL

Plaintiff expects the trial will last 2-3 days.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Stacey P. Nakasian

Craig M. Scott, Esq. (# 4237)
cscott@duffysweeney.com
Stacey P. Nakasian (#5069)
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

Dated: November 13, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within ***Pretrial Memorandum*** was filed through the ECF system on the 13th day of November, 2007, and will be sent electronically to the counsel-named below whom is a registered participant identified on the Notice of Electronic Filing:

Bruce W. Gladstone, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq.

Astro-Med/Plant/Pleadings/Pretrial Memo 11-14-07