# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ASTRO-MED, INC.,

Plaintiff,

v.

C.A. No. 06-533-ML

KEVIN PLANT; NIHON KOHDEN AMERICA, INC.

Defendants.

## PRE-TRIAL MEMORANDUM OF DEFENDANT, KEVIN PLANT

Defendant, Kevin Plant ("Plant"), through his counsel, hereby submits this Pre-Trial Memorandum pursuant to Federal Rules of Civil Procedure 16.

KEVIN PLANT
By His Attorneys,

/s/ Bruce W. Gladstone
Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
PHONE: (401) 331-5700
FAX: (401) 331-5787

/s/ E.P. Michael Karcis
E.P. Michael Karcis, Esq.
michael@mcleanfirm.com
McLean & McLean LLP
3001 2nd St., Suite E
Santa Monica, CA 90405
PHONE: (310) 450-9353
FAX: (310) 581-8006

Date: November 13, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ASTRO-MED, INC.,

Plaintiff,

v.

C.A. No. 06-533-ML

KEVIN PLANT; NIHON KOHDEN AMERICA, INC.

Defendants.

## I. STATEMENT OF EXPECTED TESTIMONY[1]

On October 16, 2002, defendant Kevin Plant signed a document entitled "Employee Agreement." The Employee Agreement contained a non-competition provision, which stated that post-employment competition with Astro-Med "in a territory consisting of North America, and Europe" was prohibited.[2]

In 2004, defendant Kevin Plant's position with Astro-Med substantially changed when he moved, from a position as a product specialist in Rhode Island, to a salesman position in Florida. Following Mr. Plant's change of position and move to Florida, no new "Employee Agreement" or non-competition agreement was executed. In 2006, the terms of Mr. Plant's employment with Astro-Med were again materially changed when Astro-Med unilaterally decreased Mr. Plant's

[1] Based on the expected testimony, Mr. Plant will separately request that this Court allow Mr. Plant to file a motion for summary judgment. The request will be based in part on the fact that the depositions of Astro-Med's representatives on October 18, 25 and 26, 2007, which depositions took place after the dispositive motion cut off date (October 19, 2007).

[2] This Court determined that the geographic restriction of the non-competition agreement was overly broad and unenforceable. Thus, this Court, refused to enforce the non-competition agreement as written. Instead, this Court has limited the geographic restriction to only Florida. *See* this Court's May 8, 2007 Amended Modified Preliminary Injunction Order. This restriction expires on December 28, 2007.

Southeastern regional sales territory, giving a portion of Mr. Plant's territory to an untrained salesperson. Again, Astro-Med did not require Mr. Plant to execute a new non-competition agreement.

Because Astro-Med unilaterally, materially and negatively altered the terms and conditions of his employment, Mr. Plant began to seek new employment and, eventually, contacted Nihon Kohden. In or about November 2006, Nihon Kohden, a California corporation, hired Mr. Plant, then and currently a Florida resident, as a salesperson in Florida to sell its electroencephalograph (EEG) equipment, polysomnograph (PSG) equipment, and long-term monitoring for epilepsy (LTM) equipment in Florida. Before hiring Mr. Plant, Nihon Kohden confirmed, in writing, that Mr. Plant was not to use any trade secret or confidential information belonging to Astro-Med.

On December 1, 2006, Astro-Med filed an action in Rhode Island state court against only Mr. Plant. In the action, Astro-Med claimed that Mr. Plant breached a non-competition agreement. Mr. Plant removed the case to this Court on December 7, 2007.

On December 19, 2006, Mr. Plant offered to settle the claim against him. In his December 19 settlement letter,[3] Mr. Plant agreed to restrictions on his employment with Nihon Kohden and the restrictions offered are nearly identical to those set forth in this Court's February 17, 2007 Amended Preliminary Injunction Order.[4] However, Astro-Med did not respond to Mr. Plant's settlement offer, despite the fact that Astro-Med has settled other claims of alleged violations of non-competition agreements based on the same terms that Mr. Plant offered. Instead, Astro-Med chose to pursue an expensive course of litigation, even though by doing so it

---

[3] A copy of Mr. Plant's December 19 settlement letter is attached hereto as **Exhibit A**.
[4] The current, applicable order is this Court's May 8, 2007 Amended Modified Preliminary Injunction Order.

has obtained nothing greater than offered in the December 19 settlement letter. In fact, Astro-Med has a non-competition agreement that this Court held was overly broad, has no evidence that Mr. Plant has disclosed or used Astro-Med's trade secret or confidential information, has no evidence that Nihon Kohden has acquired or, even, expressed any interest in Astro-Med's trade secret or confidential information, and has no evidence supporting any legal claim for damages. All Astro-Med has obtained from pursuing its claims against Mr. Plant is an inordinate attorneys' fee bill.

## II. SUMMARY OF WITNESS TESTIMONY

Mr. Plant expects the following witnesses to testify to the facts set forth above.

A. Kevin Plant – Mr. Plant will testify about his employment with Astro-Med, the reasons he terminated his employment with Astro-Med, his hiring by Nihon Kohden, and his current employment with Nihon Kohden. Mr. Plant is also expected to testify about the failure of Astro-Med to enforce its non-competition agreement against other former Astro-Med employees. Mr. Plant is not expected to testify as an expert witness.

B. Michael Ohsawa – Mr. Ohsawa will testify about Nihon Kohden's hiring and current employment of Mr. Plant. Mr. Ohsawa will also testify about Nihon Kohden's lack of business contacts with the State of Rhode Island. Mr. Ohsawa is not expected to testify as an expert witness.

C. Gary Reasoner – Mr. Reasoner will testify about Nihon Kohden's hiring and current employment of Mr. Plant. Mr. Reasoner will also testify about Nihon Kohden's lack of business contacts with the State of Rhode Island. Mr. Reasoner is not expected to testify as an expert witness.

D. Everett Pizzuti – Mr. Pizzuti will testify about Mr. Plant's employment with Astro-Med. Mr. Pizzuti will also testify about Astro-Med's selective enforcement of its non-competition agreements, Astro-Med's failure to mitigate its damages, the lack of evidence that Mr. Plant has disclosed Astro-Med's trade secret or confidential information, and the lack of damages sustained by Astro-Med. Mr. Pizzuti is not expected to testify as an expert witness.

E. Marcus Mancini – Mr. Mancini will testify about Mr. Plant's employment with Astro-Med. Mr. Mancini will also testify about Astro-Med's selective enforcement of its non-competition agreements, Astro-Med's failure to mitigate its damages, the lack of evidence that Mr. Plant has disclosed Astro-Med's trade secret or confidential information, and the lack of damages sustained by Astro-Med. Mr. Mancini is not expected to testify as an expert witness.

F. Marc Paliotta – Mr. Paliotta will testify about Mr. Plant's employment with Astro-Med. Mr. Paliotta will also testify about Astro-Med's selective enforcement of its non-competition agreements, Astro-Med's failure to mitigate its damages, the lack of evidence that Mr. Plant has disclosed Astro-Med's trade secret or confidential information, and the lack of damages sustained by Astro-Med. Mr. Paliotta is not expected to testify as an expert witness.

G. Guy Casler – Mr. Casler will testify about his employment with Astro-Med. Mr. Casler will also testify about Astro-Med's selective enforcement of its non-competition agreements. Mr. Casler is not expected to testify as an expert witness.

H. Darren Jones – Mr. Jones will testify about his employment with Astro-Med. Mr. Jones will also testify about Astro-Med's selective enforcement of its non-competition agreements. Mr. Jones is not expected to testify as an expert witness.

I. Rob Safron – Mr. Safron will testify about his employment with Astro-Med. Mr. Safron will also testify about Astro-Med's selective enforcement of its non-competition agreements. Mr. Safron is not expected to testify as an expert witness.

J. Frederick Plant – Mr. Plant will testify about Astro-Med's selective enforcement of its non-competition agreements. Mr. Plant is not expected to testify as an expert witness.

## III. MEMORANDUM OF LAW

### A. The Non-Competition Agreement Is Unenforceable

#### 1. Fundamental Changes in Mr. Plant's Employment Status Voided the Non-Competition Restriction

When there is a fundamental change in the employment relationship, prior employment agreements, including non-competition agreements, are voided. *See*, *e.g.*, AFC Cable Sys. v. Clisham, 62 F. Supp. 2d 167, 172-73 (D.Mass. 1999) (applying Massachusetts law). In Clisham, the defendant's former employer sought to enforce a 1992 non-competition agreement against the defendant when the defendant left to work for a competitor. *Id.*, at 170. However, the defendant's position with the plaintiff had changed in 1994 when he was promoted from Sales Consultant to Sales Manager. *Id.* **The Clisham court stated that the change in the defendant's employment relationship with the plaintiff "[made] it clear that [the defendant] entered a new relationship with [the plaintiff], thereby voiding the 1992 [Non-Competition] Agreement."** *Id.*, at 173 (emphasis added).

During the course of Mr. Plant's employment with Astro-Med, *two* fundamental changes in his employment status occurred after he executed the Employee Agreement. First, in 2004, Mr. Plant's position fundamentally changed, from "Product Specialist" in Rhode Island (his position at the time of his hire in 2002), to a salesperson position in Florida. The Employee Agreement may have arguably covered Mr. Plant's position as a Product Specialist, but by its

express terms did not apply to salespersons. Moreover, no such employee agreement ever existed in connection with Mr. Plant's sales position. Second, in June 2006, Astro-Med again substantially and unilaterally changed Mr. Plant's employment relationship, when it cut a significant portion of his sales territory -- and therefore his earning potential -- and assigned it to another, untrained salesperson. As a result of these fundamental changes, the non-competition provision in the Employee Agreement is void and unenforceable against Mr. Plant.

### 2. Astro-Med's Breach of the Employee Agreement Voided Any Obligations Mr. Plant Had Pursuant to the Agreement

Astro-Med's substantial reduction of Mr. Plant's sales territory breached the Employee Agreement and directly led to Mr. Plant leaving Astro-Med's employment.

In Lantor, Inc. v. Ellis 1998 Mass. Super. LEXIS 560, the defendant executed a non-competition agreement while employed as a salesperson by the plaintiff. Thereafter, the plaintiff unilaterally changed the defendant's sales commission compensation. *Id.*, at 5. Denying the plaintiff's motion for a preliminary injunction, the Lantor court stated, "'It is well established that a material breach by one party excuses the other party from further performance under the contract.' [Citation.] **It is also plain that a material breach of an employment agreement by an employer may discharge an employee from further obligation under a non-competition provision of that agreement.** [Citation.]" *Id.*, at 23 (emphasis added).

In Dialogo, LLC v. Bauza, 456 F. Supp. 2d 219, 226 fn. 4 (D.Mass. 2006), the plaintiff sought to enforce a non-competition provision against the defendant, its former employee, who had left to work for a competitor. The defendant claimed that the plaintiff failed to fully compensate him for his employment, which was an obligation separate from the non-competition agreement that the defendant executed. *Id.*, at 223. Granting the defendant's motion for summary judgment, the Dialogo court, citing Lantor, stated, **"Accordingly, [the plaintiff]'s material breach of [the defendant]'s employment agreement excuses [the defendant] from any obligation to refrain from competition."** *Id.*, at 226 fn. 4 (emphasis added).

Astro-Med's 2006 unilateral and drastic reduction in Mr. Plant's sales territory was a material breach of Mr. Plant's employment relationship with Astro-Med, and thus excuses Mr. Plant from any contractual obligation he may have had to refrain from competition.

### 3. The Non-Competition Agreement is Unenforceable Because it Does Not Protect Legitimate Business Interests

The elements that must be established by a party seeking to enforce a non-competition provision are:

(1) the non-compete clause is an ancillary provision to a valid transaction or relationship, such as an employment contract;

(2) the non-compete provision is independently supported by adequate consideration; and

(3) a legitimate business interest exists that the non-compete provision is designed to protect.

Durapin, Inc. v. American Prods., 559 A.2d 1051, 1053 (R.I. 1989). Astro-Med's Employee Agreement fails this test.

"Protection of confidential information and goodwill" are the only legitimate interests the moving party may establish by the evidence. Nestle Food Co. v. Miller, 836 F. Supp. 69, 75 (D.R.I. 1993). The former employer's mere desire to be free from competition, by itself, is not a "protectable interest." *Id.*, 836 F. Supp. at 75, n.19. An example of a protectable interest is specialized training provided by an employer to teach an employee to perform special tasks or peculiar services. Dial Media, Inc. v. Schiff, 612 F. Supp. 1483, 1489 (D.R.I. 1985). Denying the plaintiff-former employer's motion for a preliminary injunction, the Dial court stated:

> Plaintiff has not demonstrated that Defendant gained any unfair competitive advantage due to his former employment at Dial Media, any more than a stranger would have, who had [the defendant]'s background and experience. **Since an employee is entitled to use general knowledge**

> **and expertise learned during his employment to continue his livelihood, Plaintiff has no interest in Defendant's future productivity to protect.**

*Id.*, at 1491, fn. 5 (emphasis added). Accordingly, Astro-Med must demonstrate that its non-compete provision was designed to safeguard a protectable interest, such as the protection of confidential information or to safeguard investments in employee specialized training.

Astro-Med's Employee Agreement claims that Astro-Med was seeking to protect the "design, development or manufacture of [Astro-Med's] products." However, Astro-Med's does not have sufficient evidence to establish that its Employee Agreement safeguarded protected interests. Accordingly, Astro-Med's "Employee Agreement" is not enforceable against Mr. Plant.

**4. The Non-Competition Restriction is Overly Broad**

Even if the non-competition provision is deemed enforceable[5] and Astro-Med establishes a legally cognizable interest to protect, the non-competition agreement is excessive and overly broad, and thus unenforceable. As the Rhode Island District Court in Nestle Food Co. v. Miller, 836 F. Supp. 69 (D.R.I. 1993) explained, more balanced restrictions exist to protect both the former employer's legitimate business interests and the former employee's right to continue working:

> "[I]nstead of going to the extreme of prohibiting its salesmen from working for a competitor for one year, a more effective, practical and fair way for Nestle to protect this customer base is to prohibit its former salesman from: 1) ever revealing or using any 'confidential information' learned while at Nestle, and 2) soliciting the salesman's former customers for the period of one year. This modified provision gives Nestle's new salesman a fair chance to maintain his predecessor's 'customer base' by

[5] The non-competition provision cannot be found to be enforceable because this Court has already determined that the provision was unenforceably overly broad.

> preventing the former salesman from taking advantage of the special relationship the former salesman shares with Nestle customers, it protects Nestle's confidential information, and it gives the former Nestle salesman a chance to start fresh in a new company."

Nestle, *supra*, 836 F. Supp. at 76. Under Nestle, any enforcement of Astro-Med's extreme and overbroad non-competition restriction against Mr. Plant would be improper by failing to strike a fair balance of the competing interests of the former employer (as to its proprietary information) and the former employee (who has a right to work for a new company).

Moreover, this Court has recognized by that Astro-Med's non-competition restriction is unenforceable due to overbreadth. This determination is in line with the court in Nestle, which held that the restricted territory should be "no broader than the territory covered by the salesman when he worked for Nestle." *Id.*, at 75. The Employee Agreement's competitive restriction throughout North America and Europe is a grossly overbroad geographic restriction that is unenforceable. *See*, *e.g.*, Dryvit Sys. v. Healy, 1989 R.I. Super. LEXIS 105, *13-*15 (holding that when a "restrictive covenant proscribes an activity, a geographic or a time restraint that is more extensive than what is necessary to protect his legitimate interests, it is unreasonable"). In fact, Mr. Plant could not have breached the non-competition agreement when he went to work for Nihon Kohden, because the agreement was not enforceable without judicial modification.

**5. Astro-Med's Selective Enforcement of its Non-Competition Agreements Make it Void as Against Mr. Plant**

In this action, Astro-Med is seeking to enforce a non-competition restriction that it has unilaterally selected to enforce against Mr. Plant, but has selected not to enforce against other of its former employees. Specifically, Astro-Med has not enforced the same non-competition restriction against Guy Casler, Darren Jones and Rob Safron, all of whom work for competitors of Astro-Med.

In Narragansett Coated Paper Corp. v. LaPierre, 1998 R.I. Super. LEXIS 75, the court denied the plaintiff-former employer's request for injunctive relief where the defendant-former employee resigned to work for one of the plaintiff's competitors. The central reason for the Narragansett court's denial of injunctive relief was:

> [T]he plaintiff has failed to prove that the drastic relief it seeks is reasonably necessary to protect the confidentiality of its unique products and processes. The plaintiff has utterly failed to protect itself from post-employment disclosure of its confidential information by other of its employees, who are far more knowledgeable of that information than the plaintiff. Almost none of the key employees of the plaintiff have executed a non-competition agreement. Singling out employees at relatively low levels of employment, such as that of the defendant, rather than those at the middle and upper levels, for post-employment non-competition agreements suggests that the purpose of those agreements is not so much to protect an employer's trade secrets . . . .

*Id.*, at 9. Likewise, Astro-Med has failed to prove that the drastic relief it seeks is reasonably necessary to protect any alleged confidential information, and has failed to enforce identical non-competition restrictions, opting not to enforce such draconian restrictions against other sales people who left its employment shortly before or after Mr. Plant.

**B. Astro-Med Failed to Mitigate its Damages**

On December 19, 2006, well before this Court determined to impose, through December 28, 2007, certain non-competition restrictions on Mr. Plant's employment (while still permitting him to work for Nihon Kohden), Mr. Plant offered to settle this action under terms nearly identical to those set forth in this Court's February 17, 2007 Modified Preliminary Injunction Order. However, Astro-Med did not respond to the December 19 settlement offer, as well as other settlement overtures, and since that time has incurred no damages other than legal fees in

prosecuting its action against Mr. Plant and Nihon Kohden. Thus, Astro-Med has failed to take affirmative steps to minimize or otherwise to mitigate its alleged damages.

In Reyes v. Banco Santander de P.R., N.A., the defendant made multiple settlement offers, all of which the plaintiff rejected. *Id.*, at 1445-46. The defendant went to trial asserting defenses that included the failure to mitigate damages. *Id.*, at 1446. At trial, the plaintiffs prevailed at trial on their claims and received a net jury award that was nearly identical to the defendant's highest settlement offer. *Id.*, at 1445. However, because the plaintiff's failed to mitigate their damages by accepting the defendant's early settlement offers, the Reyes court denied the plaintiff's motion for attorney fees. *Id.*, at 1447.

**C. There Is No Evidence of Trade Secret Misappropriation**

Astro-Med has confirmed that it has no evidence that Mr. Plant has used or disclosed any of Astro-Med's trade secret or confidential information since Mr. Plant terminated his employment with Astro-Med.

In Dial Media, *supra*, 612 F. Supp. at 1489, because the court found that the plaintiff had not established that its former employee "used trade secrets to acquire an unfair advantage to Dial Media's detriment," it denied the plaintiff's motion for a preliminary injunction. Explaining its holding, the Dial Media court stated:

> [T]he only interest which Plaintiff could assert is the desire to be free of competition from its former employee, who had engaged in the activity which Plaintiff seeks to prohibit before coming to work for Dial Media. **This interest is not a protectable one since in the absence of trade secret abuse, misappropriation of good will, or other damage Plaintiff is simply attempting to restrain competition which is in this instance an unreasonable restraint on trade.**

*Id.* (emphasis added; citation omitted).

In this action, Astro-Med is seeking to stymie competition, because it has admitted that it has no evidence that Mr. Plant has used or disclosed any of Astro-Med's trade secret or confidential information.

## IV. CONCLUSION

Based upon the foregoing, the non-competition restriction in the Employee Agreement is not enforceable against Mr. Plant. Moreover, Mr. Plant has not used or disclosed any of Astro-Med's trade secrets or confidential information. In fact, Astro-Med has admitted that no such use or disclosure was made. Thus, Astro-Med has not sustained any legally cognizable damages. Astro-Med claims only that it has sustained legal fees as an item of damages. However, Astro-Med failed to mitigate its damages when it refused to settle its claims only two weeks after filing its lawsuit against Mr. Plant when Mr. Plant offered to settle Astro-Med's claims based on nearly identical terms to those made part of this Court's Amended Injunction Order. At most, Astro-Med's only reasonable claim for damages is the attorneys' fees it incurred to December 19, 2006, the date of Mr. Plant's settlement offer. Thus, Mr. Plant expects to prevail on his defenses against Astro-Med's claims.

KEVIN PLANT
By Its Attorneys,

/s/ Bruce W. Gladstone

Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
PHONE: (401) 331-5700
FAX: (401) 331-5787

/s/ E.P. Michael Karcis

E.P. Michael Karcis, Esq.
michael@mcleanfirm.com
McLean & McLean LLP
3001 2nd St., Suite E
Santa Monica, CA 90405
PHONE: (310) 450-9353
FAX: (310) 581-8006

Date: November 13, 2007

CERTIFICATION

The undersigned hereby certifies that on the 13th day of November, 2007, a copy of the foregoing Pre-Trial Memo of Defendant, Kevin Plant, was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Robert M. Duffy, Esquire
rduffy@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Craig M. Scott, Esquire
cscott@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Stacey P. Nakasian, Esquire
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Building, Suite 1200
Providence, RI 02903

/s/ Bruce W. Gladstone

G:\pec\PLANT, KEVIN\Plant Pretrail Memo.doc