UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., Plaintiff, vs. KEVIN PLANT and NIHON KOHDEN AMERICA, INC., Defendants. | : | C.A. No. 06-533 ML |

**PLAINTIFF ASTRO-MED, INC.'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' JOINT EMERGENCY MOTION TO EXTEND THE MOTION CUT-OFF DATE**

Plaintiff Astro-Med, Inc. ("Astro-Med") submits this Memorandum in Support of its Opposition to the Joint Emergency Motion filed by Defendants Kevin Plant ("Plant") and Nihon Kohden America, Inc. (Nihon Kohden") to Extend the Motion Cut-Off Date. Although pretrial memoranda have been filed and the case is ready for trial, Defendants seek permission to file an untimely Motion for Summary Judgment. However, the Defendants have not presented the Court with a valid basis for potential summary judgment, much less a good excuse for their delay in filing. Their motion misstates the law and ignores genuine factual disputes which clearly preclude summary disposition of this case. The proposed motion, if allowed, would only serve to delay trial and further increase the costs of this litigation.

## I. FACTS

### A. Astro-Med's Business and Trade Secrets

Astro-Med, Inc. is a Rhode Island corporation with a principal place of business in Warwick, Rhode Island. Astro-Med's Grass Technologies product group manufactures, sells and distributes instruments for sleep and neurological research and clinical applications of sleep

science and brain wave recording and analysis. The life sciences industry is extremely competitive, and Astro-Med's customers, distribution, pricing and marketing information systems contribute to its position as a leading supplier of these products. Although the identity of some of its customers may be generally known in the industry, Astro-Med has developed proprietary customer databases through extensive research and marketing efforts. Astro-Med's financial arrangements with its sales people, its marketing strategy and its pricing and cost structure are all highly confidential.

Astro-Med, through its Grass Technologies line, competes in a highly competitive, specialized market. The aggregate market size for neurological products is approximately $250 million in annual sales. In addition to Astro-Med and Nihon Kohden, nine other companies compete in this market. Due to the intense competition, Astro-Med is continuously researching and developing new products and refining its existing products. Product development information for the Grass Technologies line is proprietary business information.

Astro-Med has developed customer databases over the course of several years through intensive and expensive efforts in marketing, advertising in trade journals, attending trade shows, mailings and Internet advertising. These data bases are crucial and confidential assets of Astro-Med which allows it to maintain a competitive advantage.

Astro-Med actively protects its trade secrets and other confidential information, including its product development information, marketing strategies, the details of its arrangements with its dealers and distributors, customer information and pricing and cost policies. It does so by, among other things, requiring all employees, as a condition of employment with Astro-Med, to execute an agreement not to compete with Astro-Med for a period of one year after employment termination and not to use or disclose confidential information or trade secrets of Astro-Med.

### B. Plant is Hired by Astro-Med and Signs Employment Agreement

In July 2002, Plant applied for a Product Specialist position at Astro-Med. At that time, he had no prior experience marketing or selling medical neurology equipment, including electroencephalographs (EEG), polysomnographs (PSG), or long-term monitoring for epilepsy (LTM) equipment. Plant was hired by Astro-Med in October 2002. As a condition of his employment by Astro-Med, Plant was required to sign an Employment Agreement (the "Agreement"). Plant signed the Agreement in advance of any salary from Astro-Med or any training in EEG, PSG, or LTM medical equipment. Astro-Med did not expose Plant to prospective customers, internal pricing, or research and development initiatives until after he signed the Agreement.

Plant's Agreement states in pertinent part:

> 4. I recognize that the Company sells its products throughout North America and Europe; as such, upon termination of my employment at the Company, for whatever reason, I shall not directly or indirectly enter into or engage in a business that competes with the Company, in a territory consisting of North America, and Europe, either as an individual, partner, joint venturer, employee, agent or salesman for any person, or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter.

Plant also agreed not to disclose Astro-Med's confidential information as detailed in the Agreement:

> 2. That any inventions, discoveries or improvements in any technical data, trade secrets, information or know-how, made, discovered or conceived or acquired by me during the period of my employment, whether patented or not, are to and remain the property of the Company; that, without the written authorization of the Company, I will neither use nor disclose to any person other than my superiors in the Company, any information, trade secrets, technical data or know-how relating to the Company's products, processes,

> methods, equipment and business practices, which I have acquired during my employment.

Plant further agreed: "In the event that I breach this Agreement, I agree to pay all legal and other expenses reasonably incurred by the Company in connection with the enforcement of my obligations or the Company's rights under the Agreement."

Astro-Med invested heavily in Plant's training and development in the specialized field of capital medical equipment. It sent Plant on installations at customer sites throughout the United States. He traveled with technical support to learn the intricacies of Astro-Med's hardware and software packages. He traveled with experienced sales representatives to learn and understand customer preferences and selling techniques.

After approximately two years as a Product Specialist, Plant requested and received a promotion to District Manager in the newly-vacant Southeastern territory, which at the time covered Florida, Georgia, South Carolina, Alabama and Tennessee. Astro-Med paid to relocate Plant to Florida.

As District Sales Manager and Product Specialist, Plant had access to and used Astro-Med's trade secrets, including confidential marketing, pricing, and customer databases. During his employment, Plant became intimately familiar with these customers and their preferences, as well as Astro-Med's pricing strategy and marketing techniques. Plant also had knowledge and insight as to Astro-Med's research and development efforts with respect to its Grass Technologies product line. During his four years at Astro-Med, Plant gained specialized, technical knowledge as to the marketing, development, pricing and selling of EEG's, PSG's and LTM equipment.

C. **Plant Joints Nihon Kohden, Astro-Med's Direct Competitor, After Lying to Astro-Med About his Intentions**

Nihon Kohden directly competes with Astro-Med throughout the United States and internationally. Astro-Med has an advantage over Nihon Kohden by reason of its confidential pricing, marketing strategies and research and development efforts. This highly confidential information is extremely valuable to Astro-Med and critical to its business. It would be of significant value to Nihon Kohden.

Unbeknownst to Astro-Med, Plant first met with Nihon Kohden in early September, 2006. Prior to hiring Plant, Nihon Kohden knew that Plant was subject to the Employment Agreement which prohibited Plant from working for a competitor. Nevertheless, Kohden hired him as a sales representative in Florida. When Plant announced his resignation from Astro-Med, he denied that he was going to work for a competitor.

Contrary to what he told Astro-Med, Plant began working for Nihon Kohden on or around October 1, 2006, as a sales person in the same region of the United States for which he previously worked for Astro-Med, in direct violation of his Agreement. He is now in a position to improperly solicit Astro-Med's customers and to divert their business to Nihon Kohden. Astro-Med has reason to believe that Plant has taken his Astro-Med customer contact lists, handed Nihon Kohden literature to a prospect that Plant was developing for Astro-Med, and has since contacted Astro-Med customers and prospects based on information he learned from his employment with Astro-Med. In November 2006, Astro-Med learned from one of its customers that Plant was working for Nihon Kohden in Florida. Astro-Med promptly filed suit to enforce the restrictive covenants in Plant's Agreement.

**D. Travel of the Case**

Astro-Med sought immediate injunctive relief. In December 2006, before any discovery had been taken in the case, the Court held an evidentiary hearing on Astro-Med's application for preliminary injunctive relief. At the close of that hearing, the Court found:

> In this case, it is the determination of this Court, at least on an interim basis, that the Defendant's employment at Nihon Kohden, particularly in the areas of overlap, that is, in his sales of EEG, PSG and LTM equipment, is in direct contravention of the agreement that he signed when he became employed with Astro-Med.

Transcript of December 28, 2006, at 27. The Court issued an Interim Injunction Order, which was modified and amended after later proceedings. The Amended Modified Interim Injunction Order prohibited Plant from using or disclosing Astro-Med's proprietary information and from contacting or marketing to Astro-Med customers in Florida.[1]

After the Court's preliminary finding that Plant violated his Agreement, Nihon Kohden moved to dismiss the action on the basis of lack of jurisdiction. In denying that motion, the Court noted:

> Nihon Kohden walked into this case with its eyes open. The testimony I heard during the preliminary injunction hearing was that Mr. Plant, who was the signatory to the agreement which is the focus of this lawsuit, told Nihon Kohden about the agreement, showed it to Nihon Kohden representatives., It was reviewed by an attorney from Nihon Kohden who essentially told Mr. Plant, Don't worry about it.
>
> When Nihon Kohden made that determination, as I say, it walked into this lawsuit with its eyes wide open because once it agreed to hire Mr. Plant, it knew that it had essentially bought itself a lawsuit because his working for Nihon Kohden is clearly, and I have already made this determination, in violation of the terms of the agreement.

[1] The customers are those who purchased or received product from Astro-Med on or after July 1, 1999 and prospective customers of Astro-Med on any lead sheet given to Plant within 90 days of his departure from the company.

Transcript of June 28, 2007, at 27-28. The Court admonished defense counsel to read Rule 1, noting what appeared to be "obstructionist activities" designed to make the case "a much more difficult case that it needs to be in clear violation of Rule 1." Id. at 28. Flouting the Court's warning, Nihon Kohden sought leave from the First Circuit to appeal the Court's ruling and sought a stay from this Court pending that appeal. Nihon Kohden's frivolous appeal was a lark that led to further delay and cost. In fact, the First Circuit, after denying the request for appeal, awarded sanctions against Nihon Kohden and found, "it should have been obvious to counsel that Nihon Kohden had no realistic chance of success in this appeal." Judgment entered in In re: Nihon Kohden American, Inc., attached as Exhibit A.

The Court has stated repeatedly that this is a straightforward case. Astro-Med agrees and, in its effort to get to trial, has had to endure significant procedural shenanigans by the Defendants. These have included the Defendants' failure to produce witnesses in California as ordered by the Court (which led to an unnecessary trip across the country for plaintiff's counsel) and a baseless appeal. Defendants' current effort to present an untimely and baseless dispositive motion is just another attempt to further undermine the just, speedy and inexpensive determination of this case.

## 2. ARGUMENT

The Defendants preview two potential summary judgment arguments in their Emergency Motion. Neither presents a basis for summary disposition of this case.

### A. A Genuine Issue of Material Fact Exists Regarding the Misappropriation of Trade Secret Claims

Defendants assert that they should be permitted to file a summary judgment motion on plaintiffs' claims for misappropriation of trade secrets because in deposition "Astro-Med's representatives confirmed that Astro-Med has no evidence that Nihon Kohden obtained any of

Astro-Med's trade secret or confidential information . . . or that Mr. Plant has disclosed any [such information]." Defendants' Memorandum at 2. More accurately, the Astro-Med witnesses said they did not know of such evidence. However, that testimony does not warrant the entry of summary judgment on these claims because the evidence of misappropriation comes not from Astro-Med's employees, but from the Defendants' own documents. Those documents unequivocally state Nihon Kohden's intention to use Astro-Med's confidential information provided by Plant.[2] It would be permissible for the jury to infer from these and other facts (such as Nihon's Kohden willingness to gamble on hiring Plant with full knowledge of his non-compete and non-disclosure obligations) that the Defendants intended to use and benefit from Astro-Med's trade secrets. Thus, a dispute of material fact exists which would preclude entry of summary judgment on the trade secret counts.

Astro-Med sought other discovery about Defendants' misappropriation and use of its confidential information. Nihon Kohden objected to the discovery, necessitating motion practice. Astro-Med's motion to obtain this and other relevant discovery recently was granted by the Court. Nihon Kohden has been ordered to produce the documents and information sought by January 8, 2008. That discovery may reveal further evidence of Defendants' misappropriation of Plaintiff's trade secrets.

### B. Defendants' Selective Enforcement Argument Misstates the Law and Does not Provide a Basis for Summary Judgment

Defendants' second proposed summary judgment argument relates to what they have dubbed Astro-Med's "selective enforcement" of the employment agreement. They allege that Astro-Med has not sued, in every instance, to enforce non-compete provisions in its employee

[2] If the Court grants Defendants' leave to file their untimely summary judgment motion, Astro-Med will present in more detail the evidence that establishes the disputed fact on this issue.

contracts, and they argue based on one inapposite case that Astro-Med is therefore legally prohibited from seeking to enforce the agreement in this case. Astro-Med would dispute the factual basis for this argument if a summary judgment motion were permitted – which dispute alone would preclude summary disposition of this case. But even if the facts were as Defendants' suggest, Defendants have misstated the precedent of the one case they cite, Narragansett Coated Paper Corp. v. Lapierre, 1998 WL 388400 (R.I. Super. 1998). That case was briefed and argued previously to the Court.[3] It did not prevent the Court from entering interim injunctive relief, and it does not support a claim for summary judgment.

In Narragansett, the plaintiff sought to enforce a two-year non-compete. The former employer argued that it had a legitimate interest in preventing post-employment competition because its former employee had access to its proprietary information. In considering this argument, the court noted that the employer had "utterly failed to protect itself from post-employment disclosure of its confidential information by other of its employees . . ." and had "singl[ed] out employees at a relatively low level of employment" for non-compete requirements. Id. at *2. Based on these facts, the court found that the employer had failed to demonstrate that enforcement of the agreement was reasonably necessary to protect its legitimate business interests.

The Narragansett case does not support the proposition for which it is cited. The "selective enforcement" in that case had nothing to do with whether or not the employer sued, in every instance, to enforce its noncompete agreements. Rather, it had to do with the employer's failure to require non-competes from its "key employees." Unlike the employer in Narragansett, Astro-Med requires all its employees to sign agreements containing non-competition and non-

[3] For this reason alone, the Emergency Motion on this issue should be denied, as there is no excuse for defendants' failure to file a motion on this ground prior to the expiration of the motion cut-off date.

disclosure provisions as a condition of employment. Astro-Med also can point to other legitimate interests – not present in Narragansett - that support enforcement of the restrictive covenants in this case. Most notable is the fact that Astro-Med taught Plant everything he knows about its industry and product line. Its investment in that specialized training is an independent reason supporting enforcement of the non-competition provision. No such specialized training was involved in the Narragansett case.

Because the Defendants have cited no authority to support their "selective enforcement" theory, and because Astro-Med disputes the factual basis for its asserted application, leave should not be given to the Defendants to pursue their second proposed summary judgment argument.

## CONCLUSION

For the foregoing reasons, Astro-Med respectfully requests that Defendants' Emergency Motion to Extend the Motion Cut-Off Date be denied.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Stacey P. Nakasian
Craig M. Scott, Esq. (#4237)
cscott@duffysweeney.com
Stacey P. Nakasian, Esq. (#5069)
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
rduffy@duffysweeney.com

Dated: December 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within ***Memorandum in Support of Opposition to Defendants' Joint Emergency Motion to Extend the Motion Cut-Off Date*** was filed through the ECF system on the 21st day of December, 2007, and will be sent electronically to the counsel named below who is a registered participant identified on the Notice of Electronic Filing:

Bruce W. Gladstone, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq.

Astro-Med\Plant, Kevin\Pleadings\06-0533 USDC\Memorandum in Opp to Motion for leave to file SJ 12-21-07