# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ASTRO-MED, INC.,

Plaintiff,

v.

C.A. No. 06-533-ML

KEVIN PLANT; NIHON KOHDEN AMERICA, INC.

Defendants.

## DEFENDANTS' PRETRIAL MEMORANDUM OF FACT AND LAW

Defendants Nihon Kohden America, Inc. ("Nihon Kohden") and Kevin Plant, through counsel, hereby submits their Pretrial Memorandum of Fact and Law as follows:

## I. INTRODUCTION

Plaintiff's case "is a tale … full of sound and fury; signifying nothing."[1] Each of Plaintiff's claims -- breach of contract, misappropriation of trade secrets, unfair competition, and interference with a contractual relationship -- lack evidentiary and/or legal support.[2] Plaintiff's case hinges on an unenforceable contract with Mr. Plant; unenforceable because it unlawfully limited employment options following Mr. Plant's employment with Plaintiff, going so far as to prohibit Mr. Plant from working in all of North America and Europe. Mr. Plant did not breach and Nihon Kohden did not induce Mr. Plant to breach this overly broad employment restriction, *because it was unenforceable as written.* After this Court modified and limited the restriction on

[1] "Macbeth," Act V, Scene V.

[2] Additionally, Nihon Kohden has objected to this Court exercising personal jurisdiction over it. Nihon Kohden has conducted nearly no sales activities in Rhode Island, and none of its communications with Mr. Plant occurred in Rhode Island.

Mr. Plant's ability to work for a competitor,[3] neither Mr. Plant nor Nihon Kohden has breached the modified restriction. Thus, Plaintiff has been pursuing this action solely to obtain some advantage (financial, competitive or otherwise) that is not otherwise available to it, and to which neither Nihon Kohden nor Kevin Plant were or are willing to acquiesce.

Originally, Plaintiff filed this action in Rhode Island state court against only Mr. Plant. The December 2, 2006 complaint alleged that Mr. Plant breached an Employee Agreement (**Exhibit A**) containing an unenforceable, overly broad non-competition provision.[4] (This Court has held that the non-competition provision, as drafted, could not be enforceable.[5]) Two weeks after Plaintiff filed its Rhode Island state court action, Mr. Plant sought to resolve the dispute, proposing a resolution in his counsel's letter to Plaintiff's counsel dated December 19, 2006.[6] Plaintiff ignored the proposal, the terms of which, as it turned out, were *nearly identical* to the language of the February 16 Order. Even when this Court agreed with Mr. Plant's settlement position, Plaintiff continued to prosecute this action.

Whether Plaintiff is seeking to punish Mr. Plant and Nihon Kohden for Mr. Plant leaving Plaintiff's employment (and Nihon Kohden for hiring Mr. Plant), or to extract some pay-off for

---

[3] It is Mr. Plant's and Nihon Kohden's position that Nihon Kohden is not a direct competitor of Plaintiff, because Nihon Kohden has substantially different equipment and markets to substantially different customer base than does Plaintiff.

[4] The non-competition provision purported to limit Mr. Plant's employment to "a territory consisting of North America, and Europe, either as an individual, partner, joint venturer, employee, agent or salesman for any person, or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter." **Exhibit A**, ¶ 4.

[5] Following a December 27-28 preliminary injunction hearing and as finalized in this Court's February 16, 2007 Modified Interim Injunction Order (the "February 16 Order"), this Court confirmed that the restrictive covenant was unenforceable. (The February 16 Order, a copy of which is attached hereto as **Exhibit B**, expired by its terms on December 28, 2008.) In the February 16 Order, this Court modified the unenforceable restrictive covenant -- substantially limiting its scope -- to allow Mr. Plant to remain employed by Plaintiff's competitor (*i.e.*, Nihon Kohden), and to sell competitive products in the same region (*i.e.*, the State of Florida) Mr. Plant sold products for Plaintiff. The only limit on Mr. Plant's sales activities was prohibiting Mr. Plant from contacting Florida businesses he contacted (or received leads regarding) when he was employed with Plaintiff.

losing Mr. Plant, Plaintiff (or its counsel) has put itself in a position of making this a difficult case to resolve. Plaintiff has not supported its claims with admissible evidence, but focused solely on increasing its damage claim for attorneys' fees, a claim which is not supported by any liability on the part of Nihon Kohden or Mr. Plant as a matter of law.

## II. STATEMENT OF FACTS

Mr. Plant began his employment with Plaintiff in October 2002. At that time, Mr. Plant signed a document entitled "Employee Agreement" (**Exhibit A**). This document contained a non-competition provision stating:

> I recognize that the Company sells its products throughout North America and Europe; as such, upon termination of my employment at the Company, for whatever reason, I shall not directly or indirectly enter into or engage in a business that competes with the Company, **in a territory consisting of North America, and Europe**, either as an individual, partner, joint venturer, employee, agent or salesman for any person, or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter.

**Exhibit A,** ¶ 4 (emphasis added).

In 2004, Mr. Plant's position with Plaintiff materially changed when he was promoted from his position as a product specialist in Rhode Island to a sales position in Florida. Following Mr. Plant's change of position and move to Florida, no new "Employee Agreement" or non-competition agreement was executed. In 2006, the terms of Mr. Plant's employment with Plaintiff again materially changed when Plaintiff unilaterally decreased Mr. Plant's Southeastern

---

[6] A copy of the December 19, 2006 letter, which is a confidential communication, is attached hereto as

regional sales territory, giving a portion of Mr. Plant's territory to an untrained salesperson. Again, Plaintiff did not require Mr. Plant to execute a new non-competition agreement. Because Plaintiff unilaterally, materially and negatively altered the terms and conditions of his employment, Mr. Plant began to seek new employment and, eventually, was hired by Nihon Kohden.

Since his current employment with Nihon Kohden began, in October 2006, Mr. Plant has neither directly nor indirectly solicited any of Plaintiff's customers with whom he formerly transacted business. In fact, in letters dated September 10 and September 18, 2006 (**Exhibit D**), Nihon Kohden specifically prohibited Mr. Plant from using any of Plaintiff's trade secrets or confidential information.[7] Following his express instruction from Nihon Kohden, Mr. Plant has made no attempt to divert business from Plaintiff to Nihon Kohden by using or disclosing any information that might be considered proprietary or confidential.

## III. PLAINTIFF DOES NOT HAVE ANY SUPPORTABLE LEGAL CLAIM AGAINST DEFENDANTS

### A. Mr. Plant Did Not Breach The Non-Competition Provision

Until this Court-created terms for the non-competition provision in the Employee Agreement (**Exhibit A**), the Agreement was not enforceable against Mr. Plant and, thus, Mr. Plant could not have breached the Agreement.

Rhode Island recognizes that an unenforceable restraint on trade (such as a non-competition provision) may be modified by a court to make it enforceable. *See, e.g.*, Durapin, Inc. v. American Prods., 559 A.2d 1051, 1058-59 (R.I. 1989). The post-employment restriction in the Employee Agreement purported to prohibit Defendant Plant from working *in all of North America and Europe*. Such an overly broad geographic restriction is unenforceable. *See, e.g.*,

---

**Exhibit C.**

[7] *See also* Deposition of Michael Ohsawa, 69:21-70:5 (**Exhibit E**).

Dryvit Sys. v. Healy, 1989 R.I. Super. LEXIS 105, 13-15 (holding that, when a restrictive covenant proscribes a geographic restraint covering where the plaintiff conducted business was unenforceable). This Court recognized that the overly broad restriction could not be enforced and, therefore, limited the geographic scope to the State of Florida.

Moreover, a restraint on trade provision is not enforceable *until* the court modifies it to make it enforceable. *Id.*, at 1057 (unreasonable restrain on trade agreement is not enforceable, but may be modified to make it enforceable). In Hawkins v. Daly, 2003 R.I. Super. LEXIS 14, 14, the court stated that non-competition provisions "will only be enforced when reasonable and where restrictions do not extend beyond what is apparently necessary for the protection of the employer's business." Likewise, this Court could not enforce the non-competition provision in the Employee Agreement and, thus, Defendant Plant could not breach it, until this Court modified the provision to make it enforceable.

The non-competition provision in the Employee Agreement was unenforceable until this Court modified it to make it partially enforceable in its December 28, 2006 Interim Preliminary Injunction Order. By its terms, the original non-competition provision: (i) prohibited Defendant Plant from obtaining employment with any of Plaintiff's competitors;[8] and (ii) prohibited Defendant Plant from working any where in North America or Europe. In fact, this Court stated that "the sheer breadth of geographic limitation contained in the agreement, it seems to me, unless there's a whole lot more that I haven't heard, I don't think is enforceable under Rhode Island law."[9]

Due to the Agreement's overreaching scope, this Court was required to substantially modify the non-competition provision to make it enforceable by prohibiting Defendant Plant

---

[8] A prohibition of working for competitors is an unreasonable geographic restriction. *See, e.g.*, Dryvit Sys., *supra*, 1989 R.I. Super. LEXIS at 14, n.3.

[9] December 28, 2006 Transcript, 27:12-16 (**Exhibit F**).

from working for one of Plaintiff's competitors in *only* the sleep industry (*i.e.*, businesses selling electroencephalograph (EEG) equipment, polysomnograph (PSG) equipment, and long-term monitoring for epilepsy (LTM) equipment) in *only* the State of Florida and with *only* the limited restriction of Mr. Plant not being able to contact his former customers or customer leads. *See* February 16 Order (**Exhibit B**). However, Plaintiff did not accept this Court's clear position on the enforceability of the Employee Agreement, as this Court stated at an April 16, 2007 hearing:

> However, I must say to you in all candor, Mr. Duffy, Mr. Scott clearly should have understood what I was saying from the very beginning of this case. I told him that I thought on its face, the provision was overly broad; and then after the hearing, it was clear the only evidence in the case relating to Mr. Plant's activities related to the State of Florida.
>
> So for, you to come in here today and say, well, if you read it, it doesn't really say that, but you would have had to have been asleep or unconscious not to know that that's what we were talking about.[10]

By analogy, a contract that is indefinite as to its material terms is unenforceable. *See, e.g.*, Soar v. NFL Players Assn., 438 F. Supp. 337, 343 (D.R.I. 1975) (pension plan contract that does not specify the terms of eligibility or schedule of benefits unenforceable). Similarly, the non-competition in the Employee Agreement, which was drafted by Plaintiff, violated public policy (*e.g.*, overly broad geographic scope) and, thus (as a general rule) was unenforceable. However, with regard to non-competition provisions, Rhode Island law permits otherwise unenforceable non-competition agreements to be reformed in equity for the purpose of limiting the non-competition provision to make the unenforceable provision enforceable. *See, e.g.*, Durapin, *surpa*, 559 A.2d at 1058-59.

---

[10] April 16, 2007 Transcript, 9:1-7 (**Exhibit G**).

Defendant Plant could not have breached the original non-competition restriction because (as this Honorable Court ruled when it substantially modified the restriction) it was unenforceable on its face, as written. Moreover, Defendant Plant complied with the work restriction set forth in the December 28 Order as modified by the February 16 Order (and subsequent Orders of this Court) and, thus, did not breach any non-competition obligation owed to Plaintiff.

## B. The Non-Competition Agreement Is Unenforceable

### 1. Material Changes In Mr. Plant's Employment Status With Plaintiff Voided The Non-Competition Restriction

When there is a material change in the employment relationship, prior employment agreements, including non-competition agreements, are voided. *See*, *e.g.*, AFC Cable Sys. v. Clisham, 62 F. Supp. 2d 167, 172-73 (D.Mass. 1999) (applying Massachusetts law). In Clisham, the defendant's former employer sought to enforce a 1992 non-competition agreement against the defendant when the defendant left his position to work for a competitor. *Id.*, at 170. However, the defendant's position with the plaintiff had changed in 1994 when he was promoted from Sales Consultant to Sales Manager. *Id.* **The Clisham court stated that the change in the defendant's employment relationship with the plaintiff "[made] it clear that [the defendant] entered a new relationship with [the plaintiff], thereby voiding the 1992 [Non-Competition] Agreement."** *Id.*, at 173 (emphasis added).

During the course of Mr. Plant's employment with Plaintiff, *two* fundamental changes in his employment status occurred after he executed the Employee Agreement. First, in 2004, Mr. Plant's position fundamentally changed, from "Product Specialist" in Rhode Island (his position

at the time of his hire in 2002), to a salesperson position in Florida.[11] The Employee Agreement may have arguably covered Mr. Plant's position as a Product Specialist, but by its express terms did not apply to salespersons. In this regard, the introductory paragraph of the Employee Agreement (**Exhibit A**) states that the agreement applies to only those individuals who are involved in the "design, development or manufacture of products for the Company."

Moreover, in June 2006, Plaintiff again substantially and unilaterally changed Mr. Plant's employment relationship, when it cut a significant portion of his sales territory – and, thus, his earning potential -- and assigned it to another, untrained salesperson. As a result of these material changes in Mr. Plant's employment with Plaintiff, the non-competition provision in the Employee Agreement is void and unenforceable against Mr. Plant.

**2. Plaintiff's Breach Of The Employee Agreement Voided Any Obligations Mr. Plant Had Pursuant To The Agreement**

Plaintiff's substantial reduction of Mr. Plant's sales territory breached the Employee Agreement and directly led to Mr. Plant leaving Plaintiff's employment.

In Lantor, Inc. v. Ellis 1998 Mass. Super. LEXIS 560, the defendant executed a non-competition agreement while employed as a salesperson by the plaintiff. Thereafter, the plaintiff unilaterally changed the defendant's sales commission compensation. *Id.*, at 5. Denying the plaintiff's motion for a preliminary injunction, the Lantor court stated, "'It is well established that a material breach by one party excuses the other party from further performance under the contract.' [Citation.] **It is also plain that a material breach of an employment agreement by an employer may discharge an employee from further obligation under a non-competition provision of that agreement.** [Citation.]" *Id.*, at 23 (emphasis added).

---

[11] The differences in these two positions (beyond Mr. Plant being required to move from Rhode Island to Florida) are extensive. As a Product Specialist, Mr. Plant was mainly responsible for working directly with Plaintiff's sales force to answer questions regarding Plaintiff's products. As a salesperson, Mr. Plant was responsible for calling on potential and existing customers and conducting follow-up calls after sales.

In Dialogo, LLC v. Bauza, 456 F. Supp. 2d 219, 226 fn. 4 (D.Mass. 2006), the plaintiff sought to enforce a non-competition provision against the defendant, its former employee, who had left to work for a competitor. The defendant claimed that the plaintiff failed to fully compensate him for his employment, which was an obligation separate from the non-competition agreement that the defendant executed. *Id.*, at 223. Granting the defendant's motion for summary judgment, the Dialogo court, citing Lantor, stated, **"Accordingly, [the plaintiff]'s material breach of [the defendant]'s employment agreement excuses [the defendant] from any obligation to refrain from competition."** *Id.*, at 226 fn. 4 (emphasis added).

Plaintiff's 2006 unilateral and drastic reduction in Mr. Plant's sales territory was a material breach of Mr. Plant's employment relationship with Plaintiff. This breach, thus, excuses Mr. Plant from any contractual obligation he may have had to refrain from competition.

### 3. The Non-Competition Agreement Is Unenforceable Because It Does Not Protect A Legitimate Business Interests

The elements that must be established by a party seeking to enforce a non-competition provision are:

(1) the non-compete clause is an ancillary provision to a valid transaction or relationship, such as an employment contract;

(2) the non-compete provision is independently supported by adequate consideration; and

(3) a legitimate business interest exists that the non-compete provision is designed to protect.

Durapin, *surpa*, 559 A.2d at 1053. Plaintiff's Employee Agreement fails this test.

"Protection of confidential information and goodwill" are the only legitimate interests the moving party may establish by the evidence. Nestle Food Co. v. Miller, 836 F. Supp. 69, 75 (D.R.I. 1993). The former employer's mere desire to be free from competition, by itself, is not a "protectable interest." *Id.*, 836 F. Supp. at 75, n.19. An example of a protectable interest is

specialized training provided by an employer to teach an employee to perform special tasks or peculiar services. Dial Media, Inc. v. Schiff, 612 F. Supp. 1483, 1489 (D.R.I. 1985). Denying the plaintiff-former employer's motion for a preliminary injunction, the Dial court stated:

> Plaintiff has not demonstrated that Defendant gained any unfair competitive advantage due to his former employment at Dial Media, any more than a stranger would have, who had [the defendant]'s background and experience. **Since an employee is entitled to use general knowledge and expertise learned during his employment to continue his livelihood, Plaintiff has no interest in Defendant's future productivity to protect.**

*Id.*, at 1491, fn. 5 (emphasis added). Accordingly, Plaintiff must demonstrate that its non-compete provision was designed to safeguard a protectable interest, such as the protection of confidential information or to safeguard investments in employee specialized training.

Plaintiff's Employee Agreement claims that Plaintiff was seeking to protect the "design, development or manufacture of [Plaintiff's] products." However, Plaintiff's does not have sufficient evidence to establish that its Employee Agreement safeguarded protected interests. Accordingly, Plaintiff's "Employee Agreement" is not enforceable against Mr. Plant.

### 4. Plaintiff's Selective Enforcement Of Its Non-Competition Agreements Make It Void As Against Mr. Plant

In this action, Plaintiff is seeking to enforce a non-competition restriction that it has unilaterally selected to enforce against Mr. Plant, but has knowingly refused to enforce against other of its former employees. Specifically, Plaintiff has not enforced the same non-competition restriction against Guy Casler, Darren Jones and Rob Safron, all of whom work for competitors of Plaintiff.[12]

---

[12] Deposition of Marco Mancini, 74:20-76:25 (**Exhibit H**).

In Narragansett Coated Paper Corp. v. LaPierre, 1998 R.I. Super. LEXIS 75, the court denied the plaintiff-former employer's request for injunctive relief where the defendant-former employee resigned to work for one of the plaintiff's competitors. The central reason for the Narragansett court's denial of injunctive relief was:

> [T]he plaintiff has failed to prove that the drastic relief it seeks is reasonably necessary to protect the confidentiality of its unique products and processes. The plaintiff has utterly failed to protect itself from post-employment disclosure of its confidential information by other of its employees, who are far more knowledgeable of that information than the plaintiff. Almost none of the key employees of the plaintiff has executed a non-competition agreement. Singling out employees at relatively low levels of employment, such as that of the defendant, rather than those at the middle and upper levels, for post-employment non-competition agreements suggests that the purpose of those agreements is not so much to protect an employer's trade secrets ....

*Id.*, at 9. In Surgidev Corp. v. Eye Technology, Inc., 648 F. Supp. 661 (D. Minn. 1986), the court enforced limited terms of a non-disclosure agreement between the plaintiff and its former employee. However, the Surgidev court did not enforce the non-competition provision, because the plaintiff had not sought to enforce the same non-competition against other of its former employees. "Even were it to be assumed that the non-competition agreement is not void *per se*, the evidence establishes that plaintiff has waived its rights under the agreement. ***Under the circumstances, it would be inequitable to permit plaintiff to now rely on a non-competition agreement which it has so blithely ignored in the past." *Id.* at 697-98.

Likewise, Plaintiff has failed to prove that the drastic relief it seeks is reasonably necessary to protect any alleged confidential information, and has failed to enforce identical non-competition restrictions, opting not to enforce such draconian restrictions against other sales people who left its employment shortly before or after Mr. Plant.

**C. <u>Plaintiff Failed To Mitigate Its Damages</u>**

By letter dated December 19, 2006 (**<u>Exhibit C</u>**), well before this Court determined to impose, through December 28, 2007, certain non-competition restrictions on Mr. Plant's employment (while still permitting him to work for Nihon Kohden), Mr. Plant, writing through counsel, proposed a resolution to this action under terms nearly identical to those set forth in the December 19th and February 16 Orders. However, Plaintiff did not respond to the December 19 proposed resolution, as well as other overtures to resolve this matter, and since that time has incurred no damages other than attorneys' fees in prosecuting its action against Mr. Plant and Nihon Kohden. Thus, Plaintiff has failed to take affirmative steps to minimize or otherwise to mitigate its alleged damages.

In <u>Reyes v. Banco Santander de P.R., N.A.</u>, 583 F. Supp. 1444 (D.P.R. 1984), the defendant made multiple settlement offers, all of which the plaintiff rejected. *Id.*, at 1445-46. The defendant went to trial asserting defenses that included the failure to mitigate damages. *Id.*, at 1446. At trial, the plaintiffs prevailed at trial on their claims and received a net jury award that was nearly identical to the defendant's highest settlement offer. *Id.*, at 1445. However, because the plaintiff's failed to mitigate their damages by accepting the defendant's early settlement offers, the <u>Reyes</u> court denied the plaintiff's motion for attorney fees. *Id.*, at 1447.

**D. <u>There Is No Evidence Of Trade Secret Misappropriation</u>**

Plaintiff has confirmed that it has no evidence that Mr. Plant has used or disclosed any of Plaintiff's trade secret or confidential information since Mr. Plant terminated his employment with Plaintiff.[13]

To establish a misappropriate of trade secret claim, a plaintiff "***must show*** that he or she shared a confidential relationship with the defendant, possessed a trade secret, disclosed it to the defendant, ***and that the defendant made use of the disclosure in breach of the confidence reposed in him***. [Citations.]" <u>Burten v. Milton Bradley Co.</u>, 763 F.2d 461, 463 (1st Cir. 1985)

---

[13] Deposition of Everett V. Pizzuti, 125:9-12 (**Exhibit I**).

(emphasis added). However, Plaintiff's representatives have testified that Plaintiff has no evidence that Mr. Plant made use of or disclosed any of Plaintiff's trade secret.[14]

To establish a claim for misappropriation of trade secrets, the claimant must show which is set forth in Burten v. Milton Bradley Co., 763 F.2d 461, 463 (1st Cir. 1985). In Burten, the First Circuit Court stated: "In order to successfully establish a cause of action for misappropriation … a plaintiff must show that he or she shared a confidential relationship with the defendant, possessed a trade secret, disclosed it to the defendant, ***and that the defendant made use of the disclosure in breach of the confidence reposed in him.*** [Citations.]" Emphasis added. In Dial Media, *supra*, 612 F. Supp. at 1489, because the court found that the plaintiff had not established that its former employee "used trade secrets to acquire an unfair advantage to Dial Media's detriment," it denied the plaintiff's motion for a preliminary injunction. Explaining its holding, the Dial Media court stated:

> [T]he only interest which Plaintiff could assert is the desire to be free of competition from its former employee, who had engaged in the activity which Plaintiff seeks to prohibit before coming to work for Dial Media. **This interest is not a protectable one since in the absence of trade secret abuse, misappropriation of good will, or other damage Plaintiff is simply attempting to restrain competition which is in this instance an unreasonable restraint on trade.**

*Id.* (emphasis added; citation omitted).

In this action, Plaintiff is seeking to stymie competition, because it has admitted that it has no evidence that Mr. Plant has used or disclosed any of Plaintiff's trade secret or confidential information.

---

14 *Id.*

## IV. CONCLUSION

This Honorable Court has already correctly held that as the non-competition provision as reformed/modified by this Honorable Court did self-extinguish by its own terms on December 28, 2007, there is, as a practical matter, nothing left to litigate in this action.

KEVIN PLANT
NIHON KOHDEN AMERICA, INC.
By Its Attorneys,

/s/ Bruce W. Gladstone
Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
PHONE: (401) 331-5700
FAX: (401) 331-5787

/s/ E.P. Michael Karcis
E.P. Michael Karcis, Esq.
michael@mcleanfirm.com
McLean & McLean LLP
3001 2nd St., Suite E
Santa Monica, CA 90405
PHONE: (310) 450-9353
FAX: (310) 581-8006

Date: February 26, 2008

G:\pec\PLANT, KEVIN\NK Trial Brief 2-26-08.doc

CERTIFICATION

The undersigned hereby certifies that on the 26th day of February, 2008, a copy of the foregoing DEFENDANTS' PRETRIAL MEMORANDUM OF FACT AND LAW was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Stacey P. Nakasian, Esquire
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Building, Suite 1200
Providence, RI 02903

Craig M. Scott, Esquire
cscott@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Robert M. Duffy, Esquire
rduffy@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

/s/ Bruce W. Gladstone