# EXHIBIT E

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASTRO-MED, INC., Plaintiff | : |
| vs. | : C.A. NO. 06-533 ML |
| KEVIN PLANT and NIHON KOHDEN AMERICA, INC., Defendants | : |

Deposition of **MICHAEL OHSAWA**, a 30(b)(6) witness designated by Nihon Kohden America, Inc., taken on behalf of the Plaintiff, on TUESDAY, JUNE 19, 2007, 3:12 P.M., at the offices of DUFFY SWEENEY & SCOTT, LTD, One Turks Head Place, Suite 1200, Providence, Rhode Island, before Vivian S. Dafoulas, Registered Merit Reporter/Certified Realtime Reporter.

CONDENSED COPY

Vivian S. Dafoulas, RMR-CRR
50 Fieldstone Drive
East Greenwich, RI 02818-2064
(401) 885-0992

Word Index

A. I'm not sure the extent of the conversation Gary had with him but we flew Kevin out to California to conduct a personal interview with Gary in person along with myself.
Q. Did you hear Mr. Reasoner testify this morning that prior to flying Mr. Plant out, he got the okay from you to interview him in California?
MR. KARCIS: Same objections.
A. Could you repeat the question?
Q. Did you hear Mr. Reasoner testify this morning that prior to the decision being made to interview Mr. Plant in California, you gave your okay for that to occur?
MR. KARCIS: Same objections.
A. I don't recall if I was -- it was necessary for me to actually give an approval to have the interview done in California.
Q. Did Mr. Reasoner ever discuss with you that Kevin Plant was subject to a non-compete agreement with his then-current employer, Astro-Med, Inc.?
MR. KARCIS: Same objections.
A. Yes.
Q. And when was that first brought to your attention?



MR. KARCIS: Same objections.
A. I don't recall specifically when he first had the conversation with me.
Q. Was it before or after the decision was made to interview him in California?
MR. KARCIS: Same objections.
A. I don't recall if it was at the interview or before that time.
Q. And at some point in time was the issue of Kevin Plant being subject to a non-compete with Astro-Med brought to your attention?
MR. KARCIS: Same objections.
A. Yes.
Q. By whom?
MR. KARCIS: Same objections.
A. I'm not sure if it was Gary or Kevin himself.
Q. And what, if anything, did you do?
MR. KARCIS: Same objections.
A. Whoever informed me, I asked them to provide me a copy of the agreement.
Q. And did you receive a copy of the agreement?
MR. KARCIS: Same objections.
A. Yes.



Q. Let me show you what's been previously marked as Plaintiff's Exhibit 11. Do you recognize that document?
A. Yes.
Q. Is that the employment agreement between Plant and Astro-Med that contains the non-compete provision?
MR. KARCIS: Same objections.
A. It looks like it.
Q. Do you have any doubt about it?
MR. KARCIS: Same objections.
A. No.
Q. And what did you do --
MR. KARCIS: Same objections.
Q. -- once you received it?
A. I reviewed it and then I had a telephone conversation with -- with Mark McLean.
Q. And who is Mark McLean?
A. He's our counsel for labor issues.
Q. And why did you have a conversation with Mr. McLean?
MR. KARCIS: Same objections.
A. We were -- we were very impressed by Kevin. We wanted to make an offer of employment to him but we weren't sure if the non-compete agreement



was an obstacle.
Q. And did you have that discussion with Mr. McLean after you met with Mr. Plant in California?
A. I think it was after the personal interview in California.
Q. And what did Mr. McLean say to you?
MR. KARCIS: Objection. Attorney-client privilege. I instruct the witness not to answer.
Q. Did you forward the employment agreement to Mr. McLean?
A. Yes. I sent him a copy.
Q. And how long after sending him a copy did you call him or have that discussion with him?
A. I don't recall but I think it was maybe a few days.
Q. Did Mr. McLean ever send you anything in writing, other than a bill, with respect to that telephone conversation?
A. I don't recall.
Q. And then what did you do with respect to Mr. Plant after your discussion with Mr. McLean?
MR. KARCIS: Same objections.
A. I sent a letter to Kevin outlining the fact that I had some concerns regarding the -- the

non-compete agreement, but that I wanted to -- if we were to make an offer of employment to him, that he would not use any company confidential equipment specific to Astro-Med any -- with anyone at Nihon Kohden.
Q. What were your concerns with respect to the non-compete?
MR. KARCIS: Same objections.
A. Even though I didn't think it was applicable to Kevin, I still felt that there was some concern simply because it was a document that he had signed before he joined Astro-Med.
MR. KARCIS: I'll just caution, be careful about what your perception is versus what an attorney -- Nihon Kohden's attorney may have told you.
THE WITNESS: Okay.
BY MR. SCOTT:
Q. Why did you think that the non-compete provision may not have applied to Kevin? I'll show you Exhibit 11.
A. I thought it didn't apply to Kevin because there's a phrase that says, in the first paragraph, "I am, may, or will be engaged in work relating to the company's business, involving design,



development or manufacture of products for the company."
We were hiring Kevin strictly for a sales role only and nothing -- you know, we felt that there was no part of his work experience with Astro-Med that was related to the design and development or manufacturing work.
Q. Were you aware that the non-compete provision that Kevin Plant signed specifically addressed him working as a salesman for a competitor?
MR. KARCIS: Same objections.
A. No, I wasn't.
Q. Okay. If you look down at Paragraph 4 of the agreement --
A. Okay.
Q. -- do you see that it specifically addresses working as a salesman for a period --
MR. KARCIS: Same objection.
MR. SCOTT: Can you let me finish my question?
MR. KARCIS: I will if you --
MR. SCOTT: If I what?
MR. KARCIS: Finish. When you pause, it seems like you are stopping, that's why I started



posing the objection.
MR. SCOTT: Well, you are so eager to interpose inappropriate objections.
BY MR. SCOTT:
Q. Do you see in Paragraph 4, sir, that the non-compete provision applies for one year after he leaves Astro-Med's employ and includes serving for a competitor in a number of different roles, including as a salesman?
MR. KARCIS: Same objections. The document speaks for itself. It's also vague.
A. That's what it does say.
Q. Does that change -- now that you've seen this, does that change your analysis as to your earlier conclusion that the agreement may not apply to Kevin Plant?
MR. KARCIS: Same objections.
A. I don't recall if -- I don't specifically recall this one paragraph at the time that I was looking at the employment -- employee agreement but I'm assuming that since I did have a discussion with my attorney about it, that there must have been some degree of concern.
Q. I'm just asking you whether it changes your analysis, the fact that this provision, which



prohibits competing with a competitor, applies to the salesman?
MR. KARCIS: Same objections.
A. I don't think it -- it changes my mind one way or the other today compared to what I was thinking at the time that I reviewed the document the first time.
MR. SCOTT: Can you read that back for me.
(The question was read by the court reporter, as requested.)
Q. And why is that?
MR. KARCIS: Same objections.
A. Just because -- I mean you're asking for -- whether or not I've changed my mind and I'm telling you it hasn't changed my mind.
Q. Well, is your opinion today that the non-compete agreement does not apply to Kevin Plant with respect to his working for Nihon Kohden as a salesperson?
MR. KARCIS: Same objections.
A. This is the type of interpretation that I defer to my legal counsel to make a judgment.
Q. So as you sit here today, you don't know whether this applies to Mr. Plant or not?
MR. KARCIS: Same objections. Also calls