# EXHIBIT 3

McLEAN & McLEAN LLP
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

3001 2ND STREET, SUITE E
SANTA MONICA, CALIFORNIA 90405

TELEPHONE 310.450.9353
FACSIMILE 310.581.8006

December 19, 2006

**CONFIDENTIAL SETTLEMENT COMMUNICATION**
**FED. R. EVID. 408**

**VIA FACSIMILE (401) 455-0701**
**& U.S. MAIL**

Craig M. Scott, Esq.
DUFFY SWEENEY & SCOTT LTD
One Turks Head Place, Suite 1200
Providence, RI 02903

Re **Astro-Med, Inc. v. Kevin Plant**
**U. S. District Court, R.I. Case No. 06-CV-00533-ML**

Dear Mr. Scott:

We have been asked to respond to your letter, dated December 1, 2006, to our client, Nihon Kohden America, Inc. ("Nihon Kohden") concerning its employee, Mr. Kevin Plant (whom we also represent in this matter). We have carefully reviewed the points in your letter, and have gone over your well-drafted pleadings with our client. We believe we fully understand both the goals and protections being sought by Astro-Med, Inc. ("Astro-Med") in its current litigation with Mr. Plant. Because my client believes that it can compromise sufficiently on this issue, they have asked me to offer your client a negotiated out-of-court resolution.

Of concern is the apparent aim of Astro-Med's action to prohibit its former employee, Mr. Plant, from earning a living in his profession as a salesperson. While we can understand that Astro-Med may have felt litigation was necessary, it is far more likely that the parties can resolve this matter in a more efficient, precise, and effective manner by working out their legitimate concerns, rather than pursing time-consuming, costly litigation. I believe we can achieve a resolution of this matter by addressing your client's concerns while protecting Mr. Plant's right to work in his profession -- in a manner that respects, and does not infringe upon, Astro-Med's trade secrets or protected business information.

Nihon Kohden and Mr. Plant both respect your client's right to protect its business relationships and trade secret information. Nihon Kohden faces the same business issues and, as a fellow employer, Nihon Kohden shares Astro-Med's concerns about the disclosure of confidential information. However, the legal system -- with its general aversion to highly restrictive employment covenants and its tendency to protect the individual's right to continue earning a living in their established profession -- is much less likely to side with an former employer, and is even more unlikely to enforce a broad restrictive covenant that denies all access to a chosen livelihood. Having reviewed both the law and their own needs, Nihon Kohden and Mr. Plant believe that their latitude to compromise, and voluntarily implement safeguards for Astro-Med's benefit, affords your client a much greater opportunity to obtain the protections it seeks.

Nihon Kohden and Mr. Plant have already voluntarily instituted procedures to protect Astro-Med's business interests, and we understand that Mr. Plant has not solicited any of its former customers, nor has he any interest in targeting those customers for the duration of the one-year period following his date of separation. Thus, we firmly believe that through compromise, our client can offer greater protections for Astro-Med's specific business interests than Astro-Med could ever obtain from any court.

Astro-Med's legitimate business interests are not threatened by Mr. Plant's employment with Nihon Kohden. Our clients seek a resolution with Astro-Med that Mr. Plant would strictly abide by and Nihon Kohden would actively enforce. The terms of such a resolution would provide a reasonable restrictive covenant protecting your client's existing customer relationships, and any prospective Astro-Med customers known to Mr. Plant, for a period of one-year from the date of his separation. Our clients would further be willing to provide written assurances, confirming that Mr. Plant has not and will not -- for the one year period -- solicit or attempt to solicit the purchase of neurological sleep-monitoring devices from any Astro-Med customers Mr. Plant transacted with through his date of separation. Further, Mr. Plant is willing to abide by a mutual understanding outlining the scope of his business activities, in further assurance that he will not use any proprietary information in any way that threatens the legitimate business interests of Astro-Med in its sales of neurological sleep-monitoring devices, whether in competition with Astro-Med or otherwise.

We believe a quick, mutual resolution of these issues remains in the interest of all concerned. As you know, Rhode Island law does not favor restrictive covenants, evaluating such prohibitions with "careful scrutiny."[1] Therefore, former employers face a high probability of an adverse ruling on covenants that prohibit or unduly restrict the ability of former employees to work in their trade or profession. Such risk is especially high when broad non-compete provisions are unnecessary, in the particular employee's

[1] Dial Media, Inc. v. Arthur Schiff, 612 F. Supp. 1483, 1488 (D. R.I. 1985).

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

circumstances, to safeguard the employer's legitimate "protectable" interests, or where due consideration was not given in exchange for the work restrictions, or when the employer does not uniformly enforce its non-compete agreement. Enforcement requires the proven existence of imminent harm to critical business interests, such as patents or core business secrets. The mere threat of competition, the loss of a trained employee, or the potential loss of a few business transactions, will not support the imposition of a broad restrictive covenant. (Moreover, even assuming such a covenant was upheld in Rhode Island, a Florida court is unlikely to enforce the restriction against a former employee who is a resident and works within the state.) Given these obstacles, your client may be interested in resolving this matter now, in a manner that addresses all of its legitimate business interests.

In conclusion, Mr. Plant's is entitled to earn a living selling products outside of Astro-Med's product line, to non-customers of Astro-Med. Because our goal is to secure Mr. Plant's ability to continue working in his profession, without threat or harm to your client's legitimate business interests, we are confident of our prospects in this or any subsequent litigation Astro-Med might pursue. Thus this offer of compromise arises from a genuine and sincere desire to address business concerns our clients share and understand. We trust you will not presume upon their good will.

Thank you for your attention and consideration. Perhaps we can schedule a date this week for an informal telephone settlement conference. (With any luck we may actually succeed in resolving this matter prior to year's end.) In any event, I look forward to hearing from you.

Sincerely yours,

Mark A. McLean
of McLean & McLean LLP

MMC/jh