```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF RHODE ISLAND

ASTRO-MED, INC.,                      :
         Plaintiff,                   :
                                      :
     v.                               :    CA 06-533 ML
                                      :
KEVIN PLANT and NIHON KOHDEN          :
AMERICA, INC.,                        :
         Defendants.                  :
```

**MEMORANDUM AND ORDER
AWARDING ATTORNEYS' FEES
AND COSTS**

On January 3, 2008, the Court granted Plaintiff Astro-Med, Inc.'s Motion for Sanctions against Defendant Nihon Kohden America, Inc. and E.P. Michael Karcis, Esq. (Document ("Doc.") #82) ("Motion for Sanctions" or "Motion").  See Memorandum and Order Granting Plaintiff's Motion for Sanctions (Doc. #130) ("Memorandum and Order of 1/3/08").  This memorandum and order addresses the amount of the sanctions.

**Relevant Travel**

The Memorandum and Order of 1/3/08 directed Plaintiff to submit a statement of the amount of attorneys' fees and expenses it sought in connection with the Motion.  See id. at 29.  On January 14, 2008, Plaintiff Astro-Med, Inc. ("Plaintiff"), filed a supplemental affidavit from Attorney Craig M. Scott ("Attorney Scott") with an attached statement, requesting that Plaintiff be awarded $20,722.50 in attorneys' fees and $1,483.80 in expenses. See Supplemental Affidavit of Craig M. Scott, Esq. (Doc. #134) ("Scott Aff. of 1/14/08"), Attachment ("Att.") (Plaintiff's Statement of Attorneys' Fees and Expenses Pursuant to the Court's January 3, 2008[,] Memorandum and Order ("Statement")).[1]

---

[1] Plaintiff designated the attachment to the Scott Aff. of 1/14/08 as an exhibit.  The Court identifies it as the "Statement" to avoid confusion with a subsequently filed exhibit bearing the same

Defendant Nihon Kohden America, Inc. ("Nihon Kohden"), filed an objection to Plaintiff's request on January 22, 2008.  See Defendant Nihon Kohden America, Inc.'s Objection to Plaintiff's Request for an Award of Attorneys' Fees and Costs (Doc. #135) ("Nihon Kohden's First Objection").  Among other objections, Nihon Kohden noted that Plaintiff's Statement did not specify the fees incurred for travel to California and those incurred for motion work.  See Defendant Nihon Kohden America, Inc.'s Memorandum in Support of Its Objection to Plaintiff's Request for an Award of Attorneys' Fees and Costs ("Nihon Kohden's First Mem.") at 4 n.4.

On February 8, 2008, the Court issued a Notice and Order which directed Plaintiff to file an itemized statement of the fees and expenses sought pursuant to the Memorandum and Order of 1/3/08.  See Notice and Order (Doc. #141).  Plaintiff complied on February 22, 2008.  See Plaintiff's Itemized Statement of Attorneys' Fees and Expenses Pursuant to the Court's February 8, 2008[,] Notice and Order (Doc. #143), Exhibit ("Ex.") A.[2]  In this itemized statement, Plaintiff requested attorneys' fees in the amount of $20,722.50 and expenses of $1,537.43.[3]  See Ex. A at 3.  Although the Notice and Order gave Nihon Kohden until March 3, 2008, to file any response to Plaintiff's itemized statement of fee and expenses, see Notice and Order at 2, Nihon Kohden did not file a response.

At the March 7, 2008, hearing on Nihon Kohden's First

---

letter designation.

[2] Hereafter, the Court refers to this itemized statement as Ex. A.  A copy of Ex. A is attached to this Memorandum and Order.

[3] There is a difference of $53.63 between the amount claimed for expenses in the Statement ($1,483.80) and the amount claimed for expenses in Ex. A ($1,537.43).  Although the Court is unable to determine the reason for this discrepancy, it is satisfied that all of the expenses appearing in Ex. A are proper.

Objection, the initial remarks of Nihon Kohden's counsel, E.P. Michael Karcis, Esq. ("Attorney Karcis"), indicated that he was under the mistaken impression that Plaintiff had submitted billing records to the Court for *in camera* review. See Tape of 3/7/08 Hearing.  In response to an inquiry from the Court, both Attorney Karcis and Nihon Kohden's local counsel, Bruce W. Gladstone, Esq. ("Attorney Gladstone"), stated that they had not seen Ex. A which had been filed by Plaintiff on February 22, 2008.[4]  See id.  After Attorney Karcis indicated that they would be willing to proceed if he could have a recess to review Ex. A, the Court took a recess for that purpose.  Following the recess, the hearing resumed.  Thereafter, the Court took the matter under advisement.

## Discussion

### *Hourly Rates*

Nihon Kohden objects to the hourly rate of $365 claimed by Attorney Scott and Attorney Robert M. Duffy ("Attorney Duffy"). See Nihon Kohden's First Mem. at 4.  In support of this

---

[4] Attorney Karcis and/or Attorney Gladstone allowed that they may have seen Doc. #143, but they were both definite in stating that they had not seen Ex. A to that document (which contained the actual itemization of attorneys' fees and expenses).  See Tape of 3/7/08 Hearing.  Upon hearing this, the Court initially indicated that the hearing might have to be postponed.  However, after listening to Plaintiff's counsel and reviewing the wording of the Notice and Order, the Court concluded that Nihon Kohden's counsel should have contacted Plaintiff's counsel regarding the missing Ex. A when they received Doc. #143.  Nihon Kohden's counsel's apparent assumption that the explanation for Ex. A's absence was that it had been submitted to the Court for *in camera* review was not reasonable.  The Notice and Order only authorized the redaction of the reason for a charge, not the redaction of the entire billing document.  See Notice and Order at 1 n.1.  In addition, the Notice and Order specified that if Plaintiff elected to redact any information, the redaction must be indicated in the document filed with the Clerk.  See id.  Since no redaction was indicated in the document filed with the Clerk, Nihon Kohden's counsel had no reasonable basis for assuming that Ex. A was missing because it had been redacted or submitted for an *in camera* review.

objection, Nihon Kohden has submitted an affidavit from Attorney Gladstone in which he affirms upon information and belief that this hourly rate is excessive. See Affidavit of Bruce W. Gladstone, Esq. in Support of Objection to Plaintiff's Request for an Award of Attor[n]eys' Fees and Costs (Doc. #136) ("Gladstone Aff.") ¶ 9. Attorney Gladstone further affirms that in his experience "the customary non-trial rate for Rhode Island based litigation counsel is approximately $225 to $325, and oftentimes a reduced rate is agreed upon for time taken in travel." Id.

Plaintiff supports its request for the $365 hourly rate with the Scott Aff. of 1/14/08 which attests that its counsel charged Plaintiff this hourly rate. See Scott Aff. of 1/14/08 ¶ 5. At the March 7, 2008, hearing, counsel for Plaintiff appeared to suggest that this fact (i.e., that the hourly rate requested is the hourly rate which Plaintiff was charged) is the only relevant consideration for purposes of awarding attorneys' fees pursuant to Fed. R. Civ. P. 37. See Tape of 3/7/08 Hearing. If so, the Court rejects this suggestion.

The proper method of awarding attorneys' fees for a violation of Rule 37 is the lodestar method, in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended. Tequila Centinela, S.A. v. Bacardi & Co., Ltd., ___ F.Supp.2d ___ , 2008 WL 565100, at *3 (D.D.C. Mar. 4, 2008); Velazquez v. Land Coast Insulation, Inc., Civil Action No. 06-0174, 2007 WL 1068470, at *1 (W.D. La. Apr. 5, 2007)(stating that Fed. R. Civ. P. 37(a)(4) requires payment of "reasonable attorneys' fee" and explaining that "[r]easonable attorneys' fees are determined by multiplying the reasonable hours expended by a reasonable hourly rate")(citing Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933 (1983))(interpreting Rule prior to December 1, 2007, amendments); see also Tollett v. City of Kemah,

285 F.3d 357, 368 (5th Cir. 2002)("[U]nder Rule 37, a party and its counsel can only be held responsible for the reasonable expenses [including attorney's fees] caused by their failure to comply with discovery.")(second alteration in original)(internal quotation marks omitted); Lithuanian Commerce Corp. v. Sara Lee Hosiery, 177 F.R.D. 205, 214 (D.N.J. 1997)(finding "that as a matter of law the award of expenses and attorneys' fees must be reasonable regardless of [defendant's] actual expenses"); Pizza Mgmt., Inc. v. Pizza Hut, Inc., No. 86-1664-C, 1989 WL 9334, at *2 (D. Kan. Jan. 10, 1989)("While a purpose of Rule 37 sanctions is reimbursement, the rule does not mandate the reimbursement for *actual* costs. Rule 37(a)(4) simply allows the recovery of *reasonable* expenses, including attorney's fees.").

  The relevant market for determining the reasonableness of an hourly rate is the community in which the district court sits. Tollett, 285 F.3d at 368; see also Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996)("In determining a reasonable hourly rate, the Supreme Court has recommended that courts use 'the prevailing market rates[5] in the relevant community' as the starting point." )(quoting Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 1547 n.11 (1984)). An attorney seeking court awarded fees may submit evidence of his customary billing rate and of the prevailing rates in the community, but the court is not obligated to adopt that rate. See Andrade, 82 F.3d at 1190; see also Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001)("[T]he court may take guidance from, but is not bound by, an attorney's standard billing rate."). A court may rely upon its own

---

[5] Prevailing market rates are defined as "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 1547 n.11 (1984); see also United States v. Metro. Dist. Comm'n., 847 F.2d 12, 19 (1st Cir. 1988).

knowledge of attorney's fees in its surrounding area in arriving at a reasonable hourly rate. See Andrade, 182 F.3d at 1190; Nydam v. Lennerton, 948 F.2d 808, 812-13, (1st Cir. 1991); United States v. Metro. Dist. Comm'n, 847 F.2d at 19.

Magistrate Judge Lincoln D. Almond recently determined in a copyright infringement action that an hourly rate of $365 was reasonable for Attorney Craig Scott. See Mag Jewelry Co., Inc. v. Cherokee, Inc., et al., C.A. No. 04-174T, slip op. at 7 (D.R.I. Dec. 26, 2007)(finding Attorney Scott's hourly rate of $365 reasonable in light of his "level of experience and lead role in this case"). However, Judge Almond also noted that the case before him "involve[d] an analysis of prevailing market rates for copyright litigators," id., and that the plaintiff had itself "described the area of copyright infringement law as a specialty and a complex area of law," id. (internal quotation marks omitted). The instant action involves the alleged breach of an employment agreement and the alleged misappropriation of trade secrets. See Amended Complaint. While the latter claim may involve a degree of complexity somewhat greater than that found in routine business litigation, overall the action is not on a par with copyright infringement litigation. Thus, the Court concludes that a reasonable hourly rate for Attorney Scott is $325.00 per hour. As Attorney Duffy's experience is comparable to that of Attorney Scott, the Court also fixes his hourly rate of compensation at $325.00.[6]  Nihon Kohden does not challenge the

---

[6] The Court is also influenced in its determination of a reasonable hourly rate for Attorneys Scott and Duffy by the fact that, while they are both able attorneys, neither has been practicing for more than twenty years. See Cohen, et al. v. Brown University, et al., R.I. C.A No. 92-197, slip op. at 94 (D.R.I. Aug. 10, 2001) (finding rate of "$210 per hour to be reserved for the most experienced and talented of litigators" and awarding it to two attorneys, each of whom had over twenty-five years of extensive civil rights experience).

hourly rates for Attorney Byron L. McMasters ($235.00) and Paralegal Crystal Dartt ($155.00), see Nihon Kohden's First Mem. at 4-5, and the Court finds their rates to be reasonable.

***Travel Time***

Nihon Kohden objects to Plaintiff being awarded any fees or costs in connection with Attorney Scott's travel to California based on Nihon Kohden's belief that Attorney Scott may have traveled to California on business separate from this action. See Nihon Kohden's First Mem. at 3-4.  The Court finds this belief to be unsubstantiated and lacking support.  The Court accepts as true the representation which Attorney Scott made at the March 7, 2008, hearing that he did not travel to California on business unrelated to this action.  The Court also accepts as true the affirmations contained in the Second Supplemental Affidavit of Craig M. Scott, Esq. ("Scott Aff. of 1/29/08").  Accordingly, the Court finds that Attorney Scott's travel time to and from California is compensable.

The Court further finds that Attorney Scott's travel time is compensable at the full hourly rate of $325 per hour.  As the Court of Appeals for the Seventh Circuit has explained:

> When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling.  That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time, except when they are able to bill another client for part of the travel time (a lawyer might do work for client A while flying on an airplane to a meeting with client B).

Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984); see also In the Matter of Maurice, 69 F.3d 830, 834 (7th Cir. 1995) ("Attorneys customarily charge their clients for time on an opportunity-cost basis.  Statutes authorizing compensation for attorneys' fees therefore permit compensation for travel time.");

7

Henry, 738 F.2d at 194 ("The presumption, which the defendants have not attempted to rebut, should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyers' normal working time.").

Nihon Kohden also challenges the total amount of travel time claimed by Attorney Scott (24.30 hours[7]) as unreasonable and excessive. See Defendant Nihon Kohden America, Inc.'s Memorandum in Support of Its Response to Plaintiff's Reply on Plaintiff's Request for an Award of Attorneys' Fees and Costs (Doc. #140) ("Nihon Kohden's Second Mem.") at 1. Nihon Kohden asserts that this is "twice the ten hour time for round trip air travel to and from California ...." Id. However, the time required to complete a transcontinental trip obviously involves more than just the time spent flying in an airplane. Attorney Scott had to travel from his home to the airport. Given the realities of air travel in the post-September 11, 2001, world, he had to arrive at the airport an hour and a half to two hours before his scheduled departure time. Upon arrival at the airport in California, he had to collect his belongings, exit the airport, obtain transportation, and travel to Santa Monica. The Court can easily understand how the entire trip could consume nine or ten hours each way. Attorney Scott's claim of 10.50 hours for travel on June 10, 2007, see Ex. A at 1, is not so far beyond this period so as to compel disallowance. While his claim of 13.80 hours for return travel on June 12, 2007, initially seems high, he has explained that it "includ[es] extended travel delays[.]" Id. Travel delays are a well-known and common occurrence in air travel, and the Court accepts this explanation. Accordingly, Nihon Kohden's objection to Attorney Scott's claim of 24.30 hours for travel time to and from California is overruled.

---

[7] See Ex. A at 1.

***Motion Work***

Nihon Kohden contends that Plaintiff's counsel's fees for motion work in connection with the Motion for Sanctions are unreasonable and excessive.  See Nihon Kohden's First Mem. at 5.  The Court in granting the Motion for Sanctions issued a twenty-nine page memorandum which recounted in detail the factual circumstances giving rise to the Motion.  See Memorandum and Order of 1/3/08 at 3-16.  Having gone through this exercise, the Court has an appreciation for the time required by Plaintiff's counsel to prepare and assemble all of the relevant documents and arguments in connection with the Motion for Sanctions.  The Court is also disinclined to penalize Plaintiff for the thoroughness and quality of its submissions in connection with the Motion for Sanctions when that thoroughness and quality contributed significantly to the favorable result.  See Memorandum and Order of 1/3/08 at 26 (finding the circumstances recounted "weigh heavily in favor of granting the instant Motion"); id. at 27-28 (stating that "[t]he only real question is whether Nihon Kohden and Attorney Karcis should be ordered to pay an additional [$10,000.00] penalty").  Thus, the Court rejects Nihon Kohden's challenge to the 34.40[8] hours claimed by Plaintiff for motion work in connection with the Motion for Sanctions.

***June 19, 2007, Deposition***

Nihon Kohden argues that it has already been sanctioned when it was required to produce witnesses in Rhode Island.  See Nihon Kohden's First Mem. at 4-5.  To the extent Nihon Kohden contends that no further penalty should be imposed or that the penalty imposed should be reduced because of this fact, the Court is unpersuaded — at least with regard to the penalty based on the hours expended by Plaintiff's counsel and the travel expenses

---

[8] See Ex. A at 1-3.

incurred.  The Court ordered the witnesses to appear for deposition in Rhode Island when the Court learned on June 11, 2007, that its order had been disregarded.  See Tape of 6/11/07 Hearing.  It took that action as an initial remedial measure.  At that time, the Court had yet to determine that Nihon Kohden and Attorney Karcis had engaged in the "gamesmanship," Memorandum and Order of 1/3/08 at 26; id. at 27, which the Court ultimately found so disturbing, see id. at 23-26.  Having now made that determination, the Court does not find that a reduction in the sanction is warranted on the basis which Nihon Kohden appears to advocate.

### *Preparation for Depostions*

Nihon Kohden also argues that any of Plaintiff's counsel's time spent preparing for these depositions would necessarily have been incurred by counsel and therefore should not be included in the fees allowed.  See Nihon Kohden's First Mem. at 5.  While the Court agrees with this statement, Attorney Scott has affirmed that "[n]one of my time that is the subject of my firm's fee application concerns deposition preparation."  Scott Aff. of 1/29/08 ¶ 7.  Thus, this objection is moot.

### *Additional Penalty*

Plaintiff asks that the Court reconsider its request for imposition of an additional $10,000.00 penalty on Nihon Kohden and also award Plaintiff attorneys' fees for the approximately two hours spent preparing its reply memorandum. See Reply Memorandum of Plaintiff Astro-Med, Inc. in Support of Fee Award (Doc. #137) ("Plaintiff's Reply") at 1.  The primary basis for this request appears to that Attorney Gladstone filed an affidavit in which he asserted that "Mr. Scott neglected to inform this Court that he appears to have also traveled to California that weekend[] on business separate from this action," Gladstone Aff. ¶ 8, and that Attorney Gladstone refused to

10

withdraw this affidavit after being notified by Attorney Scott that the assertion was inaccurate, see Plaintiff's Reply at 3. Attorney Gladstone maintains that he had a "good faith," Letter from Gladstone to Martin, M.J., of 1/23/08 at 1, basis for his assertion because: 1) Attorney Scott allegedly stated during a June 8, 2007, telephone conversation that he had other matters in California with which he was involved and to which he could attend while there, see Gladstone Aff. ¶ 8, and 2) that a "'Pacer' search," id., which Attorney Gladstone conducted indicated that Attorney Scott and his firm represented parties in an action in the United States District Court for the Central District of California and that a hearing had been conducted in that action on June 12, 2007, one day after the June 11, 2007, scheduled deposition date, see id.  Attorney Scott denies that he told Attorney Gladstone on June 8th that his trip involved other business in California unrelated to this action, see Scott Aff. of 1/29/08 ¶ 10, although he also indicates that during a May 24, 2007, conversation regarding scheduling he told Attorney Gladstone "that if the depositions could coincide with other business I had on the West Coast that would keep the costs down," id.  Attorney Scott further indicates that the "other West Coast business could not be coordinated with the depositions in this case."  Id.

The Court finds it unnecessary to resolve the factual dispute between Attorney Scott and Attorney Gladstone regarding what Attorney Scott stated with reference to having other business in California.  The Court is satisfied that whatever was said (on whatever date) caused Attorney Gladstone to form the erroneous impression that Attorney Scott had such business.  See Gladstone Aff. ¶ 8 ("[I]t was my understanding, from my conversations with Mr. Scott, late afternoon on June 8, 2007, that he was traveling to California for both the scheduled

11

depositions and for other business in California unrelated to this matter, *i.e.,* it was a dual-purpose trip."). While it is regrettable that Attorney Gladstone would not accept Attorney Scott's representation that he did not travel to California on other business, see Letter from Gladstone to Martin, M.J., of 1/23/08, the Court does not find that Attorney Gladstone's refusal to do so is sanctionable conduct.

With regard to the results of the "'Pacer' search," however, the Court is troubled by the fact that Attorney Gladstone and Nihon Kohden failed to acknowledge in their most recent filing that their earlier contention that Attorney Scott had attended the conference on June 12, 2007, in the Central District of California was erroneous. See Nihon Kohden's Second Mem. at 1 (referring to the Initial Status Conference in In Re Katz Interactive Call Processing Patent Litigation, Central District of California Case No. 2:07-ml-01816-RGK-FFM). At the time of the filing, Attorney Gladstone and Nihon Kohden knew: 1) that Attorney Scott had affirmed that he "did not attend the conference held in the Central District of California before U.S. District Judge R. Gary Klausner on June 12, 2007," Scott Aff. of 1/29/08 ¶ 4; 2) that the Civil Minutes of that proceeding (which were available on Pacer) reflected this fact,[9] see id.; 3) that Attorney Scott had filed an entry of appearance in Ronald A. Katz Technology Licensing, L.P. v. Citizens Financial Group Inc., et al., C.A. No. 07-210 ML, in the District of Rhode Island on June 27, 2007, see id. ¶ 5; 4) that this case was transferred to the Central District of California by the Judicial Panel on Multi-District Litigation on July 31, 2007, see id. ¶ 6; and 5) that Attorney Scott's "clients, Citizens Financial Group and

---

[9] These Civil Minutes were available to Nihon Kohden at the time it initially made its assertion that Attorney Scott had attended the conference.

12

affiliated entities, were not parties to [the [California] case in June, 2007," id. ¶ 3.  Thus, it should have been obvious to Attorney Gladstone and Nihon Kohden at the time they filed their final memorandum on February 5, 2008, that their earlier assertion[10] that Attorney Scott had attended the June conference in the Katz cases was erroneous.  Yet, they never acknowledged this fact and instead accused Attorney Scott of "skirt[ing] the issue, never addressing the facts head on."  Nihon Kohden's Second Mem. at 1; cf. Jones v. Derwinski, 1 Vet. App. 596, 606 (Vet. App. 1991)("[T]here is an inherent professional obligation imposed upon attorneys to correct misstatements.").

The Court has considered whether it should impose an additional monetary penalty because of Attorney Gladstone's and Nihon Kohden's failure to acknowledge their earlier misstatement concerning Attorney Scott.  After careful consideration, the Court will limit itself to strongly admonishing Nihon Kohden's counsel that they have an obligation to correct misstatements in their filings when such misstatements become known to them.

Lastly, the Court concludes that the attorneys' fees and expenses which it has already awarded are sufficient to punish Nihon Kohden and Attorney Karcis for their noncompliance with the Court's orders of June 8, 2007.  Accordingly, Plaintiff's request for imposition of an additional $10,000.00 penalty is again denied.  Plaintiff's request for attorneys' fees for the preparation of Plaintiff's Reply is granted, and the Court allows

---

[10] Nihon Kohden asserted in its first memorandum:

Thus, Plaintiff may be attempting to obtain these exorbitant and duplicative fees and costs that would have been incurred even if the June 11th depositions had not been ordered to go forward, for travel to and time spent in California **which was otherwise utilized by Attorney Scott to attend to matters in the Katz cases**.

Nihon Kohden's First Mem. at 4 (bold added).

13

two hours of time at $325 per hour for preparation of this document.  See Plaintiff's Reply at 5.

### *Amount of Attorneys' Fees and Expenses Awarded*

For the reasons stated above, Plaintiff is awarded attorneys' fees of $19,344.50[11] and expenses of $1,537.43[12] for a combined total of $20,881.93.

### Conclusion

In accordance with the Memorandum and Order of 1/3/08, Nihon Kohden and Attorney Karcis shall jointly and severally pay to Plaintiff's law firm, Duffy, Sweeney & Scott, the sum of $19,344.50 in attorneys' fees and $1,537.43 in expenses for a combined total of $20,881.93.  Payment shall be made within ten days of the date of this order.  Plaintiff's request for imposition of an additional penalty and/or greater sanction than that awarded by the Memorandum and Order of 1/3/08 or this Memorandum and Order is denied.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
April 3, 2008

---

[11] The amount of the attorneys' fees is based on the 34.40 hours shown in Ex. A, see Ex. A at 3, plus two hours for preparation of Plaintiff's Reply for a total of 36.40 hours.  The hourly rates applied to the 34.40 hours are the rates shown in Ex. A except that the rate of $365 per hour is reduced to $325 per hour.  The hourly rate for the two hours spent in preparation of Plaintiff's Reply is $325.  Multiplying the hours shown in Ex. A times the hourly rates (as reduced by the Court) results in a figure of $18,694.50 for the attorneys' fees.  Adding $650 ($325 x 2 hours for Plaintiff's Reply = $650) to $18,694.50 results in a total attorneys' fee of $19,344.50.

[12] The amount of the expenses is taken from Ex. A.