UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ASTRO-MED, INC.,
Plaintiff,

v. C.A. No. 06-533 ML

KEVIN PLANT, NIHON KOHDEN
AMERICA, INC.,
Defendants.

# JURY INSTRUCTIONS

# TABLE OF CONTENTS


I. GENERAL CONSIDERATIONS ....4

1. PROVINCE OF THE COURT AND JURY ....4
2. ALL PERSONS EQUAL BEFORE THE LAW – CORPORATIONS ....5
3. EVIDENCE IN THE CASE ....5
4. PREPONDERANCE OF THE EVIDENCE ....6
5. "IF YOU FIND" ....7
6. EVIDENCE – DIRECT, INDIRECT, OR CIRCUMSTANTIAL ....7
7. INFERENCES – DEFINED ....7
8. PERMISSIBLE INFERENCE FROM PARTY'S FAILURE TO PROVIDE DISCOVERY ....8
9. CREDIBILITY OF WITNESSES – DISCREPANCIES IN TESTIMONY ....8

II. PLAINTIFF'S CLAIMS ....10

1. NATURE OF THE PLAINTIFF'S CLAIMS ....10
2. MULTIPLE CLAIMS ....10
3. BREACH OF CONTRACT ....10
4. NONDISCLOSURE PROVISION OF THE EMPLOYEE AGREEMENT ....11
5. NONCOMPETE PROVISION OF THE EMPLOYEE AGREEMENT ....11
6. BREACH OF CONTRACT – DEFINED ....13
7. TORTIOUS INTERFERENCE WITH CONTRACT – ELEMENTS ....13
8. CAUSATION IN TORTIOUS INTERFERENCE WITH CONTRACT ....14
9. TRADE SECRET DEFINED ....14
10. MISAPPROPRIATION OF TRADE SECRETS ....15
11. REASONABLE STEPS TO PRESERVE SECRECY ....16

12. MISAPPROPRIATION OF TRADE SECRETS – WILLFUL AND MALICIOUS ..... 17

13. UNFAIR COMPETITION – ELEMENTS ..... 17

III. DAMAGES ..... 18

1. CONSIDER DAMAGES ONLY IF LIABILITY IS PROVEN ..... 18

2. PLAINTIFF'S DUTY TO MITIGATE DAMAGES ..... 18

3. DAMAGES FOR BREACH OF NONCOMPETE PROVISION OF CONTRACT ..... 19

4. DAMAGES FOR BREACH OF NONDISCLOSURE PROVISION OF CONTRACT ..... 19

5. DAMAGES FOR TORTIOUS INTERFERENCE WITH CONTRACT ..... 19

6. DAMAGES FOR MISAPPROPRIATION OF TRADE SECRETS ..... 20

7. DAMAGES FOR UNFAIR COMPETITION ..... 20

IV. DELIBERATIONS AND VERDICT ..... 22

1. DELIBERATIONS – GENERAL CONSIDERATIONS ..... 22

2. VERDICT – UNANIMITY & DUTY TO DELIBERATE ..... 22

3. COMMUNICATIONS BETWEEN COURT AND JURY DURING DELIBERATIONS ..... 23

# I. GENERAL CONSIDERATIONS

## 1. PROVINCE OF THE COURT AND JURY

Members of the Jury, now that you have heard the evidence and the arguments of counsel, it becomes my duty to give you instructions as to the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts of the case as you determine those facts to be from the evidence in this case. You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Counsel have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions, you are to adhere to the Court's instructions.

Further, nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case, or what that opinion is. It is not my function to determine the facts, but rather that is yours.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

2. ALL PERSONS EQUAL BEFORE THE LAW – CORPORATIONS

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life. A corporation is entitled to the same fair trial at your hands as a private individual. All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.

3. EVIDENCE IN THE CASE

The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the facts in this case, you are to consider only the evidence that has properly been put before you. It is the duty of the Court, during the course of trial, to rule on the admissibility of proffered evidence, that is, to decide whether or not you should consider proffered evidence. Such evidence as the Court has refused to admit is not a proper subject for your deliberations and should not be given consideration by you.

Papers, documents, and other objects admitted into evidence by the Court are a part of the evidence properly before you and will be available to you in the jury room for consideration during your deliberations.

The fact that the Court admitted evidence over objection should not influence you in determining the weight you should give such evidence. Nor should statements made by counsel, either for or against the admission of such evidence, influence your determination of the weight you will give the evidence, if admitted. In other words, you should determine the weight you

will give such evidence on the basis of your own consideration of it and without regard to the ruling of the Court or the statements of counsel concerning the admissibility of such evidence.

Nor should you permit objection by counsel to the admission of evidence, or the rulings of the Court thereon, to create any bias or prejudice in your minds with respect to counsel or the party he represents. It is the duty of counsel to protect the rights and interests of his / her client, and in the performance of that duty he / she freely may make objection to the admission of proffered evidence and should not, in any manner, be penalized for doing so.

4. PREPONDERANCE OF THE EVIDENCE

The burden is on the plaintiff in a civil action, such as this, to prove every essential element of its claim by a preponderance of the evidence. If the proof should fail to establish any essential element of the plaintiff's claim by a preponderance of the evidence in this case, you should find for the defendant.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds the belief that what is sought to be proved is more likely true than not true. This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proven by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

5. "IF YOU FIND"

When I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find," I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true.

6. EVIDENCE – DIRECT, INDIRECT, OR CIRCUMSTANTIAL

As I told you at the beginning of the case, there are two types of evidence from which you may properly find the truth as to the facts of a case. One is direct evidence—such as the testimony of an eyewitness. The other is indirect or circumstantial evidence—that is, the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

7. INFERENCES – DEFINED

You are to consider only the evidence in the case. In your consideration of the evidence, however, you are not limited to the bald statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You are permitted to draw, from facts which you find have been proven, such reasonable inferences as seem justified in light of your experience.

Inferences are deductions or conclusions which reason and common sense lead you to draw from facts which have been established by the evidence in this case. Inferences may not be based on speculation or conjecture.

8. PERMISSIBLE INFERENCE FROM PARTY'S FAILURE TO PROVIDE DISCOVERY

In this action, plaintiff Astro-Med issued an interrogatory, or written question, to the defendant Kevin Plant asking him to identity all sales he made on behalf of Nihon Kohden in Florida. The Court also ordered Kevin Plant to produce documents to the plaintiff regarding his consummated sales for Nihon Kohden in Florida. Kevin Plant responded to the interrogatory by referring to the documents he produced, which consisted of sales quotations.

The plaintiff asserts that Mr. Plant had in his possession documents and information from which he could have identified his actual sales, but which he did not produce. If you find that Kevin Plant failed to produce documents or information concerning the actual sales that he made on behalf of Nihon Kohden in the State of Florida, you may infer from Kevin Plant's non-production that the documents and information are unfavorable to the defense.

9. CREDIBILITY OF WITNESSES – DISCREPANCIES IN TESTIMONY

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witnesses, the manner in which the witness testified, the character of the testimony given, and evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is

worthy of belief. Consider each witness's intelligence, motive, state of mind, and demeanor or manner while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case—including statements that he or she may have made on some prior occasion.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves. You may, in short, accept or reject the testimony of any witness in whole or in part. Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

## II. PLAINTIFF'S CLAIMS

### 1. NATURE OF THE PLAINTIFF'S CLAIMS

The plaintiff in this case is Astro-Med, Inc.; the defendants in this case are Kevin Plant and Nihon Kohden America, Inc. ("Nihon Kohden"). The plaintiff alleges that defendant Kevin Plant breached his contract with the plaintiff. The plaintiff also alleges that defendant Kevin Plant is liable for unfair competition due to misuse of confidential information. The plaintiff further alleges that defendant Nihon Kohden impermissibly interfered with plaintiff's contract with defendant Kevin Plant. Finally, the plaintiff contends that both defendants misappropriated its trade secrets. As a result of these allegations, the plaintiff claims that it has suffered damages.

### 2. MULTIPLE CLAIMS

Your determination regarding liability or lack of liability with respect to any one of these claims should not influence your determination with respect to any other claim. You must consider each claim and the evidence pertaining to it separately.

### 3. BREACH OF CONTRACT

The plaintiff alleges that defendant Kevin Plant breached two provisions of the Employee Agreement, Plaintiff's Exhibit No. 3. The plaintiff claims that defendant Kevin Plant breached the nondisclosure provision of the Employee Agreement and the noncompete provision of the Employee Agreement.

In order for the plaintiff to prevail on either of its breach of contract claims, it must prove three elements by a preponderance of the evidence:

(1) that a contract existed between the plaintiff and defendant Kevin Plant;

(2) that defendant Kevin Plant breached that contract; and

(3) that the loss or damages being claimed were caused by defendant Kevin Plant's breach.

4. NONDISCLOSURE PROVISION OF THE EMPLOYEE AGREEMENT

The nondisclosure provision of the Employee Agreement prohibited defendant Kevin Plant from using or disclosing technical data, trade secrets including customer lists, information, or know how related to Astro-Med's products, processes, methods, equipment, and business practices acquired during his employment with Astro-Med.

5. NONCOMPETE PROVISION OF THE EMPLOYEE AGREEMENT

Whether a contract provision restricting competition is enforceable and the extent to which it is enforceable are questions of law that I must decide. In this case, I have determined that the noncompete provision of the Employment Agreement between plaintiff Astro-Med and defendant Kevin Plant is enforceable and modified the scope of the noncompete provision as follows:

(1) December 28, 2006 – February 15, 2007: "Defendant, Kevin Plant, is enjoined and restrained from engaging in any sales activity on behalf of Nihon Kohden America, Inc., and all its affiliates and those in concert with it, with respect to the offering for sale or selling electroencephalograph (EEG), polysomnograph (PSG), or long-term monitoring for epilepsy (LTM) equipment, and related products, within the State of Florida." (Plaintiff's Exhibit No. 37 ¶ 1)

(2) February 16, 2007 - May 7, 2007: "Defendant, Kevin Plant, and those in concert with him is enjoined and restrained from engaging in any sales activity on behalf of Nihon Kohden America, Inc., and all its affiliates and those in concert with it, with respect to the offering for sale or selling electroencephalograph (EEG), polysomnograph (PSG), and long-term monitoring for epilepsy (LTM) equipment, and related products (collectively, the "Medical Equipment"); however, Plant may sell Medical Equipment within the State of Florida for use within Florida provided that he, and those in concert with him, neither contact, market, or sell Medical Equipment to any of Astro-Med's customers or prospective customers as identified on the customer list ("Astro-Med Customer List") to be provided by Astro-Med on or before February 23, 2007 . . . The Astro-Med Customer List includes existing Astro-Med customers in Florida and prospective Astro-Med customers located in Florida that were on any lead sheet given to Plant within 90 days before Plant terminated his employment with Astro-Med." (Plaintiff's Exhibit No. 24 ¶ 1)

(3) May 8, 2007 – December 28, 2007: "Defendant, Kevin Plant, and those in concert with him, is enjoined and restrained from engaging in any sales activity on behalf of Nihon Kohden America, Inc., and all its affiliates and those in concert with it, with respect to the offering for sale or selling electroencephalograph (EEG), polysomnograph (PSG), and long-term monitoring for epilepsy (LTM) equipment, and related products (collectively, the "Medical Equipment")` in the State of Florida; however, Plant may sell Medical Equipment within the State of Florida for use within Florida provided that he, and those in concert with him, neither contact, market, or sell Medical Equipment to any of Astro-Med's customers or prospective customers as

identified on the customer list ("Astro-Med Customer List") provided by Astro-med within three (3) days of entry of this Order . . . . The Astro-Med Customer List includes existing Astro-Med customers in Florida which have ordered and / or received products from Astro-Med on or after July 1, 1999 and prospective Astro-Med customers located in Florida that were on any lead sheet given to Plant within 90 days before Plant terminated his employment with Astro-Med." (Plaintiff's Exhibit No. 27 ¶ 1)

6. <u>BREACH OF CONTRACT – DEFINED</u>

A breach of contract is a failure to comply with a material or important term of a contract. A material term is an important term, or to put it differently, it is a term that if not complied with, will deprive the other party of the benefit that it bargained for under the contract.

7. <u>TORTIOUS INTERFERENCE WITH CONTRACT – ELEMENTS</u>

In order for the plaintiff to prevail on its tortious interference claim, it must prove five elements by a preponderance of the evidence:

(1) the existence of a contract,

(2) that defendant Nihon Kohden knew of the contract,

(3) that the defendant Nihon Kohden intentionally and improperly induced defendant Kevin Plant to breach the contract,

(4) the interference caused the harm sustained,

(5) damages to the plaintiff.

Plaintiff Astro-Med bears the initial burden of proving each element of the claim for intentional interference with contract. If Astro-Med proves each element by a preponderance of the evidence, the burden shifts to defendant Nihon Kohden to prove that the interference was justified. In determining whether the interference was justified, consideration should be given to the nature of Nihon Kohden's conduct, the interests of Astro-Med allegedly harmed, and the relations between the parties. If you find first, that Astro-Med has proven the elements of this claim, and second, that Nihon Kohden acted without justification or for an improper purpose, you should find Nihon Kohden liable for tortious interference with contract.

8. <u>CAUSATION IN TORTIOUS INTERFERENCE WITH CONTRACT</u>

As to the fourth element of the claim, the plaintiff must prove by a preponderance of the evidence that "but-for" defendant Nihon Kohden's interference, defendant Kevin Plant would not have breached the contract.

9. <u>TRADE SECRET DEFINED</u>

You must determine in this action whether any of Astro-Med's trade secrets have been misappropriated by defendants Kevin Plant and Nihon Kohden. A "trade secret" is defined as information, patterns, compilations, programs, devices, methods, techniques, or processes that derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can derive economic value from its disclosure and use and which is the subject of reasonable efforts to maintain its secrecy.

Astro-Med asserts that its products under development, and its marketing, pricing, and customer information are trade secrets. You should find that these are protectable trade secrets if you determine from the evidence:

(1) that the nature of Astro-Med's products under development, and of its marketing, pricing, and customer information are proprietary;

(2) that these trade secrets would have economic value for Nihon Kohden; and

(3) that Astro-Med took reasonable steps to protect the trade secrets.

10. MISAPPROPRIATION OF TRADE SECRETS

Once you have determined that Astro-Med's trade secrets are protectable under the law, you must decide whether defendants Nihon Kohden and Kevin Plant have misappropriated Astro-Med's trade secrets. Misappropriation of a trade secret is defined as the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means. Misappropriation is also defined as the disclosure or use, without express or implied consent, of a trade secret of another by a person who:

(1) used improper means to acquire knowledge of a trade secret; or

(2) at the time of disclosure or use, knew or had reason to know that his or knowledge of the trade secret was:

a. derived from or through a person who had utilized improper means to acquire it;

b. acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

If you determine that Nihon Kohden acquired Astro-Med's trade secrets from Kevin Plant knowing that he was subject to the noncompete and nondisclosure provisions of his Employee Agreement and that he had been exposed to Astro-Med's trade secrets, you should find that the defendants misappropriated Astro-Med's trade secrets.

## 11. REASONABLE STEPS TO PRESERVE SECRECY

The law requires that one who possesses a trade secret must take reasonable steps to preserve its secrecy. The law requires only reasonable precautions, not heroic measures. In determining whether the plaintiff has taken reasonable precautions to protect the secrecy of its pricing, sales, or marketing strategies, you should give consideration to the following factors:

(1) the existence or absence of an express agreement restricting disclosure and whether the plaintiff has enforced such agreements consistently;

(2) the nature and extent of security precautions taken by the plaintiff to prevent acquisition of the information by unauthorized third parties;

(3) the circumstances under which the information was disclosed to any employee to the extent that these circumstances give rise to a reasonable inference that further disclosure, without the consent of the plaintiff, was prohibited;

(4) the degree to which the information has been placed in the public domain or rendered readily ascertainable by third parties (such as online) through issued patents or unrestricted product marketing; and

(5) the relationship between and conduct of the plaintiff and defendant Kevin Plant.

You may consider, for example, whether security precautions were taken by the plaintiff, for example, limiting access to the public and requirements that visitors be logged in and out, escorted by the plaintiff's personnel, and not permitted into areas where the trade secrets were available. You may also consider whether the plaintiff restricted the access of information it regarded as confidential or a trade secret to those employees with a need to know the information in order to perform their jobs.

## 12. <u>MISAPPROPRIATION OF TRADE SECRETS – WILLFUL AND MALICIOUS</u>

If you find that the defendants misappropriated the plaintiff's trade secrets, you must determine whether such misappropriation was willful and malicious. Willful and malicious conduct is conduct carried on with a conscious disregard for the rights of others. A person acts with conscious disregard of the rights of others when he or she is aware of the probable harmful consequences of his or her conduct and deliberately fails to avoid those consequences.

## 13. <u>UNFAIR COMPETITION – ELEMENTS</u>

Plaintiff Astro-Med also asserts that defendant Kevin Plant has engaged in unfair competition. A former employee engages in unfair competition if he uses his former employer's confidential and proprietary business information to give a competitive advantage to himself and / or his new employer. To prevail on its claim of unfair competition, Astro-Med must prove that Kevin Plant used confidential and proprietary information to give himself and / or Nihon Kohden a competitive advantage.

## III. DAMAGES

### 1. CONSIDER DAMAGES ONLY IF LIABILITY IS PROVEN

I now turn to the question of damages. In doing so, this Court does not intend to indicate that it is of the opinion that the defendant is liable.

You need consider the question of damages only if you find that the plaintiff has proven its claim; for if you do not find the defendant liable, no award of damages can be made.

Damages must be proved. The burden of proof as to the existence and extent of damages is on the plaintiff. In other words, you may make an award for damages only to the extent that you find damages have been proven by a preponderance of the evidence. You may not base an award of damages or the amount of any such award on speculation or conjecture. You must base an award of damages on the evidence presented and on what you consider to be fair and adequate compensation for such damages as you find have been proved. In making an award of damages, you must determine the precise amount to be awarded.

### 2. PLAINTIFF'S DUTY TO MITIGATE DAMAGES

The law imposes a duty on every injured person to take all reasonable steps to minimize his injuries. A plaintiff must therefore use reasonable efforts and ordinary care under the circumstances to reduce its damages, and the defendant is not liable for any additional harm which the plaintiff could have avoided.

3. DAMAGES FOR BREACH OF NONCOMPETE PROVISION OF CONTRACT

If you find that defendant Kevin Plant breached the terms of the noncompete provision of the Employment Agreement with plaintiff Astro-Med, you may award the plaintiff damages to place the plaintiff in as good a position as if the parties had fully performed the contract. Remember, the scope of the noncompete agreement is as described in Paragraph 5 of Section II above.

4. DAMAGES FOR BREACH OF NONDISCLOSURE PROVISION OF CONTRACT

If you find that defendant Kevin Plant breached the terms of the nondisclosure provision of the Employment Agreement with plaintiff Astro-Med, you may award the plaintiff damages to place the plaintiff in as good a position as if the parties had fully performed the contract.

5. DAMAGES FOR TORTIOUS INTERFERENCE WITH CONTRACT

If you find for the plaintiff on its tortious interference with contract claim, you may then award the plaintiff damages for the profits it has lost, if any, as a result of defendant Nihon Kohden's tortious interference with the contract. When I say lost profits, I mean net lost profits. Plaintiff is required to prove the amount of its lost revenue as well as the cost and expenses involved in generating that revenue. In determining the amount of any such award, you should include the amount of any sales that you find that the plaintiff would have achieved but for defendant Kevin Plant's breach of the noncompete provision of his contract as limited by the Court on December 28, 2006, February 16, 2007, and May 8, 2007 and set forth in Paragraph 5 of Section II. You should be guided by the rule that the plaintiff is entitled to any profits which

it would, with reasonable certainty, have enjoyed, were it not for the tortious interference with contract.

6. DAMAGES FOR MISAPPROPRIATION OF TRADE SECRETS

If you find that the plaintiff possessed a protectable trade secret that was misappropriated by either or both of the defendants, you may then award the plaintiff damages for the profits it has lost, if any, as a result of either or both defendant's misappropriation of the plaintiff's trade secrets and confidential information. When I say lost profits, I mean net lost profits. Plaintiff is required to prove the amount of its lost revenue as well as the cost and expenses involved in generating that revenue. In determining the amount of any such award, you should include the amount of any sales that you find that the plaintiff would have achieved but for defendants' misappropriation. You should be guided by the rule that the plaintiff is entitled to any profits which it would, with reasonable certainty, have enjoyed, were it not for the breach of its contract.

You may also award the plaintiff damages for any unjust enrichment incurred by defendants as a result of their misappropriation. Unjust enrichment damages seek to deprive defendants of whatever gain or benefit they obtained from their wrongful act. Any damages you award for unjust enrichment, however, must be additional damages not taken into account in computing the plaintiff's lost profits.

7. DAMAGES FOR UNFAIR COMPETITION

If you find that defendant Kevin Plant engaged in unfair competition, you may then award the plaintiff damages for the profits it has lost, if any, due to defendant Kevin Plant's unfair competition. When I say lost profits, I mean net lost profits. Plaintiff is required to prove

the amount of its lost revenue as well as the cost and expenses involved in generating that revenue. The plaintiff must establish such losses with reasonable certainty. In determining the amount of any such award, you should include the amount of any sales that you find that the plaintiff would have achieved but for defendant Kevin Plant's misappropriation. You should be guided by the rule that the plaintiff is entitled to any profits which it would, with reasonable certainty, have enjoyed, were it not for the misappropriation.

## IV. DELIBERATIONS AND VERDICT

### 1. DELIBERATIONS – GENERAL CONSIDERATIONS

Ladies and Gentlemen, in a moment I will dismiss you so that you may commence your deliberations. However, before I do that I need to give you some instructions about the procedures you must use in the course of your deliberations.

As I said at the beginning of my instructions, it goes without saying that prejudice, sympathy, or compassion should not be permitted to influence you in the course of your deliberations. From what I have said I do not and did not mean to imply that you should approach your consideration of this case in an intellectual vacuum. You are not required to put aside or to disregard your experiences and observations in the ordinary, everyday affairs of life. Indeed, your experiences and observations in the ordinary, everyday affairs of life are essential to your exercise of reasonably sound judgment and discretion in the course of your deliberations; it is your right and duty to consider the evidence in the light of such experience and observations.

### 2. VERDICT – UNANIMITY & DUTY TO DELIBERATE

In order for you to return a verdict, your decision must be a unanimous decision, that is, all eight of you must concur in the decision. You cannot return a verdict, either for the plaintiff or for the defendant, unless and until you are in unanimous agreement as to what your verdict shall be.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide this for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an

opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

3. COMMUNICATIONS BETWEEN COURT AND JURY DURING DELIBERATIONS

During your deliberations, if you need further instruction or assistance by the Court in any way, I ask that, through your foreperson, you reduce such requests or questions as you may have to writing. The foreperson may then hand such written requests or questions to the officer in whose charge you will now be placed. The officer will then bring such written requests to me and I will attempt to fulfill your request or answer the question as the case may be. Other than the method outlined, please do not attempt to communicate privately or in any other way with the Court.

Finally, you are never to reveal to any person – not even to the Court – how you stand, numerically or otherwise, on the questions before you, until you have reached a unanimous verdict.