# <u>EXHIBIT A</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * * C.A. NO. 06-533ML

ASTRO-MED, INC.

VS. APRIL 2, 2008
9:30 A.M.

KEVIN PLANT, et al

* * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE MARY M. LISI,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE PLAINTIFF: STACEY P. NAKASIAN, ESQ.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

FOR THE DEFENDANTS: BRUCE W. GLADSTONE, ESQ.
Cameron & Mittleman
56 Exchange Terrace
Providence, RI 02903

E.P. MICHAEL KARCIS, ESQ.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

sales.

MS. NAKASIAN: Yes.

THE COURT: And if I understand you correctly, the January 8th letter authored by Mr. Gladstone accompanied the production in response to that order.

MS. NAKASIAN: That's correct.

THE COURT: And on the second page of that letter, Mr. Gladstone writes, "To the extent that Mr. Plant did and does have possession of and/or dominion and control over materials which refer, relate or pertain to consummated sales, they are enclosed herewith."

MS. NAKASIAN: That's correct.

THE COURT: Okay. And what you got along with Mr. Gladstone's letter was a stack of paper; is that right?

MS. NAKASIAN: That's correct.

THE COURT: A portion of which is what you have marked as Plaintiff's 36.

MS. NAKASIAN: That's correct.

THE COURT: Okay. And the reason why you identified what you did in 36 was because those are the only things in the stack of papers you received that even arguably would be considered to comply with that provision of the order relating to consummated sales.

THE COURT: And the next communication was an e-mail from you to Mr. Karcis regarding the same subject on February 14.

MS. NAKASIAN: In between the two, I spoke with Mr. Gladstone and I spoke separately with Mr. Karcis.

THE COURT: Okay. And can you tell me what each of them said to you with respect to specifically the request for production of documents relating to consummated sales.

MS. NAKASIAN: I addressed the production generally and explained that I could not tell what documents were responsive to what. Mr. Gladstone -- and the first person I spoke to was Mr. Gladstone, who said he would have to get a hold of Mr. Karcis and they would get back to me.

Subsequently, I spoke to Mr. Karcis, and I think it was the same date as my e-mail. And he represented to me that he had -- the documents had been forwarded to Mr. Gladstone's office for production and he thought they had been organized according to what they were responsive to and that there were stickies or something on them.

I told him that all I know is I got a pile of documents, I didn't have those stickies. Mr. Karcis told me he'd look into it and get back to me -- with

me, and he said he needed to speak to Mr. Gladstone. And that is the communication that I confirmed, followed up in this e-mail because I wanted to have a record.

THE COURT: Okay. And so that's when you wrote to Mr. Karcis and said, You're going to confer with Mr. Gladstone to respond to the specific questions in my letter, I'd appreciate you getting back to me today.

Did you hear back from either Mr. Gladstone or Mr. Karcis that day?

MS. NAKASIAN: No.

THE COURT: Have you received any further communication from either Mr. Karcis or Mr. Gladstone in connection with that request?

MS. NAKASIAN: No.

THE COURT: Don't go away yet. Tell me what the other things were that came in the package along with what you've marked as Plaintiff's 36. If they're marked as exhibits, that would be helpful to me. If they're not, I understand.

MS. NAKASIAN: There were -- and I looked at it again this morning because I wanted to refresh myself on that. There were a bunch of e-mails. I think some of those are some of the e-mails I went over with Mr. Plant today. There was an MD Buyline market

research report. There was some Nihon Kohden marketing materials.

THE COURT: So there were e-mails.

MS. NAKASIAN: Uh-huh.

THE COURT: There was the MD Buyline report.

MS. NAKASIAN: There were some Nihon Kohden marketing materials, brochures I think, and it may have been Astro-Med's. I just remember seeing some brochures and not being that interested in them.

THE COURT: Okay.

MS. NAKASIAN: There were some reports that it looked like Mr. Plant had kept from the days when he was at Astro-Med, reports of sales that supported commission calculations.

I think that production also is where I got the compensation plan that I admitted as an exhibit through Mr. Mancini, and that's the extent of my recollection. I do have the production in my office.

THE COURT: You have it?

MS. NAKASIAN: I do. And after those things was this chunk of quotations which I've marked as Exhibit 36, and when -- I looked through that production very carefully. I was very curious to get these documents. I was anxious to see whether, in fact, there had been violations of the order, breaches

THE COURT: Do you know the total amount in that?

MS. NAKASIAN: I do not.

THE COURT: Have you done a compilation of the total amount that's shown in those documents?

MS. NAKASIAN: I didn't, your Honor. The analysis I had done was of the subset that relates to Astro-Med customers. And I have that information, and that's what I'll be presenting to the jury; but we basically culled out the ones we were concerned about and put the others aside.

And pursuant to the protective order, I have not shared any of that information with my client, and that's -- so we've done this internally.

The second thing I would request is, and I think it's authorized under Rule 37(b)(2)(B), is an order precluding the Defendants --

THE COURT: Let me just --

MS. NAKASIAN: Yup.

THE COURT: I think -- are you using the new 37 or the old 37?

MS. NAKASIAN: 2007 is all I have.

THE COURT: The wording is the same, but the numbers have changed. That's why I wanted to be clear on this. In your '07 volume, which I have, the new

dominion and control over materials requested under Request For Production Number 3, they are enclosed herewith.

THE COURT: All right. And Request Number 3 related to what?

MR. GLADSTONE: It states, your Honor, and this is reading directly from the requests that were executed by Robert Duffy, Request Number 3, "All documents which refer, relate or pertain to the claims, defenses and/or subject matter of this litigation, Astro-Med, Inc., versus Kevin Plant and Nihon Kohden America, Inc., Civil Action Number 06-533ML."

So that was a wide-open category, your Honor. So Ms. Nakasian knew full well that part -- that those documents contained -- that were turned over contained documents in that wide-open category.

And that goes directly to the issue of Ms. Nakasian stating that she was reasonable in relying, based on what has been put before the Court, on that production as stating there were certain documents contained therein that she could say those documents are consummated sales.

There was a group of documents, your Honor, and clearly Ms. Nakasian knew that that group of documents also contained that catchall category which would

consummated sales to Florida businesses that were not listed on Astro-Med's customer list.

THE COURT: I don't think the request was that narrow. What I want to know from you is, did you see Mr. Gladstone's letter?

MR. KARCIS: I had seen it this morning.

THE COURT: Well, did you see it in January?

MR. KARCIS: I would imagine, yes, your Honor, I did review it in January.

THE COURT: Where he says -- he makes an affirmative statement that all the documents relating to consummated sales as ordered by the magistrate judge, and I don't think it's as narrow as what you've indicated, have been enclosed.

Now, Ms. Nakasian then tries to narrow it down to say -- because Mr. Gladstone apparently didn't follow the rule and label anything. You know that?

MR. KARCIS: Yes. Mr. Gladstone and I talked about the nonlabeling of the documents, yes.

THE COURT: And what did you decide about that?

MR. KARCIS: Your Honor, I believe with the impending trial that that got lost in the shuffle of getting ready for trial in this case.

THE COURT: Even though counsel specifically requested you to identify them?

Mr. Plant has a powerful motive not to get it right as he sits here today under the gun.

But most importantly, from my client's perspective, I have no way to test the results of that process. Certainly I can cross-examine Mr. Plant, but all I can go on is his word.

Had this process been done in February when I asked it to be done, I could have given follow-up discovery, I could have sought Nihon Kohden documents to determine exactly what the sales were to which customers on what dates, I could have correlated it to the quotations, and I could have put it altogether.

I could have deposed Mr. Plant, which we never did in this case because, quite frankly, nothing came out in discovery until these documents that changed what we had learned at the preliminary injunction hearing and we were trying to keep costs down, keep the case moving. We felt -- we made a judgment that we didn't need to depose him.

But had I had this information, I would have taken his deposition because if we proceed with this information, I'm in the position of having to take his deposition in front of the jury.

I would have contacted customers to test whether the representations being made to me are correct or

and he basically said, I need to talk to Mr. Karcis.

MS. NAKASIAN: That's correct.

THE COURT: Even though Mr. Karcis didn't sign the cover letter that accompanied the production.

MS. NAKASIAN: That's correct.

THE COURT: And was it then you who initiated the phone call to Mr. Karcis, or did he call you?

MS. NAKASIAN: Your Honor, on that occasion I think he called me. I was in my office very early, and I think I surprised him. And we spoke, and he was calling about something else, and I reminded him that this was outstanding, I think, but I'm not certain. I do remember the substance.

THE COURT: In any event, you had a conversation with Mr. Karcis on February 14th.

MS. NAKASIAN: Yes.

THE COURT: Because you memorialized that with an e-mail.

MS. NAKASIAN: Yes.

THE COURT: And that's the one that talks about "early this morning." Tell me what happened after that phone conversation with him. Did you do anything more to press this issue?

MS. NAKASIAN: I prepared my pretrial statement and prepared for trial. At that time I thought we were

going to trial sooner than we did; but no, I didn't. Quite frankly, from my perspective, I decided that they weren't answering because they had no answer. I asked in my letter, Please confirm the quotes all relate to consummated sales. If they do not, tell me which ones don't. And when I got no response, I concluded they're stuck, I've got them dead to right, and actually made that argument before the Court in that motion in limine because -- and, frankly, I didn't want to completely show my hand to the other side, but I figured I've done it all. I've asked them. How much more do I have to do?

THE COURT: You can check the transcript, but I thought I heard Mr. Ohsawa today testify about what quotes are kept and which ones aren't.

MS. NAKASIAN: Do you know why I asked him that? Because I saw it in his deposition, and I thought, Well, this further supports it. He says they only keep quotes on consummated sales.

THE COURT: Do we know where these came from?

MS. NAKASIAN: My understanding is from Mr. Plant because the direction was to Mr. Plant.

THE COURT: But do we know from Mr. Plant where they came from?

MS. NAKASIAN: No, because I didn't depose him

belief and assumption, reasonably so I submit, that those were the consummated sales. And that's what I came prepared to deal with at trial, and I'm the one who's being ambushed.

MR. KARCIS: Comments first? Your Honor, again, we talked about one thing this morning. We talked about Ms. Nakasian's conversation with me on February 14th. And as she said, when she talked about that, she didn't follow up on it because she was busy preparing for trial. I was too, and that's why that didn't ever get addressed by either Mr. Gladstone or me, as it turns out.

However, what Ms. Nakasian's requesting is as if we responded to a request for production of documents and either objected or neglected, skipped from 1 to 3, neglected to respond to Number 2 or objected to Number 2. And then we're at the time of trial, and we pull out a document that would have been responsive to Number 2, but Ms. Nakasian objects; but Ms. Nakasian didn't object before in pretrial, which is the appropriate place to be doing that.

The appropriate place to have done this, the appropriate response to the follow-up on her request would not have been to assume that an entire stack of documents, many of which don't even mention Kevin

is a consummated sale.

I understand that this is a central point of the Plaintiff's case, but I am concerned that my acquiescence in such a request would work an injustice. This is not to say that I think the Defendants here are without fault. They most assuredly are because they created this situation.

And as I've said, what I've seen in this case from day one, counsel's performance has been obstructionist. Counsel have already been sanctioned by the magistrate judge for improper discovery conduct, have been sanctioned by the Court of Appeals for taking a frivolous appeal, and they're about to be sanctioned by this district judge, although not in the form, Ms. Nakasian, that you seek.

I'm troubled somewhat by Plaintiff's also dropping the ball somewhat in that such an important item, if you want the sanction you've asked for, really should have been made a part of a pretrial motion so that I could have handled this in a much more deliberate fashion than in the middle of trial when we have a jury in the box. And it really would have been to the benefit of all if a motion had been filed seeking the sanction that you've asked for here today.

I'm not faulting you for taking the strategy

that you took, but I'm concerned that entry of an order asking for the relief you're asking for goes too far given the circumstances.

If we didn't have the Number 3 request as part of this mix, I would have no trouble whatsoever granting the relief that you seek; but as I say, I'm concerned that such an order would work a complete injustice by perhaps awarding a windfall to the Plaintiff in this case.

And so the order I make is this. Defense counsel, not Mr. Plant, not Nihon Kohden, defense counsel, who are clearly the responsible parties here, shall pay a counsel fee to Astro-Med for the amount of time that we have wasted dealing with this issue.

That's why I suggested, Ms. Nakasian, that you keep some time records, because I don't think Astro-Med should have to pay for this nonsense.

As far as your inability to test this, I can't change that now. You made a determination that this would not be the subject of a pretrial motion. If you had asked for it then, I would have given it to you; but we're in the middle of trial now. So for me now to say, Well, you're going to have an opportunity to depose Mr. Plant, I just don't see how we're going to do that.