UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., | : | |
| Plaintiff, | : | |
| vs. | : | C.A. No. 06-533 ML |
| KEVIN PLANT and NIHON KOHDEN AMERICA, INC., | : | |
| Defendants. | : | |

**PLAINTIFF ASTRO-MED, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXEMPLARY DAMAGES**

Plaintiff Astro-Med, Inc. ("Astro-Med") submits this Memorandum in Support of its Motion for Attorneys' Fees and Exemplary Damages. Astro-Med requests the Court to award its reasonable attorneys' fees ($212,179.35) and non-taxable costs ($11,844.37) pursuant to its contract with Kevin Plant and the Rhode Island Uniform Trade Secrets Act, R.I. Gen. Laws §6-41-4. Astro-Med also seeks an award of exemplary damages in the amount of $560,000, as authorized by the Rhode Island Uniform Trade Secrets Act, R.I. Gen. Laws §6-41-3(b). Astro-Med submits that both awards are warranted in this case where the Defendants took a calculated risk and were found by the Jury to have willfully and maliciously misappropriated Astro-Med's trade secrets.

**ATTORNEYS' FEES**

1. **Plant is Contractually Obligated to Pay Astro-Med's Legal Fees**.

Kevin Plant's Employee Agreement with Astro-Med, provides: "In the event that I breach this Agreement, I agree to pay all legal and other expenses reasonably incurred by the Company in connection with the enforcement of my obligations or the Company's rights under the Agreement." *See* Plaintiff's Exhibit 3. According to that provision, Plant is contractually

obligated to pay to Astro-Med "all legal and other expenses reasonably incurred" by Astro-Med in connection with this suit, which Astro-Med brought to enforce its rights under the Agreement. As set forth below, the fees and costs sought through this Motion all were reasonably incurred and, therefore, should be awarded as part of the judgment against Plant in this action.

2. **<u>The Court Should Exercise its Discretion to Award Attorneys' Fees Under the Rhode Island Trade Secrets Act.</u>**

The Rhode Island Trade Secret Act supports an award of attorneys' fees in this case against both Plant and Nihon Kohden. After a four-day trial, the Jury hearing this matter found not only that Plant and Nihon Kohden had misappropriated trade secrets from Astro-Med, but also that their misappropriation was willful and malicious. *See* Verdict Form [Docket No. 179], Question 7. Based on that finding, the Court is authorized by the Rhode Island Trade Secret Act to award a reasonable attorneys' fee to Astro-Med. *See* R.I. Gen. Laws §6-41-4.

Astro-Med has incurred substantial fees and costs in order to protect its trade secrets through this action. The Jury asked the Court during the course of its deliberations whether it could include attorneys' fees in its award of damages, *see* Court Exhibit 7,[1] but the Court responded that it would be for the Court to determine what, if any, attorney fees to award. Thus, the damages awarded by the Jury do not include an amount to compensate Astro-Med for its legal costs.

The Rhode Island Supreme Court has recognized that "attorneys' fees are restitutionary in nature and are designed to make a party whole." *See McFarland v. Brier,* 769 A.2d 605, 613 (R.I. 2001). In *McFarland*, the Court found that refusal to award attorneys' fees in that case of

---

[1] The question presented by the jury was: "In response to question No. 2 (awarding amount of damages for breach of contract) may we respond with 'including attorneys' fees and court costs' per Exhibit 3. This would be in addition to our already determined monetary award." *See* Court Exhibit 7.

willful and malicious misappropriation "would result in far less than full compensation for the Plaintiff's injuries." *Id.* The same is true here.

Nihon Kohden hired Plant with full knowledge of his non-compete and non-disclosure obligations to Astro-Med. Nihon Kohden was advised by its counsel that there was a risk that it would be sued. *See* Plaintiff's Exhibit 32. Plant himself, who lied to Astro-Med by telling them he was not going to a competitor, was warned in a parting email by Everett Pizzuti that if he accepted employment with a competitor, Astro-Med would prosecute its rights under the Employee Agreement "vigorously and speedily." *See* Plaintiff's Exhibit 21. Thus, Plant and Nihon Kohden took a calculated risk when they joined forces to compete with Astro-Med, and they should bear the costs of that risk. On the other hand, having proven its case, Astro-Med should not be left having to pay the sizable cost that it was forced to incur in connection with this action.

Under these facts, Astro-Med submits that the Court should exercise its discretion under the Rhode Island Trade Secret Act to award it its attorneys' fees in the amount of $212,179.35[2] and non-taxable expenses in the amount of $10,941.25, against both Plant and Nihon Kohden. The fees and expenses sought are more fully described below.

3. **<u>The Attorneys' Fees and Costs Requested are Reasonable</u>**

In determining a reasonable attorney's fee, courts consider the amount of work, the skill employed, the damages at issue, and the result achieved. *E.g., OCG Microelectronic Mat'ls, Inc. v. White,* 40 F. Supp. 2d 83, 86 (D.R.I. 1999); *see also Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983). As the Court is well aware, this case, which should have proceeded smoothly from preliminary injunction hearing through discovery to trial, was instead complicated through

[2] This fee amount is not of the fees previously awarded to Astro-Med pursuant to sanctions imposed by Magistrate Judge Martin and the First Circuit. *See* Nakasian Affidavit, filed herewith, at para 7.

"shenanigans" committed by the defense throughout these proceedings. *See* Transcript of Hearing on Defendants' Motion to Dismiss, June 28, 2007 [Docket #100], at page 2. As this Court noted:

> What troubles me mostly about this case is that I repeatedly said to counsel that this is a relatively straightforward action that could and should have been resolved early on through the cooperative efforts of able counsel.
>
> Instead, what I have seen is an unnecessary increase in the costs and unnecessary activities by counsel, obstructive activities by counsel so far as what I can see from the papers that are before the Magistrate Judge, all with a view towards making this a much more difficult case than it needs to be in clear violation of Rule 1 of the Rules of Civil Procedure. And, Mr. Karcis, I suggest that you read Rule 1.

*Id.* at page 28.

Notwithstanding the Court's admonishment, the shenanigans continued throughout the course of discovery. Although Astro-Med addressed minimal discovery to the Defendants, it had to file two Motions to Compel to obtain the clearly relevant discovery sought. [Docket Nos. 64, 115]. Both motions were granted. [Docket Nos. 80, 125]. One that was granted after discovery closed led to the production of a set of sales quotations that establish the Defendants' violation of the Court's Injunction Orders and support the Jury's reasonable verdict in favor of Astro-Med. The Defendants tried to avoid production of those documents throughout discovery until, at the eleventh hour, they finally were compelled to produce them. Even then, the production failed to comply with the Court's rules, which led the Court to impose a reasonable sanction against the Defendants' lawyers at trial.

The proceedings also were unnecessarily complicated by Nihon Kohden's baseless challenge to this Court's jurisdiction. That challenge spawned extensive discovery (including out-of-state depositions) and legal briefing, which was necessary for Astro-Med to prove to the Court's satisfaction that Nihon Kohden had the systematic contacts required for general

jurisdiction as well as the specific contacts required to establish specific jurisdiction in this case. The Court, after hearing the evidence and legal arguments presented, found that this was not a "close-call case" as to jurisdiction. *Id* at 25. After loosing that Motion, Defendants proceeded undeterred in bringing a frivolous appeal that was dismissed by the First Circuit.

Defendants' shenanigans continued at trial. For example, the Defendants indicated in their Pretrial Memorandum that they intended to present a failure to mitigate defense based on the parties' settlement discussions. [Docket No. 153] Astro-Med's counsel conducted legal and factual research to oppose that argument. However, the Defendants never presented that argument at trial, rendering Astro-Med's preparation and work unnecessary. There are numerous other examples where the defense shifted gears abruptly during the course of these proceedings, which shifts led to unnecessary expenses incurred by Astro-Med as it prepared to respond to the many diverse arguments thrown up by the defense.

For these reasons, the amount of work in this case was substantial and, in large part, created by the manner in which Plant and Nihon Kohden saw fit to conduct their defense in this case. Although the fees incurred by Astro-Med are beyond what the company would have expected to incur in this case, they are reasonable under the circumstances, particularly in light of the Jury's substantial verdict that found the Defendants liable on each and every claim asserted.

4. **Astro-Med Fees and Costs are Properly Detailed and Documented as Required by Local Rule 54.1**

In *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991), the First Circuit clarified the level of detail required for fee awards by "requiring litigants to submit a 'full and specific accounting' of the tasks performed, the dates of performance, and the number of hours spent on each task." *Id.* at 523 (citations omitted). A petition for attorney's fees has the proper documentary support when it contains "detailed contemporaneous time records," that

provide a "full and specific accounting of the tasks performed, the dates of performance, and the hours expended." *Id.* at 257-28. To satisfy this requirement, and as required by L.R. 54.1(b)(1), Astro-Med submits the Affidavit of Stacey P. Nakasian, Esq. which includes the actual time records from Duffy Sweeney & Scott in support of the Motion for Attorneys' Fees. The records, which were kept contemporaneously with the dates of performance, detail the tasks performed, the person(s) performing the tasks, and the hours expended. The total amount of fees incurred, less sanctions previously paid, is $212,179.35.

Ms. Nakasian's Affidavit also identifies the hourly fees charged in this case. In evaluating the reasonableness of rates charged, courts consider the type of work performed, who performed it, the expertise that it required, and when it was undertaken. *Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir. 1980). Pursuant to Local Rule 54.1(b)(2), Astro-Med has provided an Affidavit of R. Daniel Prentiss, Esq., who practices locally and handles primarily commercial litigation. According to Mr. Prentiss, the fees charged by Duffy Sweeney & Scott in this case are reasonable and within the range of fees charged by Rhode Island lawyers with comparable experience and qualifications for complex litigation in an area such as trade secret litigation. *See* Prentiss Affidavit at para. 7. Based on the Affidavits provided, and in light of the type of work performed, Astro-Med submits that the hourly rates charged by Duffy Sweeney & Scott in this case are reasonable.

In addition to the attorneys' fees set forth above, Astro-Med also seeks $11,844.37 in non-taxable costs for disbursements Astro-Med made for: (1) on-line research ($3,634.64); (2) courier fees ($82.70); (3) postage and copying costs ($3,746.50); and (4) certain deposition-related costs ($4,380.53). These types of charges have been allowed as part of attorneys' fee awards under the law of this Circuit, *InvesSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 22-23 (1st

Cir. 2004); *United Nuclear Corp. v. Cannon*, 564 F. Supp. 581, 591-92 (D.R.I. 1983), and should be allowed here.

**EXEMPLARY DAMAGES**

The Jury's verdict, finding that the Defendants' misappropriation was willful and malicious, gives this Court the authority under the Rhode Island Uniform Trade Secrets Act to award Astro-Med exemplary damages in an amount up to twice the compensatory award. *See* R.I. Gen. Laws 6-41-3(b). Where a jury has found willful misappropriation, the court's discretion is limited. *See Biocore, Inc. v. Khosrowshahi*, 2004 WL 303194 at *4 (D. Kan. 2004). "In such cases, a court may refuse to enhance damages only if it can do so without second guessing the jury or contradicting its findings." *Id.* (citing *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996)).

In this case, there was ample evidence to support the Jury's finding that both Defendants willfully and maliciously misappropriated Astro-Med's trade secrets. It was undisputed at trial that Nihon Kohden was aware of Plant's non-disclosure and non-compete obligations to Astro-Med and that Nihon Kohden hired Plant even though it knew there was some risk of a law suit from Astro-Med. *See* Plaintiff's Exhibit 32. The evidence at trial established that of the hundreds of Astro-Med customers in Florida, only four also were customers of Nihon Kohden. *See* Transcript of April 3, 2008 [Docket No. 182] at 131. There was also evidence that Nihon Kohden intended to solicit and did solicit Astro-Med customers that it learned of from Plant. An email from Nihon Kohden employee Brian Kehoe to Plant states Nihon Kohden's interest in starting communication with Astro-Med customers for Nihon Kohden. *See* Plaintiff's Exhibit 33. Moreover, the large stack of quotations produced by Plant included $2.2 million in quotes to Astro-Med customers in 2007. *See* Transcript of April 3, 2008 [Docket No. 182] at 63. Finally, Plant admitted that contrary to his statements under oath at the Preliminary Injunction

hearing, he did contact Astro-Med customers on behalf of Nihon Kohden. *See id.* at 33-34, 119-120, 122-234. All of this evidence is sufficient to support the Jury's findings that both Plant and Nihon Kohden willfully and maliciously misappropriated Astro-Med's trade secrets.

The facts of this case fall well within the facts of other cases in which federal courts have awarded exemplary damages in trade secret cases. *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859 (N.D. Ill. 2001), involved an employee accused of using his former employer's trade secrets for the benefit of a new employer. In that case, like this one, the new employer was aware that the employee had a non-disclosure agreement with his former employer. The court in *RKI* found that the new employer took a calculated risk when it hired the employee and its actions in doing so constituted a "conscious disregard" of the rights of the former employer that justified exemplary damages under the Uniform Trade Secrets Act. 177 F. Supp. 2d at 880; *see also Mangren Res. and Dev. Corp. v. National Chem. Co.*, 87 F.3d 937 (7th Cir. 1996) (upholding award of exemplary damages where an employee and his new employer discussed the fact that they might be sued by the employee's former employer based on the employee's knowledge of that employer's trade secrets); *Brandenburg v. All-Fleet Refinishing, Inc.* 555 S.E.2d 508, 512 (Ga. App. 2001) (affirming exemplary damages where competitor actively solicited plaintiff's customers using information defendant obtained by hiring plaintiffs' employees); *Zawels v. Edutronics, Inc.*, 520 N.W.2d 520, 524 (Minn. App. 1994) (affirming exemplary damages for willful and malicious misappropriation in a case where a company used information belonging to a competitor that it knew was confidential).

As in the cases cited above, the evidence at trial established that Nihon Kohden and Plant conspired to take a calculated risk. They disregarded Astro-Med's contractual rights in order to benefit themselves to the detriment of Astro-Med. It would be difficult if not impossible to deny exemplary damages in this case without contradicting or undermining the Jury's award, which

found for Astro-Med and against the Defendants on each and every claim, including the claim for willful and malicious appropriation. For these reasons, Astro-Med respectfully submits that an award of exemplary damages is appropriate and requests that such damages be awarded to it in the amount of $560,000.

RESPECTFULLY SUBMITTED,

ASTRO-MED, INC.
By Its Attorneys

/s/ Stacey P. Nakasian, Esq.

Stacey P. Nakasian, Esq. (#5069)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

May 6, 2008

## CERTIFICATION

The undersigned hereby certifies that on the 6th day of May, 2007, a copy of the foregoing ***Plaintiff Astro-Med, Inc.'s Memorandum In Support of Motion For Attorneys' Fees and Exemplary Damages*** was filed through the ECF system, and was served electronically to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Bruce W. Gladstone, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Stacey P. Nakasian
Stacey P. Nakasian

Astro-Med\Plant, Kevin\Pleadings\06-0533 USDC\Memo Motion Atty Fees re Exemplary Damages 05-01-08.doc