# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * * C.A. NO. 06-533ML

ASTRO-MED, INC. *

VS. * APRIL 3, 2008
9:30 A.M.

KEVIN PLANT, et al *

* * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE MARY M. LISI,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE PLAINTIFF: STACEY P. NAKASIAN, ESQ.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

FOR THE DEFENDANTS: BRUCE W. GLADSTONE, ESQ.
Cameron & Mittleman
56 Exchange Terrace
Providence, RI 02903

E.P. MICHAEL KARCIS, ESQ.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

**CROSS-EXAMINATION**

**BY MR. KARCIS:**

Q. Good afternoon.
A. Good afternoon.
Q. Astro-Med's sales dropped after Mr. Plant left?
A. That's correct.
Q. How much of the drop in -- strike that. If Mr. Plant had died, would Astro-Med's sales have dropped?
A. Yes. That's correct.
Q. Would you have sued his estate for him dying?
MS. NAKASIAN: Objection.
THE COURT: Sustained.
Q. When Mr. Astro-Med -- when Mr. Plant left Astro-Med and went to Nihon Kohden, did his sales -- did he take away sales directly from Astro-Med?
A. Because he was not in the territory, we did not get sales.
Q. I understand. Did Mr. Plant sell Astro-Med equipment that took away sales from Astro-Med (sic)?
A. I don't understand that question.
MS. NAKASIAN: Objection.
THE COURT: You said -- rephrase.
MR. KARCIS: Sure.
Q. Would you identify for us one customer that would

have purchased Astro-Med equipment but for the fact Mr. Plant sold it Nihon Kohden equipment.
A. Well, I would say there are lots of customers that did not place orders, many of whom were on those quotations that were recited this morning.
Q. Could you name one customer who did not purchase Astro-Med equipment because it instead purchased Nihon Kohden equipment from Mr. Plant as a salesman.
MS. NAKASIAN: Objection. Asked and answered. He just answered that question.
THE COURT: Overruled.
A. Again, I would repeat that those customers are the ones that were recited this morning, the ones that my counsel discussed with Kevin Plant and he admitted to having gotten involved with those customers.
MR. KARCIS: I apologize. My hearing's bad. Would you please read back the last portion of that answer.
THE COURT: The ones my counsel discussed with Kevin Plant and he admitted to having gotten involved with those customers.
Q. Let's look, sir, at Exhibit 38, which is in the small binder.
A. I don't have the small binder.
Q. Is this one of the documents you were talking

about in your answer, sir?
A. It could be, if this is one of the ones that my attorney recited this morning. I didn't --
Q. Is it one of the documents?
A. Excuse me?
Q. Is this one of the clients Astro-Med lost a sale to because of Kevin Plant?
A. It could be. I'm not sure. I didn't memorize them all.
Q. Let's look at Exhibit 39 then. Is this a document -- is this a client that Astro-Med lost a sale to because of Kevin Plant?
A. I don't know. It could be. I don't know.
Q. Let's look at Number 40. Is this a client Astro-Med lost a sale to because of Kevin Plant?
A. Once again, I don't know.
Q. On 41, sir, is this a client that Astro-Med lost a sale to because of Kevin Plant?
A. I don't know.
Q. Let's look at 42, sir. Is the client listed in 42 a client Astro-Med lost a sale to because of Kevin Plant?
A. I don't know.
Q. Please look at 43, sir. Is the client listed there a client Astro-Med lost a sale to because of

Kevin Plant?
A. That's possible. I happen to recognize that customer. It's a very big name.
Q. It's possible because you recognize the name of the customer?
A. Yes. That is a Grass customer.
Q. Let's go through that. Did you hear the testimony about this exhibit from Mr. Plant?
A. Yes, I did.
Q. And did you hear Mr. Plant testify that he was not involved in this transaction?
A. Yes, I did.
Q. So this cannot then be a customer Astro-Med lost a sale to because of Kevin Plant?
MS. NAKASIAN: Objection.
THE COURT: Sustained.
Q. What quotation -- what quote had Astro-Med given to this customer for the sale of any product?
A. I'm involved with the sales of the entire country. It's impossible for me to memorize all of these detailed quotes.
Q. Did Astro-Med give a quote to this client listed on Exhibit 43 in the spring of 2007 for the sale of any EEG, PSG or LTM equipment?
MS. NAKASIAN: Objection. May we approach?

THE COURT: Approach. Step down.

(Bench conference held on the record)

MS. NAKASIAN: They're on the list, so Mr. Plant's not supposed to be quoting them at all, whether or not Astro-Med did.

MR. KARCIS: And the testimony was that he did not.

THE COURT: That's credibility for the jury to decide. I think it doesn't matter. If they're on the list, they're on the list.

MR. KARCIS: Correct.

THE COURT: Step back.

(End of bench conference)

MR. KARCIS: The ruling on the objection?

THE COURT: Sustained. Ask another question.

Q. Did you have any direct dealings on behalf of Astro-Med regarding sales to the Cleveland Clinic Foundation?

A. I didn't get the first part of that question.

Q. Did you have any direct dealings with the Cleveland Clinic Foundation regarding sales of Astro-Med equipment to it?

A. No.

Q. If you'd look at Exhibit 44, sir.

A. Okay.

Q. What sale to --
A. Excuse me?
Q. What sale to that customer did Astro-Med not achieve because of any activity by Mr. Plant?
MS. NAKASIAN: Objection, your Honor.
THE COURT: Overruled.
MS. NAKASIAN: Your Honor, may I approach?
THE COURT: Basis for the objection?
MS. NAKASIAN: The same as before. They're on the list.
THE COURT: Sustained.
Q. If you look at Exhibit 45. I'm sorry, 46, sir.
A. Yes.
Q. What sale, if any, did Astro-Med lose to the client listed on this exhibit because of activities by Mr. Plant?
MS. NAKASIAN: Objection. Same basis, your Honor.
THE COURT: Sustained.
MR. KARCIS: May I be heard on this, your Honor?
THE COURT: No, Mr. Karcis. Move ahead.
Q. If you look at 47, sir.
A. Yes.
Q. What sales, if any, did Astro-Med lose to this client because of Mr. Plant's activities?

MS. NAKASIAN: Objection. Same basis, your Honor.

THE COURT: Sustained.

Q. What dollar amount of sales did Astro-Med lose because of any activity by Mr. Plant?

A. The dollar amount of sales that we lost is the difference between the average amount that we were achieving when Kevin was an employee and what we were left with after he left us as an employee.

Q. So all those sales -- so that's about what, $400,000? Was that -- sir, are you then saying that all of the sales, the decrease in sales from the time Mr. Plant left to the date of Exhibit 23, that decrease are the damages that Astro-Med has suffered?

A. That's certainly part of the damages that were suffered, that's correct.

Q. I'm sorry?

A. Yes. That's correct.

Q. And are you saying that Kevin Plant, the total sales that Astro-Med -- the total decrease in sales for Astro-Med from the time Mr. Plant left until the date of this exhibit all instead were made by Mr. Plant and benefited Nihon Kohden?

MS. NAKASIAN: Objection. Compound.

THE COURT: Overruled.

A. Well, I can certainly say they did not benefit Astro-Med.

Q. But you can't say they benefited Nihon Kohden; correct?

A. I can say that we heard in testimony here today that he made over $2 million in quotations to -- on behalf of Nihon Kohden to many contacts that were on the Astro-Med list.

Q. Okay. That may have been what you heard, sir, and let's assume that is. We're talk -- you're talking about a quotation; correct?

A. That's correct.

Q. That's not a sale, is it?

A. That's correct.

MR. KARCIS: Nothing further at this time, your Honor.

THE COURT: Any redirect?

MS. NAKASIAN: Thank you, your Honor.

**REDIRECT EXAMINATION**

**BY MS. NAKASIAN:**

Q. Mr. Pizzuti, in your role as president of Astro-Med, Inc., have you committed Astro-Med's Florida customer list to memory?

A. No, I have not.

Q. In fact, those sales are undertaken by district