UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., Plaintiff, vs. KEVIN PLANT and NIHON KOHDEN AMERICA, INC., Defendants. | : | C.A. No. 06-533 ML |

**PLAINTIFF ASTRO-MED, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXEMPLARY DAMAGES**

After a multi-day trial in this action, the jury found that the Defendants were liable on each and every count of the complaint, including Plaintiff Astro-Med, Inc.'s ("Astro-Med") claim that the Defendants willfully and maliciously misappropriated Astro-Med's trade secrets. Based on these findings, the jury awarded substantial damages to Astro-Med and asked the Court if it could also award Astro-Med its attorneys' fees and costs pursuant to Defendant Plant's employment agreement. Notwithstanding these facts, the Defendants argue that Astro-Med should not be awarded more than $10,000 in attorneys' fees and should not receive any exemplary damages. As set forth below, the Defendants' arguments have no basis in fact and should not prevent the Court from awarding the amounts sought by Astro-Med to make Astro-Med whole and to deter the Defendants from similar conduct in the future.

**ATTORNEYS' FEES**

Defendants do not dispute that Plant's Employee Agreement obligates him to pay "all legal and other expenses reasonably incurred by [Astro-Med]" in connection with this action. *See* Plaintiff's Exhibit 3. Nor can they deny that the Court has the authority, pursuant to the Rhode Island Trade Secret Act, to award a reasonable attorneys' fee to Astro-Med. *See* R.I. Gen.

Laws §6-41-4. Rather, they assert, in a conclusory manner, that the fees sought by Astro-Med are unreasonable and excessive. Their assertions are unfounded.

1. Astro-Med's Settlement Offer is Not Admissible, Was Not Substantial, and Should Not Deter the Court from Awarding the Fees Sought

Defendants argue that any attorneys fees awarded to Astro-Med should be limited to the fees incurred prior to the date that the Defendants made a confidential settlement communication to Astro-Med. The Defendants, however, noted that their communication was confidential pursuant to Federal Rule of Evidence 408. *See* Exhibit A to the Defendants' Opposition. Thus, it is not admissible in connection with this motion. However, even if it were admissible, the offer was not, as Defendants claim, "substantial," and Astro-Med was right to reject it.

Defendants cite a Seventh Circuit case for the proposition that a "substantial" settlement offer should be considered as part of the Court's attorneys' fees analysis. *See* Defendants' Opposition at 3, citing *Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2000). Even if that case were controlling, which it is not, it only applies in cases where a "substantial" offer is made. A "substantial" offer is one "roughly equal to or more than the total damages recovered by the prevailing party." 233 F.3d at 967. The Seventh Circuit in *Moriarty* held only that a court may consider a "substantial" offer in the context of an attorneys fee award, not that it must reduce the fees sought as a result of the offer. *Id.* A substantial offer is not necessarily "determinative" of the fee issue. *Id.*

In this case, no "substantial" offer was made. When Astro-Med originally filed this suit against Plant, Astro-Med's counsel in a letter dated December 1, 2007, notified Nihon Kohden of the suit and the relevant provisions of Plant's employment agreement and asked Nihon Kohden to advise how it was going to proceed with respect to Plant. Almost three weeks later, on the

eve of the first hearing with this Court, Nihon Kohden made the confidential communication attached to its opposition papers.[1]

In the communication the Defendants represented that Mr. Plant had not solicited any Astro-Med customers since leaving the company and expressed a willingness to agree for a period of one year to restrict Plant from soliciting Astro-Med customers with whom he transacted business. The Defendants' offer included no amount to compensate Astro-Med for the legal fees and costs it had incurred to that point.

The offer made was not substantial and fell far short of the result Astro-Med obtained by injunction. The injunction initially precluded Plant from any relevant sales in Florida and later from sales to Astro-Med customers and prospects. The offer only covered customers with whom Plant transacted business while at Astro-Med (which he claimed was only 35 customers). The offer also included no monetary component, and therefore did not come near to approximating the damages awarded at trial.

Astro-Med was justifiably skeptical about any assertions made by the Defendants in their settlement communication. Plant had lied to Astro-Med about his intentions to work with a competitor. Astro-Med had not yet taken any discovery regarding Plant's sales activities on behalf of Nihon Kohden, and Nihon Kohden had not promptly responded to Astro-Med's

---

[1] Defendants assert in their papers that Astro-Med's counsel never informed Astro-Med of or responded to the settlement communication. Both assertions, which the Defendants attempt to establish through Attorney Karcis' affidavit, are demonstrably false as seen from subsequent correspondence between Mr. Karcis and Mr. Scott. First, Astro-Med's counsel did respond to Defendant's "offer," as acknowledged in a letter dated December 21, 2007 written by Mr. Karcis. *See* Exhibit A. Second, in a letter dated December 22, 2007, Mr. Scott told Mr. Karcis that he planned on discussing the Defendants' proposal with his client. Significantly, that letter was copied to Astro-Med. *See* Exhibit B. Thus, Mr. Karcis is well aware that Astro-Med was informed of and responded to the Defendants' settlement communications.

Mr. Karcis' affidavit attributing off the record statements to Mr. Pizzuti is absurd. No such statements were made off or on the record. Mr. Gladstone cannot have confirmed the statements. The deposition transcript reflects that he entered the deposition briefly and departed and there was no break while he was in attendance. In any event, attached to this memorandum as Exhibit C is a copy of the transmittal by which Mr. Scott sent Mr. Karcis' December 19, 2007 letter to Astro-Med.

December 1 inquiry. Rather, it waited until the eve of the conference to send its settlement communication.

History has proven that Astro-Med was right to reject the Defendants' settlement offer. It is clear now that the offer was made by the Defendants in an attempt to get out of the litigation before their misconduct was exposed. Discovery exposed Plant's misrepresentations in affidavits and testimony where he claimed not to have contacted or solicited Astro-Med customers on behalf of Nihon Kohden. Discovery also revealed and established Defendants' persistent violation of the injunction through Nihon Kohden's repeated, blatant solicitation of Astro-Med customers using Plant's name. If the Defendants were willing to violate clear directives of this Court's injunctions, they undoubtedly would have violated the terms of any settlement agreement. It is possible that violations of the settlement would have been undetected, but the litigation afforded Astro-Med the opportunity to discover the Defendants' misconduct.

For all these reasons, Defendants' settlement "offer" should not be considered. But even if it is, it should not be applied to reduce or limit the attorneys' fees awarded by the Court.

2. <u>Defendants' Conduct Throughout the Case, Not Astro-Med's Lawyers, Caused the Substantial Fees Incurred by Astro-Med</u>

The Defendants complain that Astro-Med's fees are excessive because its counsel overstaffed this action. However, as set forth below, Astro-Med's lawyers properly and efficiently staffed this case. The fees in this action are high because of the manner in which the defense conducted itself throughout these proceedings, not because of any unjustified actions by Plaintiff's counsel.

Significantly, despite having full access to Astro-Med's detailed legal bills, Defendants can point to no specific or even general examples of "duplicative, unproductive, excessive or unnecessary" attorney billing, as required by the lodestar analysis. *See Sherwood Brands of*

*Rhode Island, Inc. v. Smith Enterps., Inc.*, 2002 WL 32157515, *2 (D.R.I.). They simply point to the fact that over the course of the case three partners, different associates and a paralegal worked on the matter. However, they do not, and cannot, demonstrate any overlap in the work provided. That is because there was no overlap.

Although it is true that over the course of the case three different partners were involved, no two were involved at the same time. Mr. Scott filed the action and attended the initial hearings. However, because he was scheduled to try a complex patent case in Wisconsin, Mr. Duffy jumped in to take over. Mr. Duffy oversaw the initial discovery and handled Astro-Med's opposition to Nihon Kohden's jurisdictional challenge. It was contemplated that Mr. Duffy would take the case to trial. However, he experienced some health issues that prevented him from traveling to California for the Nihon Kohden depositions, and Mr. Scott took over again. As the case came up for trial, it conflicted with another patent case Mr. Scott was scheduled to try. Accordingly, Ms. Nakasian jumped in, completed discovery and tried the case. Significantly, Astro-Med was given a $7000.00 courtesy discount on its November 30, 2007 invoice, which was intended to more than compensate this long-standing client for any costs associated with the need for Ms. Nakasian to come up to speed and try the case.

Defendants also complain that various associates and a paralegal billed on the matter. The invoices reflect that work was often delegated to associates and paralegals. This was done to ensure that it was performed at an appropriate billing level, and the Defendants cite no instance of work performed that was not necessary. The Court should note that the Defendants, who are accusing Astro-Med of overstaffing this action, chose themselves to have two partner-level attorneys represent them at all court hearings, for parts of the depositions, and at trial. In contrast, Astro-Med's law firm tried this action with one lawyer, conducted depositions through

one lawyer, and, unless another lawyer was attending as a witness in contempt hearings, had only one lawyer present at all court hearings.[2]

The fact is that the fees in this case were unusually high not because of overstaffing or excessive billing, but because of the "shenanigans" carried out by the defense. The Court witnessed many of these at trial – including defense counsel's repeated failure to comply with the Court's rules and orders. Two recent examples are worth noting.

First, shortly after Astro-Med filed its Motion for Attorneys Fees and Costs, its counsel received a caustic letter from defense counsel claiming that the motion was untimely. A copy of the letter is attached as Exhibit A. Defense counsel threatened to seek sanctions against Astro-Med's counsel unless the motion was withdrawn. Astro-Med incurred fees required for its counsel to respond by directing defense counsel to the applicable federal rule.

Second, as the Court knows, pursuant to an Order entered by Magistrate Judge Martin, Defendant Nihon Kohden was ordered to pay over $20,000 as a sanction to Astro-Med. When that payment was not made on the date required, Astro-Med's counsel sent a demand letter to defense counsel. The defense counsel in response asserted that the Magistrate's Order was appealable to the First Circuit. Astro-Med's counsel informed defense counsel that it was wrong and filed a motion to compel payment setting out the governing law on the question. Subsequently Nihon Kohden made the payment and Astro-med withdrew its motion.

In both of these cases, Astro-Med incurred fees for its counsel essentially to do the Defendants'' research for them. In each case, had the defense properly reviewed applicable law, they presumably would not have taken the positions they took, and Astro-Med would not have incurred legal fees to respond. The case is replete with other examples like these, the most

---

[2] The Defendants also argue that the fees sought unreasonably include finance charges. Those charges are automatically posted by Duffy Sweeney & Scott's billing software, In every instance, the charges were later written

notable being the First Circuit's dismissal of Defendants' first appeal, in which the Court noted that "it should have been obvious to counsel that Nihon Kohden had no realistic chance of success in this appeal . . . ." *See* Judgment entered September 19. 2007 in *In re. Nihon Kohden*, No. 07-8024 (1st Cir.), attached as Exhibit B.[3]

As the First Circuit has commented, "In the last analysis, . . . staffing issues are often best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncrasies." *Lipsett v.* Blanco, 975 F.2d 934, 939 (1st Cir. 1992). This Court is well aware of the idiosyncrasies of this case. Astro-Med submits that its fees, although admittedly high for a case of this nature, were all reasonably incurred and necessary to prosecute this action and respond to the many needless and vexatious actions taken by the Defendants in this case.

3. Astro-Med's Counsel's Hourly Fees are Reasonable and Within the Range of Fees Charged by Lawyers with Comparable Experience and Qualifications

As required by Local Rule 54.1(b)(2), Astro-Med provided in support of its motion the Affidavit of R. Daniel Prentiss, Esq., who practices locally and handles primarily commercial litigation. Mr. Prentiss stated in his affidavit that the fees charged by Duffy Sweeney & Scott in this case are reasonable and within the range of fees charged by Rhode Island lawyers with comparable experience and qualifications for complex litigation in an area such as trade secret litigation. *See* Prentiss Affidavit at para. 7. To counter that affidavit, Defendants have offered the affidavit of Attorney J. Ronald Fishbein. Mr. Fishbein asserts that reasonable rates for attorneys with comparable experience and qualifications as those of Astro-Med's counsel are lower than those identified by Mr. Prentiss for the period 2006-2008. However, Mr. Fishbein has

off as indicated on the invoices. There is no amount of finance charges included in the fees sought.

[3] The First Circuit awarded Astro-Med its fees in connection with that appeal, and those fees are not included in the pending fee application.

not appeared in a case in this Court during that period. In fact, a PACER inquiry reveals that he has handled only 13 cases in this federal court, and his last appearance was April 2004. *See* Exhibit D.[4] On the other hand, PACER reports that Mr. Prentiss has handled 78 cases in this Court, nine of which were pending in the years 2006-2008. *See* Exhibit E. Mr. Prentiss' affidavit establishes that he has been associated with both regional and national law firms and, thus, has a perspective on what attorneys with the experience and qualifications of Astro-Med's counsel charge for cases such as this. Mr. Fishbein does not have that perspective. He is a solo practitioner who has never been associated with a regional or national law firm. Although Mr. Fishbein attests to having conducted 250 jury trials, he does not represent that those were commercial cases. In fact, his practice includes criminal and personal injury law. Given the relative experience of the two affiants, Astro-Med submits that the Court can and should rely on the information provided by Attorney Prentiss.

**COSTS**

Defendants make a misplaced argument that Astro-Med's application for costs should be denied because it did not submit a bill of costs. Astro-Med is not asking at this point for the clerk to tax costs post-judgment, as Defendants' argument presumes. Astro-Med is seeking to recover its costs as part of its damages pursuant to its contract with Plant and as part of its fee award under the Rhode Island Trade Secrets Act. Accordingly, 28 U.S.C. § 1290 and Rule 54(d)(1) do not apply.

Defendants are also wrong to assert that supporting documentation is required to support Astro-Med's request. Even in cases where a Bill of Costs is required, the statute requires only

[4] In his last case in this federal district, *Natalizia v. OSI Collection and Zales Delaware*, 02-CV-00440ML, Mr. Fishbein represented the plaintiff in a Truth in Lending action. The case was removed by the defendants to Federal Court and assigned to then Judge Lisi, who entered summary judgment against Mr. Fishbein's client.

that the bill be verified by an attorney, 28 U.S.C. § 1924, not that receipts and other documentation be provided. *See McMinnis v. Town of Westin*, 458 F. Supp. 2d 7, 22 (D. Conn. 2006).

If, however, the Court would like Astro-Med's costs presented in the form of a bill of costs, or if it would assist the Court to have documentation regarding the costs incurred, Astro-Med would ask leave to supplement its motion to provide such documents.

## EXEMPLARY DAMAGES

Astro-Med's request for exemplary damages is well founded in this case. The Defendants knowingly took the risk of this lawsuit. They tried to avoid litigation by obtaining an early settlement before the full nature of their misconduct was discovered. They tried to have the case dismissed on a challenge to this Court's jurisdiction even though, as this Court noted in its ruling, this was "not even a close case" on the question of jurisdiction. In the meantime, the Defendants solicited millions of dollars of sales from Astro-Med customers in violation of this Court's injunction orders while objecting to all discovery requests regarding those sales. Although Plant denied that the solicitations led to sales, he admitted having documents of the actual sales that he did not produce despite having been asked for them in discovery. Based on the evidence presented, including the other evidence of Plant's making false statements under oath, the jury rejected his testimony and reasonably awarded substantial damages to Astro-Med.

Exemplary damages are warranted by the facts of this case. They are also necessary to send a message to the Defendants, particularly Nihon Kohden,[5] that they should think twice before rolling the dice that they will get away with violating a competitor's contract and exploiting a competitor's confidential information.

---

[5] This is the second time that Nihon Kohden has been sued for hiring an employee subject to a noncompete. See Excerpts of Deposition of Michael Ohsawa, attached as Exhibit H.

**CONCLUSION**

For the forgoing reasons, Astro-Med requests that its Motion for Attorneys Fees and Exemplary Damages be granted in the full amount sought.

RESPECTFULLY SUBMITTED,

ASTRO-MED, INC.
By Its Attorneys

/s/ Stacey P. Nakasian, Esq.

Stacey P. Nakasian, Esq. (#5069)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

June 11, 2008

**CERTIFICATION**

The undersigned hereby certifies that on the 6th day of May, 2007, a copy of the foregoing ***Plaintiff Astro-Med, Inc.'s Reply Memorandum In Support of Motion For Attorneys' Fees and Exemplary Damages*** was filed through the ECF system, and was served electronically to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Bruce W. Gladstone, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Stacey P. Nakasian
Stacey P. Nakasian

Astro-Med\Plant, Kevin\Pleadings\06-0533 USDC\Reply Memo Motion Atty Fees re Exemplary Damages 05-01-08.doc