UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ASTRO-MED, INC.,
Plaintiff,

v. C.A. No. 06-533 ML

KEVIN PLANT and NIHON KOHDEN
AMERICA, INC.,
Defendants.

## MEMORANDUM AND ORDER

Plaintiff Astro-Med makes this timely motion for attorney's fees and exemplary damages against Defendants Kevin Plant ("Plant") and Nihon Kohden America, Inc. ("Nihon Kohden") after a jury trial in which the jury found in favor of Plaintiff on all counts. Plaintiff also moves for attorney's fees under the sanction ordered by the Court during trial pursuant to Fed.R.Civ.P. 37. For the reasons set forth below, Plaintiff's motions are GRANTED in part and DENIED in part.

### I. Rule 37 Sanction

Under Fed.R.Civ.P. 37(b)(2), the court may sanction a party which "fails to obey an order to provide or permit discovery . . . ." Such a sanction may include an order that "the disobedient party, the attorney advising that party, or both . . . pay the reasonable expenses, including attorney's fees, caused by the failure" to obey the order. Fed.R.Civ.P. 37(b)(2)(C).

On December 5, 2007, Magistrate Judge Martin granted Plaintiff's motion to compel discovery by ordering Defendants to "produce documents which refer, relate, or

pertain to consummated sales." (Order Granting in Part and Den. in Part Mot. to Compel, Dec. 5, 2007.) Defendants then provided Plaintiff with an undifferentiated stack of documents which responded to multiple, different, discovery requests. Included in the documents was a pile of sales documents for customers in Florida. (Pl.'s Trial Ex. 36.) At trial, Defendants objected to Plaintiff's effort to offer the sales documents as evidence of consummated sales on the grounds that they were only sales price quotations. In response, Plaintiff moved on April 2, 2008, during trial, for sanctions under Rule 37. Plaintiff requested that the jury be instructed that the pile of sales documents be taken as evidence of consummated sales. See Fed.R.Civ.P. 37(b)(2)(A)(i) (The court's "just orders" may include an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims . . . .").

Producing an undifferentiated stack of documents as the response to several different discovery requests is inadequate under the rules of discovery. Specifically, Fed.R.Civ.P. 34(b)(2)(E)(i) requires that a party "must organize and label [documents] to correspond to the categories in the request . . . ."[1] Due to the failure to label and pursuant to Fed.R.Civ.P. 37(b)(2)(C), this Court sanctioned Defendants' counsel, not Defendants, by ordering them to pay the attorney's fees for the time consumed on April 2, 2008 in dealing with this issue. (Trial Tr. 137:10-17, Apr. 2, 2008.) This Court did not grant Plaintiff's request that the stack of sales documents be taken as consummated sales for the purposes of the trial because such a severe sanction would have punished Defendants, not the attorneys who were responsible for the violation. See Equitable Life Assur. Soc.

[1] Or, the party "must produce documents as they are kept in the usual course of business . . . ," which neither side maintains occurred here. See Fed. R. Civ. P. 34(b)(2)(E)(i).

v. Porter-Englehart, 867 F.2d 79, 91 (1st Cir. 1989) ("Fairness is a two-way street: to sanction [this] award . . . in this instance would not do justice, but rather would produce an undeserved windfall . . . . We will not permit the tail to wag the dog in so witless a fashion.").

In reviewing Plaintiff's counsel's detailed bill, the Court finds that $2,267.50 covers the attorney's fees for the work related to this issue on April 2, 2008. The Court hereby orders that Defendants' counsel pay Plaintiff $2,267.50 as the sanction pursuant to Fed.R.Civ.P. 37, and that amount shall be deducted from the attorney's fees that Defendants are responsible for paying to Plaintiff. See infra Part III.

II. Exemplary Damages

Under the Rhode Island Trade Secrets Act, the court may award exemplary damages to the plaintiff when a defendant is found to have committed willful and malicious trade secret misappropriation. R.I. Gen. Laws § 6-41-3(b). Exemplary damages may be awarded in an amount up to twice the compensatory damages for the misappropriation itself. Id. In this case, the jury awarded Plaintiff $280,000 in compensatory damages for misappropriation of trade secrets. The jury also specifically found that the misappropriation was willful and malicious. Consequently, Plaintiff has asked for $560,000 in exemplary damages in addition to the $280,000 in compensatory damages for trade secret misappropriation.

Defendants correctly point out that the Rhode Island Trade Secrets Act does not mandate that the court award twice the compensatory damages in exemplary damages. Id. The court has discretion to determine the amount of the exemplary damages award, subject to the limitation that it not exceed double the compensatory damages. Id.

Defendants argue that, in this case, Plaintiff failed to make an adequate showing that Plaintiff suffered any damages due to trade secret misappropriation. They contend, therefore, that granting twice the amount of the jury's erroneous $280,000 award would be unjust.

On the contrary, this Court finds that Plaintiff made a showing of damages at trial and that the jury's award was reasonable. Under Rhode Island law, confidential customer lists and proprietary information about those customers are considered trade secrets. See Home Gas Corp. v. DeBlois Oil Co., 691 F.Supp. 567, 574-75 (D.R.I. 1987); Rego Displays, Inc. v. Fournier, 379 A.2d 1098, 1101-02 (R.I. 1977). Plaintiff introduced evidence that Defendants misappropriated Plaintiff's confidential customer lists and information about those customers, such as pricing strategies, which aided Defendants in making sales to those customers. (See, e.g., Trial Tr. 27:21-28:8, 40:8-20, 49:4-24, Apr. 3, 2008; Trial Tr. 82:4-25, Apr. 2, 2008.)

To prove damages under the Rhode Island Trade Secrets Act, Plaintiff was required to show actual losses and / or unjust enrichment. R.I. Gen. Laws § 6-41-3(a). Plaintiff presented two lines of evidence on damages. First, Plaintiff showed Astro-Med's sales figures in Florida before and after Plant left to work for Nihon Kohden. (Pl.'s Trial Ex. 23; Trial Tr. 69:16-70:10, Apr. 1, 2008.) The numbers showed that Astro-Med made $799,022 in gross sales of sleep-related medical devices in Florida during the last full fiscal year in which Plant worked for Astro-Med. (Id.) In the succeeding two years, Astro-Med's sales in this area dropped to $357,587 and $231,536 respectively. (Id.) Thus, arguably, Astro-Med lost a total of $1,008,921 in sales over those two years.[2]

[2] The calculation subtracts $357,587 from $799,022 for $441,435 and $231,536 from $799,022 for $567,486. Adding the two years' losses together equals a total loss of $1,008,921.

Of course, as Defendants point out, Astro-Med might have lost these sales in the process of finding and training a replacement salesperson even if Plant had left the industry altogether. But, Plant did not leave the industry. In concert with Nihon Kohden, he competed directly with his former employer in the same territory with the same customers. These losses, therefore, can be attributed to Plant and Nihon Kohden. See R.I. Gen. Laws § 6-41-3(a) ("Damages can include both the actual loss *caused* by misappropriation and the unjust enrichment *caused* by misappropriation . . . ." (emphasis added)). Plaintiff also provided evidence that industry gross profit margins ranged from 35-60%. (Trial Tr. 71:19-72:9, Apr. 1, 2008; Trial Tr. 27:12-27:22, Apr. 2, 2008.) Taking the low end of this range, 35%, from the putative total sales loss of $1,008,921 makes a profit loss of $353,122. The jury's decision to award $280,000 in compensatory damages is well within this estimation.

Secondly, Plaintiff showed that Plant quoted sales prices to former Astro-Med customers in the aggregate amount of approximately two million dollars while working for Nihon Kohden. Although Plaintiff was not able to present direct evidence of the number of these quotations which resulted in sales, it is reasonable to conclude, given the evidence of Plant's success in sales, that some portion of the quotations resulted in sales. Multiplying 35%, the lower end of the profit margin range, by the $2 million total of sales quotations results in $700,000. Thus, the evidence would support a finding that Defendants reaped $700,000 in profits from sales to Astro-Med customers. Again, the jury's award of $280,000 in compensatory damages is reasonably less than half this number.

In concurrence with the jury's finding, this Court finds that the misappropriation was unquestionably willful and malicious. See Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996) (noting "the impropriety of second guessing the jury" when the jury finds willful infringement). Willful and malicious conduct is conduct carried on with a conscious disregard for the rights of others. See McFarland v. Brier, 769 A.2d 605, 612 (R.I. 2001). Here, Plaintiff presented evidence that both Defendants knew about the noncompete and nondisclosure agreement at the time Plant was hired by Nihon Kohden. (Trial Tr. 81:1-15, Apr. 2, 2008.) Not only did Plant admit to soliciting Astro-Med's customers, but Nihon Kohden actively colluded with him to violate this Court's injunction order against soliciting customers on Astro-Med's customer list. (See, e.g., Trial Tr. 27:21-28:8, 49:4-24, 53:5-54:23, Apr. 3, 2008.) The Court's injunction order not only prohibited Plant from soliciting Astro-Med's customers, but anyone "in concert" with him from doing so. (Modified Interim Injunction Order, Feb. 16, 2007.) Nevertheless, Brian Kehoe, a Nihon Kohden employee, worked closely with Plant, communicated with Plant regarding Astro-Med's customers, and solicited Astro-Med's customers himself. (Pl.'s Trial Exs. 33, 34; Trial Tr. 83:1-85:9, Apr. 2, 2008; Trial Tr. 53:5-54:23, Apr. 3, 2008.) Finally, Plaintiff presented credible evidence that Plant marketed himself to Nihon Kohden on the basis of his relationships with Astro-Med customers and that this was, in part, the reason Nihon Kohden hired him. (See, e.g., Trial Tr. 78:21-79:2, 84:18-85:9, Apr. 2, 2008.) For all these reasons, the Court concludes that the jury properly found that Defendants consciously disregarded Plaintiff's rights and, therefore, that they acted willfully and maliciously.

As a result, this Court finds that the maximum exemplary damages award is appropriate to deter and punish such behavior. Plaintiff is awarded $560,000 in exemplary damages under the Rhode Island Trade Secrets Act. R.I. Gen. Laws § 6-41-3(b).

III. Attorney's Fees

As discussed, the jury ruled in Plaintiff's favor on all counts, including breach of contract and misappropriation of trade secrets. The contract at issue, a noncompete and nondisclosure agreement, required that the breaching party "pay all legal and other expenses reasonably incurred by the Company in connection with the enforcement of [the breaching party's] obligations or the Company's rights under the Agreement." (Pl.'s Trial Ex. 3 ¶ 5.) Moreover, under the Rhode Island Trade Secrets Act, the court may award reasonable attorney's fees to the prevailing party if the jury finds that the misappropriation was willful and malicious. R.I. Gen. Laws § 6-41-4(c). As discussed, the Court finds that the jury's finding of willful and malicious misappropriation of trade secrets is supported by substantial evidence. See Jurgens, 80 F.3d at 1572. Under both the breach of contract and the misappropriation of trade secrets, this Court therefore awards reasonable attorney's fees to Plaintiff.

Plaintiff moved for $212,179.35 in attorney's fees. This represents the attorney's fees for the duration of this dispute minus a $20,881.93 sanction awarded by Magistrate Judge Martin on April 3, 2008 and a $2,000 sanction awarded by the First Circuit. This Court further subtracts the $2,267.50 sanction awarded pursuant to Rule 37 discussed in Part I of this memorandum.

Defendants argue that Plaintiff forfeited its right to attorney's fees for any work conducted after Defendants offered a settlement on December 19, 2006. A trial court has "extremely broad" discretion in determining reasonable attorney's fees. Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). In making this determination, the court should avoid compensating "wasteful litigation." French v. Corporate Receivables, Inc., 489 F.3d 402, 404 (1st Cir. 2007). This is particularly the case where a prior offer of settlement is more favorable than the final judgment. See French, 489 F.3d at 404.

In this case, however, Defendants' settlement offer was considerably less favorable than the final judgment. Further, Plaintiff's decision to reject this offer and continue with litigation was hardly "wasteful." In stark contrast to the jury's award of $375,800 in compensatory damages,[3] Defendants' settlement offer included no monetary component. (See Defs.' Obj. to Att'y's Fees and Exemplary Damages Ex. A.) Instead, the settlement offer contained representations and promises that Plant had not and would not solicit Astro-Med's customers or disclose its trade secrets. (Id.) Plaintiff's skepticism of these assurances proved more than justified. Evidence at trial showed that Plant, in concert with Nihon Kohden, continued to solicit Astro-Med's customers, in violation of the Court's injunction orders. (See, e.g., Trial Tr. 27:21-28:8, 40:8-41:9, 49:4-24, 53:5-54:23 Apr. 3, 2008.) Plant admitted at trial that he had lied in the affidavit he submitted to Plaintiff in December 2006 assuring them he had not solicited Astro-Med's customers. (Trial Tr. 32:16-35:2, Apr. 3, 2008.) In short, not only did the final judgment prove to be considerably more favorable than Defendants' settlement offer,

[3] The jury awarded Plaintiff $41,900 against Plant for breach of contract, $41,900 against Nihon Kohden for tortious interference with contract, $280,000 jointly and severally against Plant and Nihon Kohden for misappropriation of trade secrets, and $12,000 against Plant for unfair competition. Thus, the total compensatory damages awarded by the jury to Plaintiff was $375,800.

Plaintiff was reasonable in deciding to pursue further litigation rather than relying on Defendants' false representations and promises.[4]

Shifting grounds, Defendants also critique the content of Plaintiff's claim for attorney's fees. Defendants argue that the Plaintiff's counsel overstaffed attorneys and charged excessive rates. If Defendants had bothered to identify any particular instances of overstaffing, rather than offering only a vague, blanket criticism, perhaps the Court might have found some merit in Defendants' accusation. But, after reviewing the 50 plus pages of detailed accounting provided by Plaintiff's counsel, this Court cannot say that the attorneys were over-staffed. Several partners did work on the case. Plaintiff's explanation, however, that different partners took the lead at different times due to health issues and the demands of other cases tallies with the time entries on the bill. Plaintiff did not staff multiple partners full-time on the case simultaneously. Counsel even gave Plaintiff a $7,000 discount to compensate for the catch-up preparation a new partner required to take the case to trial. (Affidavit of Stacey P. Nakasian, Ex. A, Nov. 30, 2007.) Although the attorney's fees in this case are higher than in similar cases of this nature, much of the additional cost can be attributed to Defendants' needless complication of the issues. As just one example, Defendants persisted in a meritless objection to jurisdiction in Rhode Island. Other instances abound.

Furthermore, the rates were reasonable. The parties have provided dueling expert affidavits on this issue. Mr. Fishbein, Defendants' expert, opines that the rates are inflated, whereas Mr. Prentiss, Plaintiff's expert, finds that the rates fall within customary

[4] As a sidenote, Defendants' claim that Plaintiff's counsel failed to even discuss this settlement offer with Plaintiff is, as Defendants should know themselves, false. The letter in which Plaintiff's counsel *responded* to Defendants' offer of settlement stated that Plaintiff's counsel "plan[ned] on discussing your proposal with my client this afternoon" and cc'ed Plaintiff. (Pl.'s Reply to Defs.' Obj. to Att'y's Fees and Exemplary Damages, Ex. B.)

bounds. Mr. Fishbein, however, does not have the expertise possessed by Mr. Prentiss on this type of litigation. This Court is aware of the prevailing rates for attorneys who practice here and finds Mr. Fishbein's critique to be without merit. [5]

In conclusion, the Court awards Plaintiff attorney's fees in the amount of $209,911.85.

IV. Costs

In conjunction with its request for attorney's fees, Plaintiff also asks for $11,844.37 in costs. Defendants object that the Plaintiff's requested costs are not supported by or properly documented under 28 U.S.C. § 1920. However, 28 U.S.C. § 1920 covers taxable costs whereas Plaintiff has requested non-taxable costs. Plaintiff asks for non-taxable costs as part of the attorney's fees it seeks for breach of contract and for willful and malicious misappropriation of trade secrets.

Plaintiff is clearly entitled to costs against Plant in his individual capacity for his breach of contract. The contract required Plant to "pay all legal and other expenses reasonably incurred by the Company in connection with the enforcement of [his] obligations or the Company's rights under the Agreement" for breach of the contract. (See Pl.'s Trial Ex. 3 ¶ 5.) The "legal and other expenses" cover the on-line research expenses, postage, copying, courier fees, and deposition-related costs which Plaintiff requests. (See id.)

It is less clear that Plaintiff should be awarded these costs under the Rhode Island Trade Secrets Act. Although the statute allows attorney's fees for willful and malicious misappropriation, it is silent as to whether section 6-41-4 permits the non-taxable costs at

---

[5] Defendants also object to 'finance charges' with which Plaintiff's counsel alleged padded the bill. However, Plaintiff's counsel did not include these finance charges in the final bill.

issue.[6] The Rhode Island Supreme Court has not spoken to clarify the silence of the Rhode Island Trade Secrets Act on non-taxable costs. Moreover, Plaintiff has not presented any relevant Rhode Island law to support its request. The Court looks, therefore, to the general rule. Under Rhode Island law, costs are allowed only by statute or contract. See, e.g., Capital Properties, Inc. v. City of Providence, 843 A.2d 456, 459 (R.I. 2004) ("It is well settled that attorneys' fees may not be appropriately awarded to a prevailing party absent contractual or statutory authorization."); Whipple v. Wales, 134 A. 22, 23-24 (R.I. 1926) (holding that the right to costs is dependent on statutory provisions, there being no right thereto at common law). This Court will not find an entitlement to these costs without any statutory support. Therefore, the Court awards the non-taxable costs only against Plant in his individual capacity for the breach of contract and not against both Defendants jointly and severally pursuant to section 6-41-4 of the Rhode Island Trade Secrets Act.

With regard to Defendants' argument that Plaintiff inadequately documented its request for taxable costs, again, Plaintiff has not requested taxable costs. Nevertheless, even under the statutes governing taxable costs, Plaintiff must only submit a verifying affidavit. See 28 U.S.C. §§ 1924, 1920. Plaintiff's counsel submitted such an affidavit. Furthermore, the amount of Plaintiff's request is reasonable, especially considering the duration and complexity of this dispute. See Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983) (noting that non-taxable costs must be "reasonable and necessary"). Accordingly, Plaintiff's request for $11,844.37 in costs is granted as against Defendant Plant.

[6] "If . . . willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." R.I. Gen. Laws § 6-41-4.

## V. Conclusion

The Court awards Plaintiff $2,267.50 in attorney's fees to be paid by Defendants' counsel pursuant to Fed.R.Civ.P. 37. Exemplary damages in the amount of $560,000 are awarded against both Defendants jointly and severally under the Rhode Island Trade Secrets Act. The Court also grants Plaintiff's request for attorney's fees in part, in the amount of $209,911.85, and Plaintiff's entire request for $11,844.37 in costs. The attorneys' fees are granted against Plant in his individual capacity for his breach of contract and against both Plant and Nihon Kohden jointly and severally for their willful and malicious misappropriation of trade secrets. Plaintiff's request for costs, however, is granted only against Plant in his individual capacity for the breach of contract. The Clerk shall enter judgment in favor of Plaintiff in accordance with the jury verdict and this order.

SO ORDERED

Mary M. Lisi
United States District Judge
July 25, 2008