**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ASTRO-MED, INC.,<br>Plaintiff,<br>v.<br><br>KEVIN PLANT; NIHON KOHDEN AMERICA, INC.<br><br>Defendants. | C.A. No. 06-533-ML |

**DEFENDANTS' MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, REMITTITUR**

Defendants Nihon Kohden America, Inc. ("Nihon Kohden") and Kevin Plant, through counsel, hereby submit their Motion for New Trial, requesting that this Court issue an order allowing a new trial on all issues, or, in the alternative, Remittitur.

KEVIN PLANT
NIHON KOHDEN AMERICA, INC.
By their Attorneys,

/s/ Bruce W. Gladstone
Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
PHONE: (401) 331-5700
FAX: (401) 331-5787

/s/ E.P. Michael Karcis
E.P. Michael Karcis, Esq.
michael@mcleanfirm.com
McLean & McLean LLP
3001 2nd St., Suite E
Santa Monica, CA 90405
PHONE: (310) 450-9353
FAX: (310) 581-8006

Date: August 4, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ASTRO-MED, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN PLANT; NIHON KOHDEN AMERICA, INC.<br><br>Defendants. | C.A. No. 06-533-ML |

## I. <u>INTRODUCTION</u>

Numerous legal and factual errors in the trial of this action resulted in a jury verdict that lacks legal or factual support. Those errors, individually and, especially, collectively, constitute serious prejudicial errors (made before and during the trial) which resulted in a shocking and unsupported award that is inconsistent with the law. Thus, Defendants' Rule 59 motion should be granted.

Plaintiff bore the burden of establishing three claims against Mr. Plant -- breach of contract, misappropriation of trade secrets and unfair competition -- and two claims against Nihon Kohden -- misappropriation of trade secrets and interference with a contractual relationship.[1] The jury's verdict was in favor of Plaintiff on each claim. However, the verdict contradicted the evidence and law in both liability and damages.

The legal and factual errors included: (1) errors of law regarding liability; (2) errors of law regarding damages; and (3) evidentiary errors, such as refusing to allow Defendants to present a rebuttal witness to "evidence" Plaintiff's counsel claimed (based on her erroneous assumptions about documents) would be presented at trial.

Specifically, the prejudicial errors of law and fact include:

---

[1] Nihon Kohden has objected to this Court exercising personal jurisdiction over it. Nihon Kohden has conducted nearly no sales activities in Rhode Island, and none of its communications with Mr. Plant occurred in Rhode Island. Plaintiff offered no evidence to support a claim of personal jurisdiction.

Errors of Law Regarding Liability

- Not finding that the non-competition agreement was unenforceable after the material changes in Mr. Plant's employment;
- Not finding that the non-competition agreement was enforceable only after reformed by this Court; and
- Not finding that Plaintiff failed to establish the misappropriation of any trade secrets.

Errors of Law Regarding Damages

- The damages awarded were speculative, as Plaintiff presented no evidence of damages, which this Court confirmed; and
- Plaintiff failed to meet its burden of proof on damages or unjust enrichment, instead offering only questionable evidence that Mr. Plant may have made quotations for the purchase of Nihon Kohden's products.

Evidentiary Errors

- The Court prohibited testimony regarding other former employees of Plaintiff against whom Plaintiff did not seek to enforce non-competition agreements despite the fact that the Court instructed the jury about importance of whether Plaintiff consistently enforced its non-competition agreements;
- The Court refused to allow Brian Kehoe to testify despite the fact that he became a necessary witness *after* the hearing on motions in limine and was available to testify;
- The Court did not sustain repeated objections to questioning of Mr. Plant requiring him to interpret discovery requests and what documents applied to specific discovery requests, all in violation of the attorney-client privilege, work product doctrine, as well as requiring legal conclusions; and
- The Court allowed the jury to be instructed that Mr. Plant should have produced commission statements even though he testified that he did not know if he had any commission statements.

Plaintiff did not meet its burden of proof to introduce credible and admissible evidence to support any of its claims.[2] Instead, the credible and admissible evidence established that Mr. Plant did not breach, and Nihon Kohden did not induce Mr. Plant to breach, Plaintiff's overly broad employment restriction, *because it was unenforceable as written.* In fact, this Court held that the overly broad employment restriction was unenforceable, causing the Court to rewrite the restriction, and allow Mr. Plant to work for Nihon Kohden.[3] The credible and admissible evidence also established that neither Mr. Plant nor Nihon Kohden used or disclosed Plaintiff's trade secrets. Moreover, even if one were to assume that either Mr. Plant or Nihon Kohden used or disclosed Plaintiff's trade secrets, there was no evidence of damage to Plaintiff, or a benefit to either Mr. Plant or Nihon Kohden.

Given the credible and admissible evidence in this case, Defendants should be granted a new trial. Alternatively, because the evidence does not support an award of damages and the jury's damage awards do not relate to and is inconsistent with the evidence, remittitur is proper.

## II. STATEMENT OF FACTS

Mr. Plant began his employment with Plaintiff in October 2002. At that time, Mr. Plant signed a document entitled "Employee Agreement" (**Trial Exhibit 3**). This document contained a non-competition provision stating:

> I recognize that the Company sells its products throughout North America and Europe; as such, upon termination of my employment at the Company, for whatever reason, I shall not directly or indirectly enter into or engage in a business that competes with the Company, **in a territory consisting of North America, and Europe**, either as an individual, partner, joint venturer, employee, agent or salesman for any person, or as an officer, director or stockholder of a corporation or otherwise, for a period of one year thereafter.

**Trial Exhibit 3,** ¶ 4 (emphasis added).

---

[2] References to "admissible" evidence refers to the fact that certain evidence, as discussed below, was admitted over objections which should have been sustained.

[3] The modified restriction as it existed through December 28, 2007, was originally set forth in this Court's February 16, 2007 Modified Interim Injunction Order. In that order, this Court only limited Mr. Plant from contacting former customers or those on lead lists given to Mr. Plant, or using or disclosing Plaintiff's trade secrets.

In 2004, Mr. Plant's position with Plaintiff materially changed when he was promoted from his position as a product specialist in Rhode Island to a sales position in Florida. Following Mr. Plant's change of position and move to Florida, no new "Employee Agreement" or non-competition agreement was executed.[4] In 2006, the terms of Mr. Plant's employment with Plaintiff again materially changed when Plaintiff unilaterally and substantially decreased Mr. Plant's Southeastern regional sales territory, giving a portion of Mr. Plant's territory to an untrained salesperson (despite Plaintiff's claim at trial about how difficult is was to find a new salesperson to replace Mr. Plant after he left Plaintiff's employ). **TR. 182:20-183:5 April 1 (Exhibit A)**; **TR. 70:10 April 1 (Exhibit A)**. Again, Plaintiff did not require Mr. Plant to execute a new non-competition agreement. Because Plaintiff unilaterally, materially and negatively altered the terms and conditions of his employment, Mr. Plant began to seek new employment and, eventually, was hired by Nihon Kohden. **TR. 73:23-74:6 April 2 (Exhibit B); TR. 153:20-154:2 April 3 (Exhibit C).**

Even if one were to assume that the non-competition provision -- after two material changes in Mr. Plant's employment status -- remained enforceable, the evidence established that, since his current employment with Nihon Kohden began in October 2006, Mr. Plant did not directly solicit any of Plaintiff's customers with whom he formerly transacted business.[5] Furthermore, in a letter dated September 18, 2006 (**Trial Exhibit B**), Nihon Kohden specifically prohibited Mr. Plant from using any of Plaintiff's trade secrets or confidential information. Following this express instruction from Nihon Kohden, the evidence established that Mr. Plant diverted no business from Plaintiff to Nihon Kohden by using or disclosing any information that might be considered proprietary or confidential.

Despite the fact that Plaintiff's non-competition should not have limited Mr. Plant's business activities in any way, Mr. Plant did not make any sales of Nihon Kohden equipment to

---

[4] The non-competition restriction was not only unenforceable after the material change in his employment status (*see, e.g.*, AFC Cable Sys. v. Clisham, 62 F. Supp. 2d 167, 172-73 (D.Mass. 1999) (applying Massachusetts law)), but also inapplicable to Mr. Plant's new position in sales, as the introductory paragraph of the Employee Agreement states that it applies only to Plaintiff's employees who are in "engaged in work relating to the Company's business, involving design, development or manufacture of products for the Company." Thus, the Agreement did not apply to Mr. Plant as a salesperson.

[5] Mr. Plant contacted two individuals with whom he dealt when employed by Plaintiff. However, the testimony was that Mr. Plant contacted those individuals only after they solicited a response from him. The only credible and admissible evidence is that Mr. Plant did not make any sale of Nihon Kohden equipment to either individual. Moreover, those contacts pre-dated this Court's reformation of the non-competition agreement. **TR. 94:5-97:16 April 3 (Exhibit C)**.

any of the customers (or potential customers) he had while employed by Plaintiff.[6] **TR. 69:18-22 April 3 (<u>Exhibit C</u>)**. Instead, Plaintiff injected a discovery dispute into the trial by claiming that documents Mr. Plant's counsel produced in response to discovery requests should be designated as documents evidencing sales, even though the documents were merely quotations.[7] **TR. 3:3-20:7 April 2 (<u>Exhibit B</u>)**. Furthermore, Plaintiff's counsel requested that the quotations be attributed as sales *made by Mr. Plant* to his former customers. *Id.* This Court did not agree with Plaintiff's counsel, but did allow -- despite objections -- questioning requiring legal conclusions and speculation, as well as information protected by the attorney-client privilege and work product doctrine (*e.g.*, asking Mr. Plant to identify the documents produced pursuant to specific discovery requests, which required Mr. Plant not only to make legal conclusions, but also to enter into the mind of his attorneys regarding the documents and to which requests they were responsive). **TR. 18:6-8; 19:8-23; 38:19-44:3 April 3 (<u>Exhibit C</u>)**.

The lack of sales by Mr. Plant was also confirmed by his testimony about receiving approximately $3,000 to $4,000 in commissions. **TR. 104:8-15 April 3 (<u>Exhibit C</u>)**. However, following Mr. Plant's testimony that he *may* have received commission statements, this Court allowed a jury instruction – over Defendants' objections – stating that the failure to produce a document to support testimony *may* indicate that the testimony is not accurate. **TR. 44:25-45:5 April 4 (<u>Exhibit D</u>)**. Thus, Plaintiff's counsel was able to argue that Mr. Plant's failure to produce a commission statement *that he did not even admit to receiving* allowed the jury to question his testimony about the commissions he actually received.

Defendants were prepared to present additional testimony on the quotations issues, having Brian Kehoe present in court to testify. Defendants did not designate Mr. Kehoe as a witness before trial. However, his testimony became necessary when Plaintiff's counsel

---

[6] There was questionable evidence that Mr. Plant submitted only quotations to his former customers, but this was based on improper questioning by Plaintiff's counsel (to which multiple objections were made) that mischaracterized the evidence, which could have been clarified by Mr. Kehoe, whose testimony this Court did not allow. *See, e.g.*, <u>McKesson Info. Solutions, Inc. v Bridge Med., Inc.</u>, 434 F.Supp. 2d 810, 812-13 (E.D.Cal. 2006), *aff'd.* 487 F.3d 897 (9th Cir. 2007).

[7] Defendants' counsel produced documents without specifying which documents were responsive to which of Plaintiff's discovery requests, because the Court required (despite objection) the production of "[a]ll documents which refer, relate or pertain to the claims, defenses and/or subject matter of this litigation, Astro-Med, Inc. v. Kevin Plant and Nihon Kohden America, Inc., C.A. No. 06-533 ML." (Plaintiff's Request for Production of Documents, Request No. 3) and all of the documents produced were responsive to that request. However, Plaintiff's counsel argued that the documents were produced pursuant to a request asking for documents relating to all sales Mr. Plant made in Florida (Plaintiff's Request for Production of Documents, Request No. 4). Counsel did not resolve this issue before trial, both admitting that the pending trial date caused the matter to be put aside. As a result of

represented in her opening statement to the jury that she would show that Mr. Plant made sales of Nihon Kohden equipment to customers he had when he worked with Plaintiff.[8] Mr. Kehoe would have testified that the quotations made to Mr. Plant's former customers were, in fact, made by him, Mr. Kehoe, not Mr. Plant, and were merely quotations, not sales. Despite stating at sidebar that Mr. Kehoe could testify about these matters, this Court refused to allow Mr. Kehoe to testify, an erroneous ruling which was exacerbated by Plaintiff's counsel claim in her closing argument that Defendants did not have Mr. Kehoe testify. **TR. 34:18-19 April 4 (Exhibit D).**

Despite the foregoing errors of law, there still remained insufficient evidence to support the jury's verdict of liability on any cause of action. Moreover, the damages awarded are inconsistent (*i.e.*, three different damage amounts awarded for each claim against Mr. Plant and two different damage amounts awarded for each claim against Nihon Kohden, even though the claims allow for virtually identical damages) and unrelated to any evidence in this case. However, it is clear that the numerous legal and evidentiary errors negatively impacted Defendants' presentation of their case and affected the jury's verdict.

## III. LEGAL ARGUMENT

### A. Standard of Review for Granting a New Trial or Remittitur Based on the Excessiveness of a Jury's Verdict

Federal Rule of Civil Procedure Rule 59(e) provides courts the authority to grant a new trial or a remittitur to reduce a jury verdict that is grossly excessive, inconsistent with the law, or shocks the conscience of the court.

New trial motions are granted where the movant shows a manifest error of law or fact. *See*, *e.g.*, Marie v. Allied Home Mortgage Co., 402 F.3d 1, 7 n.2 (1st Cir. 2005). Also, "[m]otions under Rule 59 must raise matters that were brought to the attention of the district judge during the trial, unless the alleged error was fundamental." Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 283-84 (1st Cir. 1993), *citing* 11 Wright & Miller, § 2805;

---

Plaintiff's counsel's failure to follow up on the matter, she made erroneous assumptions about the discovery requests to which the documents applied. *See, e.g.* **TR 3:3-20:7 April 2 (Exhibit B)**.

[8] Plaintiff's counsel statement at the hearing on motions in limine (the relevant portions are at **TR. 7:5-18 March 31 (Exhibit E)**) was based on her erroneous assumption that the documents were produced in response to the request for documents relating to all sales Mr. Plant made in Florida (Plaintiff's Request for Production of Documents, Request No. 4) not Request No. 3, which sought "[a]ll documents which refer, relate or pertain to the

Harley-Davidson Motor Co. v. Bank of New England-Old Colony, N.A., 897 F.2d 611, 616 (1st Cir. 1990). Also, a mistake of law is "tantamount to an abuse of discretion." Correia v. Fitzgerald, 354 F.3d 47, 54 (1st Cir. 2003). Here, Defendants raised numerous objections regarding evidence allowed or disallowed at trial. This evidence (or lack thereof) resulted in a jury verdict that did not comport with the law or evidence in the case.

As for a remittitur, the First Circuit has taken the view that a remittitur should be granted if the damages award "fails to exhibit a 'rational appraisal or estimate of the damages that could be based on the evidence before the jury.'" First Act Inc v. Brook Mays Music Company, Inc., 429 F. Supp. 2d 429, 437, *quoting* Smith v. Kmart Corp., 177 F.3d 19, 29-30 (1st Cir. 1999). Courts have also allowed plaintiffs to choose between accepting a reduced verdict or a new trial, in order to save judicial resources and the parties' economic interests. Fed. R. Civ. P. 59(a); Cahill v. TIG Premier Ins. Co., 47 F. Supp. 2d 87, 89 (D.Mass. 1999). The First Circuit favors the "least intrusive" approach, which allows a reviewing court to reduce a verdict to the maximum amount that could be upheld by the trial court as not excessive. Jones & Jones v. Pineda & Pineda, 22 F.3d 391, 398 (1st Cir. 1994). However, the District Court does have clear legal authority to determine whether the jury's verdict is against the weight of the evidence. Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996), *quoting* de Perez v. Hospital del Maestro, 910 F.2d 1004, 1006 (1st Cir. 1990).

Because of manifest errors of fact and law, a new trial is warranted. Alternatively, remittitur is also appropriate due to the unsupported damage awards.

## B. Plaintiff did not Present Evidence to Support a Finding that Mr. Plant Breached any Enforceable Non-Competition Provision

Until this Court created a new non-competition provision for Astro-Med's Employee Agreement (**Trial Exhibit 3**), the Agreement was not enforceable against Mr. Plant and, thus, Mr. Plant could not have breached the Agreement.

### 1. Under Rhode Island Law, there is a Presumption against the Enforceability of Restrictive Covenants and a Requirement that they be Reasonable to be Enforced

claims, defenses and/or subject matter of this litigation, Astro-Med, Inc. v. Kevin Plant and Nihon Kohden America, Inc., C.A. No. 06-533 ML," as discussed at **TR. 3:3-20:7 April 2 (Exhibit B)**.

A restrictive covenant is unreasonable (and, thus, unenforceable), unless it satisfies the test set forth in Dial Media, Inc. v. Arthur Schiff, 12 F. Supp. 1483, 1488 (R.I. 1985). In Dial Media, the court held that "a covenant in restraint of trade is unreasonable if it '(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undo hardship upon the person restrained.'" *Id.*, 1488. Moreover, "under Rhode Island law, noncompetitive covenants are not favored by the courts." Nestle Food Co. v. Miller, 836 F.Supp. 69, 73 (D.R.I. 1993).

Following Dial Media analysis, the court in Merrimack Valley Wood Prods. v. Near, 152 N.H. 192, 196, 876 A.2d 757 (N.H. 2005), stated that the trial court found that the plaintiff-employer's "non-compete covenant was unreasonable because it was too broad." *Then*, the trial court analyzed whether reformation was merited, but did not reform the agreement to make it enforceable. *Id.* In Near, the reviewing court affirmed the trial court's analysis and decision stating, "[b]ecause the restrictive covenant fails the first prong of the reasonableness test [*i.e.*, "whether the restriction is greater than necessary to protect the legitimate interests of the employer"], it is unreasonable, **and therefore unenforceable**." *Id.* (emphasis added). In so stating, the Near court articulated a two-step analysis of non-competition agreements. The first step of the analysis is to determine whether a non-competition agreement is reasonable (*i.e.*, whether it protects the legitimate interests of the employer without being overly broad). If the restriction is overly broad, the agreement is not enforceable. In the instant action, this Court determined that the non-competition provision was overly broad. Therefore, it was not enforceable. The second step of the analysis is to determine whether the non-competition provision may be modified/reformed to make it enforceable.[9]

A restraint on trade provision is not enforceable *until* the court modifies it to make it enforceable. *See*, *e.g.*, Durapin, Inc. v. American Prods., 559 A.2d 1051, 1057 (R.I. 1989) (unreasonable restraint on trade agreement is not enforceable, but may be modified to make it enforceable). In Hawkins v. Daly, 2003 R.I. Super. LEXIS 14, 14, the court stated that non-competition provisions "will only be enforced when reasonable and where restrictions do not

[9] By analogy, a contract that is indefinite as to its material terms is unenforceable. *See*, *e.g.*, Soar v. NFL Players Assn., 438 F. Supp. 337, 343 (D.R.I. 1975) (pension plan contract that does not specify the terms of eligibility or schedule of benefits unenforceable). Similarly, the non-competition in the Employee Agreement, which was drafted by Plaintiff, violated public policy (*e.g.*, it had an overly broad geographic scope) and, thus was unenforceable. However, with regard to non-competition provisions, Rhode Island law permits otherwise unenforceable non-competition agreements to be reformed in equity for the purpose of limiting the non-competition provision to make the unenforceable provision enforceable. *See*, *e.g.*, Durapin, *surpa*, 559 A.2d at 1058-59.

extend beyond what is apparently necessary for the protection of the employer's business." Likewise, because this Court could not enforce the overly broad non-competition provision in the Employee Agreement, Mr. Plant could not breach it, until this Court modified the provision to make it enforceable.

### 2. Plaintiff's Overly Broad Restrictive Covenant should not be given Ex Post Facto Application

Rhode Island recognizes that an unenforceable restraint on trade (such as a non-competition provision) may be modified by a court to make it enforceable. *See, e.g.*, Durapin, *supra*, 559 A.2d at 1058-59. The post-employment restriction in the Employee Agreement purported to prohibit Defendant Plant from working *in all of North America and Europe*. Such an overly broad geographic restriction is unenforceable. *See, e.g.*, Dryvit Sys. v. Healy, 1989 R.I. Super. LEXIS 105, 13-15 (restrictive covenant that proscribed a geographic restraint covering where the plaintiff conducted business held unenforceable). This Court recognized that the overly broad restriction could not be enforced and, therefore, limited the geographic scope to the State of Florida. And, then, only to a limited amount Plaintiff's existing and potential customers, allowing Mr. Plant to work for a purported competitor of Plaintiff.

The non-competition provision in the Employee Agreement was unenforceable until this Court modified it to make it partially enforceable in its December 28, 2006 Interim Preliminary Injunction Order (and, subsequently, in its February 16, 2007 Modified Interim Injunction Order this Court clarified the limits it intended to impose, as it significantly lessened the limitations in the December 28 Order). By its terms, the original non-competition provision: (i) prohibited Defendant Plant from obtaining employment with any of Plaintiff's competitors;[10] and (ii) prohibited Defendant Plant from working any where in North America or Europe. In fact, this Court stated that "the sheer breadth of geographic limitation contained in the agreement, it seems to me, unless there's a whole lot more that I haven't heard, **I don't think is enforceable under Rhode Island law**."[11]

Due to the Agreement's overreaching scope, this Court was required to substantially modify the non-competition provision to make it enforceable by allowing Defendant Plant to

[10] A prohibition of working for competitors is an unreasonable geographic restriction. *See, e.g.*, Dryvit Sys., *supra*, 1989 R.I. Super. LEXIS at 14, n.3.

[11] December 28, 2006 Transcript, 27:12-16 (**Exhibit F**) (emphasis added).

work for Nihon Kohden and limiting Mr. Plant's business activities in *only* the State of Florida by restricting Mr. Plant from directly contacting his former customers or customer leads. *See* February 16 Order (**Trial Exhibit 24**).

Defendant Plant could not have breached the original non-competition restriction because (as this Court ruled in substantially modifying the restriction) it was unenforceable. Moreover, Defendant Plant complied with the work restriction set forth in the February 16 Order (and subsequent injunction orders of this Court) and, thus, did not breach any non-competition obligation owed to Plaintiff. And Plaintiff did not present legally sufficient evidence to support a finding that Mr. Plant breached the Employee Agreement.

## C. The Non-Competition Agreement is Unenforceable

### 1. Material Changes in Mr. Plant's Employment Status with Plaintiff Voided the Non-Competition Restriction

When there is a material change in the employment relationship, prior employment agreements, including non-competition agreements, are voided. *See*, *e.g.*, AFC Cable Sys. v. Clisham, 62 F. Supp. 2d 167, 172-73 (D.Mass. 1999) (applying Massachusetts law). In Clisham, the defendant's former employer sought to enforce a 1992 non-competition agreement against the defendant when the defendant left his position to work for a competitor. *Id.*, at 170. However, the defendant's position with the plaintiff had changed in 1994 when he was promoted from Sales Consultant to Sales Manager. *Id.* **The Clisham court determined that the change in the defendant's employment relationship with the plaintiff "[made] it clear that [the defendant] entered a new relationship with [the plaintiff], thereby voiding the 1992 [Non-Competition] Agreement."** *Id.*, at 173 (emphasis added).

During the course of Mr. Plant's employment with Plaintiff, Mr. Plant testified that there were *two* fundamental changes in his employment status, both of which occurred after he executed the Employee Agreement. First, in 2004, Mr. Plant's position materially changed, from "Product Specialist" in Rhode Island (Mr. Plant's position at the time of his hire in 2002), to a salesperson position in Florida.[12] The Employee Agreement *may* have arguably covered Mr. Plant's position as a Product Specialist, but by its express terms did not apply to salespersons. In

[12] As Mr. Plant testified, the differences in these two positions (beyond Mr. Plant being required to move from Rhode Island to Florida) are extensive. As a Product Specialist, Mr. Plant was mainly responsible for working

this regard, the introductory paragraph of the Employee Agreement states that the agreement applies to only those individuals who are involved in the "design, development or manufacture of products for the Company."

Moreover, in June 2006, Plaintiff again substantially and unilaterally changed Mr. Plant's employment relationship, when it cut a significant portion of his sales territory – and, thus, his earning potential -- and assigned it to another, untrained salesperson. As a result of these material changes in Mr. Plant's employment with Plaintiff, the non-competition provision in the Employee Agreement is void and unenforceable against Mr. Plant.

**2. Plaintiff's Breach of the Employee Agreement Voided any Obligations Mr. Plant had Pursuant to the Agreement**

Plaintiff's substantial reduction of Mr. Plant's sales territory breached the Employee Agreement and directly led to Mr. Plant leaving Plaintiff's employment.

In Lantor, Inc. v. Ellis 1998 Mass. Super. LEXIS 560, the defendant executed a non-competition agreement while employed as a salesperson by the plaintiff. Thereafter, the plaintiff unilaterally changed the defendant's sales commission compensation. *Id.*, at 5. Denying the plaintiff's motion for a preliminary injunction, the Lantor court stated: "'It is well established that a material breach by one party excuses the other party from further performance under the contract.' [Citation.] **It is also plain that a material breach of an employment agreement by an employer may discharge an employee from further obligation under a non-competition provision of that agreement.** [Citation.]" *Id.*, at 23 (emphasis added).

In Dialogo, LLC v. Bauza, 456 F. Supp. 2d 219, 226 fn. 4 (D.Mass. 2006), the plaintiff sought to enforce a non-competition provision against the defendant, its former employee, who had left to work for a competitor. The defendant claimed that the plaintiff failed to fully compensate him for his employment, which was an obligation separate from the non-competition agreement that the defendant executed. *Id.*, at 223. Granting the defendant's motion for summary judgment, the Dialogo court, citing Lantor, stated, **"Accordingly, [the plaintiff]'s material breach of [the defendant]'s employment agreement excuses [the defendant] from any obligation to refrain from competition."** *Id.*, at 226 fn. 4 (emphasis added).

---

directly with Plaintiff's sales force to answer questions regarding Plaintiff's products. As a salesperson, Mr. Plant was responsible for calling on potential and existing customers and conducting follow-up calls after sales.

Plaintiff's 2006 unilateral and drastic reduction in Mr. Plant's sales territory was a material breach of Mr. Plant's employment relationship with Plaintiff. This breach excuses Mr. Plant from any contractual obligation he *may* have had to refrain from competition.

### 3. The Non-Competition Agreement is Unenforceable because it does not Protect Legitimate Business Interests

The elements that must be established by a party seeking to enforce a non-competition provision are:

(1) the non-compete clause is an ancillary provision to a valid transaction or relationship, such as an employment contract;

(2) the non-compete provision is independently supported by adequate consideration; and

(3) a legitimate business interest exists that the non-compete provision is designed to protect.

Durapin, *surpa*, 559 A.2d at 1053. Plaintiff's evidence does not support the last prong of the test.

"Protection of confidential information and goodwill" are the only legitimate interests the moving party may establish by the evidence. Nestle Food Co. v. Miller, 836 F. Supp. 69, 75 (D.R.I. 1993). The former employer's mere desire to be free from competition, by itself, is not a "protectable interest." *Id.*, 836 F. Supp. at 75, n.19. An example of a protectable interest is specialized training provided by an employer to teach an employee to perform special tasks or peculiar services. Dial Media, Inc. v. Schiff, 612 F. Supp. 1483, 1489 (D.R.I. 1985). Denying the plaintiff-former employer's motion for a preliminary injunction, the Dial court stated:

> Plaintiff has not demonstrated that Defendant gained any unfair competitive advantage due to his former employment at Dial Media, any more than a stranger would have, who had [the defendant]'s background and experience. **Since an employee is entitled to use general knowledge and expertise learned during his employment to continue his livelihood, Plaintiff has no interest in Defendant's future productivity to protect.**

*Id.*, at 1491, fn. 5 (emphasis added).[13] Accordingly, Plaintiff failed to introduce sufficient evidence to establish that its non-compete provision (which was deemed unenforceable by this Court) was designed to safeguard a protectable interest, such as the protection of confidential information or to safeguard investments in employee specialized training.

### 4. Because the Non-Competition Agreement is Unenforceable, Nihon Kohden could not have Interfered with the Agreement

For the foregoing reasons, the non-competition provision between Mr. Plant and Plaintiff was not enforceable. Thus, there is no legal basis for finding that Nihon Kohden interfered with Mr. Plant's contractual relationship with Plaintiff.

In Telectronics, Inc. v. Downing, 1987 U.S. Dist. LEXIS 3070 (D.Mass 1987), the plaintiff claimed that that the identities of its customers were confidential. However, the Telectronics court held that the plaintiff's non-competition agreement was unenforceable against its former employees, because the information was readily ascertainable through public sources, and therefore granted summary judgment in favor of the former employees. The Telectronics court also granted summary judgment to the defendants' new employer, explaining that, "**since the noncompetition agreement is unenforceable [against the individual defendants], plaintiff has alleged no wrongful act or means on the part of [the defendant new employer] which constituted the allege interference with [the plaintiff], [or its] relationships with [the individual defendants].**" *Id.*, at 11-12 (emphasis added).

As with the new employer defendant in Telectronics, Nihon Kohden could not have interfered with or induce a breach of Mr. Plant's obligations under the Employee Agreement, because the Employee Agreement was and is unenforceable.

## D. There Was No Evidence of Trade Secret Misappropriation

Plaintiff presented no evidence supporting its claim that Mr. Plant has used, disclosed, or benefited from any of Plaintiff's trade secret or confidential information since Mr. Plant terminated his employment with Plaintiff. In fact, Plaintiff's witnesses testified that Plaintiff had no evidence that either Defendant used any of Plaintiff's trade secrets.

[13] Plaintiff attempted throughout trial to create an image of Mr. Plant as Plaintiff's own creation (almost like Dr. Frankenstein's monster). However, the law recognizes an individual's right to continue his or her livelihood, and

To establish a misappropriation of trade secret claim, a plaintiff "***must show*** that he or she shared a confidential relationship with the defendant, possessed a trade secret, disclosed it to the defendant, ***and that the defendant made use of the disclosure in breach of the confidence reposed in him***. [Citations.]" Burten v. Milton Bradley Co., 763 F.2d 461, 463 (1st Cir. 1985) (emphasis added). However, Plaintiff's witnesses testified that Plaintiff has no evidence that Mr. Plant or Nihon Kohden made use of or disclosed any of Plaintiff's trade secret.[14]

Because Plaintiff has admitted that it has no evidence that Mr. Plant has used or disclosed any of Plaintiff's trade secret or confidential information, it is "simply attempting to restrain competition."[15] Yet, the jury's verdict found not only liability, but also damages. Such findings patently show that the jury's verdict does not comport with the evidence. In fact, the jury's verdict contradicts the evidence and there is no support for the amount of damages awarded.

## E. The Plaintiff Did Not Offer or Prove Damages in this Case that Supports the Jury's Finding on Damages

The evidence of damages was merely the identification of sales quotations and Plant's departure, not actual sales. And, where a jury awards damages based upon an improperly supported belief, "[t]hat kind of award is speculative and conjectural, and cannot be allowed to stand. [Citation.]" Andrews v. Masse, 115 R.I. 104, 110 (1975). Here, the jury awarded damages in sums that have no support in the trial record. And even where customers switch to the new company of a salesman having a non-competition agreement with his former company, the loss of those sales is "purely speculative." Nestle, *supra*, 836 F.Supp. at 78.

Plaintiff presented no evidence at trial that the sales quotations were actual sales. In fact, this Court stated that "Plaintiff was not able to present direct evidence of the number of these quotations which resulted in sales."[16] Even so, this Court assumed -- ***without any evidentiary basis*** -- that some of the quotations resulted in sales.[17] Plaintiff's National Sales Manager, Marco Mancini, testified that he was unaware of any sales Plaintiff lost to Nihon Kohden.[18] In

---

does not prohibit Mr. Plant from using "general knowledge and expertise learned during his employment to continue his livelihood."

14 Testimony of Everett Pizzuti and Marco Mancini.

15 Dial Media, *supra*, 612 F. Supp. at 1489.

16 Memorandum and Order dated July 25, 2008.

17 *Id.*

18 TR. 22:20-23:15 April 2 (**Exhibit B**).

fact, Mr. Plant testified that he did not make any sales to his former customers. **TR. 98:1-14 April 3 (Exhibit C).**

Thus, there simply was no evidence of damages, as required by law. For example, the R.I. Gen. Laws § 6-41-3 states that damages are "actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." As this Court correctly noted, Plaintiff did not establish either type of damage. Thus, the jury's award, based on that improper belief, was "speculative and conjectural," and should not be allowed to stand.

**F. (Dis)proportionality and Inconsistency between the Jury's Breach of Contract Damages and the Misappropriation of Trade Secrets Damages**

The damages awarded by the jury were not only inconsistent with each other, but also inconsistent with the admissible and credible evidence. When a special verdict form is used and "'the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict . . . the court shall return the jury for further consideration of its answers and verdict *or shall order a new trial.*' [Citation.]" Correia v. Fitzgerald, 354 F.3d 47, 57 n.4 (1st Cir. 2003) (emphasis added). In affirming the district court's order granting a new trial, the First Circuit stated, "While it is true that a trial court may enter judgment on the answer where there is an inconsistency between the general verdict and a special interrogatory answer, there is no abuse of discretion in failing to do so where the verdicts evidence either confusion or improperly duplicative awards." Cool Light Co. v. GTE Products Corp., 973 F.2d 31, 35 (1st Cir. 1992). In fact, the Cool Light court concluded:

> We fully recognize the disappointment to the plaintiff in what appeared to be a vindication of plaintiff's rights in the form of a multimillion dollar verdict. Yet, to obviate confusion and to improve upon significant evidentiary gaps, [the plaintiff] was given a second trial before a highly competent and fair-minded judge. His thorough analysis in finding plaintiff's failure of proof is totally justified by the record. We are convinced from our own review of the record that [the district court judge]'s grant of a new trial was not a miscarriage of justice. We find no abuse of discretion in his ruling.

In the instant action, the verdict made the following inconsistent and confusing awards:

$41,900 against Mr. Plant for breach of contract;

$41,900 against Nihon Kohden for intentional interference with contract;

$280,000 against Mr. Plant and $280,000 against Nihon Kohden for misappropriation of trade secrets; and

$12,000 against Mr. Plant for unfair competition.

The damage awards are nonsensical based on their inconsistency and lack of evidentiary support. **No testimony or documentary evidence is the basis for the damage awards.** Moreover, no sense can be made out of the differing awards and how they might relate to the liability for which they are awarded. In fact, the damage awards indicate that the jury, after mistakenly finding liability, speculated about the damages provided.

## G. Various Errors in Evidentiary Ruling Mandate Granting Defendants a New Trial

During trial, this Court overruled numerous meritorious objections from Defendants' counsel (*e.g.*, this Court did not sustain repeated objections to questioning of Mr. Plant requiring him to interpret discovery requests and what documents applied to specific discovery requests, all in violation of the attorney-client privilege, work product doctrine, as well as requiring a legal conclusion), refused to allow Defendants to present testimony of a witness whose testimony was made essential by Plaintiff's opening statement and misunderstanding of documents produced by Defendants, prohibited testimony regarding other former employees of Plaintiff against whom Plaintiff did not seek to enforce non-competition agreements despite the fact that the Court instructed the jury about the importance of whether Plaintiff consistently enforced its non-competition agreements, and this Court allowed the jury to be instructed that Mr. Plant should have produced commission statements even though he testified that he did not know if he had any commission statements. Each of these errors in evidentiary rulings is alone sufficient to grant Defendants a new trial. With regard to errors in evidentiary rulings, the First Circuit has stated that, "if we determine the district court erred in admitting evidence, the appropriate remedy would be a new trial." Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 33, n.3 (1st Cir. 2007). Thus, the evidentiary errors are grounds for a new trial.

A witness should not be required to testify about the legal consequences of facts or documents. In Lance, Inc. v. Ginsburg, 32 F.R.D. 51, 53 (E.D.Pa. 1962), the court stated: "To be sure, the client presumably knows the facts (although not always), but he can hardly be expected to know their legal consequences. This is what lawyers are for." Despite repeated, unsustained

objections, Mr. Plant was required to testify about the about the legal consequences of discovery documents. (**TR. 18:6-8; 19:8-23:6; 38:19-44:3 April 3 (Exhibit C)**.)

This Court also refused to allow testimony about Plaintiff's former employees against whom Plaintiff did not seek to enforce a non-competition agreement. An employer's uneven application and enforcement of non-competition agreements is grounds for not enforcing the agreements.[19] In Narragansett Coated Paper Corp. v. LaPierre, 1998 R.I. Super. LEXIS 75, the court denied the plaintiff-former employer's request for injunction relief where the defendant-former employee resigned to work for one of the plaintiff's competitors. The central reason for the Narragansett court's denial of injunctive relief was:

> [T]he plaintiff has failed to prove that the drastic relief it seeks is reasonably necessary to protect the confidentiality of its unique products and processes. The plaintiff has utterly failed to protect itself from post-employment disclosure of its confidential information by other of its employees, who are far more knowledgeable of that information than the plaintiff. Almost none of the key employees of the plaintiff has executed a non-competition agreement. Singling out employees at relatively low levels of employment, such as that of the defendant, rather than those at the middle and upper levels, for post-employment non-competition agreements suggests that the purpose of those agreements is not so much to protect an employer's trade secrets . . . .

*Id.*, at 9. This Court refused to allow Defendants to question Plaintiff's witnesses about Plaintiff's failure to enforce non-competition restrictions identical to that Mr. Plant had.

Based on Plaintiff's counsel erroneous assumptions about evidence, which she stated for the first time at pre-trial hearings, Defendants sought to introduce the testimony of Brian Kehoe. However, this Court refused, without stating any grounds, to allow Mr. Kehoe to testify. Even where a witness is not disclosed under Rule 26, he should be allowed to testify where his/her identity would have been disclosed during discovery and where there is no prejudice to the opposing party. *See*, *e.g.*, McKesson Info. Solutions, Inc. v Bridge Med., Inc., 434 F.Supp. 2d 810, 812-13 (E.D.Cal. 2006), *aff'd.* 487 F.3d 897 (9th Cir. 2007). There was no finding that allowing Mr. Kehoe to testify would be prejudicial to Plaintiff. Moreover, the need to call Mr. Kehoe as a witness could not be anticipated at the time of the Rule 26 disclosures, as Plaintiff's counsel's erroneous assumptions about evidence could not have been anticipated. Furthermore,

---

[19] TR. 22:5-19 April 2 (**Exhibit B**).

Mr. Kehoe's existence would have been made known if Plaintiff had merely conducted Mr. Plant's deposition.

Based on unclear testimony, this Court instructed the jury that Mr. Plant's failure to produce evidence of the commissions he received allowed the jury to question the veracity of his testimony about the amount of commissions he did in fact receive.[20] While the failure to produce a document that exists or should exist might be grounds for an adverse inference instruction (*see, e.g.*, Mead v. Papa Razzi Rest., 840 A.2d 437 (R.I. 2006)), there is no authority to give such an instruction when there is no evidence that such document exists. Thus, the adverse inference jury instruction should not have been given to the jury in this case.

## IV. CONCLUSION

The convergence of numerous errors in evidentiary rulings and mistakes in applying law -- each of which separately supports Defendants' request for a new trial -- created jury misunderstanding that led to erroneous findings of liability and confused and speculative damages. The disputed evidentiary rulings improperly prohibited necessary testimony (*i.e.*, from Brian Kehoe), allowed testimony prohibited by the attorney-client privilege (*e.g.*, Mr. Plant's testimony about how documents corresponded to discovery requests); required a lay witness to make legal conclusion (same); prohibited evidence necessary to establish a defense that was part of a jury instruction given by the Court (*i.e.*, testimony regarding other former employees of Plaintiff against whom Plaintiff did not seek to enforce non-competition agreements despite the fact that the court instructed the jury about importance of whether Plaintiff consistently enforced its non-competition agreements); and allowed an inference to be made about documents of which no evidence existed (*i.e.*, instructed the jury that Mr. Plant should have produced commission statements even though he testified that he did not know if he had any commission statements). Moreover, the failure to find that the non-competition agreement between Plaintiff and Mr. Plant was unenforceable did not comport with applicable authority, nor did the failure to find that the agreement was enforceable only after this Court reformed it. These egregious errors sunk Defendants' case in the eyes of the jury (as they would have done so in the eyes of any reasonable person).

The jury's obvious confusion was reflected in their verdict. First, there was no credible evidence that Plaintiff suffered any damages, or that Mr. Plant or Nihon Kohden benefited from

allegedly tortious conduct or were unjustly enriched. Moreover, the inconsistencies in the damage award for each cause of action is not supported by any evidence, but appears to be – an expression of confusion about what damages were established – none.

Based on the foregoing and the record in this case, Defendants respectfully request that this Court grant their motion and order a new trial. In the alternative, Defendants respectfully request this Court issue a remittitur that decreases the damage awards (including punitive damages and attorneys' fees) to zero.

KEVIN PLANT
NIHON KOHDEN AMERICA, INC.
By their Attorneys,

/s/ Bruce W. Gladstone
Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
PHONE: (401) 331-5700
FAX: (401) 331-5787

/s/ E.P. Michael Karcis
E.P. Michael Karcis, Esq.
michael@mcleanfirm.com
McLean & McLean LLP
3001 2nd St., Suite E
Santa Monica, CA 90405
PHONE: (310) 450-9353
FAX: (310) 581-8006

Date: August 4, 2008

G:\pec\PLANT, KEVIN\8-08 NEW\NK Motion New Trial.DOC

20 Mr. Plant testified only that he might have received commission statements. TR. 15:11-16:3 April 3 (**Exhibit C**).

CERTIFICATION

The undersigned hereby certifies that on the 4th day of August, 2008, a copy of the foregoing Defendants' Motion for a New Trial or in the Alternative, Remittitur, was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Stacey P. Nakasian, Esquire
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Building, Suite 1200
Providence, RI 02903

Robert M. Duffy, Esquire
rduffy@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Craig M. Scott, Esquire
cscott@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

/s/ Bruce W. Gladstone