**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.A. NO. 06-533ML |
| ASTRO-MED, INC. * | |
| VS. * | APRIL 2, 2008<br>9:30 A.M. |
| KEVIN PLANT, et al * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE MARY M. LISI,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

| | |
|---|---|
| FOR THE PLAINTIFF: | STACEY P. NAKASIAN, ESQ.<br>Duffy Sweeney & Scott, Ltd.<br>One Turks Head Place, Suite 1200<br>Providence, RI 02903 |
| FOR THE DEFENDANTS: | BRUCE W. GLADSTONE, ESQ.<br>Cameron & Mittleman<br>56 Exchange Terrace<br>Providence, RI 02903 |
| | E.P. MICHAEL KARCIS, ESQ.<br>McLean & McLean LLP<br>3001 2nd Street, Suite E<br>Santa Monica, CA 90405 |
| Court Reporter: | Karen M. Wischnowsky, RPR-RMR-CRR<br>One Exchange Terrace<br>Providence, RI 02903 |

MS. NAKASIAN: I have it. It's apparently Tab 4 in the Defendants' binder to you. It's the first day of the preliminary injunction hearing on December 27, 2006, and I'm reading from page 56.

THE COURT: As long as counsel has it, that's fine.

MR. KARCIS: One moment, your Honor. What line?

MS. NAKASIAN: Twenty-four.

MR. KARCIS: Okay.

Q. Mr. Plant, at that hearing, the following question was put to you: "And Nihon Kohden and Astro-Med compete directly with respect to the sales of EEG, PSG and long-term monitoring equipment; correct?"

And your answer was, "Correct."

Is that testimony accurate?

A. Yes.

Q. And Nihon Kohden also sells other medical products that Astro-Med does not sell; isn't that true?

A. Yes.

Q. But in your work at Nihon Kohden, you focused on the EEG, PSG and LTM products?

A. Yes.

Q. And in July 2006, you had learned that Nihon Kohden had a position available in Florida; correct?

A. I think it was around that time.

Q. And you learned that from someone named Bryan Kehoe?
A. Correct.
Q. He was Nihon Kohden's salesperson in the territory at the time; isn't that true?
A. Yeah.
Q. Mr. Plant, could you turn to Tab 31 in your binder. Do you recognize that as an e-mail exchange you had with Mr. Kehoe in July of 2006?
A. Yes.
MS. NAKASIAN: Your Honor, I move to admit Exhibit 31 in full.
MR. KARCIS: No objection, your Honor.
THE COURT: Plaintiff's 31 is full.
MS. NAKASIAN: Thank you, your Honor.
(Plaintiff's Exhibit 31 was admitted in full)
Q. And in that e-mail, in the e-mail that you sent to -- actually it's to Mr. Reasoner and to Mr. Kehoe, the first e-mail on the bottom of the page. Do you see that?
A. Yes. Uh-huh.
Q. Apparently you had met with Mr. Kehoe about the possible position with Nihon Kohden; is that right?
A. Correct.
Q. And you're writing this e-mail after the fact, and

2 APRIL 2008 -- 9:30 A.M.

(The jury is not present for the following)

THE COURT: I understand that -- is it Plaintiff's counsel that has a motion?

MS. NAKASIAN: I do, your Honor. May I approach? Thank you. Do you want us at the bench, your Honor?

THE COURT: No. The jury's not here.

MS. NAKASIAN: Your Honor, I'm making an oral motion under Rule 37. I'll tell you what it is I'm seeking, and then I have a bit of an explanation of how we got here.

I'm going to ask your Honor to find that an exhibit that we have proffered, Exhibit 36, which is a set of documents produced to me in compliance with a Court order, the Court order required the Defendants to produce documents relating to consummated sales that Mr. Plant made on behalf of Nihon Kohden in Florida of the equipment at issue.

Those documents were produced to me; and I'm going to show you that over the course of time after those documents were produced, representations were made and confirmed that those documents related to sales.

And I'm going to ask your Honor, based on what

I'm going to present to you this morning, for an instruction to the jury that those documents relate to sales and that you preclude the Defendants from attempting to present testimony or other evidence to suggest that those are anything other than sales, and I'll tell you why.

In the litigation, we sought documents relating to consummated sales. We also issued an interrogatory to Mr. Plant asking him to identify the customers in Florida to whom he had sold these products on behalf of Nihon Kohden.

The Defendants objected to our discovery requests. We wrote the letters required by the rules to try and resolve those disputes. We were delayed in getting a response from the Defendants.

Ultimately, the response was that they weren't going to produce anything other than they had, and they objected to the requests. I filed a motion to compel, which was heard by Magistrate Judge Martin.

At the hearing, one of the issues was, I was seeking documents not only to consummated sales but to all contacts that Mr. Plant had made in Florida because your Honor's rulings precluded not just selling but contacting by Mr. Plant or anyone in concert with him.

Defense counsel objected to all of it but also

asked Magistrate Judge Martin that if he were inclined to compel documents, that he at least limit the document production to consummated sales. And it's as a result of that request of a limitation by Mr. Karcis that the order that ultimately entered did, in fact, contain that limitation. And I have a copy of the order for your Honor.

THE COURT: Would you hand that up, please. Thank you.

MS. NAKASIAN: Your Honor, the ruling in question is under the request for production section, Item Number 4, which is at the bottom of page 2.

THE COURT: Just a second. Let me read it. Okay.

MS. NAKASIAN: And, your Honor, the footnote also notes that while Mr. Plant was not ordered to produce documents relating to contacts, there's a reference to interrogatory responses which were also compelled at the time.

Now, in compliance with that order, I received a set of documents and a letter from Mr. Gladstone, and I have a copy of Mr. Gladstone's letter, your Honor. In his letter to me --

THE COURT: Just a second. Let me catch up. This is paragraph 4 at the top of page 2?

MS. NAKASIAN: That's correct, your Honor.

THE COURT: Where he says, "To the extent that Mr. Plant did and does have possession of and/or dominion and control over materials which refer, relate or pertain to consummated sales, they are enclosed herewith."

MS. NAKASIAN: That's correct, your Honor.

THE COURT: And is Exhibit 36 what was enclosed?

MS. NAKASIAN: It was a part of what was enclosed. The Defendants did not comply with the rule that required them to identify which documents were responsive to which request.

However, the other documents produced were e-mails and other things that just didn't appear to relate to sales. So it appeared to me that this portion, which has been identified as Exhibit 36, was what Mr. Gladstone was referring to.

I received also supplemental interrogatory responses at the same time from defense counsel and verified by Mr. Plant, and I'd like to offer you a copy of those as well.

THE COURT: Which one are we looking at?

MS. NAKASIAN: Interrogatory Number 6.

THE COURT: Just a second. So some documents were provided. He's referring to the documents that he

referred to in the letter? Is that it?

MS. NAKASIAN: That was my understanding of this, your Honor. But I was unclear, and let me explain to you, the documents I received -- and you'll see Exhibit 36 shows many, many, many sales. Okay. The documents are called quotations, but they've been provided to me in response to an order compelling evidence of consummated sales.

So I sat at my desk and thought, What do I do with this? And I decided, You know what I need to do, I need to make sure, because I'm going to rely on this evidence at trial for my damages, I need to make sure that I know what these documents are. And so I wrote a letter to Mr. Gladstone to make sure that I had my facts straight.

THE COURT: Okay.

MS. NAKASIAN: I think the letter speaks for itself, but what I was trying to confirm --

THE COURT: And what was the response?

MS. NAKASIAN: I received no response, your Honor. I received a response that I would receive a response, and actually by February 14th I had spoken to Mr. Karcis directly who told me they were working on a response. And because I was concerned about this, I wrote him an e-mail confirming what he told me.

THE COURT: Okay.

MS. NAKASIAN: And obviously at that time I was preparing for trial and was concerned that I have correct information.

At no time after my letter, and despite Mr. Karcis' assurance, did I receive any further information, and I quite reasonably took from that that they had no response; these were, in fact, consummated sales. And that's why I made the presentation I did in my opening.

And yesterday when Mr. Karcis got up and said Mr. Plant made no sales to Astro-Med customers, I was very concerned.

And let me also explain to the Court that when I received these documents, I did what any good lawyer would do. I had my paralegal compare them to the Astro-Med customer list that had been provided pursuant to the Court's order. And lo and behold, there are many quotes, sales, to Astro-Med customers according to these documents. And that's the evidence I'm prepared to present.

I confirmed with Mr. Karcis this morning, I asked him, Are you going to take the position that the information in that exhibit is not a sale? And he said, Yes, I am. And that's why I'm making the motion

I am, your Honor, under Rule 37.

THE COURT: Okay. What relief are you seeking specifically?

MS. NAKASIAN: I would like the Court to find -- to instruct the jury, let me put it that way, to instruct the jury that the documents in Exhibit 36 relate to consummated sales by Mr. Plant in Florida on behalf of Nihon Kohden because that's the document request that was being answered and that -- and as a second component of the relief, and I think this is appropriate under, let me find the right rule, your Honor, 37 --

THE COURT: Do you have a specific section of the rule that --

MS. NAKASIAN: I do. I'm sorry. I had a different version of the book in my office. Let me just find the right one. It's 37(b), which relates to failure to comply with an order. And under subsection (2), the rule defines the sanctions which a Court can impose; and the sanctions include, under (A), an order that matters regarding which the order was made or any other designating fact shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order.

That's what I'm seeking. The order required

them to compel documents relating to consummated sales, so I want an order precluding them from coming in now and saying that these documents are anything other than documents pertaining to consummated sales.

And I would like under -- (B) applies, too, which says an order refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibiting the party from introducing designated matters in evidence.

I would ask that you prohibit the Defendants from trying to contest now that that information relates to consummated sales.

THE COURT: Okay.

MS. NAKASIAN: Thank you.

MR. KARCIS: Good morning, your Honor. I think Plaintiff's counsel is asking this Court to determine or deem something as evidence that is not evidence; something that was not offered as evidence as, in fact, evidence; something that was produced in response --

THE COURT: Just a minute, Mr. Karcis. She's intending to introduce it as evidence in this case. The relief she's seeking is permitted by the rule where, if as she has represented to me, and I have no reason at this point to disbelieve her representations, you are now taking the position that what was produced

pursuant to an order to compel as documents relating to consummated sales by Mr. Plant in the territory of Florida are just that.

MR. KARCIS: That's not the position --

THE COURT: So what is your position on that?

MR. KARCIS: The position, your Honor, is, if the Court would look at the order, Judge Martin's order, refer to Request Number 3 which was granted by the Court.

THE COURT: Just a minute. Request Number 3.

MR. KARCIS: Please note that was granted, your Honor.

THE COURT: It was granted.

MR. KARCIS: Do we have a copy of that request, the request for production number 3? I don't believe we received a copy of the request for production, your Honor.

THE COURT: We're not talking about 3. We're talking about 4.

MR. KARCIS: Yes, we are. I'm talking about 3.

THE COURT: Well --

MR. KARCIS: Which says --

THE COURT: Ms. Nakasian is talking about 4.

MR. KARCIS: Correct, your Honor. The documents we're talking about were produced in response to

Request Number 3.

THE COURT: Just a minute. What documents did you produce with respect to Request Number 4?

MR. KARCIS: I have the entirety of Exhibit 36 here, your Honor. If we go through it page by page, they can be separated out, your Honor; but as you can see from the first --

THE COURT: Mr. Karcis, in what manner did you respond and comply or attempt to comply with the Court's order? Did you separate them out as is required, or did you simply dump a load of documents?

MR. GLADSTONE: Your Honor, if I --

THE COURT: No. One of you pick an argument and stick with it. Mr. Karcis, you're at the podium. Answer the question.

MR. KARCIS: As I understand it, the documents were produced through Mr. Gladstone's office.

THE COURT: So you want him to take this argument?

MR. KARCIS: No, your Honor. I'm just saying for this particular issue, this particular question, he has the answer to that.

THE COURT: Then have him come up and respond.

MR. GLADSTONE: Your Honor, if the Court --

THE COURT: What did you produce in response to

Number 4, the evidence of consummated sales?

MR. GLADSTONE: The answer to that, your Honor, is that in our supplemental response to production, we produced, under my cover letter of January 8th, a letter.

There was documents -- there were documents that I received, and I produced a letter. And there was no specific significance, and the letter did not indicate there was any significance, to the numbering of the categories.

THE COURT: Do you not understand your obligation under the civil rules to properly identify what items that are produced in response to a request and in this case an order of the Court are to be properly and appropriately identified as being in response to a particular request?

You see, it makes sense to do it that way so that we don't have these kinds of issues developing in the midst of trial.

Frankly, Mr. Gladstone and Mr. Karcis, the behavior of counsel on this side in this case has been well documented by this Court and the Court of Appeals to be less than candid where necessary.

And so I'm asking you, did you not understand you had an obligation to properly identify these

responses and that's what Ms. Nakasian was asking you for?

MR. GLADSTONE: I believe that for purposes of the rules, your Honor -- and, by the way, please, your Honor, with all due respect to the Court, I take exception to the Court's statements.

THE COURT: You can go ahead and do that, but when I have a magistrate judge sanctioning you --

MR. GLADSTONE: I was not sanctioned, your Honor.

THE COURT: Sanctioning Mr. Karcis then. I don't know what role you had in that, the aborted depositions in California. When you and Mr. Karcis go ahead and take an appeal from an unappealable order and are sanctioned by the Court of Appeals, it leads me to question the motivations of counsel in this case.

So answer my question. What did you do to properly label, identify the documents that were produced in response to the request?

MR. GLADSTONE: Your Honor, my duty is to reasonably provide documents and to reasonably indicate what those documents as provided are. I did so in my cover letter of January 8th.

Ms. Nakasian, I feel, your Honor, is trying to do litigation by sabotage. Ms. Nakasian is saying --

she did not send out a request for admissions, which she could have easily done.

THE COURT: This isn't about a request for admissions. It's a request for production with respect to certain categories of materials.

MR. GLADSTONE: And there was never a direct representation made to Ms. Nakasian, and that was not intentional at all, but there was never a representation made to her that any particular documents in the documents provided other than the fact that the -- any direct sales were, in fact, included in those documents, but there was no specific representation as to which of those documents constituted direct sales or not.

We were not -- we were told to produce documents. There were several categories of documents. Some of those categories -- every document produced pertained to one of the categories requested. Therefore, we did not -- it was not as though we were told to produce just documents pertaining to sales and we produced B when we were told to produce A.

Every document we produced was referring to one of the categories that we were required to produce.

THE COURT: And in your response, you were supposed to identify which documents related to which

request. That's what she attempted to get from you.

MR. GLADSTONE: And for -- if Ms. Nakasian thought that there was lack of clarity on that issue, there were ways that she could have gone about this. For her to now be bringing it up in the middle of trial that she assumed that there were representations made, again, your Honor, no request for admissions, no specific interrogatory, no motion filed with the Court to specify which documents were which, she took it upon herself in response to a request for production which created -- which contained documents, all of which pertained to the various categories.

She took it upon herself to make a dangerous assumption as her -- as attorney for the Plaintiff in this case rather than pursuing several different other methods that she could have pursued to make sure that those were, in fact, what she thought they were pertaining to.

She just assumed, your Honor. She's now coming to the Court in the middle of trial and asking that a key, very serious issue in this case be gotten in through the back door, through some type of sanction, just because of an assumption she made, your Honor. And that's what's happening here.

I can't help how Ms. Nakasian practices law; but

for her now to take the way she practices law and come before this Court, your Honor -- it's not that we didn't produce a document. We're being criticized for producing documents.

We didn't swear to something that wasn't true. We didn't answer requests for admissions saying these were the documents. We produced documents, all of which complied with a Court order. We are not in violation of that Court order, your Honor. I'll turn it over to Mr. Karcis at this point.

THE COURT: I think I've heard enough. I've heard enough, Mr. Karcis.

MR. KARCIS: Okay. I'm just going to get this.

THE COURT: Ms. Nakasian, at what point were you intending to introduce these documents?

MS. NAKASIAN: Your Honor, I spent several hours last night figuring out how I use these documents in light of what's happened here. I was going to use them with Mr. Plant.

If the Court grants -- well, I have to use them in my case-in-chief because they support our damages. If the Court grants my motion, how I will use them is to support a summary that I'm going to have to ask leave of the Court to use my paralegal just to sponsor because I can't go into this subject with Mr. Plant.

THE COURT: I'm trying to figure out what we do here this morning with a jury waiting.

MS. NAKASIAN: I appreciate that.

THE COURT: Does this affect at all your anticipated direct examination of Mr. Ohsawa?

MS. NAKASIAN: No. It would affect Mr. Plant.

THE COURT: All right. Let's do this, then, because I'm always concerned when we have jurors come in that we keep them working. I appreciate the fact that you needed to bring this to my attention this morning, but I think I understand where you're coming from.

I want to go back into the record to see precisely what was filed. I want to look carefully at this order and the rule, and then I also want to look at what you've marked as Exhibit 36.

I want to make sure I understand that what you've included here as Plaintiff's proposed 36, it looks literally like hundreds of pages, you can probably tell me just how many pages, but it looks like a lot.

MS. NAKASIAN: It's a lot of pages, your Honor.

THE COURT: What I want to make sure I understand is how that came into your possession. Did it come to you exactly the way it's presented here,

just a pile of paper?

MS. NAKASIAN: I can address that, your Honor. The day I received the document production, and I have the production in my office and I can bring it in, the original cover letter is with it, there was no Bates stamps. There was a group of e-mails, some marketing materials, a report from MD Buyline and then that chunk of quotes.

And I looked at it. There was no designation of what was responding to what. And, in fact, in the brief communications I've had with Mr. Karcis and Mr. Gladstone, they led me to believe that they could do that, that they could tell me what numbers -- what documents went with which request, but that was never done.

And that's how it was produced to me. That's why I sent the letter reminding them of their obligations under Rule 34(b), I think it is, maybe 30(b), to identify what documents go to which request.

And I don't want to keep the jury waiting, your Honor, but it's difficult to sit there and be accused of litigation by ambush when I specifically wrote a letter asking them for this very thing.

THE COURT: I know. I just wanted to understand better what it was that you got. So you've answered

that question for me.

MS. NAKASIAN: Yes. The production did include documents in addition to these; but from what I could divine, these were the only ones that related to sales. Thank you, your Honor.

THE COURT: Okay. I'll take this matter up after we have the testimony of Mr. Ohsawa this morning.

Bob, you can bring the jury in.

(The jury is present for the following)

THE COURT: Good morning. I'm sorry to have kept you waiting this morning. There are some things that require my taking it up with counsel outside your presence; and if I think it's going to be something lengthy, you're, frankly, more comfortable outside the courtroom than in. And so that was the reason why we were somewhat delayed this morning.

I don't want you to think that we didn't know you were here or were doing something else; but we were doing some things that, of necessity and under the rules, needed to be addressed outside your presence.

Are you ready to go to work? Excellent.

Ms. Nakasian, please.

MS. NAKASIAN: Your Honor, I believe we were in the middle of Mr. Karcis' cross of Marco Mancini.

THE COURT: You're right. I'm sorry.

Q. You mentioned, sir, I believe on direct that you signed a noncompetition agreement when you started working with Astro-Med?
A. Yes, I did.
Q. Could you tell me, sir, who Guy Casler is.
MS. NAKASIAN: Objection. May I approach?
THE COURT: Approach.
(Bench conference held on the record)
MS. NAKASIAN: Mr. Casler is the former employee that Mr. Karcis has been trying to make a case that there was some selective enforcement of this agreement.
THE COURT: What's the purpose of asking this question?
MR. KARCIS: That the -- that he knows that Mr. Casler's working for a competitor and that he's bid against him on products.
THE COURT: Sustained.
(End of bench conference)
MR. KARCIS: Thank you.
Q. To your knowledge, sir, has Mr. Plant used any confidential information belonging to Astro-Med?
MS. NAKASIAN: Objection. Time frame?
THE COURT: Overruled.
A. To my knowledge, I can't recall a specific occasion.

Q. You can recall a general occasion?

A. I cannot.

Q. Has Mr. Plant used any trade secrets belonging to Astro-Med since he's left Astro-Med's employment?

A. Not to my knowledge.

Q. Has, to your knowledge, Astro-Med lost the sale of any product to Mr. Plant selling Nihon Kohden equipment since he left Astro-Med?

A. I would be unaware of that.

Q. You would be unaware of a sale that Astro-Med lost to Nihon Kohden?

A. I cover the entire country, so I wouldn't -- I couldn't recall a specific or a generality in Florida.

Q. So you don't know?

A. No.

MR. KARCIS: Nothing further, your Honor.

THE COURT: You may step down unless you have redirect. Do you have any redirect?

MS. NAKASIAN: No, your Honor.

THE COURT: You may step down.

MS. NAKASIAN: Your Honor, Astro-Med calls Mr. Michael Ohsawa.

**MICHAEL OHSAWA, PLAINTIFF'S WITNESS, SWORN**

THE CLERK: Would you please state your name and spell your last name for the record.