UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASTRO-MED, INC., | : | |
| Plaintiff, | : | |
| vs. | : | C.A. No. 06-533 ML |
| KEVIN PLANT and NIHON KOHDEN AMERICA, INC., | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF ASTRO-MED, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, REMITTITUR**

Defendants' Motion raises several arguments which fall into three broad categories. First, the Defendants resubmit the arguments presented in their prior Motion for Judgment as a Matter of Law. The arguments assert that the Court committed errors of law regarding Defendants' liability. The Court considered and rejected these arguments when it denied Defendants' earlier motion. Second, the Defendants challenge the jury's award of damages on the bases that it is not supported by the evidence and that components of the award are inconsistent. These arguments ignore the clear testimony at trial and relevant case law, all of which supports the jury's well-founded award. Third, the Defendants contest a number of the Court's evidentiary rulings issued at trial. Each of the challenged rulings is appropriate and supported by case law and the Court's rules. For these reasons, which are addressed further below, Astro-Med, Inc. ("Astro-Med") requests that the Defendants' Motion be denied.

## ARGUMENT

### I. The Court Made No Errors of Law Regarding Reliability

In this section of their Motion, Defendants, with one exception, raise practically verbatim the same arguments set forth in their Motion for Judgment as a Matter of Law, which this Court denied. The Defendants offer no new facts or law to support their contentions. None of the arguments, which are addressed below, supports the ordering of a new trial or remittitur in this case.

1. <u>The Court Did Not Err in Finding the Non-Compete Provision in Plant's Employee Agreement Both Valid and Enforceable</u>

Defendants argue first that the non-compete provision in Plant's Employee Agreement was unenforceable as written and, second, that even if it was enforceable, no breach could have occurred until after the agreement was interpreted by the Court. The question of the agreement's enforceability was resolved by the Court appropriately according to controlling Rhode Island case law.

The Defendants misstate Rhode Island law in arguing that they could not have breached Plant's non-compete prior to the Court's December 28, 2006 Injunction Order. In *Durapin, Inc. v. American Products, Inc.*, 559 A.2d 1051 (R.I. 1989), the Rhode Island Supreme Court considered what approach Rhode Island law should take in dealing with restraints on trade found to be overbroad. The Court adopted a rule of partial enforcement, expressly rejecting the alternative all-or-nothing and blue pencil rules of enforcement. Under the partial enforcement rule as announced in *Durapin*, an overbroad but otherwise valid non-competition agreement is enforced to the extent reasonable to protect an employer's legitimate business interest. 559 A.2d at 1058.

Defendants posit that a non-compete provision capable of partial enforcement under *Durapin* is unenforceable until such time as a court declares its reasonable scope. But none of the cases cited by the Defendants, including *Durapin,* stand for that proposition. Nor is the proposition practical, as it would render all non-compete agreements at least temporarily unenforceable. Employees universally would assert that their non-competes are unenforceable, thereby buying themselves some free time to compete while their former employers are forced to bring suit to determine the scope of the restraint. Such a result is particularly absurd in cases like this where the employee concealed his competing employment from his former employer, thereby further delaying enforcement under Defendants' misconceived rule. The proposition also would greatly assist subsequent employers, like Nihon Kohden, in defending against tortious interference claims. They would take the position that their conduct could not constitute improper interference unless a Court had previously declared the scope of the non-compete.

Defendants' argument equates to saying that a contract subject to two or more interpretations cannot be breached until the Court declares its meaning. This is obviously not the law. The Defendants' position, which the Court properly rejected at trial, would only serve to engender litigation. Employers seeking to enforce non-competes would be forced to bring a declaratory judgment action as a predicate to a breach of contract action. Not only is there no authority to suggest a breach could not have occurred prior to the Court's injunction order, but a rule to that effect would lead to impractical and unfair results.

2. <u>The Court Correctly Ruled that Plant's Non-Compete Was Not Voided By Any Material Changes in Plant's Employment</u>

The Defendants cite only one case, *AFC Cable Systems v. Clisham,* 62 F. Supp. 2d 167 (D. Mass. 1999), in support of its argument. *Clisham*, a case applying Massachusetts law, is

inapposite because in that case there was evidence that the parties intended to enter into a new contract, but did not.

Even if *Clisham* were relevant and controlling, there is ample evidence from which the Jury could determine that the changes in Plant's employment did not void his non-compete agreement. The Jury reasonably could conclude that the Employee Agreement applied to all positions at Astro-Med and, therefore, that Plant's transition from a product specialist to sales person did not affect his Employee Agreement. Plant also argues that his Employee Agreement was voided when Astro-Med unilaterally reduced his sales territory. However, Plant admitted that he had been advised when he accepted the sales position that that such a change might occur in the future. *See* Transcript of April 2, 2008 [Docket No. 182], at 87. The compensation plan Astro-Med provided to Plant as a salesperson also put him on notice that territory assignments are determined by the Company and may be modified at any time. *See* Plaintiff's Exhibit 9. Because Astro-Med retained the right to change territories and because Plant was on notice that it might do so, the Jury reasonably could find that the change did not constitute a material alteration in his employment.

3. <u>Plant's Obligation Under His Employee Agreement Were Not Voided By Any Breach By Astro-Med</u>

Astro-Med incorporates by reference the response listed in Section 2, above.

4. <u>The Restrictive Covenants in Plant's Non-Compete Agreement are Supported by Astro-Med's Legitimate Business Interests</u>

The substantial training that Astro-Med provided to Plant, as well as the exposure it gave him to its confidential and proprietary business information, is more than sufficient to support the non-compete provision in Plant's Employee Agreement. Astro-Med presented sufficient

evidence of these legitimate business interests, and the question regarding the enforceability of the Employee Agreement was properly presented to the Court.

5. The Court Properly Allowed Astro-Med's Tortious Interference Claim Against Nihon Kohden to Proceed to a Jury[1]

For the reasons stated above, the Court was justified in finding the non-compete provisions of Plant's Employee Agreement valid and enforceable under Rhode Island law. Accordingly, the Court properly submitted to the Jury Astro-Med's claim that Nihon Kohden tortiously interfered with the non-compete provisions of that agreement.

6. Substantial Evidence of Trade Secret Misappropriation Was Presented at Trial

Plant himself admitted at trial that he contacted for Nihon Kohden customers with whom he had done business at Astro-Med. *See* Transcript of April 3, 2008 [Docket No. 182], at 33-34, 119-120, 122-124. In addition, Plant acknowledged that Nihon Kohden issued over $2 Million in quotes to customers on Astro-Med's customer lists, none of which were customers of Nihon Kohden. *Id.* at 63. From this evidence, and other evidence produced at trial, a reasonable jury could find that the Defendants misappropriated trade secrets of Astro-Med.

## II. Defendants' Challenges to the Jury's Damage Award are Unfounded

The Defendants have challenged the sufficiency of the evidence to support the jury's award as well as what they characterize as the "disproportionality and inconsistency" between components of the award. The award and all its components, however, are well grounded in the evidence at trial. "A party seeking remittitur bears a heavy burden of showing that an award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Marcano Rivera v. Turabo Med. Center P'ship*, 415 F.3d 162, 172 (1st Cir. 2005). Defendants have not and cannot satisfy this heavy burden.

[1] This is a new argument not specifically raised by Nihon Kohden in its Motion for a Judgment as a Matter of Law.

Astro-Med is not required to prove its damages with mathematical precision. Rather, it must provide sufficient evidence to take the amount of damages out of the realm of speculation and conjecture. *See Cordeco Development Corp. v. Santiago Vasquez,* 539 F.2d 256, 262 (1st Cir.), *cert. denied,* 429 U.S. 978 (1976); *Trafford v. Penno*, 800 F. Supp. 1052, 1060 (D.R.I. 1992). "All that is required is a reasonable basis of computation [of damages] on the best evidence obtainable." *Knightsbridge Mkt'g Servs., Inc. v. Promociones Y Proyectos,* 728 F.2d 572, 575-76 (1st Cir. 1984) In this case, the Court already has found that the Jury's award of damages was reasonable. *See* Memorandum and Order dated July 25, 2008 [Docket No. 207] at 4-5. As the Court noted, Astro-Med presented evidence regarding its sales figures in Florida before and after Plant left to work for Nihon Kohden. The Court found that the substantial drop in sales reasonably could be attributed to the Defendants. The Court also found that the amount of compensatory damages awarded for Defendants' misappropriation of trade secrets was consistent with the evidence presented.

Defendants make much in their motion, as they did at trial, of the fact that Plaintiff was unable to prove the amount of Nihon Kohden's sales resulting from the misappropriation. However, as established in painstaking detail on the record at trial, Astro-Med's inability to provide evidence regarding Nihon Kohden sales resulted from Plant's failure to comply with discovery rules and Court orders issued during the discovery phase of this action. Where a defendant has "refused to furnish the information that could have eliminated or greatly reduced any speculation" regarding damages, it "ill behooves" the defendant to complain that plaintiff's evidence on damages is "speculative." *See Knightsbridge*, 728 F.2d at 575 (rejecting defendants' challenge to the sufficiency of damage evidence where the defendant refused to produce its sales information).

Defendants also argue that the damages awarded by the Jury for the breach of contract and misappropriation of trade secrets are inconsistent. Defendants assert, without explaining why, that the awards are "nonsensical based on their inconsistency and lack of evidentiary support." However, as noted above, the Court found that the award for Astro-Med on the misappropriation of trade secrets count was reasonable and supported by the evidence. Moreover, the award for breach of contract and intentional interference with contract, both of which were in the amount of $41,900, are not without foundation. There was testimony at trial that Astro-Med requires its employees to agree to a one-year non-compete because it takes the company a year to hire and train someone to fill the employee's position. *See* Transcript of April 1, 2008 [Docket No. 182] at 53-54. $41,900 was about Plant's annual compensation in his first full year with Astro-Med. *See* Plaintiff's Exhibit 20. It is possible, and perhaps probable, that the Jury concluded that one-year's salary was an appropriate damage award for the Defendants' breach of and interference with Plant's Employee Agreement. In any event, $41,900 is not an unreasonable amount based on the overall damages shown in trial; nor is the $12,000 awarded against Plant on the unfair competition claim. Defendants have failed to satisfy their heavy burden to establish grounds for remittitur.

## III. The Court Made No Errors in its Evidentiary Rulings at Trial

Defendants complain about a number of evidentiary rulings issued by the Court during the course of the trial.

First, they complain that Plant was wrongly required to testify about the "legal consequences" of the Defendants' document productions. *See* Defendants' Memorandum at 18. The Defendants' argument, however, mischaracterizes the nature of the testimony elicited by Astro-Med. The questions addressed to Plant at trial were intended to determine what he

intended by Interrogatory responses that he submitted and signed under oath in the course of the proceedings. *See, e.g.,* Transcript of April 3, 2008 [Docket No. 182] at 18:6-8, 19:20-21, 23:6. Rule 33 of the Federal Rules of Civil Procedure specifically requires that interrogatories be answered by the party to whom they are directed, that each interrogatory be answered fully in writing under oath, and that the responses be signed by the answering party. *See* Rule 33(b)(1)(A), (3) and (5). It defies logic to suggest that a party cannot be examined at trial regarding interrogatory responses provided in compliance with this rule. Astro-Med also sought, reasonably, to authenticate documents produced by Plant in response to discovery. *See, e.g., id.* at 19:8-22, 39:7-16, 40:21 - 41:9. Plant was questioned about the discovery responses themselves, not their "legal consequences." Accordingly, the Court was correct in overruling the objections to the questions at issue.

Defendants also assert that the Court wrongly refused to admit testimony about Astro-Med's "failure to enforce non competition restrictions identical to that Mr. Plant had." *See* Defendants' Memorandum at 18. Based solely on the authority of one case, the Defendants assert that the evidence regarding Astro-Med's enforcement of (or failure to enforce) non-compete provisions against other employees would be relevant to the enforceability of Plant's non-compete. The case Defendants rely upon, *Narragansett Coated Paper Corp. v. LaPierre*, 1998 R.I. Super. LEXIS 75, is inapposite. There, the plaintiff was seeking to enforce a non-disclosure provision, not a non-compete. The question presented was whether the plaintiff had taken adequate steps to protect its confidential information. The defendants presented evidence that the plaintiff did not require all employees to sign a non-compete agreement restraining disclosure of confidential information. In fact, the Court found that the company singled out low-level employees for such restrictions and did not apply them to mid- and upper-level

employees. Based on these findings, the Court concluded that the plaintiff had "utterly failed" to protect against post-employment disclosure of confidential information by its employees.

A careful reading of *Narragansett* establishes that it stands for the proposition that a plaintiff seeking to prevent disclosure of confidential information must take reasonable efforts to protect such information and that having some but not all employees sign non-compete agreements is not a reasonable effort. Contrary to Defendants' characterization, the *Narragansett* case does not make evidence of selective enforcement relevant in non-compete cases. At best, it stands for the proposition that evidence of selectively requiring employees to execute non-compete agreements containing non-disclosure provisions may be relevant in a case seeking to enjoin a former employee's use of confidential information. But such evidence does not exist here. The evidence at trial established that Astro-Med requires all of its employees to sign agreements containing non-compete and non-disclosure provisions. *See* Transcript of April 1, 2008 [Docket No. 182] at 50.

The Defendants further assert that the Court erred in precluding the Defendants from calling Brian Kehoe in their case. Defendants wrongfully assert that the Court failed to state any grounds for excluding Mr. Kehoe. It is clear from counsel's colloquy with the Court that the Court's ruling was based on (1) the Court's rejection of Defendants' characterization of Mr. Kehoe as a "rebuttal" witness and (2) the Defendants' failure to disclose Mr. Kehoe as a witness in either of their Pretrial Statements[2] or in the Pretrial Conference where the parties were required to disclose the identity and order of their witnesses. *See* Transcript of April 3, 2008 [Docket No. 182] at 147-149]. Astro-Med would have been severely prejudiced if Mr. Kehoe had been permitted to testify and it forced to cross-examine him at trial without the benefit of

[2] Defendants filed two Pretrial Statements in this matter - - one at the time the case was originally scheduled for trial and another just prior to trial.

adequate notice and preparation. That prejudice would have been enhanced by the fact that Mr. Kehoe was never deposed in the course of discovery. In addition, Defendants' efforts to characterize Mr. Kehoe as a "rebuttal witness" are unavailing. Defendants as defendants cannot have rebuttal witnesses.

Finally, Defendants fault the Court for allowing the jury to draw a negative inference from Plant's failure to produce documents regarding his consummated sales on behalf of Nihon Kohden in Florida. Defendants do not dispute that such an instruction would be appropriate in certain cases, but they asset it was not appropriate here because they claim there was no evidence that Plant had any documents regarding his sales. They are wrong. Mr. Plant very clearly testified about the sales information he received from Nihon Kohden.

Q: And when you are paid that commission from Nihon Kohden, do they provide you with some sort of report or accounting of how the commission was calculated?

A: I believe there is a green bar graph that they provide to you and tell you what items have shipped out, what is on backorder and percentage of commission.

Q: Okay. So they give you a graph. Does it include information about what sales are included in the graph?

A: It pertains to what sales - - what is shipped out to the Florida territory.

Q: Does the report actually show you the specific sales with the commissions being calculated on?

A: Yes.

Q: Is that in some sort of listing form?

A: I believe so, yes.

Q: And do you get that monthly?

A: That graph comes out - - I believe I only received it twice last year.

Transcript of April 3, 2008 [Docket No. 182] at 15:11-16-3. Thus, Plant testified clearly that he received commission reports from Nihon Kohden with sales information, including graphs and possibly listings of sales. Based on his testimony, the Court properly instructed the jury regarding the negative inference that they could draw from Plant's failure to produce documents relating to his consummated sales in response to Plaintiff's discovery and the Court's discovery orders.

## CONCLUSION

For the foregoing reasons, there is no basis to question the conduct of this trial and the resulting jury award. Accordingly, Astro-Med respectfully requests that the Defendants' Motion for a New Trial or, in the Alternative, Remittitur be denied.

Respectfully submitted,

ASTRO-MED, INC.

/s/ Stacey P. Nakasian

Craig M. Scott, Esq. (#4237)
cscott@duffysweeney.com
Stacey P. Nakasian, Esq. (#5069)
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
rduffy@duffysweeney.com

Dated: August 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that the within ***Reply Memorandum in Support of Plaintiff Astro-Med, Inc.'s Opposition to Defendants' Motion for New Trial or in the Alternative, Remittitur*** was filed through the ECF system on the 27th day of August, 2008, and will be sent electronically to the counsel-named below who is a registered participant identified on the Notice of Electronic Filing:

Bruce W. Gladstone, Esq.
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903

and was served, via First Class Mail, to the counsel named below who is not a registered ECF participant:

E.P. Michael Karcis, Esq.
McLean & McLean LLP
3001 2nd Street, Suite E
Santa Monica, CA 90405

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq.

Astro-Med\Plant, Kevin\Pleadings\06-0533 USDC/Memo Opp to Motion New Trial 08-06-08