**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

ASTRO-MED, INC.,

Plaintiff,

v.

KEVIN PLANT; NIHON KOHDEN AMERICA, INC.

Defendants.

C.A. No. 06-533-ML

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSTION TO MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, REMITTITUR**

Defendants, Nihon Kohden America, Inc. ("Nihon Kohden") and Kevin Plant, through counsel, hereby submit their Reply to Plaintiff's Opposition to their Motion for New Trial, requesting that this Court issue an order allowing a new trial on all issues, or, in the alternative, Remittitur.

KEVIN PLANT
NIHON KOHDEN AMERICA, INC.
By their Attorneys,

/s/ Bruce W. Gladstone
Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
PHONE: (401) 331-5700
FAX: (401) 331-5787

/s/ E.P. Michael Karcis
E.P. Michael Karcis, Esq.
michael@mcleanfirm.com
McLean & McLean LLP
3001 2nd St., Suite E
Santa Monica, CA 90405
PHONE: (310) 450-9353
FAX: (310) 581-8006

Date: September 10, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ASTRO-MED, INC., Plaintiff, v. KEVIN PLANT; NIHON KOHDEN AMERICA, INC. Defendants. | C.A. No. 06-533-ML |

## I. INTRODUCTION

Plaintiff glosses over the legal and factual errors presented in Defendants' Motion, and misstates that this Court has made a determination about all of those errors.[1] Moreover, Plaintiff ignores that this Court made unsubstantiated and unsupported assumptions about the jury's verdict to give the verdict even a modicum of credence.[2] The legal and factual errors and evidentiary rulings, as well as this Court's clear agreement that Plaintiff did not present evidence sufficient to support a claim for damages, mandates granting Defendants' Motion for New Trial or, in the alternative, Remittitur.

## II. LEGAL ARGUMENT

### A. The Evidence Did Not Support a Finding That Defendant, Plant Breached an Enforceable Non-Competition Provision.

Plaintiff's opposition presents no legal support for its claim that the non-competition agreement was enforceable prior to this Court's modification of the provision in its December 28, 2006 Interim Preliminary Injunction Order. Instead, Plaintiff incorrectly asserts that an

---

[1] One "error" Defendants argued in their motion for judgment as a matter of law was that the non-competition agreement was unenforceable until this Court modified it by its December 28, 2006 Interim Preliminary Injunction Order. Defendants present this crucial issue in their motion for new trial in order to articulate it more clearly for this Court.

[2] Memorandum and Order dated July 25, 2008, wherein this Court stated that "Plaintiff was not able to present direct evidence of the number of these quotations which resulted in sales.", thus leading this Court to speculate "that some portion of the quotations resulted in sales."

employer that drafts an unenforceable non-competition agreement should be able to enjoy the fruits of that defective and unenforceable document, and that it is incumbent on the party who did not draft the agreement (*i.e.*, the employee) to seek court determination regarding the scope of its enforceability, if any. Such a claim is unsupported by law and runs contrary to a fundamental tenet of the law: An agreement is to be construed against the drafter. *See*, *e.g.*, Hilton v. Fraioli, 763 A.2d 599, 602 (R.I. 2000).

While a Rhode Island court has not directly addressed this issue, the court in Merrimack Valley Wood Prods. v. Near, 152 N.H. 192, 196, 876 A.2d 757 (N.H. 2005) did, citing Dial Media, Inc. v. Arthur Schiff, 12 F. Supp. 1483, 1488 (R.I. 1985). Using the Dial Media analysis, the Merrimack Valley court set forth the steps in analyzing the enforceability of a non-competition agreement, including the time at which it may become enforceable. *Id.* at 196. First, a court determines whether a non-competition covenant is unreasonable (*i.e.*, whether it protects the legitimate interests of the employer without being overly broad), just as this Court initially did.[3] If unreasonable, the restriction is unenforceable. *Id.* Next, the court is to analyze whether reformation is merited. *Id.*

Plaintiff ignores or misunderstands this entire argument -- Plaintiff's Non-Competition Agreement with Mr. Plant was determined to be unenforceable by this Court and was not enforceable against Mr. Plant until this Court modified it. Thus, prior to December 28, 2006, there was no enforceable employment restriction against Mr. Plant.

## B. The Non-Competition Agreement is Unenforceable

### 1. Material Changes in Mr. Plant's Employment Status with Plaintiff Voided the Non-Competition Restriction.

This Court has not directly ruled on the applicability of AFC Cable Sys. v. Clisham, 62 F. Supp. 2d 167, 172-73 (D.Mass. 1999) (applying Massachusetts law), which holds that, where there is a change in an employee's relationship with his/her employer, the new relationship voids any previous agreements, including non-competition agreements.

---

[3] This Court stated, "the sheer breadth of geographic limitation contained in the agreement, it seems to me, unless there's a whole lot more that I haven't heard, **I don't think it is enforceable under Rhode Island law**." December 28, 2006 Transcript, 27:12-16 (**Exhibit A**) (emphasis added) *cf.* Hawkins v. Daly, 2003 R.I. Super. LEXIS 14, 14 (a non-competition provision "will only be enforced when reasonable and where restrictions do not extend beyond what is apparently necessary for the protection of the employer's business").

Plaintiff is incorrect in its analysis of Clisham. The Clisham court was clear in stating its reasoning for declaring that the non-competition agreement between the plaintiff and the defendant was void: "***The most significant evidence*** is that AFC began treating Clisham differently. Before 1994, AFC did not award Clisham any of the benefits associated with permanent employment, nor did it act as Clisham's formal employer. After his promotion to Sales Manager, AFC paid benefits to Clisham, withheld his taxes, and paid into Social Security on his behalf. Clisham's title changed, his pay structure changed, his authority increased, his unsupervised time on the road increased, and the focus of his work changed from investigating a potential market to making sales." Id. at 173 (emphasis added). The same grounds exist for determining that the Non-Competition Agreement between Plaintiff and Mr. Plant was void -- the post-Employee Agreement changes in Mr. Plant's employment terms included a new position (salesman), increased salary, more authority, increased unsupervised time, new work location (Florida), change from dealing with sold products to selling Plaintiff's products, and eventual decrease in sales territory.

The Clisham court based its holding on Bartlett Tree Expert Co. v. Barrington, 353 Mass. 585, 233 N.E.2d 756 (1968). In Bartlett Tree, the defendant former employee had signed a non-competition agreement. However, the changes in the terms of his employment lead the court to conclude "that the conduct of the parties shows a clear new employment contract in both 1960 and 1965 and that the 1948 contract was abandoned and rescinded by mutual consent." Id. 233 N.E.2d at 758. Affirming the trial court's ruling, the Bartlett Tree court explained, "In 1960, the defendant's rate of compensation and sales area were changed. Such far-reaching changes strongly suggest that the parties had abandoned their old arrangement and had entered into a new relationship." Id. Likewise, Mr. Plant worked under an Employee Agreement until his rate of compensation was changed, as well as his position and work location, in 2004, and his sales area was changed in 2006.

As Mr. Plant testified, *two* fundamental changes in his employment status occurred, both after he executed the unenforceable non-competition covenant: (a) a material change in his position (from product specialist in Rhode Island to salesman in Florida); and (b) a substantial decrease in his sales territory.[4] At no time after either of those material changes did Mr. Plant

[4] Moreover, the substantial decrease of Mr. Plant's territory was also a breach of the Employee Agreement, which made the Employee Agreement unenforceable. *See*, *e.g.*, Lantor, Inc. v. Ellis 1998 Mass. Super. LEXIS 560, 23 (a material breach of an employment agreement discharges an employee from any obligation under a non-competition provision of that agreement).

execute a new Non-Competition Agreement. Thus, the "Employee Agreement" signed when Mr. Plant first began employment in October 2002 was void at the time he became a salesman in Florida in 2004.

**2. Because the Non-Competition Agreement is Unenforceable, Nihon Kohden Could Not Have Interfered with the Agreement.**

Because the Non-Competition Agreement was unenforceable against Mr. Plant when Nihon Kohden employed him, no legal authority supports the claim that Nihon Kohden interfered with the unenforceable contract. *cf.* Telectronics, Inc. v. Downing, 1987 U.S. Dist. LEXIS 3070 (D. Mass 1987).

**C. There Was No Evidence of Trade Secret Misappropriation.**

Plaintiff presented no legal or factual support at trial for a judgment against either Defendant for trade secret misappropriation and does not in its opposition. Instead, Plaintiff argues that Mr. Plant, when with Nihon Kohden, contacted customers he had while employed with Plaintiff. As stated in his testimony (TR. 33-34, 119-120 April 3 (**Exhibit B**)), Mr. Plant contacted two former potential customers he had contacted while employed with Plaintiff and both of those contacts ***pre-dated*** this Court's December 28, 2006 Order. Moreover, the testimony (without Plaintiff's mischaracterization of what was stated in testimony) was that someone else at Nihon Kohden, without Mr. Plant's involvement, issued quotes to customers Mr. Plant had either contacted or worked with while he was employed with Plaintiff. Mr. Plant did not personally issue those quotes, and those quotes did not result in sales. In fact, Mr. Plant testified that, as a Nihon Kohden salesman, he did not make any sales to his former customers. TR. 98:1-14 April 3 (**Exhibit C**). Moreover, no evidence to the contrary was presented at trial.

The evidence does not show that Mr. Plant "*made use of the disclosure in breach of the confidence reposed in him.*" Burten v. Milton Bradley Co., 763 F.2d 461, 463 (1st Cir. 1985) (emphasis added). There was no evidence that Nihon Kohden knew of, had access to, used or misappropriated any of Plaintiff's purported trade secrets. In fact, Plaintiff's National Sales Manager, Marco Mancini, confirmed that neither Mr. Plant nor Nihon Kohden used any of Plaintiff's trade secrets when he testified that he was unaware of any such use or of any sales Plaintiff lost to Nihon Kohden.[5]

---

[5] TR. 22:20-23:15 April 2 (**Exhibit D**).

Thus, the jury's verdict of liability and damages is not only unsupported by the evidence, but also contrary to the evidence presented at trial. Thus, a new trial is warranted.

**D. The Plaintiff Did Not Offer Or Prove Damages In This Case That Supports The Jury's Finding On Damages**

As stated above, Plaintiff did not present any evidence of damages. Instead, Plaintiff assumes that at least some of the quotes introduced into evidence must have resulted in sales, despite the fact that Plaintiff's National Sales Manager testified that he was unaware of any sales Plaintiff lost as a result of Nihon Kohden's hiring of Kevin Plant.[6]

This Court agreed that Plaintiff did not provide evidence of damages when it stated, "Plaintiff was not able to present direct evidence of the number of these quotations which resulted in sales."[7]

Such a "speculative and conjectural" award should not be allowed to stand. Andrews v. Masse, 115 R.I. 104, 110 (1975). Moreover, assuming -- ***without any evidentiary basis*** -- that some of the quotations must have resulted in sales[8] is a legally indefensible position.

Plaintiff again misunderstands or ignores the crux of Defendants' position – there was no evidence to sustain a damage award against either Defendant. Instead, Plaintiff cites a litany of inapplicable cases. For example, Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 172 (1st Cir. 2005) addressed the issue of excessive damages, not damages awarded with no evidentiary support. Likewise, in Knightsbridge Marketing Services, Inc. v. Promociones Y Proyectos, 728 F.2d 572, 574 (1st Cir. 1984), the plaintiff introduced expert testimony on the issue of damages without any rebuttal testimony from the defendant. *Id.* at 574.

On the other hand, Plaintiff also cites Cordeco Dev. Corp. v. Santiago Vasquez, 539 F.2d 256 (1st Cir. 1976), which actually supports Defendants' position. In this case, the plaintiff claimed damages based upon "a decrease in major construction and a substantial decline in marketability of sand which [made] it much more difficult to sell the commodity in 1974 and 1975 than had been earlier." *Id.* at 261. The district court had concluded that despite the greater difficulty of selling sand, plaintiff had not suffered any loss because of the increased value of the

---

[6] TR. 22:20-23:15 April 2 (**Exhibit D**); TR. 98:1-14 April 3 (**Exhibit C**).
[7] Memorandum and Order dated July 25, 2008.
[8] *Id.*

sand in 1975. Id. The district court also ruled that "even if plaintiff had suffered an actual present loss, 'the amount [had] not been proven.'" Id. The First Circuit Court agreed. Id. Likewise, Plaintiff presented no evidence that it suffered an actual present loss as the result of any conduct by either Defendant. In fact, Plaintiff's National Sales Manager testified that he was unaware of any sales Plaintiff lost to Nihon Kohden.[9]

Apparently aware that there was no evidence of damages, Plaintiff suggests that maybe the jury awarded damages of $41,900 because it was "about" the amount of money Mr. Plant earned during his first year of employment. However, based on the evidence (or lack thereof), it is clear that the jury just speculated and did not determine the amounts awarded based on evidence. Thus, Defendants' motion for a new trial should be granted.

**E. (Dis)proportionality Between the Jury's Breach of Contract Damages and the Misappropriation of Trade Secrets Damages.**

No reasonable formula can explain or reconcile the jury's inconsistent awards -- inconsistent with the evidence and inconsistent with each other. Because of these inconsistencies, a new trial is warranted. *See*, *e.g.*, Correia v. Fitzgerald, 354 F.3d 47, 57 n.4 (1st Cir. 2003).

**F. Various Errors in Evidentiary Rulings Mandate Granting Defendants a New Trial.**

Defendants' moving papers detail the evidentiary rulings that mandate a new trial, from prohibiting the testimony of an available and necessary witness to allow (despite repeated objection) Mr. Plant to attempt to testify to attorney-client privilege and work product doctrine matters, and legal conclusions to prohibiting testimony about Plaintiff's inconsistent enforcement of its non-competition agreements (despite this Court instructing the jury of the importance of whether Plaintiff consistently enforced its Non-Competition Agreements). Each of these errors in evidentiary rulings, as well as the others cited in Defendants' moving papers, is alone sufficient to grant Defendants a new trial. *See*, *e.g.*, Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 33, n.3 (1st Cir. 2007).

Plaintiff weakly attempts to distinguish Narragansett Coated Paper Corp. v. LaPierre, 1998 R.I. Super. LEXIS 75, where the employer's failure to have all employees sign a nondisclosure agreement resulted in its inability to enforce a nondisclosure agreement (for failure

[9] TR. 22:20-23:15 April 2, 2008 (**Exhibit D**); TR. 98:1-14 April 3 (**Exhibit C**).

to adequately protect its trade secrets) against an employee who signed one. Likewise, the failure to seek enforcement of a non-competition agreement against all employees who signed one (the failure to adequately protect trade secrets, a purported purpose of the non-competition agreement in this case), should prohibit an employer's selective enforcement of a non-competition agreement. This is particularly true in this case where this Court instructed the jury on the importance of whether Plaintiff consistently enforced its Non-Competition Agreements.

As for the Court's refusal to allow Brian Kehoe to testify, Plaintiff states -- without any legal authority -- that "Defendants as defendants cannot have rebuttal witnesses." Plaintiff ignores the facts of the Knightsbridge case, *supra*, which Plaintiff cited, because the court in Knightsbridge specifically states that the defendant failed to present rebuttal testimony.[10] Even so, Mr. Kehoe's testimony was required only after Plaintiff's counsel relayed her erroneous assumptions about evidence, which made Mr. Kehoe's rebuttal testimony necessary.

## III. CONCLUSION

Based on the foregoing and the moving papers, Defendants respectfully request that this Court order a new trial or, in the alternative, Remittitur.

KEVIN PLANT
NIHON KOHDEN AMERICA, INC.
By their Attorneys,

/s/ Bruce W. Gladstone
Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
PHONE: (401) 331-5700
FAX: (401) 331-5787

/s/ E.P. Michael Karcis
E.P. Michael Karcis, Esq.
michael@mcleanfirm.com
McLean & McLean LLP
3001 2nd St., Suite E
Santa Monica, CA 90405
PHONE: (310) 450-9353
FAX: (310) 581-8006

Date: September 10, 2008

[10] *See* Knightsbridge, 728 F.2d at 574.

CERTIFICATION

The undersigned hereby certifies that on the 10th day of September, 2008, a copy of the foregoing Defendants' Reply to Opposition to Motion for New Trial was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Stacey P. Nakasian, Esquire
snakasian@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Building, Suite 1200
Providence, RI 02903

Craig M. Scott, Esquire
cscott@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Robert M. Duffy, Esquire
rduffy@duffysweeney.com
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

/s/ Bruce W. Gladstone

G:\pec\PLANT, KEVIN\8-08 NEW\NK Reply Motion New Trial.doc